F:\WP\Cases\1887\PLEADMOT\FEES\2020-03-19 Motion for Attorney's Fees.wpd

TELEPHONE (562) 437-4499
TOLL-FREE (877) TOX-TORT
TELECOPIER (562) 436-1561
WWW.TOXICTORTS.COM

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

METZGER LAW GROUP
A PROFESSIONAL LAW CORPORATION
RAPHAEL METZGER, ESQ., SBN 116020
SCOTT P. BRUST, ESQ., SBN 215951
555 E. OCEAN BLVD., SUITE 800
LONG BEACH, CA 90802
TELEPHONE: (562) 437-4499
TELECOPIER: (562) 436-1561
WEBSITE: www.toxictorts.com

Attorneys for Intervenor-Defendant,
COUNCIL FOR EDUCATION AND
RESEARCH ON TOXICS ("CERT")

UNITED STATE DISTRICT COURT

EASTERN DISTRICT OF CALIFORNIA

CALIFORNIA CHAMBER OF
COMMERCE,

        Plaintiff,

    vs.

XAVIER BECERRA, IN HIS OFFICIAL
CAPACITY AS ATTORNEY GENERAL
OF THE STATE OF CALIFORNIA.

        Defendant.

Civil No. 2:19-cv-02019-KJM-EFB

*Assigned to the Hon. Kimberly A. Mueller, Ctrm. 3*

**INTERVENOR -DEFENDANT
COUNCIL FOR EDUCATION AND
RESEARCH ON TOXICS' NOTICE OF
MOTION AND MOTION FOR
ATTORNEY'S FEES; MEMORANDUM
OF POINTS AND AUTHORITIES;
DECLARATION OF RAPHAEL
METZGER**

DATE:        May 15, 2020
TIME:        10:00 a.m.
ROOM:        3 (15th Floor)
JUDGE:       Kimberly A. Mueller

METZGER LAW GROUP
A PROFESSIONAL LAW CORPORATION
555 EAST OCEAN BOULEVARD, SUITE 800
LONG BEACH, CALIFORNIA 90802

PRACTICE CONCENTRATED IN TOXIC
TORT & ENVIRONMENTAL LITIGATION
OCCUPATIONAL & ENVIRONMENTAL LUNG
DISEASE, CANCER, AND TOXIC INJURIES

**INTERVENOR -DEFENDANT COUNCIL FOR EDUCATION AND RESEARCH ON TOXICS'
NOTICE OF MOTION AND MOTION FOR ATTORNEY'S FEES; MEMORANDUM OF POINTS AND
AUTHORITIES; DECLARATION OF RAPHAEL METZGER**

F:\WP\Cases\1887\PLEADMOT\FEES\2020-03-19 Motion for Attorney's Fees.wpd

TELEPHONE (562) 437-4499
TOLL-FREE (877) TOX-TORT
TELECOPIER (562) 436-1561
WWW.TOXICTORTS.COM

METZGER LAW GROUP
A PROFESSIONAL LAW CORPORATION
555 EAST OCEAN BOULEVARD, SUITE 800
LONG BEACH, CALIFORNIA 90802

PRACTICE CONCENTRATED IN TOXIC
TORT & ENVIRONMENTAL LITIGATION
OCCUPATIONAL & ENVIRONMENTAL LUNG
DISEASE, CANCER, AND TOXIC INJURIES

# **TABLE OF CONTENTS**

**PAGE**

MEMORANDUM OF POINTS AND AUTHORITIES . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 2

    1.    PRELIMINARY STATEMENT . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 2

    2.    SUMMARY OF FACTS AND PROCEEDINGS . . . . . . . . . . . . . . . . . . . . . . 3

        A.    Intervenor, Council for Education and Research on Toxics (CERT) . . . . . 3
        B.    The California Office of Environmental Health Hazard Assessment's
            Determination of the Human Risk of Cancer from Acrylamide in Coffee,
            and the *CERT v. Starbucks* Litigation . . . . . . . . . . . . . . . . . . . . . . . . . . . 4

    3.    AS AN INTERVENOR, CERT IS A PARTY TO THE ACTION,  AND IS
        ENTITLED TO RECOVER COSTS AND FEES . . . . . . . . . . . . . . . . . . . . . . 10

    4.    CCP § 1021.5 IS A PROPER BASIS FOR AN AWARD OF ATTORNEY'S
        FEES IN FAVOR OF CERT . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 12

    5.    AN ATTORNEY'S FEE AWARD UNDER CALIFORNIA CODE OF CIVIL
        PROCEDURE § 1021.5 IS APPROPRIATE IN THIS CASE . . . . . . . . . . . . . 15

    6.    IN THE ALTERNATIVE, 42 USC § 1988 IS ALSO A PROPER BASIS FOR
        AN AWARD OF ATTORNEY'S FEES . . . . . . . . . . . . . . . . . . . . . . . . . . . . 16

    7.    THE FEES REQUESTED BY CERT ARE REASONABLE . . . . . . . . . . . . . . 17

    8.    CONCLUSION . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 19

DECLARATION OF RAPHAEL METZGER . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 20

i

**INTERVENOR -DEFENDANT COUNCIL FOR EDUCATION AND RESEARCH ON TOXICS'
NOTICE OF MOTION AND MOTION FOR ATTORNEY'S FEES; MEMORANDUM OF POINTS AND
AUTHORITIES; DECLARATION OF RAPHAEL METZGER**

F:\WP\Cases\1887\PLEADMOT\FEES\2020-03-19 Motion for Attorney's Fees.wpd

TELEPHONE (562) 437-4499
TOLL-FREE (877) TOX-TORT
TELECOPIER (562) 436-1561
WWW.TOXICTORTS.COM

METZGER LAW GROUP
A PROFESSIONAL LAW CORPORATION
555 EAST OCEAN BOULEVARD, SUITE 800
LONG BEACH, CALIFORNIA 90802

PRACTICE CONCENTRATED IN TOXIC
TORT & ENVIRONMENTAL LITIGATION
OCCUPATIONAL & ENVIRONMENTAL LUNG
DISEASE, CANCER, AND TOXIC INJURIES

# <u>TABLE OF AUTHORITIES</u>

**PAGE**

## <u>CASES</u>

*Abouab v. City and County of San Francisco*
141 Cal.App.4th 643 (2006) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . <u>13</u>

*Alexander v. United States*
509 U.S. 544 (1993) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . <u>12</u>

*Alvarado v. J.C. Penney Co.*
997 F.2d 803 (10th Cir. 1993) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . <u>10</u>

*American Beverage Association v. City and County of San Francisco*
916 F.3d 749 (9th Cir. 2019) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . <u>5</u>

*Attorneys' Liability Protection Soc. v. Klein*
929 F.Supp. 1399 (D. Kan. 1996) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . <u>9</u>

*Baker v. John Morrell & Co.*
263 F.Supp.2d 1161 (N.D. Iowa 2003) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . <u>18</u>

*Bell v. United Princeton Props., Inc.*
884 F.2d 713 (3d Cir.1989) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . <u>18</u>

*Blum v. Stenson*
465 U.S. 886 (1984) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . <u>18</u>

*Brown v. Sullivan*
916 F.2d 492 (9th Cir. 1990) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . <u>18</u>

*CERT v. OEHHA et al.*
LASC Case No. BC 721153 . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . <u>6</u>

*CERT v. Starbucks, et al.*
Los Angeles Superior Court Case No. BC 435759 . . . . . . . . . . . . . . . . . . . . . . . . . <u>4</u>, <u>6</u>, <u>7</u>

*City of Santa Monica v. Stewart*
126 Cal.App.4th 43 (2005) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . <u>12</u>

*Coalition for a Sustainable Future in Yucaipa v. City of Yucaipa*
238 Cal.App.4th 513 (2015) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . <u>14</u>

*Consumer Advocacy Group, Inc. v. Exxon Mobil Corp.*
104 Cal.App.4th 438 (2002) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . <u>14</u>

*County of Inyo v. City of Los Angeles*
78 Cal.App.3d 82 (1978) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . <u>15</u>

*County of San Luis Obispo v. Abalone Alliance*
178 Cal.App.3d 848 (1986) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . <u>16</u>

ii

**INTERVENOR -DEFENDANT COUNCIL FOR EDUCATION AND RESEARCH ON TOXICS'
NOTICE OF MOTION AND MOTION FOR ATTORNEY'S FEES; MEMORANDUM OF POINTS AND
AUTHORITIES; DECLARATION OF RAPHAEL METZGER**

F:\WP\Cases\1887\PLEADMOT\FEES\2020-03-19 Motion for Attorney's Fees.wpd

*Courser v. Allard*
2018 WL 2447970, at *4 (W.D. Mich., May 31, 2018, No. 1:16-CV-1108)
(not reported) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 9

*Delta Air Lines v. Civil Aeronautics Board*
505 F.2d 386 (D.C.Cir.1974) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 11

*ECOS, Inc. v. Brinegar*
(M.D.N.C. 1987) 671 F.Supp. 381 . . . . . . . . . . . . . . . . . . . . . . . . . . 17

*Exeitis USA Inc. v. First Databank, Inc.*
2017 WL 6539909 at *4 (N.D. Cal. 2017) . . . . . . . . . . . . . . . . . . . . . 12

*General Fed'n of Women's Clubs v. Iron Gate Inn, Inc.*
537 A.2d 1123 (D.C.App.1988) . . . . . . . . . . . . . . . . . . . . . . . . . . . . 18

*In re Conservatorship of Whitley*
50 Cal.4th 1206 (2010) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 14

*In re Taco Bell Wage and Hour Actions*
222 F.Supp.3d 813 (E.D. Cal. 2016). . . . . . . . . . . . . . . . . . . . . . . . . 14

*Independent Living Center of Southern California, Inc. v. Kent*
909 F.3d 272 (9th Cir. 2018) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 16

*Judicial Watch, Inc. v. DOJ*
774 F. Supp. 2d 225 (D.D.C. 2011) . . . . . . . . . . . . . . . . . . . . . . . . . 18

*Mangold v. Cal. Pub. Utils. Comm'n*
67 F.3d 1470 (9th Cir.1995) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 15

*MDT Corp. v. New York Stock Exchange, Inc.*
858 F.Supp. 1028 (C.D. Cal. 1994) . . . . . . . . . . . . . . . . . . . . . . . . . 11

*MRO Communications, Inc. v. American Tel. & Tel. Co.*
197 F.3d 1276 (9th Cir. 1999) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 16

*Nat'l Ass'n of Concerned Veterans v. Sec'y of Def.*
675 F.2d 1319 (D.C. Cir. 1982) . . . . . . . . . . . . . . . . . . . . . . . . . . . . 18

*Nat'l Inst. of Family & Life Advocates v. Becerra*
138 S.Ct. 2361 (2018) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 5

*New York Times Co. v. United States*
403 U.S. at 714 (1971) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 12

*Schneider v. Dumbarton Developers, Inc.*
767 F.2d 1007 (D.C. Cir. 1985) . . . . . . . . . . . . . . . . . . . . . . . . . . . . 10

*Serrano v. Priest*
20 Cal.3d 25 (1977) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 15

**INTERVENOR-DEFENDANT COUNCIL FOR EDUCATION AND RESEARCH ON TOXICS'
NOTICE OF MOTION AND MOTION FOR ATTORNEY'S FEES; MEMORANDUM OF POINTS AND
AUTHORITIES; DECLARATION OF RAPHAEL METZGER**

TELEPHONE (562) 437-4499
TOLL-FREE (877) TOX-TORT
TELECOPIER (562) 436-1561
WWW.TOXICTORTS.COM

METZGER LAW GROUP
A PROFESSIONAL LAW CORPORATION
555 EAST OCEAN BOULEVARD, SUITE 800
LONG BEACH, CALIFORNIA 90802

PRACTICE CONCENTRATED IN TOXIC
TORT & ENVIRONMENTAL LITIGATION
OCCUPATIONAL & ENVIRONMENTAL LUNG
DISEASE, CANCER, AND TOXIC INJURIES

*Smith v. Board of School Commissioners of Mobile County*
119 F.R.D. 440 (S.D.Ala.1988) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 11

*Supreme Court of Virginia v. Consumers Union of U. S., Inc.*
446 U.S. 719 (1980) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 17

*United States v. State of Or.*
657 F.2d 1009 (9th Cir. 1981) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 10

*Universal Amusement Co., Inc. v. Vance*
587 F.2d 159 (5th Cir. 1978) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 17

*Wal-Mart Stores, Inc. v. City of Turlock*
483 F.Supp.2d 1023 (E.D. Cal. 2007). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 18

*Willard v. Kelley*
238 Cal.App.4th 1049 (2015) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 16

*Zimmerman v. Emmons*
225 F.2d 97  (9th Cir. 1955) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 9

## **STATUTES**

42 USC 1988(b) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 16

42 USC § 1983 . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 17

42 USC § 1988 . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 16, 17

Code of Civil Procedure § 1021.5. . . . . . . . . . . . . . . . . . . . . . . . . . . 2, 12, 13, 15-17

Health & Safety Code § 25249.10(c) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 7

Health & Safety Code § 25249.7(d) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 6, 8, 14

TELEPHONE (562) 437-4499
TOLL-FREE (877) TOX-TORT
TELECOPIER (562) 436-1561
WWW.TOXICTORTS.COM

METZGER LAW GROUP
A PROFESSIONAL LAW CORPORATION
555 EAST OCEAN BOULEVARD, SUITE 800
LONG BEACH, CALIFORNIA 90802

PRACTICE CONCENTRATED IN TOXIC
TORT & ENVIRONMENTAL LITIGATION
OCCUPATIONAL & ENVIRONMENTAL LUNG
DISEASE, CANCER, AND TOXIC INJURIES

iv

**INTERVENOR -DEFENDANT COUNCIL FOR EDUCATION AND RESEARCH ON TOXICS'
NOTICE OF MOTION AND MOTION FOR ATTORNEY'S FEES; MEMORANDUM OF POINTS AND
AUTHORITIES; DECLARATION OF RAPHAEL METZGER**

F:\WP\Cases\1887\PLEADMOT\FEES\2020-03-19 Motion for Attorney's Fees.wpd

TO THE PARTIES HERETO AND TO THEIR ATTORNEYS OF RECORD:

PLEASE TAKE NOTICE that on May 15, 2020, at 10:00 a.m., or as soon thereafter as the matter may be heard in Courtroom 3 of the above-entitled Court, Intervenor, Council for Education and Research on Toxics ("CERT"), hereby moves for an award of its attorney's fees reasonably incurred in this matter, pursuant to Federal Rule of Civil Procedure 54(d).

This motion will be made on the grounds that CERT brought a successful motion to dismiss under Federal Rule of Civil Procedure 12, and successfully opposed Plaintiff's Motion for Preliminary Injunction. In so doing, CERT not only successfully vindicated its own rights, but also the rights of other private enforcers of Proposition 65, thus entitling CERT to an award of fees pursuant to California Code of Civil Procedure § 1021.5 and/or 42 USC § 1988.

CERT therefore requests that the Court award attorney's fees in the amount of $157,560.00.

CERT has met and conferred with counsel for Plaintiff, as reflected in the accompanying Declaration of Raphael Metzger, ¶¶46-51, Exhs. "A" through "C".

This motion will be based upon this Notice, upon the Memorandum of Points and Authorities and Declaration of Raphael Metzger attached hereto, upon the pleadings and papers on file herein, upon all matters of which the Court may properly take judicial notice, and upon such evidence and argument as may be presented at the hearing hereon.

DATED: March 30, 2020          METZGER LAW GROUP
                              A Professional Law Corporation


                              /s/ Raphael Metzger
                              _____
                              RAPHAEL METZGER, ESQ.
                              Attorneys for Intervenor
                              COUNCIL FOR EDUCATION AND
                              RESEARCH ON TOXICS ("CERT")

TELEPHONE (562) 437-4499
TOLL-FREE (877) TOX-TORT
TELECOPIER (562) 436-1561
WWW.TOXICTORTS.COM

METZGER LAW GROUP
A PROFESSIONAL LAW CORPORATION
555 EAST OCEAN BOULEVARD, SUITE 800
LONG BEACH, CALIFORNIA 90802

PRACTICE CONCENTRATED IN TOXIC
TORT & ENVIRONMENTAL LITIGATION
OCCUPATIONAL & ENVIRONMENTAL LUNG
DISEASE, CANCER, AND TOXIC INJURIES

**INTERVENOR -DEFENDANT COUNCIL FOR EDUCATION AND RESEARCH ON TOXICS'
NOTICE OF MOTION AND MOTION FOR ATTORNEY'S FEES; MEMORANDUM OF POINTS AND
AUTHORITIES; DECLARATION OF RAPHAEL METZGER**

F:\WP\Cases\1887\PLEADMOT\FEES\2020-03-19 Motion for Attorney's Fees.wpd

TELEPHONE (562) 437-4499
TOLL-FREE (877) TX-TORT
TELECOPIER (562) 436-1561
WWW.TOXICTORTS.COM

METZGER LAW GROUP
A PROFESSIONAL LAW CORPORATION
555 EAST OCEAN BOULEVARD, SUITE 800
LONG BEACH, CALIFORNIA 90802

PRACTICE CONCENTRATED IN TOXIC
TORT & ENVIRONMENTAL LITIGATION
OCCUPATIONAL & ENVIRONMENTAL LUNG
DISEASE, CANCER, AND TOXIC INJURIES

# MEMORANDUM OF POINTS AND AUTHORITIES

## 1.   PRELIMINARY STATEMENT

Intervenor-Defendant Council for Education and Research on Toxics (CERT) intervened in this action in order vindicate important public rights that Plaintiff California Chamber of Commerce ("Cal Chamber") targeted in a lawsuit that seeks to enjoin both the State of California and all private enforcers from enforcing one of the most important public health statutes in the state.

Proposition 65 requires businesses that expose Californians to carcinogens to provide a consumer health warning. Claims for violating the law may be brought by the State or private enforcers acting for the public benefit. When an enforcer prevails in such a claim, it may request an award of attorney's fees pursuant to CCP § 1021.5, which permits a fee award to a successful party in any action which has resulted in the enforcement of an important right affecting the public interest.

Acrylamide, which is present in a variety of foods, is a potent neurotoxin that has been a known carcinogen to the State of California since 1990.  CERT is a longtime private enforcer of Proposition 65, and has successfully litigated important cases resulting in reduction of acrylamide in consumer food products, and providing required health warnings for acrylamide.

The complaint that Cal Chamber filed in this case sought injunctive and declaratory relief that would have barred both the State and private enforcers from initiating or continuing any Proposition 65 claim with respect to acrylamide in food and beverages, and would have enjoined a state court proceeding that CERT has successfully litigated for almost a decade. Worse yet, the complaint presented a facial challenge to Proposition 65 *as a whole*, and sought a declaration stating that  Proposition 65 "on its face violates the First Amendment."  CERT intervened in the case in order to file a motion to dismiss the claim under FRCP 12, and to oppose Cal Chamber's motion for a preliminary injunction.  CERT prevailed on both of those matters, at which time Cal Chamber amended its complaint to omit CERT as a party, thus effecting its dismissal.  CERT now brings a motion for its attorney's fees as a prevailing party.

**2**

**INTERVENOR -DEFENDANT COUNCIL FOR EDUCATION AND RESEARCH ON TOXICS'
NOTICE OF MOTION AND MOTION FOR ATTORNEY'S FEES; MEMORANDUM OF POINTS AND
AUTHORITIES; DECLARATION OF RAPHAEL METZGER**

F:\WP\Cases\1887\PLEADMOT\FEES\2020-03-19 Motion for Attorney's Fees.wpd

TELEPHONE (562) 437-4499
TOLL-FREE (877) TOX-TORT
TELECOPIER (562) 436-1561
WWW.TOXICTORTS.COM

METZGER LAW GROUP
A PROFESSIONAL LAW CORPORATION
555 EAST OCEAN BOULEVARD, SUITE 800
LONG BEACH, CALIFORNIA 90802

PRACTICE CONCENTRATED IN TOXIC
TORT & ENVIRONMENTAL LITIGATION
OCCUPATIONAL & ENVIRONMENTAL LUNG
DISEASE, CANCER, AND TOXIC INJURIES

## 2.     SUMMARY OF FACTS AND PROCEEDINGS

### A.     Intervenor, Council for Education and Research on Toxics (CERT)

The Council for Education and Research on Toxics (CERT) is a public benefit organization whose primary charitable purposes are education and research regarding toxic substances.  Founded by two University of California professors in 2001, CERT is a unique non-governmental organization: its officers and directors serve without compensation and, maintaining a low overhead, virtually every dollar that CERT receives by way of contributions, successful Proposition 65 litigation, and *cy pres* awards, is disbursed in the form of research and education grants, mostly to research scientists and students within the University of California system.  CERT has filed amicus curiae briefs in California appellate courts, the California Supreme Court, federal appellate courts, and the U.S. Supreme Court.

In 2002 Swedish researchers discovered that the potent carcinogen and neurotoxin acrylamide is present at high levels in many cooked foods, prompting the European Food Safety Authority (EFSA) to declare acrylamide in food a "major public health concern." Since approximately 40% of Americans develop cancer and scientists attribute a like percentage of human cancers to carcinogens in the human diet, CERT decided to devote its efforts and resources to remedying the major public health problem of acrylamide in the human diet.  Thus, in late 2002 CERT filed the first case to enforce Proposition 65 regarding acrylamide in french fries sold in fast food restaurants.  CERT's counsel co-litigated that case and another case regarding acrylamide in potato chips with the California Attorney General.  Those cases were both successful and resulted in the entry of consent judgments in Los Angeles Superior Court, conferring substantial benefits to California consumers.  In the former case, french fry manufacturers agreed to provide cancer hazard warnings informing consumers of the acrylamide cancer hazard and in the latter case, potato chip manufacturers reduced acrylamide levels in potato chips in lieu of providing cancer hazard warnings

**3**

F:\WP\Cases\1887\PLEADMOT\FEES\2020-03-19 Motion for Attorney's Fees.wpd

TELEPHONE (562) 437-4499
TOLL-FREE (877) TOX-TORT
TELECOPIER (562) 436-1561
WWW.TOXICTORTS.COM

METZGER LAW GROUP
A PROFESSIONAL LAW CORPORATION
555 EAST OCEAN BOULEVARD, SUITE 800
LONG BEACH, CALIFORNIA 90802

PRACTICE CONCENTRATED IN TOXIC
TORT & ENVIRONMENTAL LITIGATION
OCCUPATIONAL & ENVIRONMENTAL LUNG
DISEASE, CANCER, AND TOXIC INJURIES

– the best result for public health, since removing carcinogens from food reduces the cancer burden, whereas cancer hazard warnings merely inform consumers that certain foods present significant cancer hazards, so they can make informed choices about purchasing foods and thereby reduce their individual risks of cancer.

**B.    The California Office of Environmental Health Hazard Assessment's Determination of the Human Risk of Cancer from Acrylamide in Coffee, and the *CERT v. Starbucks* Litigation**

In March 2005, the California Office of Environmental Health Hazard Assessment (OEHHA) published a report titled "Characterization of Acrylamide Intake from Certain Foods," in which OEHHA determined that all coffee drinkers have a significantly increased risk of cancer from acrylamide in coffee, i.e., the No Significant Risk Level (NSRL) for exposure to acrylamide from consumption of coffee was exceeded for coffee drinkers, even average and light consumers.  This report, by the agency responsible for implementing the Safe Drinking Water and Toxic Enforcement Act of 1986, commonly known as Proposition 65, clearly informed coffee roasters and retailers that they were exposing Californians to acrylamide in excess of the NSRL.  Nevertheless, the entire industry failed and refused to provide legally required cancer warnings.  Accordingly, CERT determined it would be necessary to sue the coffee industry to force it to comply with Proposition 65 to protect the health of California coffee consumers (about 2/3 the population).

In 2010 CERT initiated litigation against the coffee industry regarding acrylamide in coffee (*CERT v. Starbucks, et al.,* Los Angeles Superior Court Case No. BC 435759), with the goal of persuading coffee roasters to reduce acrylamide levels in coffee. The litigation involves two consolidated cases against approximately 85 coffee roasters and retailers, most of which are members of the National Coffee Association, the California Grocers Association, and the California Chamber of Commerce. CERT asserted a single cause of action for violation of Proposition 65.  The complaint sought no damages, but rather sought an injunction enjoining Defendants from continuing

**4**

**INTERVENOR -DEFENDANT COUNCIL FOR EDUCATION AND RESEARCH ON TOXICS'
NOTICE OF MOTION AND MOTION FOR ATTORNEY'S FEES; MEMORANDUM OF POINTS AND
AUTHORITIES; DECLARATION OF RAPHAEL METZGER**

F:\WP\Cases\1887\PLEADMOT\FEES\2020-03-19 Motion for Attorney's Fees.wpd

TELEPHONE (562) 437-4499
TOLL-FREE (877) TOX-TORT
TELECOPIER (562) 436-1561
WWW.TOXICTORTS.COM

METZGER LAW GROUP
A PROFESSIONAL LAW CORPORATION
555 EAST OCEAN BOULEVARD, SUITE 800
LONG BEACH, CALIFORNIA 90802

PRACTICE CONCENTRATED IN TOXIC
TORT & ENVIRONMENTAL LITIGATION
OCCUPATIONAL & ENVIRONMENTAL LUNG
DISEASE, CANCER, AND TOXIC INJURIES

to violate Proposition 65, as well as civil penalties for violating California law (3/4 of civil penalties are paid to OEHHA). The consolidated cases were assigned to the Honorable Elihu M. Berle in the Complex Litigation Department of the Los Angeles Superior Court.

Among the Defendants' affirmative defenses were two statutory defenses and two constitutional defenses - "False Compelled Speech" in violation of the First Amendment, and federal preemption. In the Fall of 2014, Judge Berle tried the constitutional defenses and the "No Significant Risk Level" defense, and on September 9, 2015, issued his Phase 1 Statement of Decision, adjudging those defenses in favor of CERT and against all Defendants.

The Defendants sought review of the adverse decision against them on their First Amendment defense by way of petition for writ of mandate in the California Court of Appeal, which carefully considered their writ petition, but ultimately denied the petition for lack of merit. Thereafter, in 2016 CERT filed motions for summary adjudication of its prima facie case, which Judge Berle granted against the Roasters and the Retailers.

In the Fall of 2017 Judge Berle tried Defendants' last affirmative defense, their "Alternative Risk Level" defense and, on May 9, 2018, issued a Phase 2 Statement of Decision, adjudging Defendants' last affirmative defense in favor of CERT and against all Defendants. In the summer of 2018, the Defendants filed a motion to renew and reopen the trial of their First Amendment Defense based on the Supreme Court's decision in *Nat'l Inst. of Family & Life Advocates v. Becerra*, 138 S.Ct. 2361 (2018) (NIFLA). Judge Berle denied the motion on the merits in a thoughtful, well-reasoned decision.

The Defendants then filed a second petition for writ of mandate, seeking review of Judge Berle's decision denying their motion to renew/reopen the trial of their First Amendment Defense.  In response to that petition, the Court of Appeal issued a temporary stay of proceedings on the eve of the remedies trial, but after CERT filed a brief informing the court of the new *en banc* decision of the Ninth Circuit in *American Beverage Association v. City and County of San Francisco*, 916 F.3d 749 (9th Cir. 2019), the Court of Appeal vacated its temporary stay, allowing Judge Berle to resume proceedings and to finish trial of the case.

**5**

F:\WP\Cases\1887\PLEADMOT\FEES\2020-03-19 Motion for Attorney's Fees.wpd

TELEPHONE (562) 437-4499
TOLL-FREE (877) TOX-TORT
TELECOPIER (562) 436-1561
WWW.TOXICTORTS.COM

METZGER LAW GROUP
A PROFESSIONAL LAW CORPORATION
555 EAST OCEAN BOULEVARD, SUITE 800
LONG BEACH, CALIFORNIA 90802

PRACTICE CONCENTRATED IN TOXIC
TORT & ENVIRONMENTAL LITIGATION
OCCUPATIONAL & ENVIRONMENTAL LUNG
DISEASE, CANCER, AND TOXIC INJURIES

In June 2018, OEHHA proposed a regulation to nullify Judge Berle's decision.  On June 3, 2019, OEHHA adopted 27 CCR 25704, which purports to declare that carcinogens in coffee do not present a significant risk of cancer - disregarding the agency's own findings in its 2005 report. CERT has identified 14 grounds why OEHHA's new regulation is invalid and unenforceable, and asserted its validity claims in an action against OEHHA  (*CERT v. OEHHA, et al.,* LASC Case No. BC 721153).  However, the judge in the new case abstained from adjudicating those claims, instead deferring to Judge Berle to address the validity of the new regulation in the ongoing coffee litigation.

In the summer of 2019, Defendants filed motions for leave to amend their answers to assert the regulation as a new affirmative defense, which were granted.  CERT has filed seven motions for Summary Adjudication and one Motion for Judgment regarding the invalidity of the regulation, and intends to file several additional motions that require advance discovery.[1]

Concerned that OEHHA's new regulation is invalid and unenforceable, the coffee industry (represented by Trenton Norris of Arnold Porter using his other organizational client, the California Chamber of Commerce), filed the present action seeking  preliminary and permanent injunctions enjoining all enforcement regarding acrylamide in food, to surreptitiously enjoin Judge Berle from completing trial of the *CERT v. Starbucks* case.  (ECF No. 1) While the original complaint mentioned the *CERT v. Starbucks* case in two different places (¶¶ 45 and 47), Mr. Norris failed to inform this court that his firm tried and lost the First Amendment defense in that case, unsuccessfully sought to reopen that defense, and filed two writ petitions to overturn Judge Berle's decision, both of which were unsuccessful.

Cal Chamber's original complaint purported to seek declaratory relief, along with "[p]reliminary and permanent injunctions prohibiting . . . private enforcers of Proposition 65 under Cal. Health & Safety Code § 25249.7(d)), from enforcing or threatening to enforce the Proposition 65 warning requirements for cancer with respect to acrylamide in food products intended for human consumption."  The complaint was a direct attack upon Proposition 65's warning requirement for

---

[1]While the pending motions were scheduled to be heard this month, the hearings have been continued to May 11, at the earliest, in light of the Coronavirus emergency.

INTERVENOR -DEFENDANT COUNCIL FOR EDUCATION AND RESEARCH ON TOXICS'
NOTICE OF MOTION AND MOTION FOR ATTORNEY'S FEES; MEMORANDUM OF POINTS AND
AUTHORITIES; DECLARATION OF RAPHAEL METZGER

F:\WP\Cases\1887\PLEADMOT\FEES\2020-03-19 Motion for Attorney's Fees.wpd

TELEPHONE (562) 437-4499
TOLL-FREE (877) TOX-TORT
TELECOPIER (562) 436-1561
WWW.TOXICTORTS.COM

METZGER LAW GROUP
A PROFESSIONAL LAW CORPORATION
555 EAST OCEAN BOULEVARD, SUITE 800
LONG BEACH, CALIFORNIA 90802

PRACTICE CONCENTRATED IN TOXIC
TORT & ENVIRONMENTAL LITIGATION
OCCUPATIONAL & ENVIRONMENTAL LUNG
DISEASE, CANCER, AND TOXIC INJURIES

acrylamide in food and beverages, alleging that "there is no reliable scientific evidence that dietary acrylamide increases the risk of cancer in humans." (¶78).  In addition to alleging that health warnings should not be required for acrylamide, the complaint launched a facial challenge to *all* of Proposition 65, alleging that "the Proposition 65 warning requirement is unconstitutional on its face," because Cal. Health & Safety Code § 25249.10(c) assigns the defendant the burden of establishing that any exposure falls within the safe harbor limit for a given chemical the Act (¶83).

The complaint, on its face, constituted a collateral attack on a pending proceeding (the *CERT v. Starbucks* case), because it did not allege that it only seeks to enjoin *future* enforcement of Proposition 65, but rather alleged that it sought to enjoin *all* enforcement of Proposition 65. When counsel for CERT became aware of the new lawsuit and obtained a copy of the complaint, it became immediately apparent that Cal Chamber was attempting to obtain an injunction that would directly interfere with the ongoing state coffee litigation, in violation of the federal Anti-Injunction Act.  It was also apparent that the complaint was subject to dismissal under the *Rooker-Feldman* doctrine, as well as the *Younger* and *Colorado River* abstention doctrines.

On October 16, 2019, CERT filed a Motion to Dismiss under FRCP 12(b) (ECF No. 8), along with a concurrent Motion to Intervene as a party defendant (ECF no. 10).  Only two days later, Cal Chamber agreed to CERT's intervention, filing a Statement of Non-Opposition on October 18, 2019 (ECF No. 13). The parties later filed a stipulation for intervention (ECF No. 28), which the Court signed on November 15, 2019 (ECF No. 29).

On November 1, 2019, the Attorney General filed its own motion to dismiss.  (ECF No. 20)  However, the AG's motion did not argue the Anti-Injunction Act as a basis for dismissing the complaint.

On November 8, 2019, Cal Chamber filed a Motion for Preliminary Injunction (ECF No. 26). Cal Chamber argued that "the Court should enjoin the Proposition 65 warning requirement for cancer as applied to acrylamide in food products, including beverages." (*Id*. at 2:28 – 3:2) The moving papers discussed Proposition 65's statutory and regulatory framework at length, including the criteria for naming known carcinogens that require cancer warnings, the circumstances under

**7**

F:\WP\Cases\1887\PLEADMOT\FEES\2020-03-19 Motion for Attorney's Fees.wpd

TELEPHONE (562) 437-4499
TOLL-FREE (877) TOX-TORT
TELECOPIER (562) 436-1561
WWW.TOXICTORTS.COM

METZGER LAW GROUP
A PROFESSIONAL LAW CORPORATION
555 EAST OCEAN BOULEVARD, SUITE 800
LONG BEACH, CALIFORNIA 90802

PRACTICE CONCENTRATED IN TOXIC
TORT & ENVIRONMENTAL LITIGATION
OCCUPATIONAL & ENVIRONMENTAL LUNG
DISEASE, CANCER, AND TOXIC INJURIES

which acrylamide was added to the list, the manner in which Proposition 65 is enforced, and ways in which those alleged to have violated the Act may defend against the claim (*Id*. at 3:22 – 8:11). The motion went on to argue that Proposition 65 warnings are only required with respect to chemicals that are "known to the state to cause cancer," but that such a warning with respect to acrylamide would not be purely factual and non-controversial (*Id*. at 11:11 – 13:22). Based on such reasoning, Cal Chamber requested that this Court apply constitutional standards to the substantive state law of Proposition 65, and grant a preliminary injunction against issuing 60-day notices of violation to enforce the Proposition 65 warning requirement with respect to acrylamide in food and beverages, and against litigation following notice.

When CERT received Cal Chamber's Motion for Preliminary Injunction, it was immediately apparent that the motion, if granted, would strike at the heart of CERT's mission as a non-profit private enforcer of Proposition 65.  The injunction order that Cal Chamber sought would have barred CERT from acting as a private attorney general in any new enforcement matters, even though the language of Proposition 65 expressly permits CERT to do so,[2] and all of CERT's prior Proposition 65 claims have been asserted on behalf of the People of the State of California.  Thus any order issuing the requested preliminary injunction would have violated CERT's own First Amendment rights in two distinct ways, first by abridging CERT's freedom of speech by barring CERT from sending out any new Notices of Violation, and second by abridging CERT's right to petition by barring CERT from filing any new actions as a private enforcer.

On January 16, 2020, CERT filed its opposition to Cal Chamber's Motion for Preliminary Injunction, arguing that the requested injunction constituted an unlawful prior restraint on the free speech rights enshrined in the Constitution, and in the statutory framework of Proposition 65 (ECF No. 43). The following day, CERT's motion to dismiss was heard by the Court, and the Court took the matter under submission.

//

---

[2]   Cal. Health & Safety Code § 25249.7(d).

**8**

F:\WP\Cases\1887\PLEADMOT\FEES\2020-03-19 Motion for Attorney's Fees.wpd

TELEPHONE (562) 437-4499
TOLL-FREE (877) TOX-TORT
TELECOPIER (562) 436-1561
WWW.TOXICTORTS.COM

METZGER LAW GROUP
A PROFESSIONAL LAW CORPORATION
555 EAST OCEAN BOULEVARD, SUITE 800
LONG BEACH, CALIFORNIA 90802

PRACTICE CONCENTRATED IN TOXIC
TORT & ENVIRONMENTAL LITIGATION
OCCUPATIONAL & ENVIRONMENTAL LUNG
DISEASE, CANCER, AND TOXIC INJURIES

Following the hearing on the motions, counsel for CERT had an in-person meet and confer conference with Cal Chamber's attorney Trent Norris on January 21, 2020 to discuss possible resolution of CERT's involvement in the case, along with CERT's forthcoming claim for attorney's fees. Mr. Norris requested that CERT provide a written demand regarding its fees and the terms of any dismissal.

On January 23, 2020, counsel for CERT sent a meet and confer email to Mr. Norris seeking payment of fees and costs in the amount of $141,212.48. (Metzger Dec. Ex. "<u>A</u>")

On March 3, 2020, the Court issued an order granting both motions to dismiss, based in part upon the Anti-Injunction Act, which had only been raised by CERT. (ECF No. 56)  In its order dismissing the complaint, the Court reasoned that "plaintiff's request for an injunction is not merely prospective," and therefore, was barred by the Anti-Injunction Act, which "bars the court from granting plaintiff's requested remedies, warranting dismissal under Rule 12(b)(6). (*Id.* at 7) In light of the order granting dismissal of the complaint, the Court also denied Cal Chamber's motion for preliminary injunction, "as it is based on the dismissed claims."(*Id.* at 10)

When the Court granted CERT's motion to dismiss, it granted Cal Chamber leave to amend its complaint.  On March 16, 2020, Cal Chamber filed its First Amended Complaint. (ECF No. 57)  The amended complaint filed by CalChamber does not identify CERT anywhere, even though CERT had already become a party defendant before the First Amended Complaint was filed. Generally, amending a complaint to omit the mention of a party that has previously been involved in the case acts as a dismissal of that party. See *Zimmerman v. Emmons* (9th Cir. 1955) 225 F.2d 97, 98n2 (where plaintiff filed an amended complaint naming only one of the 12 previously-named defendants, "in effect, the action was dismissed as to all defendants except appellee."). See also *Attorneys' Liability Protection Soc. v. Klein* (D. Kan. 1996) 929 F.Supp. 1399, 1400 (filing of amended complaint that omits names of previously-named defendants renders those defendants "no longer parties to the case."). See also *Courser v. Allard* (W.D. Mich., May 31, 2018, No. 1:16-CV-1108) (not reported) 2018 WL 2447970, at *4 (ruling that plaintiff amending complaint //

**INTERVENOR -DEFENDANT COUNCIL FOR EDUCATION AND RESEARCH ON TOXICS'
NOTICE OF MOTION AND MOTION FOR ATTORNEY'S FEES; MEMORANDUM OF POINTS AND
AUTHORITIES; DECLARATION OF RAPHAEL METZGER**

pursuant to FRCP 15(a)(1), and omitting name of previous defendant, "was effective to drop [defendant] from the case.").

In an effort to resolve the status of CERT, on March 17, 2020, CERT's counsel sent correspondence to Mr. Norris, inquiring whether it was Cal Chamber's intent to dismiss CERT. (Metzger Dec. Ex. "<u>B</u>") On March 18, Mr. Norris sent a reply email in which he stated that "I'm not sure whether CERT still has an interest in this case," but also not confirming that Cal Chamber had intended to dismiss CERT. (Metzger Dec. Ex. "<u>C</u>") Therefore, in an abundance of caution, CERT is deeming itself to have been dismissed, in the face of an amended complaint that makes no mention of CERT, and makes its motion for an award of attorney's fees at this time, in order to ensure timeliness.

As of the date of this filing, CERT has incurred $157,560.00 in attorney's fees, as described in further detail in the accompanying Declaration of Raphael Metzger.

**3.**      <u>**AS AN INTERVENOR, CERT IS A PARTY TO THE ACTION, AND IS ENTITLED TO RECOVER COSTS AND FEES**</u>

There should be no dispute that CERT's status as an intervenor, as opposed to an original party, is no bar to a recovery of attorney's fees. Intervenors "enter the suit with the status of original parties and are fully bound by all future court orders." *United States v. State of Or.* (9th Cir. 1981) 657 F.2d 1009, 1014; see also *Schneider v. Dumbarton Developers, Inc.* (D.C. Cir. 1985) 767 F.2d 1007, 1017 ("When a party intervenes, it becomes a full participant in the lawsuit and is treated just as if it were an original party."); *Alvarado v. J.C. Penney Co.* (10th Cir. 1993) 997 F.2d 803, 805("We agree that when a party intervenes, it becomes a full participant in the lawsuit and is treated just as if it were an original party."). In this case, CERT did not even have to resort to an adversarial process in order to intervene. As noted above, both Plaintiff Cal Chamber and Defendant Xavier Becerra stipulated to CERT's intervention on November 11, 2019. (ECF No. 28) Four days later, the Court signed an order granting CERT's motion to intervene as a party defendant. (ECF No.

TELEPHONE (562) 437-4499
TOLL-FREE (877) TOX-TORT
TELECOPIER (562) 436-1561
WWW.TOXICTORTS.COM

METZGER LAW GROUP
A PROFESSIONAL LAW CORPORATION
555 EAST OCEAN BOULEVARD, SUITE 800
LONG BEACH, CALIFORNIA 90802

PRACTICE CONCENTRATED IN TOXIC
TORT & ENVIRONMENTAL LITIGATION
OCCUPATIONAL & ENVIRONMENTAL LUNG
DISEASE, CANCER, AND TOXIC INJURIES

**INTERVENOR -DEFENDANT COUNCIL FOR EDUCATION AND RESEARCH ON TOXICS'
NOTICE OF MOTION AND MOTION FOR ATTORNEY'S FEES; MEMORANDUM OF POINTS AND
AUTHORITIES; DECLARATION OF RAPHAEL METZGER**

F:\WP\Cases\1887\PLEADMOT\FEES\2020-03-19 Motion for Attorney's Fees.wpd

TELEPHONE (562) 437-4499
TOLL-FREE (877) TOX-TORT
TELECOPIER (562) 436-1561
WWW.TOXICTORTS.COM

METZGER LAW GROUP
A PROFESSIONAL LAW CORPORATION
555 EAST OCEAN BOULEVARD, SUITE 800
LONG BEACH, CALIFORNIA 90802

PRACTICE CONCENTRATED IN TOXIC
TORT & ENVIRONMENTAL LITIGATION
OCCUPATIONAL & ENVIRONMENTAL LUNG
DISEASE, CANCER, AND TOXIC INJURIES

29) At that point, CERT entered the case with the same rights and obligations as an original party.

More specifically, an intervenor has just as much capacity to end up a "prevailing party" as any plaintiff or defendant. "An intervenor is considered a prevailing party for the purposes of an award of costs so long as the intervenor's position actually prevails and the intervenor substantially contributed to the resolution of the issues presented by the matter." *MDT Corp. v. New York Stock Exchange, Inc.* (C.D. Cal. 1994) 858 F.Supp. 1028, 1035 (citing *Delta Air Lines v. Civil Aeronautics Board* (D.C.Cir.1974) 505 F.2d 386; *Smith v. Board of School Commissioners of Mobile County* (S.D.Ala.1988) 119 F.R.D. 440).

In this case, there is no question that CERT's position prevailed. First, CERT had to file a motion just to achieve party status, and when it did so, Cal Chamber and the State both conceded the point, signing off on a stipulation to grant CERT's motion. (ECF Nos. 13, 28) After entering the case, CERT engaged in two law and motion matters, the first being a motion to dismiss, and the second being an opposition brief to Cal Chamber's motion for a preliminary injunction. First, the Court granted the motion to dismiss, and then it denied Cal Chamber's motion for preliminary injunction as a direct consequence of the dismissal of the claims that CERT had successfully contested in its Rule 12(b)(6) motion. CERT's prevailing party status is particularly evident in this case, as Cal Chamber's complaint was an attempt to blockade litigation that CERT has been carrying on for ten years on behalf of the public <u>without</u> <u>payment</u>. To date, CERT has invested millions of dollars' worth of time into the coffee litigation, for which it has not yet been paid, in the expectation that CERT will recover its very significant fees in the matter after the litigation finally resolves.

There is also no question that CERT substantially contributed to the resolution of the issues presented by the matter. First, when the Court granted the motion to dismiss, it specifically cited the Anti-Injunction Act argument that had been raised by CERT, but <u>not</u> by co-defendant State of California. (ECF No. 54, p.7) Second, CERT was the <u>only</u> party that opposed the motion for preliminary injunction on the basis that such an injunction would constitute an unconstitutional prior restraint on CERT's speech and petition rights under the First Amendment, both of which are

**11**

TELEPHONE (562) 437-4499
TOLL-FREE (877) TOX-TORT
TELECOPIER (562) 436-1561
WWW.TOXICTORTS.COM

METZGER LAW GROUP
A PROFESSIONAL LAW CORPORATION
555 EAST OCEAN BOULEVARD, SUITE 800
LONG BEACH, CALIFORNIA 90802

PRACTICE CONCENTRATED IN TOXIC
TORT & ENVIRONMENTAL LITIGATION
OCCUPATIONAL & ENVIRONMENTAL LUNG
DISEASE, CANCER, AND TOXIC INJURIES

grounds that would have *required* denial of the injunction, even if Cal Chamber's complaint had not been dismissed. See *Alexander v. United States* (1993) 509 U.S. 544, 550 ("The term prior restraint is used to describe administrative and judicial orders *forbidding* certain communications when issued in advance of the time that such communications are to occur.").  See also *Exeitis USA Inc. v. First Databank, Inc.*, 2017 WL 6539909 at *4 (N.D. Cal. 2017) ("This presumption [against constitutional validity] exists even when the party seeking the restraint alleges that the speech is false or will have harmful ramifications." (citing  *New York Times Co. v. U.S.* (1971) 403 U.S. 713 at 714 (denying injunction prohibiting publication of Pentagon Papers even in light of asserted threat to national security interests.)).

### 4.   CCP § 1021.5 IS A PROPER BASIS FOR AN AWARD OF ATTORNEY'S FEES IN FAVOR OF CERT

California Code of Civil Procedure § 1021.5 states in relevant part as follows:

Upon motion, a court may award attorneys' fees to a successful party against one or more opposing parties in any action which has resulted in the enforcement of an important right affecting the public interest if: (a) a significant benefit, whether pecuniary or nonpecuniary, has been conferred on the general public or a large class of persons, (b) the necessity and financial burden of private enforcement, or of enforcement by one public entity against another public entity, are such as to make the award appropriate, and (c) such fees should not in the interest of justice be paid out of the recovery, if any.

California courts have held that intervenors are entitled to seek fee awards under section 1021.5, just like any other party.  "[W]hen a party qualifies and enters an action as an intervenor, it is vested 'with all of the same procedural rights and remedies of the original parties [citation], including the right to seek attorneys' fees under section 1021.5 in a public interest lawsuit on equal terms with the original parties." *City of Santa Monica v. Stewart* (2005) 126 Cal.App.4th 43, 87.

//

**INTERVENOR -DEFENDANT COUNCIL FOR EDUCATION AND RESEARCH ON TOXICS' NOTICE OF MOTION AND MOTION FOR ATTORNEY'S FEES; MEMORANDUM OF POINTS AND AUTHORITIES; DECLARATION OF RAPHAEL METZGER**

F:\WP\Cases\1887\PLEADMOT\FEES\2020-03-19 Motion for Attorney's Fees.wpd

TELEPHONE (562) 437-4499
TOLL-FREE (877) TOX-TORT
TELECOPIER (562) 436-1561
WWW.TOXICTORTS.COM

METZGER LAW GROUP
A PROFESSIONAL LAW CORPORATION
555 EAST OCEAN BOULEVARD, SUITE 800
LONG BEACH, CALIFORNIA 90802

PRACTICE CONCENTRATED IN TOXIC
TORT & ENVIRONMENTAL LITIGATION
OCCUPATIONAL & ENVIRONMENTAL LUNG
DISEASE, CANCER, AND TOXIC INJURIES

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

"Three basic criteria are required to support an award of attorneys' fees under section 1021.5: (1) the action resulted in the enforcement of an important right affecting the public interest; (2) a significant benefit was conferred on the general public or a large class of persons; and (3) the necessity and financial burden of private enforcement were such as to make the award appropriate." *Abouab v. City and County of San Francisco* (2006) 141 Cal.App.4th 643, 663. In this case, CERT has fulfilled all of the requirements for a fee award under section 1021.5.

First, CERT's filings in the case resulted in the enforcement of an important right affecting the public interest. As drafted, Cal Chamber's complaint sought to do three things: (1) enjoin existing Proposition 65 claims regarding acrylamide; (2) enjoin prospective enforcement of Proposition 65 regarding acrylamide; and (3) obtain a finding that the entirety of Proposition 65's warning requirement is unconstitutional on its face. After CERT intervened in the case and pointed out that Cal Chamber's action was a patent violation of the Anti-Injunction Act with respect to every pending Proposition 65 claim, Cal Chamber realized that it had overreached and began to backpedal, attempting to "clarify" that its complaint had not actually meant what the plain language said, and that it did not seek to enjoin pending matters. However, the Court agreed with CERT that the complaint said what it said, and that "[a]s currently pled, however, plaintiff's request for an injunction is not merely prospective." (ECF No. 56, 7:15-16). This, the Court held, served as a basis to dismiss the First Amendment claim and corresponding request for Injunctive relief. (*Id*. at 7:25-27) By obtaining a dismissal on this basis, CERT safeguarded the public right to see pending acrylamide claims carried out to their conclusion. This is no small thing, given that Cal Chamber's complaint admitted that there were 170 acrylamide-related notices of violation sent out in the first 10 months of 2019 alone. (ECF No. 1, ¶57) Lastly, the right to enforce Proposition 65 is, by its very nature, an important right affecting public interest, because all enforcement of Proposition 65 is carried out on behalf of all California consumers.

Second, CERT's intervention conferred a significant benefit on the general public or a large class of persons. Proposition 65 was drafted specifically to benefit the general public, with a preamble stating that "The people of California find that hazardous chemicals pose a serious

**13**

F:\WP\Cases\1887\PLEADMOT\FEES\2020-03-19 Motion for Attorney's Fees.wpd

TELEPHONE (562) 437-4499
TOLL-FREE (877) TOX-TORT
TELECOPIER (562) 436-1561
WWW.TOXICTORTS.COM

METZGER LAW GROUP
A PROFESSIONAL LAW CORPORATION
555 EAST OCEAN BOULEVARD, SUITE 800
LONG BEACH, CALIFORNIA 90802

PRACTICE CONCENTRATED IN TOXIC
TORT & ENVIRONMENTAL LITIGATION
OCCUPATIONAL & ENVIRONMENTAL LUNG
DISEASE, CANCER, AND TOXIC INJURIES

potential threat to their health and well-being . . . The people therefore declare their rights:. . . "(c) To secure strict enforcement of the laws controlling hazardous chemicals and deter actions that threaten public health and safety." *Consumer Advocacy Group, Inc. v. Exxon Mobil Corp.* (2002) 104 Cal.App.4th 438, 448. Therefore, any action that preserves the rights of enforcers to pursue either pending or prospective Proposition 65 enforcement is an action conferring a significant benefit on the general public. Furthermore, "[i]t is not necessary for a plaintiff to achieve a favorable final judgment to qualify for attorneys' fees so long as the plaintiff's actions were the catalyst for the defendant's actions, but there must be some relief to which the plaintiff's actions are causally connected." *Coalition for a Sustainable Future in Yucaipa v. City of Yucaipa* (2015) 238 Cal.App.4th 513, 521. In this case, at the very least, CERT's actions resulted in dismissal of the complaint with a ruling that any amendment to the complaint must specifically exclude pending enforcement actions from any request for relief. This was the catalyst for Cal Chamber's First Amended Complaint, which now purports to seek injunctive and declaratory relief only with respect to future enforcement actions. (ECF No. 57, ¶11)

Third, the necessity and financial burden of private enforcement are such as to make the award appropriate. "The necessity and financial burden requirement really examines two issues: whether private enforcement was necessary and whether the financial burden of private enforcement warrants subsidizing the successful party's attorneys." *In re Taco Bell Wage and Hour Actions* (E.D. Cal. 2016) 222 F.Supp.3d 813, 826 (quoting *In re Conservatorship of Whitley* (2010) 50 Cal.4th 1206, 1214. In this case, private enforcement was necessary because CERT, as a private enforcer, has rights that are entirely distinct from those of the Attorney General. These include the right to bring private enforcement actions, as specifically authorized by Cal. Health & Safety Code § 25249.7(d), and the right be free of prior restraint of speech, which does not apply to the State. CERT asserted both of these rights, first in its motion to dismiss, and second in its opposition to Cal Chamber's motion for preliminary injunction.

As for the financial burden, "an award on the 'private attorney general' theory is appropriate when the cost of the claimant's legal victory transcends his personal interest, that is,

**14**

**INTERVENOR -DEFENDANT COUNCIL FOR EDUCATION AND RESEARCH ON TOXICS'
NOTICE OF MOTION AND MOTION FOR ATTORNEY'S FEES; MEMORANDUM OF POINTS AND
AUTHORITIES; DECLARATION OF RAPHAEL METZGER**

TELEPHONE (562) 437-4499
TOLL-FREE (877) TOX-TORT
TELECOPIER (562) 436-1561
WWW.TOXICTORTS.COM

METZGER LAW GROUP
A PROFESSIONAL LAW CORPORATION
555 EAST OCEAN BOULEVARD, SUITE 800
LONG BEACH, CALIFORNIA 90802

PRACTICE CONCENTRATED IN TOXIC
TORT & ENVIRONMENTAL LITIGATION
OCCUPATIONAL & ENVIRONMENTAL LUNG
DISEASE, CANCER, AND TOXIC INJURIES

when the necessity for pursuing the lawsuit placed a burden on the plaintiff "out of proportion to his individual stake in the matter." *County of Inyo v. City of Los Angeles* (1978) 78 Cal.App.3d 82, 89 (citing *Serrano v. Priest* (1977) 20 Cal.3d 25, 47). In this case, CERT definitely had an organizational "personal stake" in the matter, given that Cal Chamber's lawsuit threatened to bar CERT from continuing to privately enforce Proposition 65 with respect to acrylamide. However, because the complaint specifically sought injunctive and declaratory relief as to *all* private enforcers, CERT's actions conferred a cognizable benefit upon all private enforcers. As the complaint itself noted, numerous private enforcers have combined to send out hundreds of notices of violation regarding acrylamide in food products, many of which have resulted in settlements for those enforcers. (ECF No. 1, ¶¶55-58)  Now, thanks to CERT's actions in the case, Cal Chamber has amended its complaint to specify that it does not seek declaratory or injunctive relief regarding any cases that are currently pending.  Therefore, even though Cal Chamber has been permitted to amend its complaint, CERT's victory on its motion to dismiss has ensured that the pending enforcement actions of all enforcers will be permitted to carry on. That is undoubtedly a benefit to those enforcers, which transcends CERT's personal stake in the action.  Perhaps more importantly, all Proposition 65 private enforcement actions are brought on behalf of the People of the State of California. Therefore, CERT's victory has conferred a benefit upon each of the 39 million residents of this state.

5.      **AN ATTORNEY'S FEE AWARD UNDER CALIFORNIA CODE OF CIVIL PROCEDURE § 1021.5 IS APPROPRIATE IN THIS CASE**

In opposing an award of attorney's fees, Cal Chamber may argue that section 1021.5, a California statute, does not provide a basis for a fee award in this federal action.  However, such an argument would be unavailing.  "When California plaintiffs prevail in federal court on California claims, they may obtain attorneys' fees under section 1021.5." See *Mangold v. Cal. Pub. Utils. Comm'n* (9th Cir.1995)67 F.3d 1470, 1478.  The "central question" in such a case is whether the claim should be viewed as a state-law claim or a federal claim, "for the answer to that question will

**15**

TELEPHONE (562) 437-4499
TOLL-FREE (877) TOX-TORT
TELECOPIER (562) 436-1561
WWW.TOXICTORTS.COM

METZGER LAW GROUP
A PROFESSIONAL LAW CORPORATION
555 EAST OCEAN BOULEVARD, SUITE 800
LONG BEACH, CALIFORNIA 90802

PRACTICE CONCENTRATED IN TOXIC
TORT & ENVIRONMENTAL LITIGATION
OCCUPATIONAL & ENVIRONMENTAL LUNG
DISEASE, CANCER, AND TOXIC INJURIES

determine whether they are entitled to seek attorneys' fees pursuant to California's § 1021.5 in federal court." *Independent Living Center of Southern California, Inc. v. Kent* (9th Cir. 2018) 909 F.3d 272, 278. For example, where a party seeks an injunction against enforcement of California state legislation on the ground that it violates a federal statute, that party is entitled to seek a fee award under the state law of section 1021.5. See *id.* at 282-83. In this case, it was Cal Chamber that sought an injunction of state legislation (Proposition 65) on the ground that it violates federal law (the Constitution). The claim was firmly rooted in the substantive law of Proposition 65, with both the original and the amended complaint discussing the regulatory and enforcement requirements at length, and arguing that the state-law enforcement mechanism places an improper burden on the defendant in all Proposition 65 actions. Therefore, this case must be regarded as sounding in state law for purposes of CERT's request for a fee award under section 1021.5.

Lastly, when CERT defeated Cal Chamber's claim with its motion to dismiss, the fact that CERT was acting as a defendant, rather than a plaintiff, is of no moment. "Section 1021.5 provides for a fee award to a 'successful party' and draws no distinctions between plaintiffs and defendants." *Willard v. Kelley* (2015) 238 Cal.App.4th 1049, 1054 (quoting *County of San Luis Obispo v. Abalone Alliance* (1986) 178 Cal.App.3d 848, 869. Therefore, "so long as state law does not run counter to a valid federal statute or rule of court, and usually it will not, state law denying the right to attorney's fees or giving a right thereto, which reflects a substantial policy of the state, should be followed." *MRO Communications, Inc. v. American Tel. & Tel. Co.* (9th Cir. 1999) 197 F.3d 1276, 1281.

**6.      IN THE ALTERNATIVE, 42 USC § 1988 IS ALSO A PROPER BASIS FOR AN AWARD OF ATTORNEY'S FEES**

Even if the Court does not agree that section 1021.5 is an appropriate mechanism for awarding CERT its fees, it may still do so under 42 USC § 1988, which permits an award of attorney's fees in a case such as this one. 42 USC 1988(b) states that "In any action or proceeding

**16**

F:\WP\Cases\1887\PLEADMOT\FEES\2020-03-19 Motion for Attorney's Fees.wpd

TELEPHONE (562) 437-4499
TOLL-FREE (877) TOX-TORT
TELECOPIER (562) 436-1561
WWW.TOXICTORTS.COM

METZGER LAW GROUP
A PROFESSIONAL LAW CORPORATION
555 EAST OCEAN BOULEVARD, SUITE 800
LONG BEACH, CALIFORNIA 90802

PRACTICE CONCENTRATED IN TOXIC
TORT & ENVIRONMENTAL LITIGATION
OCCUPATIONAL & ENVIRONMENTAL LUNG
DISEASE, CANCER, AND TOXIC INJURIES

to enforce a provision of sections . . . 1983, . . . the court, in its discretion, may allow the prevailing party, other than the United States, a reasonable attorney's fee as part of the costs...."

Section 1983, of course, states that "[e]very person who, under color of any statute, ordinance, regulation, custom, or usage, of any State or Territory or the District of Columbia, subjects, or causes to be subjected, any citizen of the United States or other person within the jurisdiction thereof to the deprivation of any rights, privileges, or immunities secured by the Constitution and laws, shall be liable to the party injured in an action at law."  In this case, Cal Chamber's initial complaint did exactly that: it was an action at law alleging that the State of California, and all private enforcers, were depriving the constitutional rights of Cal Chamber's members by enforcing Proposition 65 against them.  It is a longstanding rule that matters in which attorney's fees may be awarded under section 1988 include actions alleging first amendment violations. See, e.g., *Supreme Court of Virginia v. Consumers Union of U. S., Inc.* (1980) 446 U.S. 719, 736; *Universal Amusement Co., Inc. v. Vance* (5th Cir. 1978) 587 F.2d 159, 172n25. Furthermore, intervenors may be considered as prevailing parties entitled to an award of attorneys' fees under section 1988, just as they are under CCP § 1021.5.  See *ECOS, Inc. v. Brinegar* (M.D.N.C. 1987) 671 F.Supp. 381, 387.  Lastly, while Cal Chamber may argue that the initial complaint did not expressly reference section 1983, it is clear that Cal Chamber intended its initial complaint to assert its rights under section 1983, because Cal Chamber has amended its complaint to expressly do so. (ECF No. 56, ¶¶88-96).  Therefore, there is no reason why the Court should decline to make a fee aware under 42 USC § 1988.

### 7.   THE FEES REQUESTED BY CERT ARE REASONABLE

CERT seeks an award of $157,560.00 in attorneys' fees in this matter, which is reasonable based on the hours worked and applicable billing rates. To determine whether fees are reasonable, the court must consider (1) whether the attorneys charged a reasonable hourly rate and (2) whether the time attorneys logged on the case was reasonable—i.e., did the attorneys waste or

F:\WP\Cases\1887\PLEADMOT\FEES\2020-03-19 Motion for Attorney's Fees.wpd

otherwise unnecessarily spend time on the matter. See *Judicial Watch, Inc. v. DOJ* (D.D.C. 2011) 774 F. Supp. 2d 225, 232.

Attorneys' fees are calculated based on the "lodestar," which is the number of hours the lawyers reasonably spent on the case multiplied by the lawyers' hourly rates.  A lawyer's hourly rate is measured by its fair market value, "regardless of whether [the party] is represented by private or non-profit counsel." *Blum v. Stenson* (1984) 465 U.S. 886, 895.  To recover, the movant must provide "contemporaneous, complete, and standardized time records which accurately reflect the work done by each attorney." *Nat'l Ass'n of Concerned Veterans v. Sec'y of Def.* (D.C. Cir. 1982) 675 F.2d 1319, 1327.  The party opposing the fee award then has the burden to challenge, by affidavit or brief with sufficient specificity to give fee applicants notice, the reasonableness of the requested fee. See *Baker v. John Morrell & Co.* (N.D. Iowa 2003) 263 F.Supp.2d 1161, 1189 (citing *Bell v. United Princeton Props., Inc.* (3d Cir.1989) 884 F.2d 713).

CERT has provided complete, detailed billing records, which were contemporaneously recorded and accurately reflect the work done by each attorney.  The records reflect the date, time, and nature of each activity, and describe each task performed. Each entry is clearly labeled with the name of the attorney performing the work, the attorney's rate, the hours of work performed on the activity, and the total amount charged for the activity. Thus CERT has provided satisfactory billing records in this matter.

CERT is also entitled to recover fees for its work to obtain fees in this matter. It is well settled that hours reasonably devoted to a request for fees are compensable.  See, e.g., *Brown v. Sullivan* (9th Cir. 1990) 916 F.2d 492, 497 (quoting *General Fed'n of Women's Clubs v. Iron Gate Inn, Inc.* (D.C.App.1988) 537 A.2d 1123, 1129–1130) ("The law is well established that, when fees are available to the prevailing party, that party may also be awarded fees on fees, i.e., the reasonable expenses incurred in the recovery of its original costs and fees."); see also *Wal-Mart Stores, Inc. v. City of Turlock* (E.D. Cal. 2007) 483 F.Supp.2d 1023, 1041.  Accordingly, the Court should award all of the fees requested herein.

TELEPHONE (562) 437-4499
TOLL-FREE (877) TOX-TORT
TELECOPIER (562) 436-1561
WWW.TOXICTORTS.COM

METZGER LAW GROUP
A PROFESSIONAL LAW CORPORATION
555 EAST OCEAN BOULEVARD, SUITE 800
LONG BEACH, CALIFORNIA 90802

PRACTICE CONCENTRATED IN TOXIC
TORT & ENVIRONMENTAL LITIGATION
OCCUPATIONAL & ENVIRONMENTAL LUNG
DISEASE, CANCER, AND TOXIC INJURIES

**INTERVENOR -DEFENDANT COUNCIL FOR EDUCATION AND RESEARCH ON TOXICS'
NOTICE OF MOTION AND MOTION FOR ATTORNEY'S FEES; MEMORANDUM OF POINTS AND
AUTHORITIES; DECLARATION OF RAPHAEL METZGER**

8.    **CONCLUSION**

For each of the foregoing reasons, the present motion should be granted, and the Court should award CERT $157,560.00 in attorney's fees.


DATED:  March 30, 2020              METZGER LAW GROUP
                                   A Professional Law Corporation



                                   /s/ Raphael Metzger
                                   _____
                                   RAPHAEL METZGER, ESQ.
                                   Attorneys for Intervenor Defendant
                                   COUNCIL FOR EDUCATION AND
                                   RESEARCH ON TOXICS ("CERT")

TELEPHONE (562) 437-4499
TOLL-FREE (877) TOX-TORT
TELECOPIER (562) 436-1561
WWW.TOXICTORTS.COM

METZGER LAW GROUP
A PROFESSIONAL LAW CORPORATION
555 EAST OCEAN BOULEVARD, SUITE 800
LONG BEACH, CALIFORNIA 90802

PRACTICE CONCENTRATED IN TOXIC
TORT & ENVIRONMENTAL LITIGATION
OCCUPATIONAL & ENVIRONMENTAL LUNG
DISEASE, CANCER, AND TOXIC INJURIES

**19**

**INTERVENOR -DEFENDANT COUNCIL FOR EDUCATION AND RESEARCH ON TOXICS'
NOTICE OF MOTION AND MOTION FOR ATTORNEY'S FEES; MEMORANDUM OF POINTS AND
AUTHORITIES; DECLARATION OF RAPHAEL METZGER**

F:\WP\Cases\1887\PLEADMOT\FEES\2020-03-19 Motion for Attorney's Fees.wpd

TELEPHONE (562) 437-4499
TOLL-FREE (877) TOX-TORT
TELECOPIER (562) 436-1561
WWW.TOXICTORTS.COM

METZGER LAW GROUP
A PROFESSIONAL LAW CORPORATION
555 EAST OCEAN BOULEVARD, SUITE 800
LONG BEACH, CALIFORNIA 90802

PRACTICE CONCENTRATED IN TOXIC
TORT & ENVIRONMENTAL LITIGATION
OCCUPATIONAL & ENVIRONMENTAL LUNG
DISEASE, CANCER, AND TOXIC INJURIES

# DECLARATION OF RAPHAEL METZGER

I, Raphael Metzger, declare as follows:

1.      I am an attorney at law, duly licensed and authorized to practice law in the State of California.  I have been a member of the California Bar since 1984.  I am admitted to practice law in all federal district courts in the State of California, the United States Court of Appeals for the Ninth Circuit, and the United States Supreme Court.

2.      Unless the context indicates otherwise, I have personal knowledge of the matters set forth hereinafter and, if called as a witness, I would competently testify thereto.

## MY EXPERIENCE AS AN ENVIRONMENTAL LITIGATOR

3.      Throughout my legal career, I have specialized in complex litigation.

4.      In my first three years of practice, I was a securities litigator, first defending securities fraud and racketeering cases, and then prosecuting such cases on behalf of investors, including a successful class action on behalf of several thousand defrauded investors.

5.      In 1987, I first became involved in environmental litigation, when I assumed the representation of a corporation that owned a heavily contaminated state Superfund site.

6.      I have by now concentrated my practice in the field of environmental litigation for about 30 years.

7.      My experience in environmental litigation includes real property contamination, toxic tort personal injury cases, and Proposition 65 cases.

8.      My experience in real property contamination cases began in 1987, when I began litigating a CERCLA case against several oil and disposal companies.  As part of this litigation, I litigated an appeal that established the pleading requirements for such cases.

9.      In the ensuing years I defended suits brought by environmental enforcement

**20**

agencies seeking millions of dollars in civil penalties, litigated environmental cases alleging common law claims for pollution to real property and groundwater, litigated cases involving leaking underground storage tanks, and litigated environmental insurance coverage cases.

10.     I began litigating toxic tort personal injury cases in 1990.  Most of my work in this field has involved occupational cancer and lung disease.  I have litigated several hundred toxic tort cases, a number of these against as many as 50 chemical companies and oil companies, for causing such cancers as leukemia, lymphoma, multiple myeloma, kidney cancer, as well as other malignancies and diseases.  I have also litigated cases against chemical manufacturers and others for causing interstitial lung disease, reactive airways disease, other pulmonary diseases, glomerulonephritis and other kidney diseases.

11.     On behalf of clients suffering toxic injuries who required organ transplants, I have also successfully litigated against health care providers who declined coverage for lung and bone marrow transplants.

12.     Most of my work in toxic injury cases has involved hematologic cancers and lung disease.  The hematologic cancer cases have primarily been cases for diseases caused by petrochemicals, i.e., cases in which workers developed leukemia or other hematologic disease as a result of occupational exposure to benzene, toluene, xylene, hexane and related chemicals.  I have litigated well more than 100 such cases, obtaining recoveries for my clients suffering from hematologic malignancies in six and seven figures.

13.     In 2002, my firm filed the first Proposition 65 case regarding acrylamide in french fries sold by fast food restaurants – *Council for Education and Research on Toxics v. McDonald's Corporation and Burger King Corporation*.  After initially opposing the filing of said action, the California Attorney General intervened in that action and my firm co-litigated that case with the California Attorney General.  Said case settled favorably in about 2007.

14.     The Attorney General also filed a Proposition 65 case regarding acrylamide in potato chips, which case was consolidated with CERT's case against McDonald's and Burger King.  My firm also co-litigated that case with the Attorney General.

TELEPHONE (562) 437-4499
TOLL-FREE (877) TOX-TORT
TELECOPIER (562) 436-1561
WWW.TOXICTORTS.COM

METZGER LAW GROUP
A PROFESSIONAL LAW CORPORATION
555 EAST OCEAN BOULEVARD, SUITE 800
LONG BEACH, CALIFORNIA 90802

PRACTICE CONCENTRATED IN TOXIC
TORT & ENVIRONMENTAL LITIGATION
OCCUPATIONAL & ENVIRONMENTAL LUNG
DISEASE, CANCER, AND TOXIC INJURIES

F:\WP\Cases\1887\PLEADMOT\FEES\2020-03-19 Motion for Attorney's Fees.wpd

15.     I personally prepared and deposed many of the experts in the two cases regarding acrylamide in potato products.

16.     I have written many articles regarding toxic tort litigation, and have been the author of a column regarding toxic tort litigation in the Los Angeles Daily Journal and Mealey's Emerging Toxic Torts.  My articles and other information on my firm's website have been cited in the Deskbook on the Management of Complex Civil Litigation published by the Judicial Council of California.

17.     I am a member of environmental litigation groups sponsored by several legal organizations.   I have served as President of the Section on Toxic, Environmental and Pharmaceutical Torts ("STEP") of the American Association for Justice ("AAJ") formerly known as the Association of Trial Lawyers of America ("ATLA"), as well as Secretary, Treasurer, and Vice-President of this national legal organization.  For several years I have also chaired the Benzene Litigation Group of AAJ.  I have been a speaker at toxic tort conferences sponsored by Mealey's Publications and HarrisMartin Publishers, the American Bar Association, the American Association for Justice, Consumer Attorneys of California, California Applicant's Attorneys Association, California Industrial Hygiene Association, California Society of Industrial Medicine and Surgery, and bar associations.   For several years, I have chaired several national benzene litigation conferences sponsored by Mealey's and HarrisMartin.  I have also spoken at continuing education legal conferences regarding Proposition 65 issues.

18.     My associate, Scott Brust, has been practicing law since 2001.  His past work has included personal injury, construction defect litigation, contract disputes, and land use issues. He has litigated cases throughout Northern and Southern California. Mr. Brust has argued multiple cases before the California Court of Appeal, and has broad experience briefing appeals and writ petitions.

**22**

INTERVENOR -DEFENDANT COUNCIL FOR EDUCATION AND RESEARCH ON TOXICS'
NOTICE OF MOTION AND MOTION FOR ATTORNEY'S FEES; MEMORANDUM OF POINTS AND
AUTHORITIES; DECLARATION OF RAPHAEL METZGER

TELEPHONE (562) 437-4499
TOLL-FREE (877) TOX-TORT
TELECOPIER (562) 436-1561
WWW.TOXICTORTS.COM

METZGER LAW GROUP
A PROFESSIONAL LAW CORPORATION
555 EAST OCEAN BOULEVARD, SUITE 800
LONG BEACH, CALIFORNIA 90802

PRACTICE CONCENTRATED IN TOXIC
TORT & ENVIRONMENTAL LITIGATION
OCCUPATIONAL & ENVIRONMENTAL LUNG
DISEASE, CANCER, AND TOXIC INJURIES

TELEPHONE (562) 437-4499
TOLL-FREE (877) TOX-TORT
TELECOPIER (562) 436-1561
WWW.TOXICTORTS.COM

METZGER LAW GROUP
A PROFESSIONAL LAW CORPORATION
555 EAST OCEAN BOULEVARD, SUITE 800
LONG BEACH, CALIFORNIA 90802

PRACTICE CONCENTRATED IN TOXIC
TORT & ENVIRONMENTAL LITIGATION
OCCUPATIONAL & ENVIRONMENTAL LUNG
DISEASE, CANCER, AND TOXIC INJURIES

## MY FIRM

19.     I am the principal of the Metzger Law Group, a toxic tort litigation firm in Long Beach, which I founded 30 years ago.

20.     My firm currently employs six attorneys and a support staff of more than 15 employees, including discovery paralegals, legal assistants, medical paralegals, research assistants and other technical personnel capable of handling complex litigation support, researching medical and toxicology issues, and maintaining the firm's library of a few thousand books and almost 60,000 medical, toxicology, epidemiology, and scientific studies, all of which are accessed through a database which I designed and created.

21.     My firm also engages in a substantial environmental appellate practice. Among my firm's successful appeals are *Ascon Properties, Inc. v. Mobil Oil Corp.* (9th Cir. 1989) 866 F.2d 1149 (establishing CERCLA pleading requirements in the Ninth Circuit); *Bockrath v. Aldrich Chemical Co., Inc.* (1999) 21 Cal.4th 71, 86 Cal.Rptr.2d 846 (establishing pleading requirements for toxic tort actions in California courts); *Arnold v. Dow Chemical Co.* (2001) 91 Cal.App.4th 698, 110 Cal.Rptr.2d 722 (holding that the Federal Insecticide and Rodenticide Act does not preempt claims that pesticidal products are defectively designed); *Hernandez v. Superior Court* (2003) 112 Cal.App.4th 285, 4 Cal.Rptr.3d 883 (holding trial courts may not require toxic tort plaintiffs to prove a prima facie case of causation, as such violates attorney work product privilege); *Tellez-Cordova v. Campbell-Hausfeld/Scott Fetzger Co.* (2004) 129 Cal.App.4th 577, 28 Cal.Rptr.3d 744 (upholding products liability for defective warnings on machines that create toxic chemical exposures); *Tanoh v. Dow Chemical Co.* (9th Cir. 2009) 561 F.3d 945 (ruling that toxic tort attorneys may segregate similar claims of several hundred plaintiffs into separate cases of less than 100 plaintiffs each and thereby avoid removal to federal court under the Class Action Fairness Act ("CAFA")); *Jones v. ConocoPhillips* (2011) 198 Cal.App.4th 1187 (clarifying pleading requirements for toxic tort actions in California); *Ramos v. Brenntag Specialties, Inc.* (2016) 63 Cal.4th 500 (Supreme Court holds that component parts doctrine does not preclude claim by worker who handled

**23**

TELEPHONE (562) 437-4499
TOLL-FREE (877) TOX-TORT
TELECOPIER (562) 436-1561
WWW.TOXICTORTS.COM

METZGER LAW GROUP
A PROFESSIONAL LAW CORPORATION
555 EAST OCEAN BOULEVARD, SUITE 800
LONG BEACH, CALIFORNIA 90802

PRACTICE CONCENTRATED IN TOXIC
TORT & ENVIRONMENTAL LITIGATION
OCCUPATIONAL & ENVIRONMENTAL LUNG
DISEASE, CANCER, AND TOXIC INJURIES

raw materials during manufacturing process).

## THE COUNCIL FOR EDUCATION AND RESEARCH ON TOXICS (CERT)

22.     My client in these cases is the Council for Education and Research on Toxics (CERT).

23.     CERT is a California public benefit corporation, whose charitable purposes are fostering education and research regarding toxic substances.

24.     CERT has been qualified by the Internal Revenue Service and the California Franchise Tax Board as a Section 501(c)(3) tax-exempt charitable organization.

25.     CERT does not engage in any appreciable fundraising activities.  CERT is able to direct almost all of the charitable donations it receives to its charitable purposes, because all of CERT's officers and directors donate their services to the organization, and I donate my services as CERT's general counsel.

26.     In the Spring of 2002, shortly after Swedish investigators reported finding very high levels of the carcinogen acrylamide in fried potato products, CERT's Board of Directors recognized that this finding presented an issue of major importance to food safety - perhaps the most important food safety issue of the century.  Accordingly, CERT's Board of Directors requested that my firm represent it in a Proposition 65 action against major fast food companies for the purpose of persuading or forcing the largest purveyors of french fries (McDonald's Corporation and Burger King Corporation) to provide Californians the cancer hazard warning required by California's Safe Drinking Water and Toxic Enforcement Act (Proposition 65) or to reduce the levels of acrylamide in their french fries to an allowable level.  I represented CERT in the case of *Council for Education and Research on Toxics v. McDonald's Corp., et al.,* Case No. BC280980.  A few years later, the Attorney General joined the suit and also sued manufacturers of potato chips (Frito-Lay and Procter & Gamble).  The cases were assigned to Judge Mortimer and settled in approximately 2007, when

**24**

F:\WP\Cases\1887\PLEADMOT\FEES\2020-03-19 Motion for Attorney's Fees.wpd

TELEPHONE (562) 437-4499
TOLL-FREE (877) TOX-TORT
TELECOPIER (562) 436-1561
WWW.TOXICTORTS.COM

METZGER LAW GROUP
A PROFESSIONAL LAW CORPORATION
555 EAST OCEAN BOULEVARD, SUITE 800
LONG BEACH, CALIFORNIA 90802

PRACTICE CONCENTRATED IN TOXIC
TORT & ENVIRONMENTAL LITIGATION
OCCUPATIONAL & ENVIRONMENTAL LUNG
DISEASE, CANCER, AND TOXIC INJURIES

the fast food companies agreed to give cancer hazard warnings and the potato chip manufacturers reformulated their products using a new enzyme to prevent acrylamide formation. This lawsuit proved to be a difficult, time-consuming, and lengthy and costly undertaking.

27.     Soon after it was discovered that potato products cooked at high temperatures contain acrylamide, acrylamide was discovered in brewed coffee. Upon successfully litigating the prior acrylamide case against McDonalds and Burger King, CERT's Board of Directors asked that my firm arrange for testing of samples of Defendants' ready-to-drink coffee. When testing revealed that the acrylamide content of Defendants' ready-to-drink coffee products greatly exceeded the No Significant Risk Level ("NSRL"), such that a cancer hazard warning was required (and no such warnings were being given), CERT's Board of Directors requested that my firm represent it in a Proposition 65 action against the sellers of ready-to-drink coffee in California for the purpose of persuading or forcing the largest purveyors of ready-to-drink coffee to provide Californians the cancer hazard warning required by Proposition 65 or to reduce the levels of acrylamide in their ready-to-drink coffee to an allowable level.

## THE **ACRYLAMIDE-IN-COFFEE** LAWSUIT

28.     Acrylamide is a potent carcinogen and neurotoxin, and has been listed as a chemical known to the State of California to cause cancer since January 1, 1990.

29.     In 2002 Swedish researchers discovered that acrylamide is present at high levels in many cooked foods, prompting the European Food Safety Authority (EFSA) to declare acrylamide in food a "major public health concern." Since approximately 40% of Americans develop cancer and scientists attribute a like percentage of human cancers to carcinogens in the human diet, CERT decided to devote its efforts and resources to remedying the major public health problem of acrylamide in the human diet.

30.     In late 2002 CERT filed the first case to enforce Proposition 65 regarding acrylamide in french fries sold in fast food restaurants. CERT's counsel co-litigated that case and

**INTERVENOR -DEFENDANT COUNCIL FOR EDUCATION AND RESEARCH ON TOXICS'
NOTICE OF MOTION AND MOTION FOR ATTORNEY'S FEES; MEMORANDUM OF POINTS AND
AUTHORITIES; DECLARATION OF RAPHAEL METZGER**

F:\WP\Cases\1887\PLEADMOT\FEES\2020-03-19 Motion for Attorney's Fees.wpd

TELEPHONE (562) 437-4499
TOLL-FREE (877) TOX-TORT
TELECOPIER (562) 436-1561
WWW.TOXICTORTS.COM

METZGER LAW GROUP
A PROFESSIONAL LAW CORPORATION
555 EAST OCEAN BOULEVARD, SUITE 800
LONG BEACH, CALIFORNIA 90802

PRACTICE CONCENTRATED IN TOXIC
TORT & ENVIRONMENTAL LITIGATION
OCCUPATIONAL & ENVIRONMENTAL LUNG
DISEASE, CANCER, AND TOXIC INJURIES

another case regarding acrylamide in potato chips with the California Attorney General.  Those cases were both successful and resulted in the entry of consent judgments in Los Angeles Superior Court, conferring substantial benefits to California consumers.  In the former case, french fry manufacturers agreed to provide cancer hazard warnings informing consumers of the acrylamide cancer hazard and in the latter case, potato chip manufacturers reduced acrylamide levels in potato chips in lieu of providing cancer hazard warnings – the best result for public health, since removing carcinogens from food reduces the cancer burden, whereas cancer hazard warnings merely inform consumers that certain foods present significant cancer hazards, so they can make informed choices about purchasing foods and thereby reduce their individual risks of cancer.

31.     In March 2005, the California Office of Environmental Health Hazard Assessment (OEHHA) published a report titled "Characterization of Acrylamide Intake from Certain Foods," in which OEHHA determined that all coffee drinkers have a significantly increased risk of cancer from acrylamide in coffee, i.e., the No Significant Risk Level (NSRL) for exposure to acrylamide from consumption of coffee was exceeded for coffee drinkers, even average and light consumers.  This report, by the agency responsible for implementing the Safe Drinking Water and Toxic Enforcement Act of 1986, commonly known as Proposition 65, clearly informed coffee roasters and retailers that they were exposing Californians to acrylamide in excess of the NSRL. Nevertheless, the entire industry failed and refused to provide legally required cancer warnings. Accordingly, CERT determined it would be necessary to sue the coffee industry to force it to comply with Proposition 65 to protect the health of California coffee consumers (about 2/3 the population).

32.     In 2010 CERT initiated litigation against the coffee industry regarding acrylamide in coffee (*CERT v. Starbucks, et al.,* Los Angeles Superior Court Case No. BC 435759), with the goal of persuading coffee roasters to reduce acrylamide levels in coffee. The litigation involves two consolidated cases against approximately 85 coffee roasters and retailers, most of which are members of the National Coffee Association, the California Grocers Association, and the California Chamber of Commerce. CERT asserted a single cause of action for violation of Proposition 65.  The complaint sought no damages, but rather sought an injunction enjoining

F:\WP\Cases\1887\PLEADMOT\FEES\2020-03-19 Motion for Attorney's Fees.wpd

TELEPHONE (562) 437-4499
TOLL-FREE (877) TOX-TORT
TELECOPIER (562) 436-1561
WWW.TOXICTORTS.COM

METZGER LAW GROUP
A PROFESSIONAL LAW CORPORATION
555 EAST OCEAN BOULEVARD, SUITE 800
LONG BEACH, CALIFORNIA 90802

PRACTICE CONCENTRATED IN TOXIC
TORT & ENVIRONMENTAL LITIGATION
OCCUPATIONAL & ENVIRONMENTAL LUNG
DISEASE, CANCER, AND TOXIC INJURIES

Defendants from continuing to violate Proposition 65, as well as civil penalties for violating California law (3/4 of civil penalties are paid to OEHHA). The consolidated cases were assigned to the Honorable Elihu M. Berle in the Complex Litigation Department of the Los Angeles Superior Court.

33.     Among the Defendants' affirmative defenses were two statutory defenses and two constitutional defenses - "False Compelled Speech" in violation of the First Amendment, and federal preemption. In the Fall of 2014, Judge Berle tried the constitutional defenses and the "No Significant Risk Level" defense, and on September 9, 2015, issued his Phase 1 Statement of Decision, adjudging those defenses in favor of CERT and against all Defendants.

34.     The Defendants sought review of the adverse decision against them on their First Amendment defense by way of petition for writ of mandate in the California Court of Appeal, which carefully considered their writ petition, but ultimately denied the petition for lack of merit.

35.     In February, 2016, Plaintiff filed a Motion for Summary Adjudication for an order finding that Plaintiff has established its prima facie case. The Court granted Plaintiff's motion in April, 2016.

36.     In the Fall of 2017 Judge Berle tried Defendants' last affirmative defense, their "Alternative Risk Level" defense and, on May 9, 2018, issued a Phase 2 Statement of Decision, adjudging Defendants' last affirmative defense in favor of CERT and against all Defendants. In the summer of 2018, the Defendants filed a motion to renew and reopen the trial of their First Amendment Defense based on the Supreme Court's decision in *Nat'l Inst. of Family & Life Advocates v. Becerra*, 138 S.Ct. 2361 (2018) (NIFLA). However, Judge Berle denied the motion.

37.     The Defendants then filed a second petition for writ of mandate, seeking review of Judge Berle's decision denying their motion to renew/reopen the trial of their First Amendment Defense. In response to that petition, the Court of Appeal issued a temporary stay of proceedings on the eve of the remedies trial, but after CERT filed a brief informing the court of the new *en banc* decision of the Ninth Circuit in *American Beverage Association v. City and County of San Francisco*, 916 F.3d 749 (9th Cir. 2019), the Court of Appeal vacated its temporary stay,

allowing Judge Berle to resume proceedings and to finish trial of the case.

38.    In June 2018, OEHHA proposed a regulation to nullify Judge Berle's decision. On June 3, 2019, OEHHA adopted 27 CCR 25704, which purports to declare that carcinogens in coffee do not present a significant risk of cancer - disregarding the agency's own findings in its 2005 report. CERT has identified 14 grounds why OEHHA's new regulation is invalid and unenforceable, and asserted its validity claims in an action against OEHHA  (*CERT v. OEHHA et al.,* LASC Case No. BC 721153).  However, the judge in the new case abstained from adjudicating those claims, instead deferring to Judge Berle to address the validity of the new regulation in the ongoing coffee litigation.

39.    In the summer of 2019, Defendants filed motions for leave to amend their answers to assert the regulation as a new affirmative defense, which were granted.  CERT has filed seven motions for Summary Adjudication and one Motion for Judgment regarding the invalidity of the regulation, and intends to file several additional motions that require advance discovery.While the pending motions were scheduled to be heard this month, the hearings have been continued to May 11, at the earliest, in light of the Coronavirus emergency.

40.    When I became aware of the new lawsuit and obtained a copy of the complaint, it became immediately apparent that Cal Chamber was attempting to obtain an injunction that would directly interfere with the ongoing state coffee litigation, in violation of the federal Anti-Injunction Act.  It was also apparent that the complaint was subject to dismissal under the *Rooker-Feldman* doctrine, as well as the *Younger* and *Colorado River* abstention doctrines.

41.    On October 16, 2019, CERT filed a Motion to Dismiss under FRCP 12(b) (ECF No. 8), along with a concurrent Motion to Intervene as a party defendant (ECF no. 10).  Two days later, Cal Chamber agreed to CERT's intervention, filing a Statement of Non-Opposition on October 18, 2019 (ECF No. 13). The parties later filed a stipulation for intervention (ECF No. 28), which the Court signed on November 15, 2019 (ECF No. 29)

42.    On November 1, 2019, the Attorney General filed its own motion to dismiss. (ECF No. 20)  However, the AG's motion did not argue the Anti-Injunction Act as a basis for

TELEPHONE (562) 437-4499
TOLL-FREE (877) TOX-TORT
TELECOPIER (562) 436-1561
WWW.TOXICTORTS.COM

METZGER LAW GROUP
A PROFESSIONAL LAW CORPORATION
555 EAST OCEAN BOULEVARD, SUITE 800
LONG BEACH, CALIFORNIA 90802

PRACTICE CONCENTRATED IN TOXIC
TORT & ENVIRONMENTAL LITIGATION
OCCUPATIONAL & ENVIRONMENTAL LUNG
DISEASE, CANCER, AND TOXIC INJURIES

F:\WP\Cases\1887\PLEADMOT\FEES\2020-03-19 Motion for Attorney's Fees.wpd

dismissing the complaint.

43.     On November 8, 2019, Cal Chamber filed a Motion for Preliminary Injunction (ECF No. 26). Cal Chamber argued that "the Court should enjoin the Proposition 65 warning requirement for cancer as applied to acrylamide in food products, including beverages." (*Id*. at 2:28 – 3:2)

44.     When I received Cal Chamber's Motion for Preliminary Injunction, it was immediately apparent that the motion, if granted, would strike at the heart of CERT's mission as a non-profit private enforcer of Proposition 65. The injunction order that Cal Chamber sought would have barred CERT from acting as a private attorney general in any new enforcement matters, even though the language of Proposition 65 expressly permits CERT to do so, and all of CERT's prior Proposition 65 claims have been asserted on behalf of the People of the State of California. Thus any order issuing the requested preliminary injunction would have violated CERT's own First Amendment rights in two distinct ways, first by abridging CERT's freedom of speech by barring CERT from sending out any new Notices of Violation, and second by abridging CERT's right to petition by barring CERT from filing any new actions as a private enforcer.

45.     On January 16, 2020, CERT filed its opposition to Cal Chamber's Motion for Preliminary Injunction, arguing that the requested injunction constituted an unlawful prior restraint on the free speech rights enshrined in the Constitution, and in the statutory framework of Proposition 65 (ECF No. 43). The following day, CERT's motion to dismiss was heard by the Court, and the Court took the matter under submission.

46.     Following the hearing on the motions, I had an in-person meet and confer conference with Cal Chamber's attorney Trent Norris on January 21, 2020 to discuss possible resolution of CERT's involvement in the case, along with CERT's forthcoming claim for attorney's fees. Mr. Norris requested that I send him a written demand regarding my fees and the terms of any dismissal.

47.     On January 23, 2020, I sent a meet and confer email to Mr. Norris seeking payment of fees and costs in the amount of $141,212.48. Attached hereto as Exhibit "<u>A</u>" is a true

TELEPHONE (562) 437-4499
TOLL-FREE (877) TOX-TORT
TELECOPIER (562) 436-1561
WWW.TOXICTORTS.COM

METZGER LAW GROUP
A PROFESSIONAL LAW CORPORATION
555 EAST OCEAN BOULEVARD, SUITE 800
LONG BEACH, CALIFORNIA 90802

PRACTICE CONCENTRATED IN TOXIC
TORT & ENVIRONMENTAL LITIGATION
OCCUPATIONAL & ENVIRONMENTAL LUNG
DISEASE, CANCER, AND TOXIC INJURIES

**INTERVENOR -DEFENDANT COUNCIL FOR EDUCATION AND RESEARCH ON TOXICS'
NOTICE OF MOTION AND MOTION FOR ATTORNEY'S FEES; MEMORANDUM OF POINTS AND
AUTHORITIES; DECLARATION OF RAPHAEL METZGER**

F:\WP\Cases\1887\PLEADMOT\FEES\2020-03-19 Motion for Attorney's Fees.wpd

and correct copy of my January 23 correspondence to Mr. Norris.

48.     On March 3, 2020, the Court issued an order granting both motions to dismiss, based in part upon the Anti-Injunction Act, which had only been raised by CERT. (ECF No. 56)  In its order dismissing the complaint, the Court reasoned that "plaintiff's request for an injunction is not merely prospective," and therefore, was barred by the Anti-Injunction Act, which "bars the court from granting plaintiff's requested remedies, warranting dismissal under Rule 12(b)(6). (*Id*. at 7) In light of the order granting dismissal of the complaint, the Court also denied Cal Chamber's motion for preliminary injunction, "as it is based on the dismissed claims."(*Id*. at 10)

49.     When the Court granted CERT's motion to dismiss, it granted Cal Chamber leave to amend its complaint.  On March 16, 2020, Cal Chamber filed its First Amended Complaint. (ECF No. 57)  The amended complaint filed by CalChamber does not identify CERT as a party anywhere, even though CERT had already become a party defendant before the First Amended Complaint was filed.

50.     In an effort to resolve the status of CERT, on March 17, 2020, I sent further meet and confer correspondence to Mr. Norris, inquiring whether it was Cal Chamber's intent to dismiss CERT.  Attached hereto as Exhibit "B" is a true and correct copy of my March 17 correspondence to Mr. Norris.

51.     On March 18, Mr. Norris sent a reply email in which he stated that "I'm not sure whether CERT still has an interest in this case," but also not confirming that Cal Chamber had intended to dismiss CERT.  Attached hereto as Exhibit "C" is a true and correct copy of Mr. Norris's March 18 correspondence to me.

52.     Given that CERT's meet and confer efforts have not yet produced a resolution regarding payment of CERT's attorney's fees, CERT now files this motion, in order to ensure that it does not waive its right to seek a fee award.

//

//

//

TELEPHONE (562) 437-4499
TOLL-FREE (877) TOX-TORT
TELECOPIER (562) 436-1561
WWW.TOXICTORTS.COM

METZGER LAW GROUP
A PROFESSIONAL LAW CORPORATION
555 EAST OCEAN BOULEVARD, SUITE 800
LONG BEACH, CALIFORNIA 90802

PRACTICE CONCENTRATED IN TOXIC
TORT & ENVIRONMENTAL LITIGATION
OCCUPATIONAL & ENVIRONMENTAL LUNG
DISEASE, CANCER, AND TOXIC INJURIES

**30**

**INTERVENOR -DEFENDANT COUNCIL FOR EDUCATION AND RESEARCH ON TOXICS'
NOTICE OF MOTION AND MOTION FOR ATTORNEY'S FEES; MEMORANDUM OF POINTS AND
AUTHORITIES; DECLARATION OF RAPHAEL METZGER**

F:\WP\Cases\1887\PLEADMOT\FEES\2020-03-19 Motion for Attorney's Fees.wpd

# MY FIRM'S HOURLY FEES

53.     My hourly billing rate is $850 per hour, which I believe is reasonable given my 30 years of experience and expertise as a toxic tort litigator.  Indeed, as the lead trial attorney of my firm, as the firm's rainmaker who generates virtually all of the firm's business, and as the attorney responsible for generating most of the firm's income which supports the salaries of the firm's associates and staff, I believe that the reasonable value of my time is actually in excess of $1,000 per hour.  I am also informed that litigators of the same level of experience in the field of toxic tort litigation bill at a similar rate to mine.

54.     The fees of my associates are all billed at lower rates based upon their experience and expertise, ranging from $800 to $200 per hour.  The fees of the firm's legal staff (paralegals) and technical staff (medical and scientific researchers) have all been billed at rates of $150 per hour (for senior staff) and $100 per hour (for junior staff).

55.     To date my firm has expended a total of 204.6 hours on this matter, with my work comprising 139.2 hours, and the work of my associate Scott Brust comprising 68.4 hours.

56.     Attached hereto as Exhibit "D" is a true and correct copy of an invoice report that was run on my firms billing software, documenting all of the time entries devoted to this matter. The report has been redacted in a handful of places to protect confidential information. To date, the total amount of the attorney's fees comes to $157,560.00.

57.     I believe that in light of the documented amount of work that my firm has put into this case, which has resulted in success for CERT, as well as a significant benefit to other private enforcers and the public at large, the requested amount of $157,560.00 in fees would be fair,

//
//
//
//
//

**INTERVENOR -DEFENDANT COUNCIL FOR EDUCATION AND RESEARCH ON TOXICS'
NOTICE OF MOTION AND MOTION FOR ATTORNEY'S FEES; MEMORANDUM OF POINTS AND
AUTHORITIES; DECLARATION OF RAPHAEL METZGER**

TELEPHONE (562) 437-4499
TOLL-FREE (877) TOX-TORT
TELECOPIER (562) 436-1561
WWW.TOXICTORTS.COM

METZGER LAW GROUP
A PROFESSIONAL LAW CORPORATION
555 EAST OCEAN BOULEVARD, SUITE 800
LONG BEACH, CALIFORNIA 90802

PRACTICE CONCENTRATED IN TOXIC
TORT & ENVIRONMENTAL LITIGATION
OCCUPATIONAL & ENVIRONMENTAL LUNG
DISEASE, CANCER, AND TOXIC INJURIES

F:\WP\Cases\1887\PLEADMOT\FEES\2020-03-19 Motion for Attorney's Fees.wpd

TELEPHONE (562) 437-4499
TOLL-FREE (877) TOX-TORT
TELECOPIER (562) 436-1561
WWW.TOXICTORTS.COM

METZGER LAW GROUP
A PROFESSIONAL LAW CORPORATION
555 EAST OCEAN BOULEVARD, SUITE 800
LONG BEACH, CALIFORNIA 90802

PRACTICE CONCENTRATED IN TOXIC
TORT & ENVIRONMENTAL LITIGATION
OCCUPATIONAL & ENVIRONMENTAL LUNG
DISEASE, CANCER, AND TOXIC INJURIES

just, reasonable, and equitable under all the circumstances

I declare under penalty of perjury under the laws of the State of California that the foregoing is true and correct.

Executed March 30, 2020, at Long Beach, California.

/s/ Raphael Metzger

_____

Raphael Metzger

**32**

**INTERVENOR -DEFENDANT COUNCIL FOR EDUCATION AND RESEARCH ON TOXICS'
NOTICE OF MOTION AND MOTION FOR ATTORNEY'S FEES; MEMORANDUM OF POINTS AND
AUTHORITIES; DECLARATION OF RAPHAEL METZGER**

F:\WP\Cases\1887\PLEADMOT\FEES\2020-03-19 Motion for Attorney's Fees.wpd

**CERTIFICATE OF SERVICE**

I hereby certify that on March 30, 2020, I caused the foregoing document, described as **INTERVENOR -DEFENDANT COUNCIL FOR EDUCATION AND RESEARCH ON TOXICS' NOTICE OF MOTION AND MOTION FOR ATTORNEY'S FEES; MEMORANDUM OF POINTS AND AUTHORITIES; DECLARATION OF RAPHAEL METZGER**, to be electronically filed with the Court's CM/ECF filing system, which will send a *Notice of Electronic Filing* to all parties of record who are registered with CM/ECF:

Trenton H. Norris, Esq.
Sarah Esmaili, Esq.
S. Zachary Fayne, Esq.
David M. Barnes, Esq.
Arnold & Porter Kaye Scholer LLP
Three Embarcadero Center, 10th Flr.
San Francisco, CA 94111-4024
(Plaintiff)
Telephone: (415) 471-3100
email:  trent.norris@arnolderporter.com

Harrison Pollak, Deputy Attorney General
Joshua Purtle, Deputy Attorney General
Office of the Attorney General
1515 Clay St., 20th Flr.
Oakland, CA 94612
(Defendant)
Telephone: (510) 879-0187
email: harrison.pollak@doj.ca.gov
joshua.purtle@doj.ca.gov

I declare that I am employed in the offices of a member of this court, at whose direction service was made.

Executed on March 30, 2020, at Long Beach, California.


/s/ Nina S. Vidal
_____
Nina S. Vidal, Declarant

**INTERVENOR -DEFENDANT COUNCIL FOR EDUCATION AND RESEARCH ON TOXICS'
NOTICE OF MOTION AND MOTION FOR ATTORNEY'S FEES; MEMORANDUM OF POINTS AND
AUTHORITIES; DECLARATION OF RAPHAEL METZGER**

TELEPHONE (562) 437-4499
TOLL-FREE (877) TOX-TORT
TELECOPIER (562) 436-1561
WWW.TOXICTORTS.COM

METZGER LAW GROUP
A PROFESSIONAL LAW CORPORATION
555 EAST OCEAN BOULEVARD, SUITE 800
LONG BEACH, CALIFORNIA 90802

PRACTICE CONCENTRATED IN TOXIC
TORT & ENVIRONMENTAL LITIGATION
OCCUPATIONAL & ENVIRONMENTAL LUNG
DISEASE, CANCER, AND TOXIC INJURIES