1  XAVIER BECERRA, State Bar No. 118517
   Attorney General of California
2  HARRISON POLLAK, State Bar No. 200879
   Supervising Deputy Attorney General
3  JOSHUA R. PURTLE, State Bar No. 298215
   Deputy Attorney General
4    1515 Clay Street, 20th Floor
     P.O. Box 70550
5    Oakland, CA 94612-0550
     Telephone:  (510) 879-0098
6    Fax:  (510) 622-2270
     E-mail:  Joshua.Purtle@doj.ca.gov
7  *Attorneys for Xavier Becerra, in his Official*
   *Capacity as Attorney General of the State of*
8  *California*

9                    IN THE UNITED STATES DISTRICT COURT

10                  FOR THE EASTERN DISTRICT OF CALIFORNIA

11

12

13

14  **CALIFORNIA CHAMBER OF**
    **COMMERCE,**
15                                        2:19-CV-02019-KJM-EFB
                              Plaintiff,
16                                        **MEMORANDUM IN SUPPORT OF**
                                          **ATTORNEY GENERAL XAVIER**
17        v.                              **BECERRA'S MOTION TO DISMISS**
                                          **FIRST AMENDED COMPLAINT**
18  **XAVIER BECERRA, IN HIS OFFICIAL**
    **CAPACITY AS ATTORNEY GENERAL**       Date:        May 15, 2020
19  **OF THE STATE OF CALIFORNIA,**        Time:        10:00 am
                                          Courtroom:   3 (15th Floor)
20                             Defendant;  Judge:       Hon. Kimberly J. Mueller
                                          Trial Date:  None
21  and                                   Action Filed: October 7, 2019

22  **COUNCIL FOR EDUCATION AND**
    **RESEARCH ON TOXICS,**
23
                   Defendant-Intervenor.
24

25

26

27

28

**TABLE OF CONTENTS**

**Page**

INTRODUCTION ............................................................................................................... 1

BACKGROUND ................................................................................................................. 2

   I.       PROPOSITION 65 CITIZEN SUITS ........................................................... 2

   II.      THE CHAMBER'S FIRST AMENDED COMPLAINT ............................... 4

ARGUMENT ...................................................................................................................... 4

   I.       THE AMENDED COMPLAINT FAILS TO STATE A CLAIM UNDER
           SECTION 1983 ........................................................................................... 5

      A.      Private Enforcers Do Not Perform a Traditional, Exclusive
           Public Function .................................................................................. 6

      B.      Private Enforcers Do Not Act Jointly with the Attorney General ........... 8

      C.      The State Does Not Compel Private Enforcers to Bring
           Enforcement Actions .......................................................................... 12

      D.      The Amended Complaint Does Not Allege a Deprivation by
           the Attorney General ......................................................................... 13

   II.      THE CHAMBER'S DECLARATORY JUDGMENT ACT CLAIM
           SHOULD BE DISMISSED UNDER <u>BRILLHART</u> ................................... 14

   III.     THE AMENDED COMPLAINT SHOULD BE DISMISSED UNDER
           <u>COLORADO RIVER</u> ............................................................................... 14

CONCLUSION ................................................................................................................... 17

# TABLE OF AUTHORITIES

**Page**

CASES

Am. Mfrs. Mut. Ins. Co. v. Sullivan
    526 U.S. 40 (1999) ................................................................................... *passim*

Babbitt v. United Farm Workers Nat'l Union,
    442 U.S. 289 (1979) ................................................................................ 14

Blum v. Yaretsky
    457 U.S. 991 (1982) ................................................................................ 12

Brillhart v. Excess Ins. Co. of Am.
    316 U.S. 491 (1942) ........................................................................... 1, 4, 14

Brunette v. Humane Soc'y of Ventura Cty.
    294 F.3d 1205 (9th Cir. 2002) ................................................................ 11

Burton v. Wilmington Parking Auth.
    365 U.S. 715 (1961) ................................................................................ 11

Cal. Chamber of Commerce v. Brown
    196 Cal. App. 4th 233 (2011) ............................................................... 1-2

Caltex Plastics, Inc. v. Lockheed Martin Corp.
    824 F.3d 1156 (9th Cir. 2016) .................................................................. 5

Colo. River Water Conservation Dist. v. United States
    424 U.S. 800 (1976) ............................................................................ *passim*

Flagg Bros., Inc. v. Brooks
    436 U.S. 149 (1978) .................................................................................. 6

Florer v. Congregation Pidyon Shevuyim, N.A.
    639 F.3d 916 (9th Cir. 2011) ............................................................... 8, 13

Gov't Emps. Ins. Co. v. Dizol
    133 F.3d 1220 (9th Cir. 1998) (en banc) .................................................. 1

Jackson v. Metro. Edison Co.
    419 U.S. 345 (1974) ............................................................................ 8, 14

Kirtley v. Rainey
    326 F.3d 1088 (9th Cir. 2003) ......................................................... 5, 12, 13

Koninklijke Philips Elecs. N.V. v. KXD Tech., Inc.
    539 F.3d 1039 (9th Cir. 2008) ................................................................ 16

ii

1

## TABLE OF AUTHORITIES
### (continued)

2

**Page**

3

Lopez v. Candaele
  630 F.3d 775 (9th Cir. 2010) ..................................................................14

4

5

Lugar v. Edmondson Oil Co.
  457 U.S. 922 (1982) ..............................................................................5, 6

6

7

Manhattan Cmty. Access Corp. v. Halleck
  139 S. Ct. 1921 (2019) ................................................................5, 6, 8, 12

8

Montanore Minerals Co. v. Bakie
  867 F.3d 1160 (9th Cir. 2017) ....................................................14, 15, 16

9

10

Moses H. Cone Mem'l Hosp. v. Mercury Constr. Corp.
  460 U.S. 1 (1983) .......................................................................................15

11

12

Nabors Well Servs. Co. v. Bradshaw
  No. CV 05-8334 GAF (CTX), 2006 WL 8432088 (C.D. Cal. Feb. 15, 2006) ............6, 7, 8, 11

13

Naoko Ohno v. Yuko Yasuma
  723 F.3d 984 (9th Cir. 2013) ....................................................................12

14

15

Parents for Privacy v. Barr
  949 F.3d 1210 (9th Cir. 2020) ...................................................................5, 9

16

17

Real Estate Bar Ass'n For Mass., Inc. v. Nat'l Real Estate Info. Servs.
  608 F.3d 110 (1st Cir. 2010) .......................................................6, 7, 8, 12

18

Rendell-Baker v. Kohn
  457 U.S. 830 (1982) ......................................................................................7

19

Roberts v. AT&T Mobility LLC
  877 F.3d 833 (9th Cir. 2017) ................................................................6, 10

20

21

Rochez v. Mittleton
  839 F. Supp. 1075 (S.D.N.Y. 1993) ...........................................................7

22

23

Seneca Ins. Co. v. Strange Land, Inc.
  862 F.3d 835 (9th Cir. 2017) ....................................................................15

24

Sommer v. United States
  713 F. Supp. 2d 1191 (S.D. Cal. 2010) .....................................................13

25

26

Tsao v. Desert Palace, Inc.
  698 F.3d 1128 (9th Cir. 2012) ................................................................5, 8

27

28

# TABLE OF AUTHORITIES
### (continued)

**Page**

Vincent v. Trend W. Tech. Corp.
  828 F.2d 563 (9th Cir. 1987)....................................................................................11

**STATE STATUTES**

Cal. Code Civ. Proc.
  § 128.7..........................................................................................................10

Cal. Health & Safety Code
  § 25249.6.......................................................................................................2
  § 25249.7(b)....................................................................................................3
  § 25249.7(d).................................................................................................2, 12
  § 25249.7(d)(1)...........................................................................................2, 9, 13
  § 25249.7(d)(2)........................................................................................8, 10, 13
  § 25249.7(e)(1)(A).........................................................................................2, 9
  § 25249.7(e)(1)(B).........................................................................................3, 9
  § 25249.7(e)(2)............................................................................................3, 9
  § 25249.7(f)..................................................................................................10
  § 25249.7(f)(1)...............................................................................................3
  § 25249.7(f)(4)............................................................................................3, 13
  § 25249.7(f)(5)..........................................................................................3, 9, 10
  § 25249.7(g)...................................................................................................3
  § 25249.7(h)(2)............................................................................................3, 9
  § 25249.7(o)...................................................................................................3
  § 25249.12.....................................................................................................3
  § 25249.12(c).................................................................................................11

Cal. Labor Code
  § 2699.......................................................................................................7, 11
  § 2699(a).......................................................................................................7
  § 2699(i)......................................................................................................11

**FEDERAL STATUTES**

16 U.S.C.
  § 1540(g).......................................................................................................7
  § 1540(g)(2)(A)(ii)..........................................................................................10

33 U.S.C.
  § 1365..........................................................................................................7
  § 1365(b)(1)(B)..............................................................................................10

42 U.S.C.
  § 300j-8.......................................................................................................7
  § 300j-8(b)(1)(B)...........................................................................................10

1

## TABLE OF AUTHORITIES
### (continued)

2

**Page**

3       § 1983 ................................................................................................................ *passim*

4       **COURT RULES**

5       Fed. R. Civ. P. 12(b)(6) ........................................................................................2, 4, 5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

Xavier Becerra's Mem. in Support of Motion to Dismiss Amended Complaint (2:19-CV-02019-KJM-EFB)

**INTRODUCTION**

In this matter, the California Chamber of Commerce ("Chamber") seeks an injunction to prevent private persons and organizations from suing the Chamber's members under the California Safe Drinking Water and Toxic Enforcement Act ("Proposition 65") for failing to provide warnings for exposures to acrylamide from food and beverage products.  The Chamber initially brought this action under the Declaratory Judgment Act, but the Court exercised its discretion under Brillhart v. Excess Ins. Co. of Am., 316 U.S. 491 (1942), to dismiss the Chamber's Complaint to "discourag[e] forum shopping and avoid[] duplicative litigation."  ECF No. 56 at 6.  In doing so, the Court found that the Chamber sought to bring a "'reactive declaratory action'" in federal court in response to an unfavorable decision in state court and that the Chamber's federal action "would likely be duplicative of claims in the roughly 38 ongoing state court proceedings involving acrylamide and Proposition 65."  ECF No. 56 at 5 (quoting Gov't Emps. Ins. Co. v. Dizol, 133 F.3d 1220, 1225 (9th Cir. 1998) (en banc)).

The Chamber now seeks to revive its federal lawsuit by pleading a claim under 42 U.S.C. § 1983.  This second attempt to invoke federal jurisdiction fares no better than the first. Presumably the Chamber added the section 1983 claim in response to the Court's ruling that the original Complaint failed to plead a ground for injunctive relief independent of the Chamber's declaratory relief claim.  ECF No. 56 at 4.  The First Amended Complaint also fails to state a claim under section 1983, however, because the Chamber has not pled facts sufficient to show that private Proposition 65 enforcers are "state actors" for purposes of section 1983, such that their actions can be fairly attributed to the Attorney General.  Nor could the Chamber meet that burden:  the Attorney General does not control private enforcers or act in concert with them, and Proposition 65 does not provide the Attorney General the authority to stop private enforcement actions from going forward.  To the contrary, Proposition 65's citizen suit provision is designed to give private parties significant discretion to enforce the Act's requirements with minimal state involvement, consistent with the people's finding in adopting the statute that "state government agencies have failed to provide them with adequate protection" from hazardous chemicals.  Cal.

1   Chamber of Commerce v. Brown, 196 Cal. App. 4th 233, 258 (2011).  The Chamber's section

2   1983 claim (Count II) should therefore be dismissed.  Fed. R. Civ. P. 12(b)(6).

3          If the Court dismisses the Chamber's section 1983 claim, the Court should also dismiss

4   the Chamber's Declaratory Judgment Act claim (Count I), for the reasons the Court stated in its

5   first dismissal order.  ECF No. 56.  In the alternative, the Court should dismiss both Counts under

6   Colorado River Water Conservation District v. United States, 424 U.S. 800 (1976), to discourage

7   forum-shopping by the Chamber and avoid duplicative litigation that will unnecessarily tax the

8   Court's limited judicial resources.

9                                          **BACKGROUND**

10  For background on acrylamide and Proposition 65, the Attorney General directs the Court

11  to the Attorney General's memoranda in support of his first motion to dismiss (ECF Nos. 21, 39)

12  and response to the Chamber's motion for preliminary injunction (ECF No. 47).  The Attorney

13  General here provides additional background relating to the basis for this motion to dismiss.

14  **I.      PROPOSITION 65 CITIZEN SUITS**

15         Proposition 65 generally requires businesses to provide warnings before exposing

16  consumers to carcinogens and reproductive toxicants listed pursuant to the statute.  Cal. Health &

17  Safety Code § 25249.6.  The statute permits any "person" to bring an action "in the public

18  interest" to enforce this requirement.  Id. § 25249.7(d).

19         A private party seeking to bring an enforcement action must notify the Attorney General

20  before they file the action and when certain important events occur in the course of the action.

21  First, the private enforcer must provide 60 days' notice of the alleged Proposition 65 violation to

22  the alleged violator and to the Attorney General and certain local government prosecutors.  Id.

23  § 25249.7(d)(1).  The notice must include a certificate that "there is a reasonable and meritorious

24  case for the private action" (that is, a "certificate of merit") and "[f]actual information sufficient

25  to establish the basis of" that certificate.  Id.  If, after reviewing the notice and certificate of merit,

26  the Attorney General "believes there is no merit to the action, the Attorney General shall serve a

27  letter to the noticing party and the alleged violator stating" as much.  Id. § 25249.7(e)(1)(A).

28  However, "[i]f the Attorney General does not serve" such a letter, "this shall not be construed as

2

1    an endorsement by the Attorney General of the merit of the action." Cal. Health & Safety Code

2    § 25249.7(e)(1)(B). When the Attorney General does send a "no-merit" letter, the private

3    enforcer can still proceed with the case, although it may be subject to sanctions if, upon the

4    conclusion of an action, the trial court determines that there was "no actual or threatened

5    exposure to a listed chemical." Id. § 25249.7(h)(2).

6          Private enforcers must next notify the Attorney General when the action is filed, id.

7    § 25249.7(e)(2), and again when the action "is subject either to a settlement or to a judgment," id.

8    § 25249.7(f)(1). The statute also provides that settlement of a private enforcement action (other

9    than voluntary dismissal) may occur only with court approval after a noticed motion, id.

10    § 25249.7(f)(4); the private enforcer must serve the motion for settlement on the Attorney

11    General, "who may appear and participate in a [settlement] proceeding without intervening in the

12    case." Id. § 25249.7(f)(5). Private enforcers and other litigants in Proposition 65 matters must

13    also serve on the Attorney General briefs and other papers filed in state appellate proceedings.

14    § 25249.7(o).

15          The Attorney General is required to maintain a record of the information he has received

16    from private enforcers and make that information available to the public. Cal. Health & Safety

17    Code § 25249.7(g); see also Office of the Attorney General, Proposition 65 Enforcement

18    Reporting, https://oag.ca.gov/prop65/. The Attorney General is not otherwise required to take

19    any action in response to notices he receives pursuant to Proposition 65 requirements.

20          Proposition 65 allows courts to assess civil penalties of up to $2,500 per violation per day

21    against businesses that violate its requirements. Cal. Health & Safety Code § 25249.7(b).

22    Seventy-five percent of any penalty assessed under Proposition 65 must be deposited in the Safe

23    Drinking Water and Toxic Enforcement Fund, for use by the Office of Environmental Health

24    Hazard Assessment to pay for implementation and administration of Proposition 65. Id.

25    § 25249.12.

26

27

28

## II.    THE CHAMBER'S FIRST AMENDED COMPLAINT

As discussed, the Court dismissed the Chamber's first Complaint under Brillhart in an Order dated March 3, 2020, to "discourag[e] forum shopping and avoid[] duplicative litigation." ECF No. 56 at 5-6.  The Amended Complaint is in most respects identical to the original Complaint, but it attempts to plead an additional claim under 42 U.S.C. § 1983 (Count II).  See First Amended Complaint for Declaratory and Injunctive Relief ("Amended Complaint"), ¶¶ 88-96.  The Chamber attempts to show that the Attorney General is liable under section 1983 for private parties' Proposition 65 enforcement actions by alleging that:

> (1) "Private enforcement actions are authorized by state statute to be brought only 'in the public interest'";
>
> (2) "Private enforcers must provide notice to the Attorney General and other public prosecutors before initiating an enforcement action";
>
> (3) According to the Chamber, "[t]he Attorney General screens and evaluates private enforcers' notices of prospective enforcement actions and is obligated to object to any enforcement action he believes lacks merit";
>
> (4) "Private enforcers may initiate an enforcement action only if the Attorney General and all district attorneys and city attorneys of certain large cities have not begun prosecuting the alleged violations themselves";
>
> (5) According to the Chamber, "[t]he State, through the Attorney General, is authorized to review and challenge proposed settlements in private enforcement actions"; and
>
> (6) "Seventy-five percent of any penalties assessed in private enforcement actions go to the State treasury."

Amended Complaint, ¶ 95.  On the basis of these allegations, the Amended Complaint argues that private enforcers "stand in the shoes of the State when enforcing the Proposition 65 statute" and that private enforcement actions "are both directly and indirectly regulated, monitored, controlled, and guided by the California Attorney General's Office."  Amended Complaint, ¶ 96.

## ARGUMENT

The Amended Complaint fails to state a claim under 42 U.S.C. § 1983 because the Chamber has not pled facts sufficient to demonstrate that Proposition 65 enforcement actions brought by private parties are fairly attributable to the state.  Fed. R. Civ. P. 12(b)(6).  The Court

4

1   should therefore dismiss the Chamber's section 1983 claim (Count II).  The Court should further

2   dismiss the Chamber's Declaratory Judgment Act claim (Count I) for the reasons stated in the

3   Court's March 3, 2020 Order granting the Attorney General's motion to dismiss.  ECF No. 56.

4   Alternatively, the Court should dismiss both Counts under Colorado River.

5   **I.   THE AMENDED COMPLAINT FAILS TO STATE A CLAIM UNDER**

6   **SECTION 1983**

7       The Amended Complaint fails to state a claim under section 1983 because the facts it

8   alleges, even taken as true, do not establish that actions brought by private parties to enforce the

9   acrylamide warning requirement are "fairly attributable to the State."  Tsao v. Desert Palace, Inc.,

10  698 F.3d 1128, 1139 (9th Cir. 2012) (quotation omitted).  Under Federal Rule of Civil Procedure

11  12(b)(6), "a complaint must be dismissed when a plaintiff's allegations fail to set forth a set of

12  facts that, if true, would entitle the complainant to relief."  Parents for Privacy v. Barr, 949 F.3d

13  1210, 1221 (9th Cir. 2020).  To survive a motion to dismiss on this ground, the Amended

14  Complaint's "factual allegations must plausibly suggest an entitlement to relief."  Caltex Plastics,

15  Inc. v. Lockheed Martin Corp., 824 F.3d 1156, 1159 (9th Cir. 2016) (quotation omitted).

16      A section 1983 plaintiff must allege "a deprivation of a right secured by the Constitution

17  or laws of the United States" by a defendant who "acted under color of state law."  Kirtley v.

18  Rainey, 326 F.3d 1088, 1092 (9th Cir. 2003).  Section 1983 thus applies only to "state actor[s]"—

19  typically, state officials or agencies.  Lugar v. Edmondson Oil Co., 457 U.S. 922, 937 (1982).  A

20  private party may nevertheless "qualify as a state actor in a few limited circumstances":  "(i)

21  when the private entity performs a traditional, exclusive public function; (ii) when the

22  government compels the private entity to take a particular action; or (iii) when the government

23  acts jointly with the private entity."  Manhattan Cmty. Access Corp. v. Halleck, 139 S. Ct. 1921,

24  1928 (2019) (citations omitted).  The gist of this inquiry is whether the private party's actions are

25  "'fairly attributable to the State.'"  Tsao, 698 F.3d at 1139 (quoting Lugar, 457 U.S. at 937).  The

26  Chamber's Amended Complaint fails to plead facts sufficient to meet this test.

27

28

**A.  Private Enforcers Do Not Perform a Traditional, Exclusive Public Function**

First, private enforcers do not "perform[] a traditional, exclusive public function" when they bring Proposition 65 enforcement actions.  Manhattan Cmty. Access Corp., 139 S. Ct. at 1928.  The U.S. Supreme Court "has stressed that very few functions fall into [this] category." Id. at 1929 (quotation omitted) ("Under the Court's cases, those functions include, for example, running elections and operating a company town.").  To meet this test, the Chamber must "show more than the mere performance of a public function by a private entity"; it must show that "the private party performed a public function that has been traditionally the exclusive prerogative of the state."  Real Estate Bar Ass'n For Mass., Inc. v. Nat'l Real Estate Info. Servs., 608 F.3d 110, 121 (1st Cir. 2010) (quotations omitted; emphasis added).

The Chamber appears to invoke this test by alleging that "[p]rivate enforcement actions are authorized by state statute to be brought only 'in the public interest.'"  Amended Complaint, ¶ 95.a.  But "[a]n action undertaken by a private party does not become state action merely because the action is authorized by state statute."  Real Estate Bar Ass'n, 608 F.3d at 122 (citing Flagg Bros., Inc. v. Brooks, 436 U.S. 149, 164-66 (1978)); Roberts v. AT&T Mobility LLC, 877 F.3d 833, 845 (9th Cir. 2017) ("[P]ermission of a private choice cannot support a finding of state action, … and private parties [do not] face constitutional litigation whenever they seek to rely on some [statute] governing their interactions with the community surrounding them." (quoting Lugar, 457 U.S. at 937, and Am. Mfrs. Mut. Ins. Co. v. Sullivan, 526 U.S. 40, 53 (1999))).  Thus, litigation—even litigation concerning important public matters like public health—"is not a traditional government function" for section 1983 purposes.  Nabors Well Servs. Co. v. Bradshaw, No. CV 05-8334 GAF (CTX), 2006 WL 8432088, at *3 (C.D. Cal. Feb. 15, 2006); see also Am. Mfrs. Mut. Ins., 526 U.S. at 53 ("We have never held that the mere availability of a remedy for wrongful conduct, even when the private use of that remedy serves important public interests, so significantly encourages the private activity as to make the State responsible for it.").  A court has even held that criminal proceedings initiated by private litigants do not qualify as state action for section 1983 purposes, noting that "[t]he prosecutorial function is not … the

6

1  exclusive prerogative of the state."  See Rochez v. Mittleton, 839 F. Supp. 1075, 1081 (S.D.N.Y.

2  1993).

3       Nor does acting "in the public interest" convert private action into an exclusively public

4  function.  "That a private entity performs a function which serves the public does not make its

5  acts state action."  Rendell-Baker v. Kohn, 457 U.S. 830, 842 (1982).  To the contrary, statutes

6  for decades have permitted private actions to enforce public rights.  These include the citizen suit

7  provisions of the federal Clean Water Act, 33 U.S.C. § 1365, Endangered Species Act, 16 U.S.C.

8  § 1540(g), and Safe Drinking Water Act, 42 U.S.C. § 300j-8.  These federal statutes permit

9  private parties to seek civil penalties and injunctions against those who violate environmental

10  laws and regulations.  California law also permits citizen suits, including under the California

11  Labor Code Private Attorneys General Act of 2004.  See Cal. Labor Code § 2699.  This statute

12  permits a private party to seek civil penalties for violations of the Labor Code to the same extent

13  that the Labor and Workforce Development Agency is authorized to do so.  Id. § 2699(a).

14  Proposition 65's provision for private enforcement actions is merely another example of such a

15  citizen suit statute.

16       The Attorney General has not found a single case holding that a private party transforms

17  into a state actor when he brings a citizen suit to enforce public rights.  The few courts that have

18  considered this issue have declined to apply section 1983 to citizen suit litigants.  In Nabors Well

19  Servs. Co., 2006 WL 8432088, at *2-3, the Court held that a person who brought a citizen suit to

20  enforce California labor law requirements under the Labor Code Private Attorneys General Act

21  was not a "state actor" for section 1983 purposes, noting that such litigation "is not a traditional

22  government function."  Likewise, in Real Estate Bar Association For Massachusetts, Inc. v.

23  National Real Estate Information Services, 608 F.3d at 121-23, the Court held that private bar

24  associations suing to enforce the state's unauthorized-practice-of-law statute were not state actors.

25  The Court found that the power to bring such litigation "is far from an exclusive function of

26  government."  Id. at 122.  The Court should reach the same conclusion here.

27

28

**B.    Private Enforcers Do Not Act Jointly with the Attorney General**

Second, private Proposition 65 enforcers do not act jointly with the state when they bring private actions to enforce the warning requirement for exposures to acrylamide in food products. Manhattan Cmty. Access Corp., 139 S. Ct. at 1928.  "The joint action test asks whether state officials and private parties have acted in concert in effecting a particular deprivation of constitutional rights," Tsao, 698 F.3d at 1140 (quotation omitted), and "whether the state has so far insinuated itself into a position of interdependence with the private entity that it must be recognized as a joint participant in the challenged activity," Florer v. Congregation Pidyon Shevuyim, N.A., 639 F.3d 916, 926 (9th Cir. 2011) (quotation omitted).

The Amended Complaint's allegations do not meet this test, either.  Private Proposition 65 enforcers are "private organization[s] that operate[] independently of the state government."  Real Estate Bar Ass'n, 608 F.3d at 123.  The Amended Complaint does not allege otherwise. Amended Complaint, ¶ 95; Nabors Well Servs. Co., 2006 WL 8432088, at *3 (noting that in cases finding joint action, "there have been significant indications of joint planning, nothing was passive about [the agency's] involvement with [the private party], and the agency and private party acted together" (quotations omitted)).  Far from acting "in concert" with the Attorney General, private enforcers can file a case only if a public enforcer has not done so first.  Cal. Health & Safety Code § 25249.7(d)(2).  Their independent ability to enforce the statute is not evidence that the Attorney General acts "in concert" with them in acrylamide matters.  Tsao, 698 F.3d at 1140 (quotation omitted).

The Amended Complaint's allegations also do not demonstrate that the Attorney General "has so far insinuated [himself] into a position of interdependence with the private entity that [he] must be recognized as a joint participant in the challenged activity."  Florer, 639 F.3d at 926 (quotation omitted).  The Attorney General's role in regulating limited aspects of private enforcement actions does not support holding him responsible for such actions.  See Jackson v. Metro. Edison Co., 419 U.S. 345, 350 (1974) ("The mere fact that a business is subject to state regulation"—even "extensive and detailed" regulation—"does not by itself convert its action into that of the State for purposes of the Fourteenth Amendment").

8

1    The Amended Complaint cites Proposition 65's notice requirements, <u>see</u> Amended

2  Complaint, ¶ 95.b, but the Chamber's reliance on those requirements is misplaced.  Private

3  enforcers are required to notify the Attorney General 60 days before filing an action; when the

4  action is filed; and when a settlement agreement is proposed (unless the proposed settlement is a

5  voluntary dismissal).  Cal. Health & Safety Code § 25249.7(d)(1), (e)(2), (f)(5).  A requirement

6  that private parties provide notice to the government, however, is not sufficient to demonstrate

7  joint action with the state.  <u>Am. Mfrs. Mut. Ins.</u>, 526 U.S. at 55 (government agency could not be

8  held responsible for private parties' actions where its "participation is limited to requiring insurers

9  to file a form prescribed by the Bureau, processing the request for technical compliance, and then

10  forwarding the matter" to a private entity (quotation and citation omitted)).

11    The Amended Complaint also asserts that, under Proposition 65, the Attorney General

12  "screens and evaluates private enforcers' notices of prospective enforcement actions and is

13  obligated to object to any enforcement action he believes lacks merit."  Amended Complaint,

14  ¶ 95.c.  This assertion overstates the Attorney General's duties under the statute.  <u>Parents for</u>

15  <u>Privacy</u>, 949 F.3d at 1221 (court evaluating a motion to dismiss is "not required to accept as true

16  legal conclusions couched as factual allegations").  Proposition 65 requires the Attorney General

17  to "serve a letter" on the private enforcer and the alleged violator if, after reviewing a 60-day

18  notice and accompanying factual information, "the Attorney General believes there is no merit to

19  the action."  Cal. Health & Safety Code § 25249.7(e)(1)(A).  The statute emphasizes, however,

20  that the Attorney General's failure to serve a no-merit letter "shall not be construed as an

21  endorsement by the Attorney General of the merit of the action."  <u>Id.</u> § 25249.7(e)(1)(B).  Further,

22  the statute does not contemplate that the Attorney General can stop the action from going

23  forward.  Even after receiving a no-merit letter, the private enforcer can move ahead with her

24  enforcement action, albeit at the risk of sanctions if the defendant is ultimately successful.  <u>See id.</u>

25  § 25249.7(e)(1)(A), (h)(2).

26    Even if the Amended Complaint accurately described the statutory scheme—which it does

27  not—the Attorney General's decision not to "object" to a private enforcement action does not

28  support holding the Attorney General responsible for that litigation.  "Action taken by private

9

1    entities with the mere approval or acquiescence of the State is not state action."  Am. Mfrs. Mut.

2    Ins., 526 U.S. at 52; see also Roberts, 877 F.3d at 845 ("[O]ur cases will not tolerate the

3    imposition of [constitutional] restraints on private action by the simple device of characterizing

4    the State's inaction as 'authorization' or 'encouragement.'" (quoting Am. Mfrs. Mut. Ins., 526

5    U.S. at 54)).  Private actions filed over the Attorney General's objection cannot fairly be

6    attributed to him, either.

7        As the Amended Complaint notes, the Attorney General can preempt a would-be private

8    enforcement action by initiating an action himself before the 60-day period has elapsed.  See Cal.

9    Health & Safety Code § 25249.7(d)(2); Amended Complaint ¶ 95.d.  This limitation on citizen

10   suits is consistent with limitations imposed by federal citizen suit statutes.  See 33 U.S.C.

11   § 1365(b)(1)(B) (federal Clean Water Act); 16 U.S.C. § 1540(g)(2)(A)(ii) (federal Endangered

12   Species Act); 42 U.S.C. § 300j-8(b)(1)(B) (federal Safe Drinking Water Act).  However, for good

13   reason, the Attorney General does not use this statutory authority to file preemptive enforcement

14   actions if he has determined the allegations have no merit.  See Cal. Code Civ. Proc. § 128.7

15   (authorizing sanctions for filing claims that are not legally or factually warranted).

16       The Chamber also alleges that "[t]he State, through the Attorney General, is authorized to

17   review and challenge proposed settlements in private enforcement actions" Amended Complaint,

18   ¶ 95.e (citing Cal. Health & Safety Code § 25249.7(f)), but this allegation, too, fails to

19   demonstrate state action.  The statutory provision the Chamber cites provides that private

20   enforcers must notify the Attorney General if they file a motion to enter into a settlement

21   agreement with an alleged Proposition 65 violator (other than an agreement to voluntarily dismiss

22   the action), and the Attorney General may then "appear and participate in [the settlement]

23   proceeding without intervening in the case."  Cal. Health & Safety Code § 25249.7(f)(5).  But just

24   as the Attorney General does not prevent a private enforcer from bringing an enforcement action

25   he believes is not meritorious, by objecting to a settlement the Attorney General does not

26   automatically block it from being approved.  See id. § 25249.7(f)(5).  Rather, the statute allows

27   the Attorney General to make his objections to a settlement known to the court, which then

28   decides whether to approve it.  Even if the Attorney General had authority to block proposed

10

1   settlements—which he does not—his use of (or failure to use) that authority would not make him

2   responsible for the resulting settlement or any other part of the associated private enforcement

3   action.  See Am. Mfrs. Mut. Ins., 526 U.S. at 52.

4         The Amended Complaint also cites the fact that seventy-five percent of civil penalties

5   assessed in private enforcement actions must be deposited in the state's Safe Drinking Water and

6   Toxic Enforcement Fund, Cal. Health & Safety Code § 25249.12(c); Amended Complaint, ¶ 95.f,

7   but this requirement does not change the Court's analysis.  "[T]he fact that the State allows

8   private suits and receives a portion of certain recoveries does not imply" joint action between the

9   state and private enforcers.  Nabors Well Servs. Co., 2006 WL 8432088, at *3.  Courts have

10   found state action on the basis of a financial benefit to the state only when private action "confers

11   significant financial benefits indispensable to the government's financial success," such that there

12   is a "symbiotic relationship" between the state and the private actor.  Brunette v. Humane Soc'y

13   of Ventura Cty., 294 F.3d 1205, 1213 (9th Cir. 2002) (emphasis added; quotation omitted).  That

14   is, the government must have "so far insinuated itself into a position of interdependence (with a

15   private entity) that it must be recognized as a joint participant in the challenged activity."  Id.

16   (quoting Burton v. Wilmington Parking Auth., 365 U.S. 715, 725 (1961)).  The Chamber has not

17   alleged that civil penalty recoveries in private acrylamide warning enforcement actions—or even

18   penalties in private enforcement actions overall—are "indispensable" to the state or that the

19   Attorney General is in a "position of interdependence" with any of the private enforcers.

20   Amended Complaint, ¶ 95; Vincent v. Trend W. Tech. Corp., 828 F.2d 563, 569 (9th Cir. 1987)

21   ("While [the private party] may have been dependent economically on its contract with the Air

22   Force, [it] was most certainly not an indispensable element in the Air Force's financial success.").

23         Thus, in Nabors Well Servs. Co. v. Bradshaw, the Central District of California rejected

24   an argument that a private party suing under Labor Code section 2699 is a state actor because "the

25   state is authorized to recover" seventy-five percent of the penalties a private party is awarded in

26   its enforcement action.  2006 WL 8432088, at *2; see also Cal. Labor Code § 2699(i).

27   Proposition 65's identical allocation of seventy-five percent of private-enforcer civil penalties to

28

1    the state Safe Drinking Water and Toxic Enforcement Fund is likewise not a basis for finding

2    state action here.

3        **C.    The State Does Not Compel Private Enforcers to Bring Enforcement
             Actions**

4

5        Third, the state does not compel private enforcers to bring enforcement actions, such that

6    their litigation could fairly be considered state litigation.  Manhattan Cmty. Access Corp., 139 S.

7    Ct. at 1928.  "The compulsion test considers whether the coercive influence or significant

8    encouragement of the state effectively converts a private action into a government action."

9    Kirtley, 326 F.3d at 1094 (quotation omitted).  Proposition 65 permits but does not require private

10   enforcement actions.  Cal. Health & Safety Code § 25249.7(d) ("Actions pursuant to this section

11   may be brought by a person in the public interest …." (emphasis added)).  The Amended

12   Complaint does not allege anything to the contrary.  Amended Complaint, ¶¶ 95-96.

13       Proposition 65's civil penalties also do not provide such "significant encouragement" that

14   the choice to initiate a private enforcement action "must in law be deemed to be that of the State."

15   Blum v. Yaretsky, 457 U.S. 991, 1004 (1982).  If the mere provision of a money award to

16   successful private litigants were sufficient to make private litigation attributable to the state, then

17   the state could be liable for any private damages lawsuit brought pursuant to a state statute.  To

18   the contrary, the courts "have never held that the mere availability of a remedy for wrongful

19   conduct, even when the private use of that remedy serves important public interests, so

20   significantly encourages the private activity as to make the State responsible for it."  Am. Mfrs.

21   Mut. Ins., 526 U.S. at 53; see also Real Estate Bar Ass'n, 608 F.3d at 122 ("An action undertaken

22   by a private party does not become state action merely because the action is authorized by state

23   statute.").

24       Some courts have also applied a "nexus" test to determine whether private action may be

25   considered state action, although the Ninth Circuit has indicated that this test is "largely

26   subsume[d]" within the other state action tests and may not have independent force.  Naoko Ohno

27   v. Yuko Yasuma, 723 F.3d 984, 995 n.13 (9th Cir. 2013).  Assuming this additional test applies

28   here, for the reasons stated above, the Amended Complaint does not meet it.  The nexus test asks

whether "there is such a close nexus between the State and the challenged action that seemingly

private behavior may be fairly treated as that of the State itself."  Florer, 639 F.3d at 924

(quotation omitted).  There is no "close nexus" between private enforcement actions and the

Attorney General because, as stated, the Attorney General does not command private enforcers to

bring enforcement actions or block private actions that the Attorney General believes are

meritless.  Kirtley, 326 F.3d at 1095 (finding that there was no close nexus between a guardian ad

litem and the state, even though the guardian "is appointed by a state actor, is paid by the state,

and is subject to regulation by state law").  Further, the statute itself treats private enforcers

differently from the Attorney General and other government prosecutors:  unlike public enforcers,

private enforcers are required to provide 60 days' notice before filing an action, Cal. Health &

Safety Code § 25249.7(d)(1); they cannot sue if a public enforcer has already sued, id.

§ 25249.7(d)(2); they are subject to sanctions if they bring a frivolous case, id. § 25249.7(h)(2);

and they must get judicial approval to settle their cases, id. § 25249.7(f)(4).  Proposition 65 itself

thus does not treat private enforcers as an arm of the state, even though they are authorized to

enforce the statute in independent actions.  The Court should not treat private enforcers as state

actors, either.

> **D.      The Amended Complaint Does Not Allege a Deprivation by the Attorney General**

        The Chamber may argue that, even if the actions of private enforcers cannot be attributed to

the Attorney General, the Attorney General himself is a state actor with authority to Proposition

65.  But the Chamber cannot rely on the Attorney General's status as a state actor to support its

section 1983 claim.  As discussed, a section 1983 plaintiff must allege "a deprivation of a right

secured by the Constitution or laws of the United States" by a defendant who "acted under color

of state law."  Kirtley, 326 F.3d at 1092 (emphasis added).  The Amended Complaint includes

numerous allegations about private enforcement actions but does not allege any act by the

Attorney General himself that has caused a deprivation of the Chambers' members' First

Amendment rights.  In particular, the Amended Complaint does not allege that the Attorney

General intends to enforce the acrylamide warning requirements against the Chambers' members,

1   now or in the future.  See Lopez v. Candaele, 630 F.3d 775, 785 (9th Cir. 2010) (plaintiff seeking

2   to bring a "pre-enforcement" section 1983 claim must demonstrate a "credible threat of

3   prosecution") (quoting Babbitt v. United Farm Workers Nat'l Union, 442 U.S. 289, 298 (1979)).

4   And, for the reasons stated above, the Attorney General's limited role in regulating the private

5   enforcement scheme is also not sufficient to support a section 1983 claim against him.  See

6   Jackson, 419 U.S. at 350.

7        For these reasons, the Amended Complaint fails to state a claim under section 1983.

8   Count II should therefore be dismissed.

9   **II.     THE CHAMBER'S DECLARATORY JUDGMENT ACT CLAIM SHOULD BE**
    **DISMISSED UNDER BRILLHART**
10

11       If the Court dismisses the Chamber's section 1983 claim—which it should—the Court

12   should also dismiss the Chamber's declaratory judgment claim (Count I) for the reasons stated in

13   the Court's previous dismissal order.  See ECF No. 56 at 3-6.  Although the Chamber could limit

14   the Court's discretion to dismiss under Brillhart by pleading a viable section 1983 claim, see ECF

15   No. 56 at 3-4, the Chamber has not done so here.  The Court should therefore again exercise its

16   discretion to dismiss the Chamber's declaratory judgment claim to "discourag[e] forum shopping

17   and avoid[] duplicative litigation."  ECF No. 56 at 6.

18   **III.    THE AMENDED COMPLAINT SHOULD BE DISMISSED UNDER**
    **COLORADO RIVER**
19

20       In the alternative, the Court should dismiss or stay the Amended Complaint pursuant to

21   Colorado River.  See Colo. River Water Conservation Dist., 424 U.S. 800.  Federal courts may

22   dismiss or stay a matter under Colorado River "in deference to pending, parallel state

23   proceedings" in "exceptional circumstances."  Montanore Minerals Co. v. Bakie, 867 F.3d 1160,

24   1165 (9th Cir. 2017).  In determining whether such exceptional circumstances exist, the Court

25   should consider:

26       (1) which court first assumed jurisdiction over any property at stake;

27       (2) the inconvenience of the federal forum;

28       (3) the desire to avoid piecemeal litigation;

14

(4) the order in which the forums obtained jurisdiction;

(5) whether federal law or state law provides the rule of decision on the merits;

(6) whether the state court proceedings can adequately protect the rights of the federal litigants;

(7) the desire to avoid forum shopping; and

(8) whether the state court proceedings will resolve all issues before the federal court.

Id. at 1166 (quotation omitted).  "These factors are not a 'mechanical checklist'; indeed, some may not have any applicability to a case."  Seneca Ins. Co. v. Strange Land, Inc., 862 F.3d 835, 842 (9th Cir. 2017) (quoting Moses H. Cone Mem'l Hosp. v. Mercury Constr. Corp., 460 U.S. 1, 16 (1983)).  The Court should therefore weigh these factors in "a pragmatic, flexible manner with a view to the realities of the case at hand."  Moses H. Cone Mem'l Hosp., 460 U.S. at 21.

The Colorado River factors support dismissal here.  The first Colorado River factor does not apply because there is no property at stake, and the fifth factor does not favor abstention because the Chamber asserts only a federal claim.  All of the other Colorado River factors supports dismissal.  Under the second factor—inconvenience of the federal forum—Sacramento County is an inconvenient forum for the private enforcers involved in the ongoing state acrylamide enforcement actions.  Although the Chamber has argued that convenience to the private enforcers is irrelevant because the Chamber has not sued them, ECF No. 30 at 24, the Chamber seeks to adjudicate their rights, and in fact to enjoin them from bringing Proposition 65 lawsuits in the future.  Amended Complaint, Prayer for Relief, ¶ 3.  The Chamber's choice to litigate this matter in Sacramento, where none of the private enforcers are located, may therefore restrict private enforcers' ability to intervene or otherwise participate in this matter to protect their rights.

Further, under the third Colorado River factor, allowing the Chamber's declaratory judgment action to proceed would result in piecemeal litigation, as this Court considers the Chamber's First Amendment claim while the same claim has been asserted in parallel state court proceedings.  See Montanore Minerals, 867 F.3d at 1167 (holding that need to avoid piecemeal litigation supported a stay where mining company had filed "two separate actions in two different

15

1    courts" in pursuit of its "singular goal" of "extinguishing Defendants' claimed rights"); ECF No.

2    56 at 5 ("[P]laintiff's declaratory relief claim would likely be duplicative of claims in the roughly

3    38 ongoing state court proceedings involving acrylamide and Proposition 65.").  Dismissal is also

4    warranted under the fourth factor because the state courts obtained jurisdiction over this matter

5    first in the numerous ongoing state enforcement proceedings; indeed, the First Amendment issue

6    the Chamber seeks to raise here is currently before the California Court of Appeal on a writ of

7    mandate following a trial court's rejection of the defense.  See Montanore Minerals, 867 F.3d at

8    1168 (holding this factor supported Colorado River stay where "not only did the state court obtain

9    jurisdiction long before the federal court, but the state court proceedings had progressed

10   significantly").

11           Consistent with the sixth Colorado River factor, the state courts will adequately protect the

12   Chambers' members' rights, including by considering where necessary any First Amendment

13   claims they may raise.  See id. at 1169 ("When it is clear that the state court has authority to

14   address the [federal] rights and remedies at issue this factor may weigh in favor of a stay."

15   (quotation omitted)).  The Chamber has nevertheless argued that there is "substantial doubt"

16   whether state court litigation will resolve the Chamber members' First Amendment claims

17   because the "issue has evaded review" in state court, ECF No. 30 at 23-24.  The Chamber

18   ignores, however, that its members' First Amendment defense has evaded review only because

19   they themselves have avoided state court, choosing to settle rather than litigate enforcement

20   actions involving acrylamide.  Amended Complaint, ¶ 60; see Koninklijke Philips Elecs. N.V. v.

21   KXD Tech., Inc., 539 F.3d 1039, 1045 (9th Cir. 2008) (declining to grant interlocutory review in

22   part because any harm to party seeking review "is entirely of their own making").

23           Dismissal is also warranted under the seventh Colorado River factor to avoid forum

24   shopping by the Chamber's members, who will have an opportunity to litigate their First

25   Amendment claim in state court enforcement proceedings, where defendants have routinely pled

26   it as a defense.  See Montanore Minerals, 867 F.3d at 1169-70; ECF No. 56 at 5.  The Court

27   should not expend its extremely limited judicial resources on claims that could be raised and

28   litigated in pending state court proceedings.  See Standing Order in Light of Ongoing Judicial

1   Emergency in the Eastern District of California (undated) (Drozd, J.).  Lastly, applying the eighth

2   factor, the state courts will necessarily address the Chamber's members' First Amendment

3   claims, if presented for decision, before ruling against them in the state court enforcement

4   proceedings, thus resolving all the issues the Chamber seeks to raise in this action.  For these

5   reasons, dismissal is also warranted under Colorado River.

6   <center>**CONCLUSION**</center>

7          The Court should dismiss Count II of the Amended Complaint for failure to allege facts

8   sufficient to show that private Proposition 65 enforcement actions are fairly attributable to the

9   Attorney General, as required to state a claim under 42 U.S.C. § 1983.  The Court should further

10  dismiss Count I for the reasons stated in the Court's previous dismissal order, ECF No. 56.  In the

11  alternative, the Court should dismiss the Amended Complaint pursuant to Colorado River to

12  discourage forum-shopping and avoid duplicative litigation.

13

14  Dated:  March 30, 2020                                    Respectfully submitted,

15                                                            XAVIER BECERRA
                                                             Attorney General of California
16                                                           HARRISON POLLAK
                                                             Supervising Deputy Attorney General
17
                                                             /s/ Joshua R. Purtle
18                                                           JOSHUA R. PURTLE
                                                             Deputy Attorney General
19                                                           *Attorneys for Xavier Becerra, in his Official*
                                                             *Capacity as Attorney General of the State*
20                                                           *of California*

21  SD2019300528

22

23

24

25

26

27

28