XAVIER BECERRA, State Bar No. 118517
Attorney General of California
HARRISON POLLAK, State Bar No. 200879
Supervising Deputy Attorney General
JOSHUA R. PURTLE, State Bar No. 298215
Deputy Attorney General
  1515 Clay Street, 20th Floor
  P.O. Box 70550
  Oakland, CA 94612-0550
  Telephone: (510) 879-0098
  Fax: (510) 622-2270
  E-mail: Joshua.Purtle@doj.ca.gov
*Attorneys for Xavier Becerra, in his Official
Capacity as Attorney General of the State of
California*

IN THE UNITED STATES DISTRICT COURT

FOR THE EASTERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| **CALIFORNIA CHAMBER OF COMMERCE,**<br><br>Plaintiff,<br><br>v.<br><br>**XAVIER BECERRA, IN HIS OFFICIAL CAPACITY AS ATTORNEY GENERAL OF THE STATE OF CALIFORNIA,**<br><br>Defendant;<br><br>and<br><br>**COUNCIL FOR EDUCATION AND RESEARCH ON TOXICS,**<br><br>Defendant-Intervenor. | 2:19-CV-02019-KJM-EFB<br><br>**REPLY IN SUPPORT OF ATTORNEY GENERAL XAVIER BECERRA'S MOTION TO DISMISS FIRST AMENDED COMPLAINT**<br><br>Date:     June 5, 2020<br>Time:     10:00 am<br>Courtroom: 3 (15th Floor)<br>Judge:    Hon. Kimberly J. Mueller<br>Trial Date: None<br>Action Filed: October 7, 2019 |

# TABLE OF CONTENTS

**Page**

I.  THE CHAMBER HAS NOT ALLEGED A CREDIBLE THREAT OF
    ENFORCEMENT BY THE ATTORNEY GENERAL.................................................. 2

II. PRIVATE PROPOSITION 65 ENFORCEMENT ACTIONS ARE NOT
    FAIRLY ATTRIBUTABLE TO THE STATE ........................................................... 6

    A.   The Attorney General Does Not Act in Concert with Private Enforcers ................ 7

    B.   The Attorney General is Not in a Symbiotic Relationship with
         Private Enforcers ................................................................................................... 9

III. DISMISSAL IS ALSO WARRANTED UNDER BRILLHART AND
     COLORADO RIVER ................................................................................................ 10

1

**TABLE OF AUTHORITIES**

2

**Page**

3

CASES

Am. Mfrs. Mut. Ins. Co. v. Sullivan

4

   526 U.S. 40 (1999)....................................................................................8

5

Ass'n des Eleveurs de Canards et d'Oies du Quebec v. Harris

6

   729 F.3d 937 (9th Cir. 2013).................................................................5, 6

7

Bland v. Fessler

8

   88 F.3d 729 (9th Cir. 1996)...................................................................6

9

Brillhart v. Excess Ins. Co. of Am.

   316 U.S. 491 (1942)..............................................................................10

10

Burton v. Wilmington Parking Auth.

11

   365 U.S. 715 (1961)............................................................................9, 10

12

Cal. Chamber of Commerce v. Brown

13

   196 Cal. App. 4th 233 (2011) ...............................................................7

14

Colo. River Water Conservation Dist. v. United States

   424 U.S. 800 (1976)..............................................................................10

15

16

Coulombe v. Jolly

   447 F. Supp. 2d 1117 (C.D. Cal. 2006)...............................................2

17

Crissman v. Dover Downs Ent. Inc.

18

   289 F.3d 231 (3d Cir. 2002).................................................................9

19

Ex parte Young

20

   209 U.S. 123 (1908)..............................................................................5

21

Florer v. Congregation Pidyon Shevuyim, N.A.

22

   639 F.3d 916 (9th Cir. 2011)................................................................8

23

Gallagher v. Neil Young Freedom Concert

   49 F.3d 1442 (10th Cir. 1995).............................................................9, 10

24

Italian Colors Rest. v. Becerra

25

   878 F.3d 1165 (9th Cir. 2018)..............................................................6

26

Jackson v. Metro. Edison Co.

27

   419 U.S. 345 (1974)..............................................................................9

28

ii

1

## TABLE OF AUTHORITIES
### (continued)

2

Page

3

Kirtley v. Rainey
4
   326 F.3d 1088 (9th Cir. 2003)....................................................................................2

5

Lopez v. Candaele
   630 F.3d 775 (9th Cir. 2010)...............................................................................1, 5
6

7

Loyd's Aviation, Inc. v. Ctr. for Envtl. Health
   2011 WL 4971866 (E.D. Cal. Oct. 19, 2011) ........................................................5

8

Martin v. City of Boise
9
   920 F.3d 584 (9th Cir. 2019)...................................................................................1

10

Nabors Well Servs. Co. v. Bradshaw
   2006 WL 8432088 (C.D. Cal. Feb. 15, 2006)..................................................7, 8, 9
11

12

Perkins v. Londonderry Basketball Club
   196 F.3d 13 (1st Cir. 1999) ...................................................................................10

13

Pickup v. Brown
14
   No. 2:12-CV-02497-KJM, 2015 WL 5522265 (E.D. Cal. Sept. 16, 2015) ............3, 4

15

Poe v. Ullman
   367 U.S. 497 (1961)................................................................................................4
16

17

Protectmarriage.com-Yes on 8 v. Bowen
   752 F.3d 827 (9th Cir. 2014).....................................................................2, 3, 4, 10

18

Raymond v. Fenumiai
19
   580 F. App'x 569 (9th Cir. 2014) ............................................................................4

20

Real Estate Bar Ass'n v. Nat'l Real Estate Info. Servs.
   608 F.3d 110 (1st Cir. 2010) ...................................................................................9
21

22

Rendell-Baker v. Kohn
   457 U.S. 830 (1982)............................................................................................6, 9
23

24

Sacks v. Office of Foreign Assets Control
   466 F.3d 764 (9th Cir. 2006)...................................................................................4

25

San Diego Cty. Gun Rights Comm. v. Reno
   98 F.3d 1121 (9th Cir. 1996)...................................................................................2
26

27

Sonoma Cty. Law Enforcement Ass'n v. Cty. of Sonoma
   379 F. App'x 658 (9th Cir. 2010) ...........................................................................3
28

iii

# TABLE OF AUTHORITIES
### (continued)

**Page**

Summers v. Earth Island Inst.
    555 U.S. 488 (2009) .........................................................................................3

Susan B. Anthony List v. Driehaus
    573 U.S. 149 (2014) .........................................................................................6

Thomas v. Anchorage Equal Rights Comm'n
    220 F.3d 1134 (9th Cir. 2000) ....................................................................2, 3

Tsao v. Desert Palace, Inc.
    698 F.3d 1128 (9th Cir. 2012) ..............................................................6, 7, 8

**STATE STATUTES**

Health & Saf. Code § 25249.7(e)(1)(B) ..............................................................8

Health & Saf. Code § 25249.10(c) .......................................................................4

Lab. Code § 2699 ...................................................................................................9

Lab. Code § 2699(h) ..............................................................................................8

Lab. Code § 2699(i) ...............................................................................................8

Lab. Code § 2699(*l*)(1) ..........................................................................................8

**FEDERAL STATUTES**

16 U.S.C. § 1540(g) ..............................................................................................7

33 U.S.C. § 1365 ...................................................................................................7

42 U.S.C. § 1983 ..........................................................................................*passim*

42 U.S.C. § 300j-8 .................................................................................................7

**CONSTITUTIONAL PROVISIONS**

Cal. Const., art. V, § 13 .........................................................................................5

**REGULATIONS**

Cal. Code Regs., tit. 27, §§ 25701 et seq. .............................................................4

1    In this matter, the California Chamber of Commerce ("Chamber") seeks to stem the

2    growing number of private Proposition 65 enforcement actions against its members over the

3    failure to warn about the presence of acrylamide in food and beverage products.  Relying on 42

4    U.S.C. § 1983 ("section 1983"), the Chamber's First Amended Complaint ("Amended

5    Complaint") strains to show that these private enforcers are engaged in "state action," Amended

6    Complaint, ¶ 95, but, as the Attorney General demonstrated in his moving papers, private

7    enforcement actions are not fairly attributable to the State for section 1983 purposes.  The

8    Amended Complaint thus fails to state a claim under section 1983.  <u>See</u> ECF No. 61.

9    The Chamber's opposition brief now retreats from the Amended Complaint's allegations

10   about harm caused by private enforcement and asserts instead that the Chamber's members really

11   are harmed by a hypothetical future enforcement action by the <u>Attorney General</u>.  However, the

12   Amended Complaint provides no "concrete details" about the Chamber's members' plan to

13   violate Proposition 65 or otherwise engage in protected First Amendment conduct—such as what

14   businesses are involved, what products they intend to sell, or whether those products cause

15   acrylamide exposures that require a cancer warning.  <u>Lopez v. Candaele</u>, 630 F.3d 775, 791 (9th

16   Cir. 2010).  The Chamber thus attempts to predicate a section 1983 lawsuit on a theoretical

17   Attorney General enforcement action against unnamed businesses selling unknown products with

18   unspecified amounts of acrylamide that may or may not trigger a warning requirement.  Although

19   imminence of injury "is concededly a somewhat elastic concept," the Chamber's opposition brief

20   seeks to stretch it much too far.  <u>Martin v. City of Boise</u>, 920 F.3d 584, 608-09 (9th Cir. 2019)

21   (quotation omitted).  The Chamber's section 1983 claim should therefore be dismissed, along

22   with the declaratory relief claim that the Court dismissed in its earlier order.[1]

23   To be clear, the Attorney General is prepared to demonstrate that the Chamber's First

24   Amendment claims are meritless.  <u>See</u> ECF No. 47.  However, as the Court has already found,

25   judicial economy and the need to discourage forum-shopping counsel against entertaining the

26

27   _____

      [1] The Chamber asserts that demonstrating a credible threat of enforcement is a standing
     issue, Chamber Br. 6, but whether measured against Article III or section 1983's requirement that
28   plaintiffs plead a deprivation of a constitutional right, the result is the same:  the Chamber has not
     pled sufficient facts to maintain a section 1983 action against the Attorney General.

1

1   Chamber's lawsuit, which is duplicative of numerous enforcement actions already pending in

2   state court.  ECF No. 56 at 5-6.  These same considerations apply equally to the Amended

3   Complaint, which pleads a section 1983 claim merely to circumvent the Court's earlier dismissal

4   order.  See id. at 4.  Rather than allow the Chamber's workaround—which could provide a

5   roadmap for other disgruntled state-court defendants to try their luck in federal court—the Court

6   should dismiss the Chamber's Amended Complaint at the outset for failure to state a claim.

7   **I.      THE CHAMBER HAS NOT ALLEGED A CREDIBLE THREAT OF
          ENFORCEMENT BY THE ATTORNEY GENERAL**

8

9        The Chamber argues for the first time in its opposition brief that the Chamber's members

10  are threatened by hypothetical enforcement actions by the Attorney General.  The Chamber's new

11  argument is notably at odds with the Amended Complaint, which contains numerous allegations

12  about actions by private actors, but no allegations about any threatened enforcement action by the

13  Attorney General himself.  Amended Complaint, ¶¶ 56-59, 95.

14       The Amended Complaint, however, fails to allege sufficient facts to demonstrate a credible

15  threat of enforcement, as would be required to plead a deprivation of a constitutional right by the

16  Attorney General.  See Kirtley v. Rainey, 326 F.3d 1088, 1092 (9th Cir. 2003).  The Ninth Circuit

17  has directed courts to consider three factors in deciding whether to entertain a pre-enforcement

18  challenge:  "(1) whether the plaintiffs have articulated a 'concrete plan' to violate the law in

19  question; (2) whether the prosecuting authorities have communicated a specific warning or threat

20  to initiate proceedings; and [(3)] the history of past prosecution or enforcement under the

21  challenged statute."  Protectmarriage.com-Yes on 8 v. Bowen, 752 F.3d 827, 848 (9th Cir. 2014).

22  The Amended Complaint does not pass muster under this standard.

23       First, the Chamber has not articulated a "concrete plan" to violate the acrylamide warning

24  requirement.  A concrete plan requires more than vague allegations of an intent to violate the law.

25  Thomas v. Anchorage Equal Rights Comm'n, 220 F.3d 1134, 1139 (9th Cir. 2000); San Diego

26  Cty. Gun Rights Comm. v. Reno, 98 F.3d 1121, 1126-27 (9th Cir. 1996).  Instead, a pre-

27  enforcement plaintiff must "provide the who, what, where, when and how they intend to

28  effectuate their plan."  Coulombe v. Jolly, 447 F. Supp. 2d 1117, 1122 (C.D. Cal. 2006); see also

2

1    Thomas, 220 F.3d at 1139.

2       Here, the Chamber makes no attempt to give the what, where, when, how, or even the who

3 of its members' plans.  The Amended Complaint merely asserts that "many of the Plaintiff's

4 members … sell or produce acrylamide-containing food products"; that some of these members

5 "may be forced to undertake costly exposure assessments for their acrylamide-containing

6 products to demonstrate" that warnings are not required for these products; and that some of its

7 members are obliged to provide "false, misleading, and factually controversial warnings to

8 California consumers about acrylamide in their food products."  Amended Complaint, ¶¶ 64-65.

9 The Amended Complaint does not specify which businesses these are, what products they intend

10 to sell, how much acrylamide those products contain, or what warnings the businesses intend to

11 give.  See Sonoma Cty. Law Enforcement Ass'n v. Cty. of Sonoma, 379 F. App'x 658, 660 (9th

12 Cir. 2010) (plaintiffs did not "allege that any particular officer has a concrete plan to carry a

13 concealed firearm outside California").  These bald assertions do not provide the concrete detail

14 demonstrating why the Chamber's fear of enforcement is reasonable.  Protectmarriage.com, 752

15 F.3d at 840; Pickup v. Brown, No. 2:12-CV-02497-KJM, 2015 WL 5522265, at *8 (E.D. Cal.

16 Sept. 16, 2015) (First Amendment plaintiffs failed to "describe with any particularity how the

17 statute will be enforced against" them); see also Summers v. Earth Island Inst., 555 U.S. 488, 498

18 (2009) (organization suing on behalf of its members must "make specific allegations establishing

19 that at least one identified member had suffered or would suffer harm" (emphasis added)).

20       This case is thus like Protectmarriage.com v. Bowen.  There, political committees

21 challenged on First Amendment grounds a statute that required them "to report certain

22 information about their contributors to the State."  752 F.3d at 830.  The Ninth Circuit rejected

23 their request to prospectively enjoin enforcement because the committees had "not offered any

24 information regarding when they may next support a campaign opposing same-sex marriage,

25 what type of campaign they will support, where they will support it, what their involvement will

26 entail, or whether their donors will likely face personal harassment."  Id. at 840.  Here, too, the

27 Chamber has not provided any specific information about its members or their activities from

28 which the court could "discern a concrete plan to engage in protected conduct."  Id.

3

1    The concrete plan requirement ensures pre-enforcement cases are properly presented to the

2    Court.  The Chamber's Amended Complaint presents a purely abstract claim that warnings for

3    exposure to acrylamide in food, as applied to any business selling any food or beverage product,

4    violate the First Amendment, without any specific facts that might inform the Court's analysis.[2]

5    Courts, however, "have 'no right to pronounce an abstract opinion upon the constitutionality of a

6    [s]tate law.'"  Protectmarriage.com, 752 F.3d at 840 (quoting Poe v. Ullman, 367 U.S. 497, 504

7    (1961)); see also Pickup, 2015 WL 5522265, at *8 ("[A] court should decline to entertain an as-

8    applied challenge that would require it to speculate as to prospective facts" (quotation and

9    alterations omitted)).

10    The Chamber notes that the credible threat of enforcement requirement is less stringent in

11    the First Amendment context, Chamber Br. at 7, but, as Protectmarriage.com demonstrates, even

12    First Amendment plaintiffs must plead specific details to maintain an action based on the

13    hypothetical future enforcement of a statute.  752 F.3d at 840; see also Raymond v. Fenumiai,

14    580 F. App'x 569, 570 (9th Cir. 2014).  The Chamber has not done so here.

15    Second, the Attorney General has not "communicated a specific warning or threat to initiate

16    proceedings" against any of the Chamber's members.  Protectmarriage.com, 752 F.3d at 848

17    (quotation omitted).  The Amended Complaint does not allege anything to the contrary.

18    Third, although the Attorney General has vigorously enforced the statute since its inception

19    and has engaged in oversight of acrylamide matters pursuant to his statutory responsibilities, he

20    has not filed a Proposition 65 enforcement action related to acrylamide in nearly a decade.  The

21    Chamber's opposition brief—although, again, not the Amended Complaint—cites enforcement

22    actions brought by the Attorney General over a decade ago, Chamber Br. 8, but the caselaw holds

23    that the fact that the Attorney General has not sued the Chamber's members in recent years "is a

24    strong indication of [his] lack of intent to do so in the future."  Sacks v. Office of Foreign Assets

25    Control, 466 F.3d 764, 774 (9th Cir. 2006) (defendant had declined to bring an enforcement

26    _____

27    [2] Proposition 65 does not require warnings for exposures to a carcinogen, like acrylamide, if the person responsible for warning can show that the exposure "poses no significant risk assuming lifetime exposure at the level in question."  Cal. Health & Safety Code § 25249.10(c).  Regulations set out different methods a company can employ to demonstrate that a particular

28    exposure poses no significant risk.  See Cal. Code Regs. tit. 27, §§ 25701 et seq.

4

1   action against the plaintiff "during the last eight years").  The Chamber notes the Attorney

2   General's recent actions to monitor compliance with the consent judgments he obtained in those

3   matters, Chamber Br. 8, but the Attorney General's commitment to enforce consent judgments

4   does not demonstrate a threat to bring new enforcement actions.  In short, the Chamber has

5   "failed to show a reasonable likelihood that the government will enforce the challenged law

6   against [its members]." Lopez, 630 F.3d at 786.

7        The Chamber nevertheless faults the Attorney General for failing to disavow enforcement

8   of the acrylamide warning requirement with respect to all foods and beverages.  Chamber Br. at 9.

9   The Attorney General, however, has a constitutional duty to enforce the law, Cal. Const., art. V,

10   § 13, and he cannot renounce that duty wholesale as to every possible application of Proposition

11   65's warning requirement for acrylamide in food.  Of course, the Attorney General could disavow

12   an intent to bring an enforcement action with respect to particular conduct in appropriate

13   circumstances, but first he would need to know what the conduct and circumstances were.  The

14   Attorney General has done so before in other Proposition 65 matters.  Loyd's Aviation, Inc. v.

15   Ctr. for Envtl. Health, No. 1:11-CV-01078 AWI DLB, 2011 WL 4971866, at *3 (E.D. Cal. Oct.

16   19, 2011) (concluding that plaintiffs had not shown a credible threat of enforcement because the

17   Attorney General represented that she "ha[d] no intention of suing" the plaintiffs who sold

18   aviation fuel containing lead).  As to acrylamide specifically, the Office of Environmental Health

19   Hazard Assessment ("OEHHA") has made a determination that acrylamide in coffee does not

20   pose a substantial cancer risk, and that warnings are therefore not required for coffee products.

21   See ECF No. 21 at 11-12.  However, the Chamber's insistence on litigating this case in the

22   abstract, without any allegations about the products involved or their levels of acrylamide, vitiates

23   any opportunity the Attorney General might otherwise have to disavow an intent to enforce.

24        The Chamber's discussion of Ex parte Young and its progeny is not on point.  Chamber Br.

25   4-5.  The premise of the Attorney General's motion is not that he is immune from suit under the

26   Eleventh Amendment.  See Ass'n des Eleveurs de Canards et d'Oies du Quebec v. Harris, 729

27   F.3d 937, 943-44 (9th Cir. 2013).  Instead, the Attorney General contends that the Chamber's

28

1  failure to plead a credible threat of enforcement defeats the Chamber's section 1983 claim.  See

2  id. at 944 (noting that the Attorney General had not raised such an argument in that case).

3       The Chamber also argues it may sue the Attorney General on the basis of enforcement by

4  private parties.  Chamber Br. at 10-11.  However, even as to those parties, the Chamber must

5  plead a concrete plan by its members to violate the law, and, as stated, the Chamber has not done

6  so.  The Chamber cites no case in which a court found a credible threat from private enforcement

7  actions in the absence of such concrete details.  See, e.g., Italian Colors Rest. v. Becerra, 878 F.3d

8  1165, 1174 (9th Cir. 2018) (finding plaintiffs had "describe[d] when, to whom, where, [and]

9  under what circumstances they would" take action (quotation omitted)); see also Susan B.

10  Anthony List v. Driehaus, 573 U.S. 149, 161 (2014) ("Both petitioners have pleaded specific

11  statements they intend to make in future election cycles."); Bland v. Fessler, 88 F.3d 729, 737

12  (9th Cir. 1996) (describing plaintiff's specific efforts to comply with statute).

13       Significantly, the Chamber's reliance on private enforcement actions to try to demonstrate a

14  credible threat of enforcement merely underscores that the Chamber's dispute is not really with

15  the Attorney General but with the private enforcers.  As discussed below, the Chamber should not

16  be permitted to force the Attorney General into court to answer for private actions.[3]

17  **II.    PRIVATE PROPOSITION 65 ENFORCEMENT ACTIONS ARE NOT FAIRLY**
18              **ATTRIBUTABLE TO THE STATE**

19       The Amended Complaint fails to state a claim under section 1983 because the facts it

20  alleges, even taken as true, do not establish that actions brought by private parties to enforce the

21  acrylamide warning requirement are "fairly attributable to the State."  Tsao v. Desert Palace, Inc.,

22  698 F.3d 1128, 1139 (9th Cir. 2012) (quotation omitted).[4]

23

24  _____

25      [3] The Chamber also argues redressability and causation, Chamber Br. 11-12, but because
26  the Attorney General is not challenging the Chamber's standing, he does not respond to those
    arguments here.

27      [4] The Chamber in a footnote glancingly argues that private enforcers perform an exclusive
    public function, Chamber Br. 13 n.4, but it ignores the Attorney General's contrary authorities.
28      See, e.g., Rendell-Baker v. Kohn, 457 U.S. 830, 842 (1982) ("That a private entity performs a
    function which serves the public does not make its acts state action.").

6

### A.    The Attorney General Does Not Act in Concert with Private Enforcers

The Chamber's assertion that the Attorney General acts jointly with private enforcers, Chamber Br. 13-15, displays a fundamental misunderstanding of Proposition 65.  The statute empowers private parties to bring enforcement actions independent of the State because the people of California believed that "state government agencies ha[d] failed to provide them with adequate protection" from hazardous chemicals.  Cal. Chamber of Commerce v. Brown, 196 Cal. App. 4th 233, 258 (2011).  Thus, the Chamber's assertion that private enforcers' power to bring enforcement actions "necessarily derive[s] from the AG's enforcement of Proposition 65," Chamber Br. 13, is incorrect.  To the contrary, Proposition 65 took pains to ensure that private enforcers have separate authority to enforce the statute without significant involvement by state officials.

The Chamber strains to muster facts supporting its joint-action theory, but to no avail.  See Nabors Well Servs. Co. v. Bradshaw, 2006 WL 8432088, at *3 (C.D. Cal. Feb. 15, 2006) (noting that in cases finding joint action, "there have been significant indications of joint planning, nothing was passive about the agency's involvement with the private party, and the agency and private party acted together" (quotations and alterations omitted)).  The Chamber first cites the statute's 60-day notice requirement, Chamber Br. 13, but the suggestion that the Attorney General can be held responsible for private suits because private enforcers send him a notice letter is meritless.  Such a conclusion could make the federal government answerable for myriad citizen suit actions, including private actions under the federal Clean Water Act, 33 U.S.C. § 1365, Endangered Species Act, 16 U.S.C. § 1540(g), and Safe Drinking Water Act, 42 U.S.C. § 300j-8, which all have similar notice requirements.

The Chamber also cites the Attorney General's authority to preempt private enforcement actions, but this undercuts rather than supports the Chamber's joint-action theory.  Chamber Br. 13-14.  Certainly the Attorney General does not act "in concert" with private enforcers when he steps in to litigate an enforcement action on his own.  Tsao, 698 F.3d at 1140.  And while the Attorney General has co-litigated Proposition 65 enforcement cases with private parties, such as cases involving lead in candy and children's jewelry, Chamber Br. 14, there is no allegation here

7

1   that the Attorney General is participating in any of the threatened private acrylamide enforcement

2   actions the Chamber seeks to stop.[5]  The Chamber also relies on the fact that the Attorney

3   General may "admoni[sh]" private enforcers by objecting to settlement agreements or informing

4   private enforcers that he believes their actions have no merit, Chamber Br. 13-14, but this

5   argument proves too much.  If the Attorney General could be held responsible for private action

6   any time he admonishes or declines to admonish someone, then there could be no limit to his

7   liability under section 1983.  That, however, is not the law.  Cf. Am. Mfrs. Mut. Ins. Co. v.

8   Sullivan, 526 U.S. 40, 52 (1999) ("Action taken by private entities with the mere approval or

9   acquiescence of the State is not state action."); see also Cal. Health & Safety Code

10  § 25249.7(e)(1)(B) ("If the Attorney General does not serve a [no-merit] letter… this shall not be

11  construed as an endorsement by the Attorney General of the merit of the action.").

12      The Chamber further offers statements by the Attorney General about Proposition 65,

13  Chamber Br. 14-16, but these out-of-context quotations do not help the Chamber either.  The fact

14  that the Attorney General believes his statutory duties are important and takes his role in the

15  enforcement of the law seriously, Chamber Br. 15, or has asserted that the private enforcement

16  scheme is important, Chamber Br. 16, does not prove he has "insinuated [himself] into a position

17  of interdependence" with private enforcers.  Florer v. Congregation Pidyon Shevuyim, N.A., 639

18  F.3d 916, 926 (9th Cir. 2011) (quotation omitted).

19      The Chamber attempts to distinguish the Attorney General's authorities, see Chamber Br.

20  15, but the differences the Chamber cites are superficial at best.  For example, although the

21  citizen suit provision at issue in Nabors Well Servs. Co. is not identical to the citizen suit

22  provision in Proposition 65, it requires private enforcers to give state agencies prior notice, 2006

23  WL 8432088, at *2; requires private litigants to provide the Labor and Workforce Development

24  Agency with a copy of the complaint once it is filed, Cal. Lab. Code § 2699(l)(1); permits state

25  agencies to preempt private enforcement actions, id. § 2699(h); and provides for seventy-five

26  percent of any civil penalties to be awarded to the State, id. § 2699(i).  The court nevertheless

27          [5] That the Attorney General co-litigated acrylamide cases brought by private enforcers in
    the past does not demonstrate any likelihood of joint action in the future, nor does the Chamber
28  allege otherwise.  Chamber Br. 14.

8

1   found citizen suits under Labor Code § 2699 are not fairly attributable to the State.  Nabors Well

2   Servs. Co., 2006 WL 8432088, at *2; see also Real Estate Bar Ass'n v. Nat'l Real Estate Info.

3   Servs., 608 F.3d 110, 121-23 (1st Cir. 2010).  The Chamber cites no cases to support its contrary

4   view.  The Chamber's claim that the Attorney General acts "in concert" with private enforcers

5   should therefore be rejected.[6]

6       **B.    The Attorney General is Not in a Symbiotic Relationship with Private
            Enforcers**

7

8       The Chamber also argues that the Attorney General is in a "symbiotic relationship" with

9   private enforcers, Chamber Br. at 15-16, but the Chamber's reliance on Burton v. Wilmington

10  Parking Authority, 365 U.S. 715 (1961), is misplaced.  Burton held that a restaurant's racial

11  discrimination was attributable to the State where "the restaurant was located on public property

12  and … rent from the restaurant contributed to the support" of a public parking garage.  Rendell-

13  Baker, 457 U.S. at 842-43 (discussing Burton).  Later decisions have construed Burton narrowly

14  and have declined to find a symbiotic relationship in situations that do not match Burton's facts

15  exactly.  See Jackson v. Metro. Edison Co., 419 U.S. 345, 358 (1974) (noting that the Burton

16  Court "limit[ed] the actual holding to lessees of public property"); Crissman v. Dover Downs Ent.

17  Inc., 289 F.3d 231, 242 (3d Cir. 2002) ("[W]hile Burton remains good law, it was crafted for the

18  unique set of facts presented, and we will not expand its reach beyond facts that replicate what

19  was before the Court in Burton"); Gallagher v. Neil Young Freedom Concert, 49 F.3d 1442, 1451

20  (10th Cir. 1995).

21      Even assuming it would be appropriate to extend Burton to these very different facts—

22  which it is not—the financial benefit to the State the Chamber cites is slim.  The Chamber asserts

23  that civil penalties from all private enforcement actions have funded roughly 15% of OEHHA's

24  (not the Attorney General's) annual budget, but penalties in acrylamide actions form only a small

25  fraction of the total penalties awarded in all Proposition 65 enforcement matters.  See Request for

26  Judicial Notice in Support of Motion to Dismiss Amended Complaint, Exs. 1 & 2 (OEHHA has

27

28      [6] The Chamber also cites the fact that the Attorney General has "drafted template
    settlement language" for Proposition 65 matters but does not explain why this allegation is
    relevant.  Chamber Br. 15.

1   received $1,038,831—or approximately 1.3% of its total budget—from civil penalties in

2   acrylamide matters between January 1, 2017 and December 31, 2019).  Courts do not look to the

3   entire scope of the private activity in question, but only to the allegedly harmful private conduct.

4   See Perkins v. Londonderry Basketball Club, 196 F.3d 13, 21 (1st Cir. 1999) ("[T]his factor

5   implicates only profits arising from the challenged conduct, rather than from the relationship as a

6   whole.").  Moreover, even a 15% contribution is not indispensable to the Office's operations—

7   and much less to the State as a whole.  Gallagher, 49 F.3d at 1452-53 (evidence that 19% of a

8   university center's income derived from private actors not sufficient to meet Burton standard).

9   **III.    DISMISSAL IS ALSO WARRANTED UNDER BRILLHART AND**

10  **        COLORADO RIVER**

11          Pursuant to the Court's earlier dismissal order, the Chamber's declaratory relief claim

12  should also be dismissed if the Court dismisses its section 1983 claim.  ECF No. 56 at 4-6.  The

13  Chamber does not appear to contest this point.  Chamber Br. 17.

14          The Chamber's arguments regarding Colorado River largely retread the Chamber's briefing

15  in response to the Attorney General's first motion to dismiss, and the Attorney General has

16  already addressed them.  See ECF No. 61 at 21-23; ECF No. 39 at 14-15.  The Attorney General

17  further notes that the Chamber's attempt to litigate an abstract federal suit involving "any food

18  product" containing acrylamide, Chamber Br. 18, does not support federal jurisdiction, but

19  instead demonstrates that the Chamber has not pled the specific facts required to challenge the

20  acrylamide warning requirement.  See Protectmarriage.com, 752 F.3d at 840 (Courts "have no

21  right to pronounce an abstract opinion upon the constitutionality of a [s]tate law." (quotation

22  omitted)).  For this reason, too, the Amended Complaint should be dismissed.

23

24

25

26

27

28

1   Dated:  May 29, 2020                    Respectfully submitted,

2                                           XAVIER BECERRA
                                            Attorney General of California
3                                           HARRISON POLLAK
                                            Supervising Deputy Attorney General
4
                                            /s/ Joshua R. Purtle
5                                           JOSHUA R. PURTLE
                                            Deputy Attorney General
6                                           *Attorneys for Xavier Becerra, in his Official*
                                            *Capacity as Attorney General of the State*
7                                           *of California*

8

9   SD2019300528

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

Xavier Becerra's Reply in Support of Motion to Dismiss Amended Complaint (2:19-CV-02019-KJM-EFB)