UNITED STATES DISTRICT COURT

FOR THE EASTERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| CALIFORNIA CHAMBER OF COMMERCE,<br><br>                    Plaintiff,<br><br>          v.<br><br>XAVIER BECERRA,<br><br>                    Defendant,<br><br>and COUNCIL FOR EDUCATION AND RESEARCH ON TOXICS,<br><br>                    Defendant-Intervenor. | No.  2:19-CV-02019-KJM-EFB<br><br><br><br>ORDER |

Plaintiff California Chamber of Commerce brings this suit challenging California's Safe Drinking Water and Toxic Enforcement Act (Proposition 65) insofar as it requires certain California businesses to post warnings about the presence of acrylamide, a chemical the state has identified as a cancer risk. *See* Compl. ¶¶ 1–3, ECF No. 1.  Plaintiff argues the enforcement of the statute with respect to acrylamide violates the First Amendment of the Constitution, and requests declaratory and injunctive relief. *Id.* at 20, 22.  The parties agreed to allow Council for Education and Research on Toxics (CERT) to intervene as a party defendant, ECF No. 28, and the court approved the stipulation, ECF No. 29.  Defendant-intervenor CERT and defendant

1

1  Becerra both filed motions to dismiss, ECF Nos. 8, 20, which the court granted in part, Order,

2  ECF No. 56.  Following the court's order granting leave to amend, plaintiff filed an amended

3  complaint.  First Am. Compl. ("FAC"), ECF No. 57.  On March 30, 2020, defendant Becerra

4  filed a second motion to dismiss.  Mot. to Dismiss ("MTD"), ECF No. 61.  Plaintiff opposed,

5  MTD Opp'n, ECF No. 65, and defendant replied, MTD Reply, ECF No. 78.

6  On the same day, defendant-intervenor CERT filed a motion for attorneys' fees.

7  Mot. Attorneys' Fees ("MAF"), ECF No. 59.  Plaintiff opposed this motion, MAF Opp'n, ECF

8  No. 68, and CERT replied, MAF Reply, ECF No. 72.  Plaintiff also filed a notice of supplemental

9  authority, citing *National Association of Wheat Growers, et al. v. Becerra*, No. 2:17-cv-2401

10  WBS EFB (E.D. Cal.) (ECF No. 155 at 8-13).  ECF No. 82.  Defendant-intervenor CERT also

11  filed a request for entry of judgment, ECF No. 73, which plaintiff has opposed, ECF No. 76, and

12  defendant has replied, ECF No. 77.

13  On June 5, 2020, the court heard oral argument on both motions and submitted the

14  motions.  For the reasons below the court DENIES the motion to dismiss and DENIES the motion

15  for attorney's fees.  The court also discusses CERT's outstanding request for entry of judgment,

16  ECF No. 73.

17  I.    BACKGROUND

18  The broad factual allegations defining this case are summarized in the court's

19  previous order on defendant's first motion to dismiss, ECF No. 56, and the court relies on that

20  summary here without repeating it.

21  Plaintiff's first amended complaint includes (1) a claim for "violation of the First

22  Amendment of the U.S. Constitution" under 28 U.S.C. § 2201,[1] FAC at 22, as did the original

23  complaint, and (2) a newly added claim for a violation of the First Amendment under 28 U.S.C.

24  § 1983, *id.* at 24–25.  The amended complaint, like the original complaint, lists only Attorney

25  General Xavier Becerra as defendant (hereinafter "defendant").

26  _____

27  [1] In the First Amended Complaint, plaintiff added a citation in the title of this first claim to 22 U.S.C. § 2201 ("Assistance to disadvantaged children in Asia"), *see* FAC at 22, which the court assumes is intended as a citation to 28 U.S.C. § 2201, *see* FAC at 26 (prayer for relief)

28  (citing 28 U.S.C. § 2201 (creating the remedy of a declaratory judgment)).

2

1   II.       REQUESTS FOR JUDICIAL NOTICE

2                   In conjunction with its opposition to the motion to dismiss, plaintiff also filed two

3   requests for judicial notice.  ECF No. 66, 69.  The requests are not opposed.  Plaintiff requests the

4   court take judicial notice of over 24 documents, many of which are state court records.  The court

5   GRANTS plaintiff's request as to Exhibits A (Attorney General's Complaint in *People v. Frito-*

6   *Lay, Inc., et al.*, L.A. Sup. Ct., BC338896 (filed Aug. 26, 2005)) and Exhibit C (Attorney

7   General's Complaint in *People v. Snyder's of Hanover, et al.*, Alameda Sup. Ct., No.

8   RG09455286 (filed June 1, 2009)), as they are relevant to the motions addressed here.  Otherwise,

9   the court has not relied on any of these documents in making its findings below, and therefore

10  DENIES the remainder of plaintiff's request.

11                  In conjunction with his reply, defendant Becerra also filed a request for judicial

12  notice of two tables of data concerning settlements and judgments in Proposition 65 acrylamide

13  enforcement actions, which counsel downloaded from the Attorney General's website.  ECF No.

14  79 at 2 (citing State of California Department of Justice, Office of the Attorney General,

15  Proposition 65 Enforcement Reporting, https://oag.ca.gov/prop65 (last visited May 29, 2020)).

16  This request is also not opposed.  Because the tables are essentially reports from a government

17  entity, that are readily verifiable, the court GRANTS the request and judicially notices Exhibit 1

18  and Exhibit 2 of defendant's second request for judicial notice.  ECF Nos. 79-1, 79-2.

19  III.      DISCUSSION

20                  In his motion to dismiss, defendant Becerra argues: (1) plaintiff fails to state a

21  claim under 42 U.S.C. § 1983, and (2) the court should dismiss the complaint based on the

22  precedent set in *Colorado River Water Conservation District v. United States*, 424 U.S. 800

23  (1976).

24                  The court addresses each argument in turn.

25          A.        Standing and § 1983 Claim

26                  In its order on the first motion to dismiss, the court found its "interest in

27  discouraging forum shopping and avoiding duplicative litigation weighs in favor of declining to

28  entertain plaintiff's declaratory relief claim."  Order at 6.  Because plaintiff had not pled a claim

1   independent from its declaratory relief claim, such as a § 1983 claim, the court declined to

2   entertain the sole declaratory relief claim pled at that time and dismissed the complaint with leave

3   to amend.  *See id.* at 4–6 (citing, *inter alia, Brillhart v. Excess Ins. Co.*, 316 U.S. 491 (1942)).

4   Unsurprisingly, plaintiff's amended complaint includes a § 1983 claim, potentially curing the

5   problem the court identified in its first order.

6           Though defendant essentially concedes *Brillhart* abstention is not available if

7   plaintiff pleads a § 1983 claim, *see* MTD at 20, defendant argues the court still must dismiss

8   plaintiff's § 1983 claim for failure to state a claim, *see id.* at 11.  Defendant argues: (1) plaintiff

9   "has not pled facts sufficient to show that private Proposition 65 enforcers are 'state actors' for

10  purposes of section 1983, such that their actions can be fairly attributed to the Attorney General";

11  and (2) the complaint does not allege a deprivation by the Attorney General himself.  MTD at 7,

12  19.  The latter argument appears to challenge plaintiff's standing to bring the § 1983 claim against

13  the Attorney General, based on insufficiency of the pleadings, in other words, it makes a "facial

14  attack" on the complaint.  *See Safe Air for Everyone v. Myer*, 373 F.3d 1035, 1039 (9th Cir. 2004)

15  ("In a facial attack, the challenger asserts that the allegations contained in a complaint are

16  insufficient on their face to invoke federal jurisdiction.").  The court addresses this latter

17  argument below, and, because it finds plaintiff has presented sufficient evidence of a threat of

18  enforcement by the Attorney General, it need not reach the former argument.

19          "A plaintiff who challenges a statute must demonstrate a realistic danger of

20  sustaining a direct injury as a result of the statute's operation or enforcement."  *Babbitt v. United*

21  *Farm Workers Nat'l Union*, 442 U.S. 289, 298 (1979) (citation omitted).  However, the Supreme

22  Court has recognized that, especially in the First Amendment context, one "does not have to await

23  the consummation of threatened injury to obtain preventive relief.  If the injury is certainly

24  impending that is enough."  *Id.* (citation omitted); *see also Dombrowski v. Pfister*, 380 U.S. 479,

25  486 (1965) (First Amendment context).  In the case of a "pre-enforcement" § 1983 claim

26  challenging a statute, as here, plaintiff may meet the injury requirement for standing by

27  establishing a "credible threat of prosecution" by the state actor defendant.  *See Lopez v.*

28  *Candaele*, 630 F.3d 775, 785 (9th Cir. 2010) (quoting *Babbitt*, 442 U.S. at 298).  As part of this

4

1   analysis, courts in the Ninth Circuit consider (1) "whether pre-enforcement plaintiffs have failed

2   to show a reasonable likelihood that the government will enforce the challenged law against

3   them," (2) "whether the plaintiffs have failed to establish, with some degree of concrete detail,

4   that they intend to violate the challenged law," and (3) "whether the challenged law is

5   inapplicable to the plaintiffs, either by its terms or as interpreted by the government." *Id.* at 786.

6           As to the first *Lopez* factor, "plaintiffs themselves need not be the direct target of

7   government enforcement.  A history of past enforcement against parties similarly situated to the

8   plaintiffs cuts in favor of a conclusion that a threat is specific and credible." *Lopez*, 630 F.3d at

9   786–87.  Here, as plaintiff argues, the complaint alleges the Attorney General has directly

10   enforced Proposition 65 with respect to acrylamide in food.  MTD Opp'n at 14 (citing FAC ¶¶ 13,

11   54).  The complaint alleges at least two instances in which the Attorney General joined private

12   enforcers in pursuing claims against food manufacturers or restaurants for violations of

13   Proposition 65 based on food containing acrylamide.  *See* FAC ¶ 54 (describing enforcement

14   actions, in which Attorney General joined, against food manufacturers and restaurants related to

15   acrylamide warnings under Proposition 65); *see also* Norris Decl. ¶ 12 & Ex. A (*People v. Frito-

16   Lay, Inc., et al.*, L.A. Sup. Ct., BC338896 (filed Aug. 26, 2005)); *id.* ¶ 14 & Ex. C (*People v.

17   Snyders of Hanover, et al.*, Alameda Sup. Ct., No. RG09455286 (filed June 1, 2009)).  These

18   allegations "cut[] in favor of a conclusion that [the threat of enforcement of Proposition 65] is

19   specific and credible" such that, on the face of the complaint, plaintiff satisfies the first *Lopez*

20   factor.  *Lopez*, 630 F.3d at 786–87.

21           Plaintiff's allegations also satisfy the remaining *Lopez* factors, supporting the

22   conclusion plaintiff has pled a credible threat of enforcement.  First, plaintiff alleges its members

23   sell and produce food products that contain acrylamide, FAC ¶¶ 63, 64; that Proposition 65

24   requires those members to provide a cancer warning on those products, *id.* ¶¶ 7, 62–64, 66; and

25   many have opted not to provide these warnings and been threatened with litigation or sued as a

26   result by private Proposition 65 enforcers, *id.* ¶ 63.  As a result, the complaint alleges, many of

27   plaintiff's members that sell or produce acrylamide-containing food products

28

1
2
3
4

> have not yet been sued under Proposition 65 in connection with some, or all, of their acrylamide containing food products. . . . these members must either . . . provide false, misleading, and factually controversial warnings to California consumers about acrylamide in their food products . . . or face a significant and imminent risk of an enforcement action seeking substantial civil penalties and attorneys' fees for failing to do so.

5  *Id.* ¶ 64.  Finally, the parties do not dispute that, as a matter of law, the statute at issue currently

6  applies to plaintiff members who sell acrylamide-containing foods.  *See* FAC ¶¶ 4–5 (explaining

7  Proposition 65 and acrylamide warnings); *id.*¶ 63 (describing effect on plaintiff's members that

8  sell acrylamide-containing products).  Accordingly, the remaining *Lopez* factors support finding

9  plaintiff has pleaded a specific credible threat of enforcement of the Proposition 65 acrylamide

10  warning requirement by the Attorney General.  *See Bland v. Fessler*, 88 F.3d 729, 737 (9th Cir.

11  1996) (finding injury established even though Attorney General had never enforced relevant

12  statute, because civil statute placed plaintiff "between the rock of" giving up use of automatic

13  dialer, potentially in violation of his First Amendment rights, and "the hard place of violating the

14  law").  For these reasons, and keeping in mind that "when the threatened enforcement effort

15  implicates First Amendment rights, the [standing] inquiry tilts dramatically toward a finding of

16  standing," *LSO, Ltd. v. Stroh*, 205 F.3d 1146, 1155 (9th Cir. 2000), the court finds plaintiff has

17  sufficiently pled a credible threat of enforcement such that standing is satisfied.

18          Because plaintiff has alleged sufficient facts to show a credible threat of

19  enforcement by the Attorney General, defendant's motion to dismiss the § 1983 claim on this

20  basis is DENIED.  Moreover, because the Attorney General is a proper defendant for this claim,

21  the court need not address defendant's arguments with respect to the private enforcers, who are

22  not named as defendants in the operative complaint.  Finally, because plaintiff's § 1983 claim

23  survives the motion to dismiss, the court may not decline to exercise its jurisdiction over the case

24  under *Brillhart*, for the reasons discussed in the court's order on the first motion to dismiss.

25  Order at 3–4 (explaining Declaratory Judgment Act's "discretionary jurisdictional rule does not

26  apply to claims that exist independent of the request for a declaration." (internal quotation marks

27  and citation omitted)); *see also* MTD at 20 ("If the Court dismisses the Chamber's section 1983

28  claim—which it should—the Court should also dismiss the Chamber's declaratory judgment

1    claim (Count I) for the reasons stated in the Court's previous dismissal order.").  The § 1983

2    claim is a claim that "exist[s] independent of the request for a declaration," *Scotts Co. LLC v.*

3    *Seeds, Inc.*, 688 F.3d 1154, 1158 (9th Cir. 2012), which the court instead analyzes under the

4    abstention doctrine announced in *Colorado River Water Conservation District v. United States*,

5    424 U.S. 800 (1976).  *See Scotts Co. LLC*, 688 F.3d at 1158–59 (citation omitted).

6           B.      *Colorado River*

7                   In the alternative, defendant argues the court should dismiss the complaint under

8    *Colorado River Water Conservation District v. United States*, 424 U.S. 800 (1976), largely

9    repeating the same argument made in his first motion to dismiss, *see* ECF No. 21 at 20, which the

10   court did not reach in its previous order, Order at 8.

11                  In *Colorado River*, the U.S. Supreme Court recognized that, while federal courts

12   have a "virtually unflagging obligation [ ] to exercise the jurisdiction given them," dismissal of a

13   federal action may be appropriate where there is a parallel proceeding, but only in exceptional

14   circumstances.  *Colorado River*, 424 U.S. at 813, 817 ("Generally, as between state and federal

15   courts, the rule is that 'the pendency of an action in the state court is no bar to proceedings

16   concerning the same matter in the Federal court having jurisdiction. . . .'" (citation omitted)).  To

17   determine whether dismissal is proper based on a parallel proceeding, courts must consider

18   "[wise] judicial administration, giving regard to conservation of judicial resources and

19   comprehensive disposition of litigation."  *Id.* (quoting *Kerotest Mfg. Co. v. C–O–Two Fire Equip.*

20   *Co.*, 342 U.S. 180, 183 (1952)).  However, "the circumstances permitting the dismissal of a

21   federal suit due to the presence of a concurrent state proceeding for reasons of wise judicial

22   administration are considerably more limited than the circumstances appropriate" for dismissal

23   under doctrines of abstention.  *Id.* at 818.

24                  The court's "task is to ascertain whether . . . the 'clearest of justifications'" counsel

25   the surrender of federal jurisdiction.  *Moses H. Cone Memorial Hosp. v. Mercury Constr. Corp.*,

26   460 U.S. 1, 25–26 (1983).  Courts consider the following factors in deciding whether to stay or

27   dismiss a case: "(1) whether either court has assumed jurisdiction over a res; (2) the relative

28   convenience of the forums[;] (3) the desirability of avoiding piecemeal litigation[;] (4) the order

1   in which the forums obtained jurisdiction[;] (5) whether state or federal law controls; and

2   (6) whether the state proceeding is adequate to protect the parties' rights." *Nakash v. Marciano*,

3   882 F.2d 1411, 1415 (9th Cir. 1989) (internal citations omitted).  Other factors include the

4   prevention of forum shopping and the substantial similarity of the two proceedings.  *Smith v.*

5   *Cent. Ariz. Water Conservation Dist.*, 418 F.3d 1028, 1033 (9th Cir. 2005); *Travelers Indem. Co.*

6   *v. Madonna*, 914 F.2d 1364, 1368, 1372 (9th Cir. 1990).  The court evaluates these factors "with

7   the balance heavily weighted in favor of the exercise of jurisdiction."  *Moses H. Cone Mem'l*

8   *Hosp.*, 460 U.S. at 16.

9     The first of these factors is inapplicable here, because no property is at issue in this

10   case.  *See* MTD at 21.

11     The second factor weighs in favor of retaining jurisdiction, despite the fact many

12   of the private enforcers not named in the complaint are located elsewhere, MTD at 21, because

13   plaintiff California Chamber of Commerce and the only named defendant, Attorney General

14   Xavier Becerra, are located in this district.  *See* FAC ¶ 12 ("CalChamber's members

15   include several of the largest businesses in California, . . . CalChamber's members employ

16   millions of Californians."); *id.* ¶ 13 (Becerra "performs his official duties in Sacramento and

17   throughout the State of California").  Defendant's argument that plaintiff's choice to litigate this

18   matter in Sacramento may "restrict private enforcers' ability to intervene or otherwise participate

19   in this matter to protect their rights" is belied in part by the recent intervention, even if temporary,

20   of the Council For Education and Research On Toxics (CERT), one of the private enforcers of

21   Proposition 65 with a potential interest in this case.  *See* Mot. to Intervene, ECF No. 10, at 4

22   (CERT is "one of a few private enforcers of Proposition 65 that Cal Chamber has not sued in this

23   action"); Stip. to Grant Motion to Intervene, ECF No. 28; Order Granting Motion to Intervene,

24   ECF No. 29.

25     As for the third factor, "[p]iecemeal litigation occurs when different tribunals

26   consider the same issue, thereby duplicating efforts and possibly reaching different results." *Am.*

27   *Int'l Underwriters, (Philippines), Inc. v. Cont'l Ins. Co.*, 843 F.2d 1253, 1258 (9th Cir. 1988).

28   "The mere possibility of piecemeal litigation does not constitute an exceptional circumstance."

1    *R.R. St. & Co.*, 656 F.3d at 979.  Rather, "the case must raise a 'special concern about piecemeal

2    litigation,' which can be remedied by staying or dismissing the federal proceeding." *Id.* (citations

3    omitted).  Defendant argues this federal suit "would result in piecemeal litigation, as this Court

4    considers the Chamber's members' First Amendment claim while the same claim has been

5    asserted in parallel state court proceedings."  MTD at 21 (citing *Montanore Minerals Corp. v.*

6    *Bakie*, 867 F.3d 1160, 1167 (9th Cir. 2017) (need to avoid piecemeal litigation supported stay

7    where mining company had filed "two separate actions in two different courts" in pursuit of its

8    "singular goal" of "extinguishing Defendants' claimed rights")).  However, there is no indication

9    state court is likely to further address the First Amendment issue; the trial court rejected the

10   defense in at least one case, *CERT v. Starbucks*, *supra,* and California Office of Environmental

11   Health Hazard Assessment (OEHHA) recently issued a regulation establishing it does not require

12   warnings for coffee, which appears to change the landscape significantly.[2]  Opp'n at 25 (citing

13   Norris Decl. ¶¶ 6–9).  Should a state court address the issue in the future, this court could take

14   account of any decision and consider any estoppel effects.

15           Plaintiff further counters that "[m]aintaining the status quo—in which Proposition

16   65 enforcement actions concerning acrylamide in food are litigated in multiple state courts one

17   product at a time—will result (and has resulted) in piecemeal litigation," and therefore this action

18   has the potential to reduce piecemeal litigation by resolving plaintiff's First Amendment

19   challenge in a single action.  MTD Opp'n at 25.  As the court previously noted, plaintiff's First

20   Amendment claim will likely overlap with the arguments made in the roughly 38 ongoing state

21   court proceedings involving acrylamide and Proposition 65.  *See* Order at 5.  However, given the

22   possibility that the federal action could reduce piecemeal litigation if plaintiff succeeds, even if

23   the single action in this court requires complex proceedings, the court finds this factor ultimately

24   favors retaining jurisdiction.  In particular, the federal case addresses the First Amendment

25   challenge to Proposition 65 as enforced against any California business using acrylamide, which

26

27   ───────────────

28   [2] Additionally, defendants in *People v. Frito-Lay, Inc., et al.*, Los Angeles Superior Court, Case
     No. BC 338956, raised a First Amendment defense on summary judgment, which was denied.
     The case subsequently settled.  Norris Decl. ¶ 5.

1    has the potential to limit or eliminate the need for many enforcement actions against different

2    defendants with discrete products.

3              The fourth factor, on the other hand, favors dismissal, because the state court case,

4    *CERT v. Starbucks*, is well past its nascent stage, with a significant litigation history. *See* Norris

5    Decl. ¶¶ 6–9. The fifth factor, whether state or federal law controls, heavily favors retaining

6    jurisdiction, because plaintiff alleges a violation of members' rights under the First Amendment

7    to the U.S. Constitution. *See Moses H. Cone Mem'l Hosp.*, 460 U.S. at 25–26 ("[T]he presence of

8    federal-law issues must always be a major consideration weighing against surrender."). The sixth

9    factor, which evaluates "the state court's adequacy to protect federal rights," is neutral, because

10   there is no indication the state court is unable to adequately protect plaintiff's federal

11   constitutional rights in the pending litigation. *Travelers Indem. Co. v. Madonna*, 914 F.2d at

12   1370 ("[I]t appears that this Circuit has not applied [the sixth factor] against the exercise of

13   federal jurisdiction, only in favor of it. . . . [and] [t]his factor, like choice of law, is more

14   important when it weighs in favor of federal jurisdiction" (citations omitted)).

15             Defendant also argues the court should dismiss this case under *Colorado River* to

16   discourage forum shopping. *See* MTD at 22. In the *Colorado River* context, the Ninth Circuit

17   has held that forum shopping weighs in favor of a stay or dismissal when the party opposing a

18   stay seeks to avoid adverse rulings made by a state court or to gain a tactical advantage from the

19   application of federal court rules. *Travelers Indem. Co*, 914 F.2d at 1371 (citations omitted).

20   There is no evidence here suggesting plaintiff seeks to gain a tactical advantage from the

21   application of the federal court's rules, and, because plaintiff's amended complaint seeks only

22   declaratory relief and an injunction restraining future enforcement, it does not appear plaintiff

23   seeks to avoid adverse rulings already made by the state court, namely in *CERT v. Starbucks*. *See*

24   FAC at 26 (requesting "prospective preliminary and permanent injunctions, . . . prohibiting

25   Defendant or any of its officers, . . . from enforcing or threatening to enforce in the future the

26   Proposition 65 warning requirement for cancer with respect to acrylamide . . . ."). Moreover, as

27   noted above, this court can remain alert to any possible effects of future state court decisions.

28   Accordingly, dismissal is not warranted on this basis.

1    In sum, the desirability of avoiding piecemeal litigation and the fact federal law

2   applies both favor retaining jurisdiction, while the order in which the forums obtained jurisdiction

3   favors remanding to state court.  The balance of factors favors retaining jurisdiction.  Having

4   carefully considered the question, recognizing the likely complexity of the case that will proceed

5   here, this court heeds the Supreme Court's caution that a court should dismiss or stay such an

6   action only in exceptional circumstances.  *See Moses H. Cone Memorial Hosp.*, 460 U.S. at 25–

7   26.  No such exceptional circumstances exist here, and the court declines to dismiss the case

8   based on *Colorado River*.

9    C.    Conclusion

10   For the foregoing reasons, the court DENIES defendant's motion to dismiss.

11  IV.    CERT'S MOTION FOR ATTORNEYS' FEES

12   Defendant-intervenor CERT has argued it is entitled to attorney's fees under two

13  statutes: (1) California Code of Civil Procedure § 1021.5, and (2) 42 U.S.C. § 1988.  MAF at 7,

14  21.  For the reasons below, the court DENIES the motion.

15   As to the first statute, California Code of Civil Procedure § 1021.5 applies only to

16  state law claims under the *Erie* doctrine.  *See Klein v. City of Laguna Beach*, 810 F.3d 693, 701–

17  02 (9th Cir. 2016) (citing *Erie R. Co. v. Tompkins*, 304 U.S. 64, 78 (1938)).  Plaintiff brought this

18  case in federal court, making a claim under the Declaratory Judgments Act for a violation of the

19  First Amendment of the U.S. Constitution in his original complaint.  Because this is a claim under

20  federal law, the court applies federal law to the question of attorneys' fees, as explained in *Klein*

21  *v. City of Laguna Beach,* 810 F.3d at 701–02 ("[F]ederal courts apply state law for attorneys' fees

22  to state claims because of the *Erie* doctrine, and *Erie* does not compel federal courts to apply state

23  law to a federal claim.").

24   CERT argues that plaintiff's claim challenged a state statute, and therefore the

25  central question at issue in the suit was one of state law, relying primarily on the Ninth Circuit

26  case, *Independent Living Center of Southern California, Inc. v. Kent*, 909 F.3d 272 (9th Cir.

27  2018).  However, *Kent* does not apply to the facts of this case; in *Kent*, the Ninth Circuit held that

28  state law on attorneys' fees applied to a claim challenging a state statute based on the Supremacy

Clause, because the cause of action was a state one, namely a Writ of Mandate based on section 1085 of California's Code of Civil Procedure. *Id.* at 283 ("Because the § 1085 Writ is a state-law cause of action, we look to California law to determine whether attorneys' fees are available to Appellants under § 1021.5 of the California Code of Civil Procedure.").  Here, as noted, the court can only fairly interpret the relevant "cause of action" as one invoking the First Amendment of the U.S. Constitution itself, even if the claim as originally pled was dismissed as not cognizable. *See* Compl. at 20.  Therefore, attorneys' fees are unavailable to CERT under California Code of Civil Procedure section 1021.5, because plaintiff's cause of is not derived from state law.

CERT's second argument is that attorneys' fees may be awarded under 42 U.S.C. § 1988.  But as the court noted in its first Order on the Motions to Dismiss, plaintiff's original complaint did not contain a § 1983 claim.  *See* Order at 4.  Therefore, § 1988 does not apply here, because it only provides for the award of attorneys' fees "in any action or proceeding to enforce a provision of [§ 1983]," and other statutes inapplicable here.  *See* 42 U.S.C. § 1983(b).

In sum, CERT's arguments for attorneys' fees are unavailing, and the court DENIES the motion.

V.      CONCLUSION

Defendant Becerra's motion to dismiss is DENIED, plaintiff's request for judicial notice is GRANTED in part, and defendant Becerra's request for judicial notice is GRANTED.  CERT's motion for attorneys' fees is DENIED.

Given these determinations and the discussion that took place at hearing, the parties are hereby ORDERED to meet and confer with 21 days to discuss whether defendant CERT's request for entry of judgment, ECF No. 73, is still properly before the court, or whether it can be more efficiently resolved by stipulation.  The parties shall file a joint report on the status of this meet and confer within 30 days.

The court sets a scheduling conference in this case on **Thursday, October 8, 2020 at 2:30 PM in Courtroom Three**.  The parties SHALL submit a joint status report fourteen days prior.  *See* E.D. L.R. 240.

IT IS SO ORDERED.

1    This order resolves ECF Nos. 59, 60, 66, and 79.

2    DATED:  August 26, 2020.

CHIEF UNITED STATES DISTRICT JUDGE