Trenton H. Norris (CA Bar No. 164781)
Sarah Esmaili (CA Bar No. 206053)
S. Zachary Fayne (CA Bar No. 307288)
David Barnes (CA Bar No. 318547)
ARNOLD & PORTER KAYE SCHOLER LLP
Three Embarcadero Center, 10th Floor
San Francisco, CA 94111
Telephone:  (415) 471-3100
Facsimile:  (415) 471-3400
trent.norris@arnoldporter.com
*Attorneys for California Chamber of Commerce*

*(additional counsel on signature page)*

# UNITED STATES DISTRICT COURT

# EASTERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| CALIFORNIA CHAMBER OF COMMERCE,<br><br>Plaintiff,<br><br>v.<br><br>XAVIER BECERRA, IN HIS OFFICIAL CAPACITY AS ATTORNEY GENERAL OF THE STATE OF CALIFORNIA,<br><br>Defendant. | No. 2:19-cv-02019-KJM-EFB<br><br>**JOINT STATUS REPORT**<br><br>Date:             October 8, 2020<br>Time:            2:30 p.m.<br>Courtroom:   Courtroom 3 (15th Floor)<br>Judge:          Hon. Kimberly J. Mueller<br>Action Filed:  October 7, 2019 |

Pursuant to the Court's August 27, 2020 Order (ECF No. 84), Plaintiff California Chamber of Commerce ("CalChamber"), defendant Xavier Becerra, in his official capacity as Attorney General of the State of California ("Attorney General"), and Defendant-Intervenor Council for Education and Research on Toxics ("CERT") hereby submit the following Joint Status Report.  This Joint Status Report addresses both the status of the meet and confer between CalChamber and CERT regarding CERT's pending motion for entry of judgment (ECF No. 73) and general scheduling issues in advance of the October 8, 2020 scheduling conference.

**I.      Status of CalChamber/CERT Meet and Confer**

CalChamber and CERT met and conferred by telephone on September 2, 2020 and were

not able to reach agreement on a stipulation to resolve CERT's pending request for entry of judgment (ECF No. 73).  The parties' respective positions are set forth below.

### A. CERT's Position

#### 1. CERT's Pending Motion for Entry of Judgment

Counsel for CERT and CalChamber met and conferred regarding this issue but were unable to resolve this matter by stipulation.

CERT believes that CalChamber's omission of CERT from CalChamber's Amended Complaint effected a dismissal with prejudice of CERT from the case and that a formal order to such effect should be entered by the Court.  However, CERT is only desirous of being dismissed from this case *with prejudice,* i.e., that CERT will have prevailed in this case and may therefore not be enjoined in the future from exercising its First Amendment Free Speech right of mailing Proposition 65 notices regarding acrylamide in food or from exercising its First Amendment Petition right of filing new Proposition 65 cases regarding acrylamide in food, as CERT has done for the past 18 years.  CERT is especially concerned that it not be "derivatively" enjoined as a private enforcer from exercising its First Amendment rights should this Court enjoin Defendant, Xavier Becerra, from enforcing Proposition 65.

CalChamber's counsel advised that CalChamber would agree to CERT being dismissed from this case, but only pursuant to a proposed order of dismissal that negates the dismissal as being with prejudice and which would therefore enable CalChamber to derivatively enjoin CERT's exercise of its First Amendment rights should CalChamber prevail against the State.  CERT therefore believes that the Court should rule on CERT's pending request for entry of judgment and to execute and file the proposed order of dismissal with prejudice submitted by CERT's counsel.  Alternatively, if the Court is disinclined to dismiss CERT with prejudice from this case, CERT requests that the Court deny CERT's request to enter that order while fully preserving CERT's rights as an Intervenor-Defendant in this case, as provided below.

#### 2. Recognition of CERT's Rights as an Intervenor-Defendant

Since this Court granted CERT's motion to intervene as an Intervenor-Defendant, CERT not only has all the obligations of a defendant in this case, but also has all the rights of a

1 defendant.  Intervenors "enter the suit with the status of original parties and are fully bound by all
2 future court orders." *United States v. State of Or.* (9th Cir. 1981) 657 F.2d 1009, 1014; see also
3 *Schneider v. Dumbarton Developers, Inc.* (D.C. Cir. 1985) 767 F.2d 1007, 1017 ("When a party
4 intervenes, it becomes a full participant in the lawsuit and is treated just as if it were an original
5 party."); *Alvarado v. J.C. Penney Co.* (10th Cir. 1993) 997 F.2d 803, 805 ("We agree that when a
6 party intervenes, it becomes a full participant in the lawsuit and is treated just as if it were an
7 original party.").  In this case, CERT did not even have to resort to an adversarial process in order
8 to intervene, as both CalChamber and Defendant Xavier Becerra stipulated to CERT's
9 intervention on November 11, 2019. (ECF No. 28)  Four days later, the Court signed an order
10 granting CERT's motion to intervene as a party defendant. (ECF No. 29)  At that point, CERT
11 entered the case with the same rights and obligations as an original party.

12 Since CERT has the same rights as an original party to the case, CERT has the right to
13 defend against any injunctive relief sought by CalChamber against Xavier Becerra.  The Attorney
14 General is the primary enforcer of Proposition 65 in California and the rights of private citizens to
15 enforce Proposition 65 are secondary to the Attorney General's right, as the chief law
16 enforcement officer of the State, to enforce Proposition 65.  Accordingly, if this court were to
17 enjoin Xavier Becerra from enforcing Proposition 65 with respect to acrylamide in food,
18 CalChamber and its counsel would assert that Intervenor Council for Education and Research on
19 Toxics (CERT) cannot enforce Proposition 65 on the basis that CERT is allegedly "in privity"
20 with the Attorney General, as CalChamber has alleged in its complaint.  Accordingly, as an
21 Defendant-Intervenor, CERT has the right to defend this case which seeks to derivatively enjoin
22 CERT from exercising its First Amendment rights to enforce Proposition 65 as a private enforcer,
23 even though CalChamber refused to name CERT as a Defendant in this case and make any
24 specific allegations against CERT.

25 If CERT is not to be dismissed with prejudice from this case, CalChamber and its counsel
26 should therefore acknowledge that CERT is a defendant in this case and has all the rights of a
27 defendant.  At a minimum, this means CalChamber and its counsel should acknowledge, in its
28 pleadings, that CERT is a defendant in this case.

**3.     Necessity of Amendment of CalChamber's Amended Complaint**

CalChamber's Amended Complaint does not acknowledge that CERT intervened in this case and that is a defendant in this case. Indeed, CalChamber's amended complaint does not make any allegations about CERT. If CalChamber does not agree that its actions resulted in a dismissal of CERT with prejudice, then CalChamber should be required to amend its complaint to make specific allegations against CERT that would entitle CalChamber to relief against CERT should it prevail. CalChamber also needs to amend its complaint not merely to assert that it is only seeking "prospective" relief, but to clearly state that it will not seek any injunction against CERT's continued litigation of the *CERT v. Starbucks* case, which this court has already held would violate the Anti- Injunction Act. While CalChamber amended its complaint to allege that it is only seeking "prospective" relief, this is inadequate, because injunctive relief only operates prospectively. Rather, CalChamber must make it clear in its pleadings that it is not seeking and will not seek any relief against CERT with respect to the *CERT v. Starbucks* case, whether retrospective or prospective.

**4.     CERT's Right to Challenge the Sufficiency of CalChamber's Complaint Once Amended**

CERT should also be allowed to challenge the sufficiency of CalChamber's amended complaint if the Court determines that CERT has not already been dismissed from this case. In ruling on CERT's motion to dismiss CalChamber's original complaint, the Court granted CERT's motion to dismiss based on the Anti-Injunction Act, but did not rule on CERT's motion to dismiss based on abstention doctrines, to with the *Rooker-Feldman* doctrine, *Younger* abstention, and *Colorado River* abstention. While the Court denied Xavier Becerra's motion to dismiss based on *Colorado River,* this Court has not ruled on the other abstention doctrines asserted by CERT in its motion to dismiss the original complaint. Accordingly, CERT should be permitted to challenge the sufficiency of CalChamber's First Amended Complaint (or such other amended complaint to be filed by CalChamber) based on these doctrines, as well as any other theories that CERT's counsel deems appropriate.

1   CalChamber's counsel asserts that CERT may not challenge the sufficiency of
2   CalChamber's First Amended Complaint, writing: "CERT has waived its right to file a further
3   motion to dismiss the operative complaint because CalChamber filed that complaint (its First
4   Amended Complaint) on March 16, now almost six months ago.  The AG challenged the FAC by
5   motion to dismiss.  CERT had the same opportunity but did not do so.  Indeed, CERT did not
6   participate in the meet and confer session on the AG's motion.  If CERT had intended to move to
7   dismiss the First Amended Complaint, it should have done so at that time."  However, this
8   argument ignores the fact that CERT believed that CalChamber's filing of its amended complaint
9   which made no allegations against CERT effected a dismissal of CERT from the case and CERT
10  therefore filed a request for entry of an order of dismissal to clarify that it has been dismissed
11  from the case with prejudice, which request has not yet been ruled on by the Court.  If CERT is
12  correct that it was dismissed from this case, then CERT would lack standing to move to dismiss
13  CalChamber's First Amended Complaint and would have no reason to do so.  Thus, it is
14  premature for CERT to file a motion to dismiss CalChamber's amended complaint until the Court
15  determines whether CERT has already been dismissed.  CERT should not be precluded from
16  seeking to dismiss CalChamber's amended complaint, especially because ***CalChamber's counsel***
17  ***did not deny that CERT had been dismissed from this case*** when CERT's counsel inquired of
18  CalChamber's counsel whether it was his intent to dismiss CERT.

### 5.   CalChamber's Intent to File a Renewed Motion for Preliminary Injunction

21  The Court may recall that since the Court granted the motions filed by Becerra and CERT
22  to dismiss CalChamber's original complaint, it did so with leave for CalChamber to amend its
23  complaint to allege a claim under 28 USC § 1983, and that the Court denied CalChamber's
24  motion for a preliminary injunction for lack of a pending complaint upon which the motion could
25  be granted.
26  When counsel for CalChamber and CERT met and conferred, CERT's counsel (Mr.
27  Metzger) also asked CalChamber's counsel (Mr. Norris) whether CalChamber would be filing a
28  motion for a preliminary injunction based on its amended complaint. Mr. Norris informed Mr.

1   Metzger that he believed there was new scientific evidence that would support the filing of a new
2   motion for preliminary injunction and informed Mr. Metzger that he would be filing a new
3   motion for a preliminary injunction. CERT's counsel pointed out that CERT had opposed
4   CalChamber's initial motion for preliminary injunction not merely on the basis that CalChamber
5   was unlikely to succeed on the merits (as CERT had already defeated the First Amendment
6   defense during the lengthy Phase 1 trial of the *CERT v. Starbucks* case), but that this Court could
7   not grant that motion as to CERT, because issuance of a preliminary injunction against CERT
8   would constitute an unlawful prior restraint against CERT's First Amendment right to free speech
9   (mailing notices of violations to companies violating Proposition 65 with respect to acrylamide in
10  food), as well as CERT's First Amendment right to petition (filing Proposition 65 cases against
11  companies who violate Proposition 65). Based upon the large body of case law holding that
12  preliminary injunctions constitute prior restraints on speech and therefore may not issue to enjoin
13  the exercise of First Amendment rights, CERT believes that the filing of a renewed motion for a
14  preliminary injunction by CalChamber against CERT would be frivolous and subject CalChamber
15  and its counsel to Rule 11 sanctions.

16        **B.**     **CalChamber's Position**

17             **1.**     **CERT's Request for Entry of Judgment**

18  As CalChamber explained in its response to CERT's request for entry of judgment (ECF
19  No. 76), CERT's contention that CalChamber voluntarily dismissed its claims against CERT by
20  not naming CERT as a defendant in the Amended Complaint is meritless. CalChamber is not
21  aware of any rule or authority that requires a plaintiff to name a *defendant-intervenor* in an
22  amended complaint, and CERT has not provided any such authority during the prior meet-and-
23  confer process, in its filings with the Court, or in the recent meet-and-confer process ordered by
24  the Court. As such, CERT's request for entry of judgment and dismissal of CERT with prejudice
25  is unfounded. In effect, what CERT is seeking, should CalChamber prevail on its claims against
26  the Attorney General, is a license to be the sole enforcer of Proposition 65 with respect to
27  acrylamide in food -- alone among all private enforcers, the Attorney General, District Attorneys,
28  and City Attorneys. That would be an absurd and untenable result that cannot flow from the

1  Court's simply having granted CERT's motion to dismiss with leave for CalChamber to amend
2  its complaint.

3  Nevertheless, in the interest of resolving CERT's concerns regarding potential
4  interference with the pending *CERT v. Starbucks* case, CalChamber offered to stipulate to
5  dismissal of its First Amendment claim to the extent it sought an injunction of pending state court
6  actions, including the *Starbucks* case.  CERT rejected this offer and refused to consider a
7  stipulated dismissal that more accurately characterizes the procedural posture and circumstances
8  of CERT's potential dismissal from this case and that does not include payment of CERT's
9  claimed attorney's fees.  Therefore, CalChamber believes that CERT should withdraw its request
10 for entry of judgment, or the Court should deny it, and CERT can then remain a defendant-
11 intervenor in this case if that is what CERT wishes.

**2.     CalChamber Is Not Required to Amend Its Complaint**

13 CERT's contention that CalChamber must now amend its complaint a second time to
14 name CERT and "make specific allegations against CERT that would entitle CalChamber to relief
15 against CERT" is similarly misguided.  CalChamber did not sue CERT, does not assert any
16 claims against CERT, and does not seek any relief directly against CERT.  CERT voluntarily
17 intervened in this case because it did not believe the Attorney General would adequately protect
18 its interests, and CalChamber stipulated to CERT's intervention to expedite the proceedings and
19 the Court's consideration of the merits.  CalChamber does not dispute that CERT is now a party
20 to the case, but that does not mean that CalChamber is required to amend its complaint to make
21 specific allegations against CERT.  Indeed, if that were correct, plaintiffs would be required to
22 amend their complaints every time a third party intervened, which clearly is not the rule.  In the
23 extensive meet-and-confer process on this issue, CERT has not cited any authority for its
24 position.

25 Likewise, CERT contends that CalChamber must amend its complaint to "clearly state
26 that it will not seek any injunction against CERT's continued litigation of the *CERT v. Starbucks*
27 case."  This argument, too, is misplaced.  As CERT acknowledges, the Amended Complaint
28 already states that CalChamber seeks prospective relief, only.  Further, the Prayer for Relief states

expressly that it "exclud[es] Proposition 65 acrylamide claims that are currently pending in state court," such as the *Starbucks* case. ECF No. 57 at 25. As such, the operative complaint already makes clear that CalChamber does not seek relief concerning the *Starbucks* case. CERT's assertion that CalChamber must amend its complaint in this manner is particularly puzzling given that CalChamber has proposed a stipulation that makes clear that this case will have no effect on the *Starbucks* case—now or in the future—which proposed stipulation CERT rejected. It is likewise of no moment because the Los Angeles Superior Court has recently granted summary judgment to the defendants in the *Starbucks* case based on the regulation at section 25704 of title 27, California Code of Regulations ("Exposures to chemicals in coffee, listed on or before March 15, 2019 as known to the state to cause cancer, that are created by and inherent in the processes of roasting coffee beans or brewing coffee do not pose a significant risk of cancer.").

It appears that CERT's real objection is that it did not have an opportunity to move to dismiss CalChamber's Amended Complaint. That, of course, is not true. CERT had the same opportunity to file a motion to dismiss the Amended Complaint as the Attorney General; it simply chose not to, instead unilaterally declaring victory and filing a baseless motion for attorneys' fees. At this stage of the case, CERT has missed its deadline to file a motion to dismiss the Amended Complaint—which was filed more than six months ago—and CERT should not be afforded another opportunity to impede the Court's orderly consideration of this case because of CERT's own strategic gambit. *See* Fed. R. Civ. P. 12. In any event, CERT will not be prejudiced by this result because it can still raise its *Younger* and *Rooker-Feldman* arguments via other procedural mechanisms if it chooses to do so.

### 3.     CalChamber's Forthcoming Motion for a Preliminary Injunction

CalChamber's forthcoming motion for a preliminary injunction is not currently at issue, and therefore it is unclear why CERT addresses it in its position statement on the meet and confer. CalChamber will address CERT's strained arguments on the merits of that motion at the appropriate time—i.e., when the motion is actually filed and briefed—but simply notes here that CERT's preemptive threat to seek Rule 11 sanctions is unfounded.

**II.     Status Report for October 8, 2020 Scheduling Conference**

The parties submitted an initial Joint Scheduling Report on December 6, 2019 (ECF No. 34).  This Joint Status Report provides updates on several of the items set forth in that report.

**A.     Anticipated Discovery and Scheduling of Discovery**

**1.     Initial Disclosures and Discovery Conferences**

CalChamber proposes that the parties exchange their initial disclosures under Rule 26(a)(1) by October 15, 2020, or on such other date as the Court may direct.

The Attorney General proposes, consistent with the Joint Scheduling Report submitted by the parties the on December 6, 2019 [ECF No. 34], that the parties exchange their initial disclosures within 14 days of the Court's order on CalChamber's motion for preliminary injunction.

CalChamber and the Attorney General agree that they will supplement their initial disclosures as necessary in accordance with the applicable rules.  They also agree that the Court should schedule a further discovery conference after it rules on CalChamber's Motion for a Preliminary Injunction.

CERT contends that the initial disclosures should not take place until after the Court has ruled on CERT's motion for entry of judgment and until after the Court has ruled on CERT's motions to abstain on those grounds previously asserted in CERT's motion to dismiss which the Court has not yet ruled upon (whether or not the Court determines that CalChamber should amend its complaint to make allegations against CERT).

**2.     Subjects on Which Discovery May Be Needed:**

CalChamber.  CalChamber anticipates seeking discovery of information in the possession of the Attorney General and the California Office of Environmental Health Hazard Assessment ("OEHHA")—which is responsible for implementing the Proposition 65 statute—that relates to the question of whether acrylamide causes cancer in humans and what the State of California knows about this subject.  CalChamber contends that much of the discovery contemplated by the Attorney General and CERT is overbroad and irrelevant under the First Amendment and other

1  applicable legal standards.  Should such discovery be sought, CalChamber will seek a protective
2  order.

3  Attorney General.  The Attorney General contends that significant fact discovery may not
4  be necessary, as the Court can dispose of the primary legal issues in this matter in its ruling on
5  CalChamber's motion for preliminary injunction.  However, depending on the basis for the
6  Court's ruling, discovery may be needed to provide additional factual context for any issues that
7  remain.  For that reason, the Attorney General contends that discovery should not begin until after
8  the Court rules on CalChamber's motion for preliminary injunction.

9  The Attorney General contends that the discovery contemplated by CERT from the
10 Attorney General, including "the State's conduct with respect to the regulation and enforcement
11 of Proposition 65, particularly regarding the topic of acrylamide in food," is overbroad and
12 irrelevant.  Moreover, because California is not a unitary government, the Attorney General
13 would object to producing any information in the custody, possession, and control of state
14 agencies outside the California Department of Justice.  *See, e.g., People ex re. Lockyer v.*
15 *Superior Court*, 122 Cal.App.4th 1060, 1078-80 (Cal. Ct. App. 2004) (denying a motion that
16 sought to compel one California state agency to provide information in other agencies' custody,
17 possession, or control.)  Should CERT seek such discovery, the Attorney General will seek a
18 protective order.

19 CERT.  CERT anticipates seeking fact and document discovery on a number of topics,
20 including but not limited to (1) The identities of CalChamber members who are also defendants in
21 the ongoing *CERT v. Starbucks* coffee litigation; (2) The identities of CalChamber members who
22 claim to have been injured as a result of the requirement for health warnings concerning
23 acrylamide in food products; (3) The nature and scope of the purported injury to CalChamber
24 members resulting from the giving of Proposition 65 health warnings; (4) the scientific basis for
25 CalChamber's claims regarding the health impacts of acrylamide; (5) the measures that
26 CalChamber members have undertaken to reduce the level of acrylamide in their products; and
27 (6) the State's conduct with respect to the regulation and enforcement of Proposition 65,
28 particularly regarding the topic of acrylamide in food; (6) the purported factual basis for the

opinions expressed by CalChamber's expert witnesses in their declarations filed in support of CalChamber's motion for a preliminary injunction.

**3.    Whether Discovery Should Be Phased**

CalChamber and the AG do not currently propose to conduct discovery in phases.

CERT believes that discovery should be conducted in two phases: Phase 1 regarding standing issues and other matters that do not require expert testimony, Phase 2 regarding the scientific issues involving expert testimony.

**4.    Proposed Changes to FRCP Discovery**

The parties do not currently propose any changes to the limits on discovery set forth in the Federal Rules of Civil Procedure.

**5.    Expert Witness Disclosures**

CalChamber.  CalChamber proposes the following tentative dates for affirmative and rebuttal expert disclosures:

- Affirmative Expert Disclosures:  February 12, 2021
- Rebuttal Expert Disclosures:  March 12, 2021

Attorney General.  The Attorney General proposes the following tentative dates for affirmative and rebuttal expert disclosures:

- Affirmative Expert Disclosures:  March 12, 2021
- Rebuttal Expert Disclosures:  April 12, 2021

CERT.  CERT contends that it is premature to propose dates related to expert discovery, because the parties have not yet commenced fact discovery.

**6.    Discovery Cutoff**

CalChamber.  CalChamber proposes the following tentative cutoff dates for fact and expert discovery:

- Fact Discovery Cutoff:  January 15, 2021
- Expert Discovery Cutoff:  April 12, 2021

Attorney General.  The Attorney General proposes the following tentative cutoff dates for fact and expert discovery:

- Fact Discovery Cutoff:  May 15, 2021
- Expert Discovery Cutoff:  June 15, 2021

<u>CERT.</u>  CERT contends that it is premature to propose a date for the cutoff of fact and expert discovery.

**B.     Dispositive and Non-Dispositive Motions:**

<u>CalChamber.</u>  CalChamber plans to update and renew the motion for a preliminary injunction that it originally filed on November 8, 2019 [ECF No. 26] but which was taken off calendar in light of the Court's ruling on the first set of motions to dismiss [ECF No. 54].  Since CalChamber filed this lawsuit almost precisely one year before the upcoming status conference, private enforcers have served food companies with more than 250 notices of alleged violation concerning acrylamide, have served 36 new Proposition 65 acrylamide lawsuits against food companies in California Superior Courts, and have received payments of $3,168,000 from food companies under 21 court-approved settlements and 6 out-of-court settlements.  CalChamber's members urgently need interim relief from this Court to prevent further infringement of their First Amendment rights.  To accommodate the upcoming parental leave of opposing counsel, CalChamber intends to set its motion for hearing on December 11 and is meeting and conferring with the Attorney General concerning an extended briefing schedule on which CalChamber anticipates reporting to the Court at the Status Conference.

CalChamber also anticipates filing a motion for summary judgment and disagrees with CERT's contention that the issues raised in CalChamber's complaint can only be resolved by way of an extensive trial.  CalChamber does not currently anticipate filing any other non-discovery motions (excluding motions in limine or other trial motions).  CalChamber proposes the following tentative date by which all non-discovery motions (including dispositive motions) shall be heard:  July 16, 2021.

<u>Attorney General.</u>  The Attorney General anticipates filing a motion for summary judgment after the close of discovery.  The Attorney General does not currently anticipate filing any other non-discovery motions (excluding motions in limine or other trial motions).  The

1  Attorney General proposes the following tentative date by which all non-discovery motions shall
2  be heard: October 15, 2021.

3  <u>CERT.</u>  CERT contends that CalChamber's filing of a renewed motion for preliminary
4  injunction against CERT would be frivolous and subject Cal Chamber and its counsel to Rule 11
5  sanctions, because the Court cannot grant such a motion against CERT, because such an order
6  would constitute an unlawful prior restraint on CERT's petition and free speech rights in violation
7  of the First Amendment.  Additionally, CERT contends that this case presents a multitude of
8  triable issues of fact that would defy the use of dispositive motions by any party.  Instead, the
9  issues raised by CalChamber in its complaint can only be resolved by way of an extensive trial
10 involving wide-ranging expert scientific and technical testimony regarding the acrylamide content
11 of multiple types of foods and consequent human exposure to acrylamide from different types of
12 foods.  CERT bases this contention on the fact that its litigation concerning acrylamide in coffee
13 required a three-month bench trial in order to resolve the defendants' First Amendment defense, a
14 defense that was inextricably intertwined with the scientific questions concerning the presence
15 and amount of acrylamide in coffee, and its resulting health impacts.  Given that the complaint
16 before this Court involves numerous additional sources of acrylamide, CERT anticipates that the
17 trial will be exponentially more extensive in scope.  CERT does not currently anticipate filing any
18 other non-discovery motions (excluding motions in limine or other trial motions).  However,
19 CERT contends that it is premature to propose any dates by which non-discovery motions shall be
20 heard.

21 **C.     Unnecessary Proof/Cumulative Evidence and Expert Limitations**
22 The parties will endeavor to stipulate to undisputed facts in order to limit unnecessary or
23 cumulative discovery.  The parties do not currently anticipate any limitations or restrictions on the
24 use of testimony under Federal Rule of Evidence 702.

25 **D.     Final Pretrial Conference**
26 The parties propose that the final pretrial conference be held 14 days before the trial date.

27 **E.     Trial**
28 The parties believe that it is premature to propose a trial date.  No party has demanded a

jury.  CalChamber estimates that a 2 to 3 day bench trial may be necessary.  The Attorney General believes it is premature to estimate the length of trial at this early juncture.  CERT estimates that the trial of this matter will require at least six months, and possibly up to a year, to complete, unless CalChamber drastically limits the number and type of acrylamide-containing foods for which it seeks to deem Proposition 65 warnings violative of the First Amendment.

### F.     Magistrate Judge

The parties have not consented to the jurisdiction of a U.S. Magistrate Judge.

### G.     Pretrial Procedures

The parties do not currently propose any changes to the standard pretrial procedures.

### H.     Settlement

The parties do not believe that this case is conducive to settlement and agree that this case does not warrant referral to Voluntary Dispute Resolution or a court-convened settlement conference.

Dated: September 24, 2020                                    Respectfully submitted,

By: */s/ Trenton H. Norris*
Trenton H. Norris (CA Bar No. 164781)
Sarah Esmaili (CA Bar No. 206053)
S. Zachary Fayne (CA Bar No. 307288)
David M. Barnes (CA Bar No. 318547)
ARNOLD & PORTER KAYE SCHOLER LLP
Three Embarcadero Center, 10th Floor
San Francisco, CA 94111-4024
Tel:  (415) 471-3100
trent.norris@arnoldporter.com

*Attorneys for Plaintiff California Chamber of Commerce*

| | | |
|---|---|---|
| 1 | Dated: September 24, 2020 | Respectfully submitted, |
| 2 | | XAVIER BECERRA |
| 3 | | Attorney General of California |
| | | HARRISON M. POLLAK |
| 4 | | Supervising Deputy Attorney General |

By: */s/ Joshua R. Purtle (as authorized on 9/24/20*
JOSHUA R. PURTLE
Deputy Attorneys General
OFFICE OF THE ATTORNEY GENERAL
600 West Broadway, Suite 1800
San Diego, CA 92101
Tel:  (619) 738-9305
John.Everett@doj.ca.gov

*Attorneys for Xavier Becerra, Attorney General of the State of California*

Dated: September 24, 2020                    Respectfully submitted,

By: */s/ Raphael Metzger (as authorized on 9/23/20*
Raphael Metzger, Esq.
METZGER LAW GROUP
A Professional Law Corporation
401 E. Ocean Blvd., Suite 800
Long Beach, CA 90802
Tel:  (562) 437-4499
rmetzger@toxictorts.com

*Attorneys for Intervenor-Defendant, Council for Education and Research on Toxics ("CERT")*