POULSEN LAW P.C.
Aida Poulsen, Esq., SBN 333117
282 11th Avenue, Suite 2612
New York, NY 10001
Telephone: (646) 776-5999

ATTORNEYS FOR PROPOSED INTERVENOR-DEFENDANT
PENNY NEWMAN

# UNITED STATES DISTRICT COURT
## FOR THE EASTERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| CALIFORNIA CHAMBER OF COMMERCE,<br><br>     PLAINTIFF,<br><br>vs.<br><br>ROB BONTA, IN HIS OFFICIAL CAPACITY AS ATTORNEY GENERAL OF THE STATE OF CALIFORNIA,<br><br>     DEFENDANT,<br><br>and<br><br>COUNCIL FOR EDUCATION AND RESEARCH ON TOXICS,<br><br>     DEFENDANT-INTERVENOR | Civil Action No. 2:19-cv-02019-KJM-EFB<br><br>**PENNY NEWMAN'S NOTICE OF MOTION; MOTION TO INTERVENE; MEMORANDUM OF POINTS AND AUTHORITIES**<br><br>DATE:    August 6, 2021<br>TIME:    10:00 a.m.<br>ROOM:   3 (15th Floor)<br>JUDGE:  Kimberly A. Mueller |

# TABLE OF CONTENTS

**MEMORANDUM OF POINTS AND AUTHORITIES**....................................................... 1

    **I.   BACKGROUND**............................................................................................. 1

        A.  Procedural background.................................................................... 1

        B.  Factual background ......................................................................... 1

            1.  Newman, an elementary school aide, and Prop. 65's inception. ................................. 1

            2.  Prop. 65 enacted to remedy government inadequacy by activating private enforcers.. 3

            3.  Foods and Proposition 65.................................................. 3

            4.  Proposition 65 and Newman's role as proponent. ...................................... 4

    **II.  LEGAL ARGUMENT**................................................................................. 5

        A.  Standing:  Newman is not invoking court's jurisdiction or asserting new claims. .............. 5

        B.  Newman is entitled to intervene as of right .................................................. 7

            1.  Newman's motion is timely ........................................................ 7

                a.  Stage of proceeding................................................ 7

                b.  Prejudice to existing parties ......................................... 8

                c.  The reason for and length of the delay................................. 9

            2.  Newman has a significantly protectable interest. ......................................... 9

            3.  Newman's ability to protect her interest may be impaired. .................................. 10

            4.  The existing parties do not adequately represent Newman. ..................................... 13

                a.  AG is deeply averse to Newman.................................... 13

                b.  CERT or HLF would not represent Newman ..................................... 14

         C.  Permissive Intervention.................................................................. 15

**CONCLUSION** .................................................................................................. 15

# TABLE OF AUTHORITIES

**Cases**

Arakaki v. Cayetano, 324 F.3d 1078 (9th Cir. 2003) .................................................... 7, 13, 14

Blake v. Pallan, 554 F.2d 947 (9th Cir. 1977) ...................................................................... 14

Buck v. Gordon, 959 F.3d 219 (6th Cir. 2020)....................................................................... 15

Buffin v. City & Cty. of San Francisco, 2019 U.S.Dist.LEXIS 34253,

   at *23-25 (N.D.Cal. Mar. 4, 2019, No. 15-cv-04959-YGR)..................................................... 6

California ex rel. Lockyer v. United States, 450 F.3d 436 (9th Cir. 2006). .............................. 9

County of Fresno v. Andrus, 622 F.2d 436 (9th Cir. 1980)...................................................... 13

Day v. Apoliona, 505 F.3d 963 (9th Cir. 2007)........................................................................ 9

Defenders of Wildlife v. Johanns (N.D.Cal. Dec. 1, 2005, No. C 04-4512 PJH)

   2005 U.S.Dist.LEXIS 34455, at *11-12 ................................................................................ 8

Diamond, 476 U.S. at 62......................................................................................................... 9

Didrickson v. U.S. Dept of Interior, 982 F.2d 1332 (9th Cir 1992) ......................................... 5

Doe v. Harris, 2013 U.S.Dist.LEXIS 4215, at *7 (N.D.Cal. Jan. 10, 2013, No. C12-5713 TEH)........... 15

Freedom from Religion Found., Inc., v. Geithner, 644 F.3d 836 (9th Cir. 2011) ................... 15

Hollingsworth v. Perry, 570 U.S. 693 (2013) ............................................................. 5, 6, 7, 10

Horne v. Flores, 557 U.S. 433 (2009)...................................................................................... 5

Idaho Farm Bureau Fed'n v. Babbitt, 58 F.3d 1392 (9th Cir. 1995)........................................ 11

Kootenai Tribe of Idaho v. Veneman, 313 F.3d 1094 (9th Cir 2002) ....................................... 5

Latta v. Otter, 771 F.3d 456 (9th Cir. 2014)............................................................................ 6

League of United Latin Am. Citizens v. Wilson, 131 F.3d 1297 (9th Cir. 1997) ................... 14

McConnell v. FEC, 540 U.S. 93 (2003) ................................................................................... 5

Pavek v. Simon, 2020 U.S.Dist.LEXIS 122014, at *14

   (D.Minn. July 12, 2020, No. 19-cv-3000 (SRN/DTS)......................................................... 13

Peruta v. City of San Diego, 771 F.3d 570 (9th Cir. 2014) ..................................................... 8

Sagebrush Rebellion, Inc. v. Watt, 713 F.2d 525 (9th Cir.1983) .............................................. 13

Smith v. Los Angeles Unified Sch. Dist., 830 F.3d 843 (9th Cir. 2016)........................... 7, 8, 9

United States v. Carpenter, 298 F.3d 1122 (9th Cir. 2002) ...................................................... 7

United States v. City of Los Angeles, 288 F.3d 391 (9th Cir. 2002)............................. 9, 10, 13

United States v. Oregon, 745 F.2d 550 (9th Cir. 1984)..................................... 7, 8, 9, 10

Vivid Entm't, LLC v. Fielding, 2013 U.S.Dist.LEXIS 109251, at *5

    (C.D.Cal. Aug. 2, 2013, No. CV 13-00190 DDP (AGRx) ...................................................... 6

Vivid Entm't, LLC v. Fielding, 774 F.3d 566 (9th Cir. 2014)..................................................... 6

Wash. State Bld'g & Const. Trades v. Spellman, 684 F.2d 627 (9th Cir. 1982)....................... 11

Yniguez v. Arizona, 939 F.2d 727 (9th Cir. 1991) .......................................................... 8, 9, 13

**Statutes**

Fed. R. Civ. P. 24 (a) ........................................................................................................... 1, 9

Fed. R. Civ. P. 24 (b) ......................................................................................................... 1, 15

**Other Authorities**

Cal. Health & Safety Code § 25249.7.......................................................................................... 1

TO THE HONORABLE COURT, TO THE PARTIES HERETO, AND TO THEIR ATTORNEYS OF RECORD:

PLEASE TAKE NOTICE that on August 6, 2021, at 10:00 a.m., in Courtroom 3, 15th floor, of the United States District Court for the Eastern District of California, in the Robert T. Matsui United States Courthouse, located at 501 "I" Street, Sacramento, CA 95814, Penny Newman ("Newman"), will move the Court, pursuant to Federal Rule of Civil Procedure 24(a) and 24(b) for leave to intervene in this case as an Intervenor-Defendant.

Newman seeks intervention in this matter as an interested party and an official ballot proponent of Proposition 65 ("Prop. 65"), the public health law that is vital for Newman, her family, and her community. Plaintiff, California Chamber of Commerce ("Chamber") seeks to partially disable Prop. 65 pursuant to Paragraph 3 of its Prayer for Relief, which asks for "preliminary and permanent injunctions prohibiting Defendant or any of its officers, employees, or agents, and all those in privity with and/or acting in concert with those entities or individuals (including private enforcers of Proposition 65 under Cal. Health & Safety Code § 25249.7(d), from enforcing or threatening to enforce the Proposition 65 warning requirement for cancer with respect to acrylamide in food products intended for human consumption." Newman is a survivor of toxic exposure, a founder of a public interest group specializing in toxic exposures, and an official proponent of the law and is therefore entitled to intervene in this action, as of right under Federal Rule of Civil Procedure 24(a), or, alternatively, permissively under Federal Rule of Civil Procedure 24(b).

Pursuant to the Court's standing order, the undersigned counsel has informed all parties of intention to file this motion to intervene. On June 2 and 4, 2021, the undersigned counsel conferred with counsel for Chamber who will oppose this intervention. On June 2, 4 and 7, 2021, the undersigned counsel conferred with defendant California Attorney General ("AG") who will oppose this motion. On June 2 and 4, 2021, the undersigned counsel conferred with defendant Council For Education And Research On Toxics ("CERT") who is expected to support this intervention, request an extension of time if needed to accommodate it, and to confirm it will not be prejudiced by it. The Chemical Toxin Working Group Inc., dba Healthy Living Foundation Inc. ("HLF"), a proposed intervenor-defendant, supports this intervention. The meet and confer requirement has been satisfied.

1     This motion is based upon the pleadings and papers on file herein, the Memorandum of Points and

2  Authorities attached hereto, upon such evidence and argument as may be presented at the hearing of this

3  motion and such matters of which the Court may properly take judicial notice.

4

5  DATED:    June 20, 2021

                                                    */s/ Aida Poulsen*

6     _____

7                                                       POULSEN LAW P.C.
                                                        Aida Poulsen, Esq., SBN 333117
                                                        282 11th Avenue, Suite 2612
8                                                       New York, NY 10001
                                                        Telephone: (646) 776-5999
9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

**MEMORANDUM OF POINTS AND AUTHORITIES**

## I.  BACKGROUND

### A.  Procedural background

Plaintiff Chamber initiated this action, alleging that acrylamide is not carcinogenic and Prop. 65's warning requirement thus constitutes false compelled speech under the First Amendment. Chamber named AG as the sole defendant, but sought injunctive relief against "all those in privity with and/or acting in concert with those entities or individuals (including private enforcers of Prop. 65 under Health & Safety Code § 25249.7(d))." [Doc 1, Prayer for Relief 3]. CERT, a private enforcer, intervened. [Doc. 29]. The district court denied AG's motion to dismiss [Doc. 84], CERT's motion for summary judgment and granted Chamber a preliminary injunction ("Order"). [Doc 114]. On April 21, 2021, CERT filed the notice of appeal in this case. [Doc 119]. On April 29, 2021, and May 20, 2021, HLF filed notices of appeal. [Doc. 122, 128], which the district court struck and denied. [Doc. 125, 133]. On May 27, 2021, the Ninth Circuit Court of Appeals granted in part CERT's emergency motion to stay the preliminary injunction order. [Dkt. 16]. On May 28, Newman learned about this case, the Order, and AG's failure to appeal it [Doc 136, Ex A at 5]; on June 10, 2021, Newman moved to intervene in the appeal of the Order with the Ninth Circuit [Dkt. 21].

### B.  Factual background

#### 1.  Newman, an elementary school aide, and Prop. 65's inception.

The birth of the Prop. 65 is attributed to March 1978 when its future official ballot proponent, elementary school instructional aide Penny Newman, watched her school playground flooded with industrial waste filled with lead, dichlorodiphenyltrichloroethane, and hundreds of other chemicals. This happened after the government released 1 mln gallons of wastewater from Stringfellow Acid Pits into the rural community of Glen Avon, California, not only without warning, but while telling people it was safe, asking schoolteachers to refrain from alerting the parents, and letting children make beards out of the toxic foam and play snowmen, while their tennis shoes and blue jeans began to disintegrate. [Doc 136, Ex A at 1-2].

The waste came from some of the most technologically advanced companies in the world, such as General Electric, Hughes Aircraft, McDonnell-Douglas, Montrose Chemical, Philco-Ford, Northrop, but

the companies got rid of their wastes just as cavemen did: "They dug a hole and dumped it in it," counting on the government to cover it up. And that it did.[1] Major toxins were just a few of the presents to kindergartners from the government.[2] Kids had bloody noses, rashes, dizziness, headaches, and needed medical treatment when water was splashed in their eyes. Newman says that her price for the gifts was a miscarriage, hysterectomy in her thirties, non-smoker Obstructive Chronic Pulmonary Disease (COPD), her children's cracked skin, asthma, allergies, stomach pain, dizzy spells, and seizures. She and her husband, a firefighter, believed that the government would protect them; now, covered in skin welts, they were enduring endless sleepless nights devoted to listening if their children were still breathing. [Doc 136, Ex A at 2, 5].

Following the toxic dump, Newman organized Concerned Neighbors in Action ("CNA") in 1978, *id*; followed by *Newman v. Stringfellow* (Super. Ct. Riverside County, No. 165994MF), the largest personal injury lawsuit in the history of California, featuring 218 defendants, about 4000 plaintiffs, 3 mln documents, and the designation of Stringfellow as a US EPA Superfund site[3]. CNA also intervened in *United States v. Stringfellow, Jr.* (Civ. No 83-2501 (HLH) C.D. Cal.). Newman changed laws. [Doc 136, Ex A at 3-4]. Her biggest life achievement is the passing of Prop. 65 for which she fought to protect her family and her community from being poisoned by chemical toxins without warning, again.

Newman is the founder of the Center for Community Action and Environmental Justice (CCAEJ) (former CNA). [*Id*. at 1]. Her book "Remembering Stringfellow" details the 25-year fight for environmental justice over the Stringfellow Acid Pits.[4] Newman has received many awards, including "Jurupa's Citizen of the Year," appeared on television shows such as the "Remembering Your Spirit" segment of the Oprah Winfrey show. She was the subject of an HBO documentary, "Toxic Time Bomb." *Id*.

---

[1] https://www.encyclopedia.com/environment/encyclopedias-almanacs-transcripts-and-maps/stringfellow-acid-pits, last visited June 20, 2021.

[2] https://blog.epa.gov/tag/penny-newman/, last visited June 20, 2021.

[3] https://chej.org/2021/03/18/from-shy-young-woman-to-powerful-leader-penny-newman/, last visited June 20, 2021.

[4] https://blog.epa.gov/tag/penny-newman/, last visited June 20, 2021.

### 2.  Prop. 65 enacted to remedy government inadequacy by activating private enforcers.

Prop. 65 arose when the government not only failed to protect people from dangerous toxins, but actively participated in dumping chemical waste on communities and ensuring a cover up.  It is deeply rooted in governmental acquiescence and collusion with the corporate lobby, represented by the Plaintiff in this case,[5] to conceal their environmental offenses against humanity on the industrial level. For Prop. 65 to meet this objective and have a chance to succeed, government agencies had to be reinforced, and simply replaced by the efficient mechanism of self-sustainable and self-funded private enforcers.

The activation of private enforcement action itself evidences that the people of California have decided that the government cannot adequately represent the health interests of citizens as related to toxic exposures. [Doc. 136, Ex A at 3]. AG has not filed an acrylamide case for a decade. AG has never found a violation without a private enforcer; it is the latter who uncovers violations. *See Yeroushalmi v. Miramar Sheraton*, 88 Cal.App.4th 738, 748 (2001)("citizen enforcement was conditioned upon the failure of state and local government agencies to commence or diligently prosecute an action, after due notice"). This Court has likewise confirmed that AG and a private enforcer have distinct interests, by granting CERT's motion to intervene [Doc. 29].

### 3.  Foods and Proposition 65.

In the absence of any pre-market approval of foods and consumer products, the industrialists are free to—and actually do—mislead consumers with suggestive packaging and advertisement of their foods and outlets as "natural," or "health foods" sold in "health food stores." In addition, these food manufacturers target unsuspecting children and pregnant women with apparently "healthy," but, in some cases, highly toxic products.  Many of these foods, when tested by private enforcers, show up to nearly 1000 ppb of acrylamide, appearing in notices of violation of the California Health & Safety Code with

---

[5]  Chamber website reads: "For decades, the CalChamber has effectively built support around pro-business legislation and initiatives." See https://advocacy.calchamber.com/policy/advocacy-action/, last visited June 20, 2021.

atrocious violations for extreme amounts of lead, cadmium, acrylamide and other carcinogens and poisons causing reproductive and developmental harm.[6]

When and if the technology will develop to allow every consumer to detect or to be reliably informed of the levels of chemical toxins in each product at the point of sale, such products will thus be naturally extinguished. In addition, such technical advancement may make the relief suggested by the Order, in the form of informing public about toxic exposures, applicable and feasible. But until then, consumers have no other means of detecting toxins or discerning potential dangers in their foods or of exercising their rights to know of content of their food: testing for chemical toxins is expensive, time-consuming and requires expertise, practical only for narrowly specialized enforcers of health laws. Which is one of the reasons why AG is proven to be ineffective at this task, not mentioning an ordinary consumer or a child eating daily a popular school lunch snack.

In the absence of such advanced technologies and options, it might be highly risky to undercut public health laws that currently keep some shocking manufacturing practices at bay, and to deprive the people of their right to know about the content of their food when it is known or reasonably suspected to represent an immediate danger to their lives.

### 4.  Proposition 65 and Newman's role as proponent.

Prop. 65 was a ballot initiative in California in 1986, overwhelmingly approved by a vast majority of voters. Newman, a Chair of CNA (Stringfellow Acid Pits), vigorously campaigned for its passage, including on Jane Fonda's famous bus, actively gathering signatures [Doc. 136, Ex A at 3, 6]. Newman is listed on the ballot as an official proponent.[7] She had initiated this important law to trust public health to self-sufficient private enforcers, as opposed to the government, to protect her family and community.

Statistically, the probability of an exposure to toxic waste like the Stringfellow Acid Pits is extremely low. The probability of exposure to toxins in food, in the absence of watchdogs, might be

---

[6]  https://oag.ca.gov/prop65/60-day-notice-search, last visited June 20, 2021.

[7]  https://oehha.ca.gov/media/downloads/proposition-65/general-info/prop65ballot1986.pdf, at p.5, last visited June 20, 2021.

extremely high.[8] Private enforcers shift consumers' revenue towards safe manufacturing. Newman has a vital interest in preventing disabling Prop. 65 by the current industrial attack, to keep her family from re-poisoning by toxic carcinogens in mass-manufactured foods without warning, and to saver her lifetime achievement of enacting Prop. 65.

## II.   LEGAL ARGUMENT

### A.  Standing:  Newman is not invoking court's jurisdiction or asserting new claims.

A third party who wants to join a lawsuit to advocate for the same outcome as one of the existing parties, need not establish standing. *See Horne v. Flores*, 557 U.S. 433, 446 (2009) (group of legislators intervened to argue a contempt order should be lifted, the same relief that one of the parties to the case sought). In *Horne*, the Supreme Court noted: "Because the superintendent clearly has standing to challenge the lower courts' decisions, we need not consider whether the Legislators also have standing to do so." *Id. See also McConnell v. FEC,* 540 U.S. 93, 114 (2003) (intervenors do not need to demonstrate standing when appealing a decision with another party who has already demonstrated standing); *Diamond v. Charles*, 476 U.S. 54, 68 (1986) (requirement that an intervenor show standing "to continue a suit in the absence of the party on whose side intervention was permitted" assures the existence of a live "case or controversy.") (citation omitted).

Article III standing is not required in the district court if the intervenor raises no new claims and an existing party with standing aligned with the intervenor remains in the case. *See Kootenai Tribe of Idaho v. Veneman*, 313 F.3d 1094, 1108-09 (9th Cir 2002). On appeal, "[a] permissive defendant-intervenor must have independent jurisdictional grounds on which to pursue an appeal, absent an appeal by the party on whose side the intervenor intervened." *Didrickson v. U.S. Dept of Interior*, 982 F.2d 1332, 1337-38 (9th Cir 1992).

In *Hollingsworth v. Perry*, 570 U.S. 693, 707 (2013), the Supreme Court found that "[n]o matter how deeply committed proponents of a ballot initiative may be to upholding the initiative or how 'zealous [their] advocacy,' that is not a "particularized" interest sufficient to create a case or controversy under

---

[8]  https://jech.bmj.com/content/56/11/813 Schafer KS, Kegley SE Persistent toxic chemicals in the US food supply Journal of Epidemiology & Community Health 2002;56:813-817, last visited June 20, 2021.

U.S. Const. art. III." (citations omitted). Here, Chamber has created a case and a controversy against AG; Newman is spared of that burden.

In *Vivid Entm't, LLC v. Fielding*, 774 F.3d 566, 571-72 (9th Cir. 2014), the district court largely upheld Measure B, and Plaintiffs appealed. The county defendants "elected not to file an answering brief" in the Ninth Circuit. Measure B's proponents, who had intervened as defendants, sought to appear as appellees. Plaintiffs opposed this assertion, citing *Hollingsworth*. *Id*. at 573. The district court held that an intervenor-appellee need not show standing if they do not "initiate an action," "seek review on appeal," or otherwise "invoke[] the power of the federal courts...." *Id*. The district court denied reconsideration of its grant of intervention. *Vivid Entm't, LLC v. Fielding,* 2013 U.S.Dist.LEXIS 109251, at *5 (C.D.Cal. Aug. 2, 2013, No. CV 13-00190 DDP (AGRx))(generally "interveners are not required to demonstrate Article III standing independent of the defendants").

The Ninth Circuit in *Vivid* affirmed the district court, holding that standing was simply not required of appellees. 774 F.3d at 583.  The Ninth Circuit specifically stated:

> Nothing in [*Hollingsworth v.*] *Perry*, which concerned the question whether an intervenor who sought to appeal had Article III standing, affects that conclusion. Plaintiffs have standing, and it is they alone who have invoked the federal courts' jurisdiction. For that reason, we need not and do not decide whether Intervenors satisfy the requirements of Article III standing.

*Id.* at 573. *See also Latta v. Otter*, 771 F.3d 456 (9th Cir. 2014)(proponents of law were given sole standing as appellees after the government withdrew from appeal even without plaintiff-appellants' consent and any indication that the challenged law was being enforced); *Buffin v. City & Cty. of San Francisco*, 2019 U.S.Dist.LEXIS 34253, at *23-25 (N.D.Cal. Mar. 4, 2019, No. 15-cv-04959-YGR)(denying motion to revoke intervenor status and holding intervenor-defendant "need not satisfy standing separately" because it did not invoke court's power).

The post-*Hollingsworth* commentaries support the Ninth Circuit's findings:

> Questions regarding petitioners' standing become moot, however, if another party with standing, such as the State, remains in the case. Proponents need not satisfy Article III standing requirements independently in such a situation because they can "ride 'piggyback' on the State's undoubted

standing" as long as the State remains a party to the litigation. *Hollingsworth* would have been decided on the merits, except that state officials refused to remain in the case.[9]

In *Hollingsworth* (1) the Governor of California, AG, and other officials responsible for overseeing marriage in California declined to defend Proposition 8's ban on same-sex marriage; (2) the case had a final judgment; and (3) the State refused to appeal. 570 U.S. at 707-08 (petitioners attempted to assert State's interest). In contrast, here, both the State and CERT are parties. Newman is not the party invoking federal court's jurisdiction or appealing a final judgment. Newman does not need to show Article III standing.

## B.  Newman is entitled to intervene as of right

To intervene as of right, a party must: (1) timely move; (2) have a significantly protectable interest; (3) have that interest impaired or impeded by the action's disposition; and (4) not be adequately represented by existing parties. *Arakaki v. Cayetano*, 324 F.3d 1078, 1083 (9th Cir. 2003).

### 1.   Newman's motion is timely

Three factors help assess if an intervention motion is timely under the totality of the circumstances: "(1) the stage of the proceeding at which an applicant seeks to intervene; (2) the prejudice to other parties; and (3) the reason for and length of the delay." *United States v. Oregon*, 745 F.2d 550, 552 (9th Cir. 1984).

#### a.   Stage of proceeding

This case is still in an early pre-trial stage. No initial disclosures or discovery has commenced. The status conference is scheduled for July 8, 2021. [Doc 127]. Newman sought intervention once she learned of the case and the Order issuing a preliminary injunction [Doc. 114] in the appeal of the Order [Dkt. 21] first, as the most urgent issue in this litigation, and in the district court after that. *See United States v. Carpenter*, 298 F.3d 1122, 1124–25 (9th Cir. 2002) (motion to intervene was timely even though filed after lengthy settlement negotiations when motion was filed promptly after intervenors first had notice that government may not have adequately represented their interests); *Smith v. L.A. Unified Sch. Dist.*, 830 F.3d 843, 854–57 (9th Cir. 2016) (district court erred in measuring timeliness by reference to stages of litigation predating change in circumstances that motivated motion to intervene); *Yniguez v. Arizona*,

---

[9] *See* Standing at a Constitutional Divide: Redefining State and Federal Requirements for Initiatives After Hollingsworth v. Perry, 71 Wash & Lee L. Rev. 229, 295-96.

939 F.2d 727, 734–35 (9th Cir. 1991) (no abuse of discretion in finding that post-judgment motion to intervene was timely).

### b.  Prejudice to existing parties

The court looks at factors such as loss of evidence, settlements made in expectation of no further claims, the need to reopen matters previously resolved, to consider "whether existing parties may be prejudiced by the delay in moving to intervene... not whether the intervention itself will cause the nature, duration or disposition of the lawsuit to change (otherwise, intervention would never be allowed because it inevitably prolongs the litigation)." *Defenders of Wildlife v. Johanns,* 2005 U.S.Dist.LEXIS 34455, at *11-12 (N.D.Cal. Dec. 1, 2005, No. C 04-4512 PJH) (quoting Schwarzer, § 7:191). Here, Newman does not seek to bring new claims, and there is no such undue delay or prejudice to the original parties. The need to procedurally adapt to Newman's entry as a party does not amount to prejudice. *Cf Oregon*, 913 F.2d at 588-89 (finding that intervention would prejudice all parties because it would challenge a complex and delicately balanced plan achieved after four years of negotiation).

Chamber and AG are united in opposition to this motion but will not be prejudiced by having to litigate new or additional claims. On January 11, 2021, Chamber sent its sixth amended notice of action to private enforcers. [Doc. 111]. Chamber concedes it sent notices to prevent "late" or "chaotic" interventions. [Dkt. 20 at 9]. No procedural posture has changed since January 11, 2021, with the only difference being a favorable for Chamber injunction. Under *Smith v. L.A. Unified Sch. Dist.*, 830 F.3d 843, 857 (9th Cir. 2016), "[T]he only prejudice that is relevant under this factor is that which flows from a prospective intervenor's failure to intervene after he knew, or reasonably should have known, that his interests were not being adequately represented—and not from the fact that including another party in the case might make resolution more difficult" (internal quotation marks and brackets omitted). The additional time and expense concerning the case related to Newman's intervention "are precisely the kind of issues that do not constitute prejudice." *See Defenders of Wildlife*, 2005 U.S.Dist.LEXIS 34455, at *12; *Peruta v. City of San Diego*, 771 F.3d 570, 572-73 (9th Cir. 2014) (no prejudice to the parties from intervention more than four years after case began). CERT supports this intervention and stated that it will not be prejudiced and will request an extended time if needed.

### c.   The reason for and length of the delay

The delay since the start of the case is immaterial. Newman took action to protect her rights and interests as soon as she learned of the case, as well as of AG's unwillingness to appeal the Order. [Dkt. 21]. She did not have actual or constructive notice of the start of litigation. [Doc 136, Ex A at 5]. Newman's motion is timely under the totality of the circumstances. *Cf. Oregon*, 745 F.2d at 553 (intervention was timely fifteen years after litigation began); *Day v. Apoliona*, 505 F.3d 963, 965 (9th Cir. 2007) (motion timely when made two years after case was filed); *Smith v. Los Angeles Unified Sch. Dist.*, 830 F.3d 843, 854 (9th Cir. 2016) (motion timely when made twenty years after case was filed and seventeen years after the adoption of the Consent Decree.).

### 2.   Newman has a significantly protectable interest.

An interest is "significantly protectable" if: (a) protectable under law; and (b) related to the plaintiff's claims. *California ex rel. Lockyer v. United States*, 450 F.3d 436, 441 (9th Cir. 2006). "No specific legal or equitable interest need be established." *United States v. City of Los Angeles*, 288 F.3d 391, 398 (9th Cir. 2002).

The court in *Yniguez v. Arizona,* 939 F.2d 727, 733 (9th Cir. 1991), has found that "there is a virtual *per se* rule that the sponsors of a ballot initiative have a sufficient interest in the subject matter of litigation concerning that initiative to intervene pursuant to Fed. R. Civ. P. 24(a)"; concluding that "the added interest necessary to confer Article III standing—a particularized injury that distinguishes AOE from "concerned bystanders," *Diamond*, 476 U.S. at 62 - is present here." *Id*.

Newman is a ballot proponent and, together with her family and community, is a victim of toxic waste dumped on her neighborhood by the government without warning, which ultimately led her to enactment of Prop. 65 to activate private enforcement after failure of the government "protection" [Doc. 136, Ex A at 5]. Her significant protectable interest is in preventing obstruction of Prop. 65, the important health law, which serves to, among others, to prevent her family from being re-poisoned without a warning by lead, acrylamide, and other chemicals in food after her ordeal.

Newman claims that the purpose of the Prop. 65 initiative was "to bypass indifferent or recalcitrant government officials"[10] who failed to protect the people, and to remediate, followed by AG pouring people's money they are trusted with into years of fighting against the poisoned people of Glen Avon in *Newman v. Stringfellow*, on the side of 217 industrial polluters, arguing that no evidence showed that dangerous toxins invaded Glen Avon, denying any health implications, including cancer causation from drinking the contaminated water, which in modern knowledge was highly likely to contain acrylamide and its precursor chemicals (acrylamide in food was discovered in 2002[11], 24 years after 1978), but eventually co-paying $110mln in settlements.[12] Newman is seeking to protect the institution of public enforcers in whom Prop. 65 places its trust and who have proven to be more effective than AG even in this suit, obtaining an emergency stay of the Order [Dkt. 16] while AG did not even move to appeal it.

The Order found that the irreparable harm to the corporations comes from 400 notices of violation filed by private enforcers, a meager amount compared to the amount of products and revenues of the aggrieved lobby. Prop. 65 was overwhelmingly passed by 63% because it spared the reliance on the government, and was designed to be a self-sufficient, self-funded, effective instrument to induce self-testing by manufacturers by enacting private watch dogs that can sustain continuous corporate compliance with health and safety laws.

### 3. Newman's ability to protect her interest may be impaired.

A judicial decision that "may" impair the movant's rights "as a practical matter" is sufficient impairment. *City of Los Angeles*, 288 F.3d at 401 (holding there is no requirement that the outcome will "necessarily" impair interest).

Newman, if not made a party to this action, will have no legal means to challenge the preliminary injunction or the relief sought. *See Oregon*, 839 F.2d at 639 (recognizing "practical limitations on the

---

[10]  Standing at a Constitutional Divide: Redefining State and Federal Requirements for Initiatives After *Hollingsworth v. Perry*, 71 Wash & Lee L. Rev. 229, 233.

[11]  https://www.fda.gov/food/chemical-contaminants-food/acrylamide-questions-and-answers, last visited on June 20, 2021.

[12]  Tom Gorman "A tainted Legacy: Toxic Dump Site in Riverside County Has Sparked the Nation's Largest Civil Suit." Los Angeles Times, Jan. 10, 1993, 3, 1993 WLNR 3965819.

ability of intervention applicants to protect interests in the subject of the litigation after court-ordered equitable remedies are in place"). Moreover, Newman as Chairwoman of CNA (CCAEJ now), supported Prop. 65, the legality of which, as related to acrylamide and, consequently, to the large group of chemicals in the same group as acrylamide or lower, Chamber challenges and the Order agrees with. *See, e.g., Idaho Farm Bureau Fed'n v. Babbitt,* 58 F.3d 1392, 1398 (9th Cir. 1995) (environmental groups granted intervention because the challenged agency rule was promulgated only as a result of the groups' earlier lawsuit against the agency); *Wash. State Bld'g & Const. Trades v. Spellman*, 684 F.2d 627 (9th Cir. 1982)(public interest group entitled as a matter of right to intervene in action challenging measure it had supported).

Newman has a high personal stake. She has been injured and authored the law to protect herself, her family, and her community. She acted out of survival. She experienced government inaction, malfeasance, denial, and coverups. Being a lay person and not an elected official, legislator, or a lobbyist with a backing pack of corporate interests, she has achieved un unsurmountable goal of passing the law in the largest state of the country; all that to have the right to be warned of hidden toxic exposures. She now is threatened to be re-poisoned by the same chemicals she has suffered from and against which she enacted the law. Her injuries, her stake and the threat to her and her family's health are enormous and not the same as for any other person.

The issue here is if it is constitutional to require warning for acrylamide in foods and beverages because cancer causation is "not purely factual" and "controversial." Although in 1978 it was more than two decades before acrylamide in food was discovered, the types of toxins in the dumped waste and drinking water of Newman and her community are now associated with the heavy use of acrylamide and its polymers, such as petroleum-based compounds from chemical and oil manufacturers; pesticide byproducts; and paint-booth sludge.[13] The Riverside County Consolidated Program for Water Quality

---

[13] *See* "Toxic-Waste Site Awash in Misjudgment" by Michael Weisskopf November 16, 1986 Washington Post; available at https://www.washingtonpost.com/archive/politics /1986/11/16/toxic-waste-site-awash-in-misudgment/4b46a5ae-2fcb-44d1-a1bb-56bbf8a903da/, last visited June 20, 2021.

Monitoring[14] determined that acrylamide pollution is associated with chemical and petroleum processing; Environment Canada[15] and Kowa American Corporation[16] report that pesticide byproducts and paint often contain acrylamide and its polymers.

In addition, the ruling on constitutionality of acrylamide warning would potentially result in declaring safe 838 chemicals out of 900 in the same group of "probable human carcinogens," or lower, as acrylamide. Among chemicals that EPA has identified as posing an unacceptable risk to human health to be addressed by cleanup actions at the Stringfellow site,[17] are lead, polychlorinated biphenyls, DDT, methylene chloride, tetrachloroethylene, trichloroethylene, chloroform, nickel, dichlorobenzenes, ethylbenzene.[18] All of these Prop. 65 chemicals are either IARC Group 2A or 2B, or NTP group of "probable human carcinogens," which is the same or lower group than acrylamide; their toxicity is based, like for acrylamide, on animal studies and, customarily for science, must wait 10-40 years to be re-assessed by public entities. Lead was listed for cancer in 1992[19] (acrylamide in foods was listed only in 2002) and has not been moved to the upper group of "known" human carcinogens for nearly 30 years and, if the preliminary injunction Order's logic prevails, will potentially be spared from the warning requirement in

---

[14]  *See* Riverside County Consolidated Program for Water Quality Monitoring Whitewater River Region, Santa Ana Region, Santa Margarita Region October 31, 2008 Riverside County Flood Control Water Conservation District http://content.rcflood.org/downloads/npdes/CMP%202008-10-31.pdf, last visited June 20, 2021.

[15]  *See* Screening Assessment for the Challenge 2-Propenamide (Acrylamide) Chemical Abstracts Service Registry Number 79-06-1 Environment Canada Health Canada August 2009, http://www.ec.gc.ca/ese-ees/default.asp?lang=En&xml=FF4FCD6E-B330-7266-D1FD-B44C48A6BC9B; last visited June 20, 2021.

[16]  https://www.kowachemical.com/product/acrylamide, last visited June 20, 2021.

[17]  *See* "Toxic-Waste Site Awash in Misjudgment" by Michael Weisskopf November 16, 1986 Washington Post https://www.washingtonpost.com/archive/politics /1986/11/16/toxic-waste-site-awash-in-misudgment/4b46a5ae-2fcb-44d1-a1bb-56bbf8a903da/, last visited June 20, 2021.

[18]  https://cumulis.epa.gov/supercpad/SiteProfiles/index.cfm?fuseaction=second. contams&id=0902680, last visited June 20, 2021.

[19]  https://ntp.niehs.nih.gov/ntp/roc/content/listed_substances_508.pdf, last visited June 20, 2021.

the currently prosecuted cases, where popular foods contain 570 parts per billion ("ppb") of lead in one serving, more than 20 times the recent water contamination in Flint, Michigan, amounting to a mere 27 ppb of lead in one serving.[20] [Dkt. 16 at 2; Doc. 136 at 6].

### 4.   The existing parties do not adequately represent Newman.

The burden to show inadequate representation is minimal. *Arakaki v. Cayetano*, 324 F.3d 1078, 1086 (9th Cir.2003).   Three factors help evaluate adequacy of representation: (1) whether the present parties will "undoubtedly make all of the intervenor's arguments; (2) whether the current parties can and will make those arguments; and (3) whether the intervenor "offers a necessary element to the proceedings that would be neglected." *Sagebrush Rebellion, Inc. v. Watt,* 713 F.2d 525, 528 (9th Cir.1983).

### a.   AG is deeply averse to Newman

A presumption of adequate representation arises when the government is acting on behalf of a constituency that it represents. *City of Los Angeles*, 288 F.3d at 401. To rebut it, applicants must make a "very compelling showing to the contrary." *Arakaki*, 324 F.3d at 1086.

Where the government may be less than enthusiastic about the enforcement of a measure adopted by ballot initiative, the people generally resort to a ballot initiative precisely because they do not believe that the ordinary processes of representative government are sufficiently sensitive to the popular will. While the people may not always be able to count on their elected representatives to support fully and fairly a provision enacted by ballot initiative, they can invariably depend on its sponsors to do so. *See Yniguez v. Arizona*, 939 F.2d 727, 733 (9th Cir. 1991).

When the government declines to appeal a preliminary injunction that affects an intervenor's interest, the unwillingness casts substantial doubt on the government adequacy in protecting the intervenor. *County of Fresno v. Andrus*, 622 F.2d 436, 438-39 (9th Cir. 1980). This is even true where the intervenor might make the same arguments opposing the preliminary injunction as the government agent or entity. *Id*. The unwillingness to appeal shows that AG does not adequately represent Newman, just like in *Andrus*. *See id*.; *Pavek v. Simon*, 2020 U.S.Dist.LEXIS 122014, at *14 (D.Minn. July 12, 2020, No. 19-cv-3000 (SRN/DTS)) ("Nevertheless, the fact remains that the Secretary has chosen not to appeal the

---

[20]  https://www.washingtonpost.com/news/wonk/wp/2016/01/15/this-is-how-toxic-flints-water-really-is/, last visited June 20, 2021.

Court's preliminary injunction order…which...constitutes a divergence in interests between the Secretary and Proposed Intervenor-Defendants")(citations omitted).

AG's decision not to appeal is more than a "disagreement over litigation strategy," *see League of United Latin Am. Citizens v. Wilson*, 131 F.3d 1297, 1306 (9th Cir. 1997); it rebuts the presumption the AG is "capable and willing" to make Newman's arguments, including any the "other parties would neglect." *See Arakaki*, 324 F.3d at 1086. AG has shown no interest in acrylamide cases: AG has not filed an acrylamide case in a decade, and showed no interest in protecting acrylamide warnings by refusing to appeal the Order imposing preliminary injunction, leaving the people exposed to this dangerous toxin for the long period of litigation.

### b. CERT or HLF would not represent Newman

CERT or HLF, if allowed to intervene, would not represent Newman. *See Blake v. Pallan*, 554 F.2d 947, 954-55 (9th Cir. 1977) (examining if the intervenor would add some necessary element to the proceedings which would not be covered by the parties). Newman brings unique knowledge about the history, legislative intent and purpose of Prop. 65, including the proof that government agencies cannot and do not look out for the interests of people like the Glen Avon community, when they must also protect the corporate interests which they diligently and adequately represent, proving persistent homogeneous adversity to people like Newman, her family and community.

Newman, as an official proponent and toxic exposure victim, would add a "necessary element to the proceedings" through her expertise on (1) legislative intent; (2) the impact of exposure through digestion of chemical toxins, such as lead and acrylamide, and of the contemplated prohibition of acrylamide (and other chemicals that will logically follow to be declared safe as unproven to cause cancers) warnings in food; (3) re-poisoning of specifically vulnerable communities already poisoned by a massive toxic dump, through unwarned digestion of toxins; (4) feasibility of redress suggested by the Order (such as competing with commercial advertising and public campaigns) [Doc. 114 at 30]; (5) how government agencies unwillingly measure and address chemical toxin exposure; (6) California's need for private enforcement under Prop. 65; and other issues. Therefore, Newman should be permitted to intervene.

### C.  Permissive Intervention

Permissive intervention pursuant to Rule 24(b)(1)(B) requires "(1) an independent ground for jurisdiction; (2) a timely motion; and (3) a common question of law and fact between the movant's claim or defense and the main action." *Freedom from Religion Found., Inc., v. Geithner*, 644 F.3d 836, 843 (9th Cir. 2011). Other courts have found permissive intervention warranted even where there was adequacy of representation. *See Coleman v. Cty. of Suffolk*, 174 F. Supp. 3d 747, 754 (E.D.N.Y. 2016).

Newman does not need to show an independent basis for jurisdiction because a federal question exists. Newman is not raising new claims and has a defense that shares with the main action a common question of law or fact, which is the position that the warning requirement of Prop. 65 as it relates to acrylamide in food does not violate the First Amendment.

Allowing Newman to intervene will not open the floodgates: three proponents are listed in Prop. 65. Newman is informed that one of the other three has passed away. *See Buck v. Gordon*, 959 F.3d 219, 226 (6th Cir. 2020) ("Nor do we find persuasive St. Vincent's assertion that permitting the Dumonts to intervene will open the floodgates to all same-sex couples who may wish to intervene.").

The equities favor permissive intervention, considering the magnitude of Newman's contribution to the enactment of the public health law in question, and the contribution she is bringing to its defense in this industrious, evidently well-funded attack of the people's Prop. 65 by the corporate interests. *See Doe v. Harris*, 2013 U.S.Dist.LEXIS 4215, at *7 (N.D.Cal. Jan. 10, 2013, No. C12-5713 TEH)(granting permissive intervention and noting that contributions of Proponents to the equitable resolution of the issues outweigh any abstract danger of delay or prejudice to the parties).

### CONCLUSION

Newman respectfully requests an Order allowing her to intervene as a Defendant.

Dated: June 20, 2021.                 Respectfully submitted,

*/s/ Aida Poulsen*
POULSEN LAW P.C.
Aida Poulsen, Esq., SBN 333117
282 11th Avenue, Suite 2612
New York, NY 10001
Telephone: (646) 776-5999
*Attorneys for Proposed Intervenor-Defendant Penny Newman*

**CERTIFICATE OF SERVICE**

I hereby certify that on June 20, 2021, I caused the foregoing document, described as PENNY NEWMAN'S NOTICE OF MOTION; MOTION TO INTERVENE; MEMORANDUM OF POINTS AND AUTHORITIES to be electronically filed with the Court's CM/ECF filing system, which will send a Notice of Electronic Filing to all parties of record who are registered with CM/ECF:

Trenton H. Norris, Esq.
Sarah Esmaili, Esq.
Samuel Zachary Fayne, Esq.
David M. Barnes, Esq.
Arnold & Porter Kaye Scholer LLP
Three Embarcadero Center, 10th Flr.
San Francisco, CA 94111-4024
Telephone: (415) 471-3100
trent.norris@arnolderporter.com
sarah.esmaili@arnoldporter.com
zachary.fayne@arnoldporter.com
david.barnes@arnoldporter.com
(Plaintiff)

Harrison Pollak
Joshua Purtle
Megan Hey
Laura J. Zuckerman
Office of the Attorney General
1515 Clay St., 20th Flr.
Oakland, CA 94612
Telephone: (510) 879-0187
harrison.pollak@doj.ca.gov
joshua.purtle@doj.ca.gov
megan.hey@doj.ca.gov
laura.zuckerman@doj.ca.gov
(Defendant)

Raphael Metzger, Esq.
Scott P. Brust, Esq.
Metzger Law Group, APLC
555 E. Ocean Blvd., Suite 800
Long Beach, CA 90802
Telephone: (562) 437-4499
rmetzger@toxictorts.com
sbrust@toxictorts.com
(Intervenor-Defendant)

Richard Drury
Lozeau Drury LLP
1939 Harrison Street, Suite 150
Oakland, CA 94612
(510) 836-4200
richard@lozeaudrury.com
(Intervenor-Defendant)

I declare that I am employed in the offices of a member of this court, at whose direction service was made.

Executed on June 20, 2021.

*/s/ Kelley Genne*

Kelley Genne, Declarant

CERTIFICATE OF SERVICE   Page 2