F:\WP\Cases\1887\RESEARCH\Judicial Disqualification\Reply in Support of Motion for Disqualification, Final.wpd

TELEPHONE (562) 437-4499
TOLL-FREE (877) TOX-TORT
TELECOPIER (562) 436-1561
WWW.TOXICTORTS.COM

1   METZGER LAW GROUP
    A PROFESSIONAL LAW CORPORATION
2   RAPHAEL METZGER, ESQ., SBN 116020
    SCOTT P. BRUST, ESQ., SBN 215951
3   555 E. OCEAN BLVD., SUITE 800
    LONG BEACH, CA  90802
4   TELEPHONE:  (562) 437-4499
    TELECOPIER: (562) 436-1561
5   WEBSITE:  www.toxictorts.com

6   Attorneys for Intervenor-Defendant,
    COUNCIL FOR EDUCATION AND
7   RESEARCH ON TOXICS ("CERT")

8                UNITED STATE DISTRICT COURT

9                EASTERN DISTRICT OF CALIFORNIA

10

11  CALIFORNIA CHAMBER OF              Civil No. 2:19-cv-02019-KJM-JDP
    COMMERCE,
12                                     *Assigned to the Hon. Kimberly J. Mueller,*
            Plaintiff,                 *Ctrm. 3*
13
        vs.                            **REPLY OF INTERVENOR-DEFENDANT,**
14                                     **COUNCIL FOR EDUCATION AND**
    XAVIER BECERRA, IN HIS OFFICIAL    **RESEARCH ON TOXICS, IN SUPPORT**
15  CAPACITY AS ATTORNEY GENERAL       **OF MOTION TO DISQUALIFY THE**
    OF THE STATE OF CALIFORNIA.        **HON.   KIMBERLY   J.   MUELLER;**
16                                     **MEMORANDUM   OF   POINTS   AND**
            Defendant.                 **AUTHORITIES;   DECLARATION   OF**
17                                     **RAPHAEL METZGER**

18                                     DATE:       September 17, 2021
                                       TIME:       10:00 a.m.
19                                     CTRM:       3

20

21

22

23

24

25

26

27

28

METZGER LAW GROUP
A PROFESSIONAL LAW CORPORATION
555 EAST OCEAN BOULEVARD, SUITE 800
LONG BEACH, CALIFORNIA 90802

PRACTICE CONCENTRATED IN TOXIC
TORT & ENVIRONMENTAL LITIGATION
OCCUPATIONAL & ENVIRONMENTAL LUNG
DISEASE, CANCER, AND TOXIC INJURIES

F:\WP\Cases\1887\RESEARCH\Judicial Disqualification\Reply in Support of Motion for Disqualification, Final.wpd

1

2

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

TELEPHONE (562) 437-4499
TOLL-FREE (877) TOX-TORT
TELECOPIER (562) 436-1561
WWW.TOXICTORTS.COM

METZGER LAW GROUP
A PROFESSIONAL LAW CORPORATION
555 EAST OCEAN BOULEVARD, SUITE 800
LONG BEACH, CALIFORNIA 90802

PRACTICE CONCENTRATED IN TOXIC
TORT & ENVIRONMENTAL LITIGATION
OCCUPATIONAL & ENVIRONMENTAL LUNG
DISEASE, CANCER, AND TOXIC INJURIES

# TABLE OF CONTENTS

PAGE

OBJECTION TO JUDGE MUELLER HEARING THIS MATTER . . . . . . . . . . . . . . . . . . . . . iii

MEMORANDUM OF POINTS AND AUTHORITIES . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 1

   1.    PRELIMINARY STATEMENT . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 1

   2.    THE DECLARATION OF HEATHER WALLACE ESTABLISHES THAT THE NORTH SACRAMENTO CHAMBER OF COMMERCE (OF WHICH JUDGE MUELLER'S HUSBAND HAS BEEN PRESIDENT AND HIS BUSINESS HAS BEEN A "PLATINUM MEMBER") HAS INDEED BEEN A MEMBER OF CALCHAMBER. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 2

   3.    HAVING ALLEGED INJURY TO ITS MEMBERS BUT NOT TO ITSELF, CALCHAMBER LACKS ORGANIZATIONAL STANDING AND HAS ONLY REPRESENTATIONAL STANDING TO REDRESS HARM TO ITS MEMBERS – THE REAL PARTIES IN INTEREST . . . . . . . . . . . . . . . . . . . . 3

   4.    FOR PURPOSES OF RECUSAL, THE TERM "PARTY" IN 28 U.S.C. §455 INCLUDES THOSE WHO ARE REAL PARTIES IN INTEREST . . . . . . . . . . 6

   5.    THE NORTH SACRAMENTO CHAMBER OF COMMERCE SHOULD BE DEEMED A PARTY TO THIS CASE, BECAUSE CALCHAMBER ALLEGED NO ORGANIZATIONAL INJURY TO ITSELF AND FILED THIS CASE ON BEHALF OF ITS MEMBERS . . . . . . . . . . . . . . . . . . . . . . . . . . . 8

   6.    JUDGE MUELLER HAS A FINANCIAL INTEREST IN THE OUTCOME OF THIS CASE, BECAUSE THE PROFITABILITY OF HER HUSBAND'S BUSINESS DEPENDS ON ALMONDS, WHICH ARE THE SUBJECT OF 212 NOTICES OF VIOLATION IN THIS CASE . . . . . . . . . . . . . . . . . . . . . . 10

   7.    APPLICATION OF 28 U.S.C. § 455 TO THE RECUSAL OF JUDGE MUELLER DUE TO HER FINANCIAL INTEREST . . . . . . . . . . . . . . . . . . . . 12

   8.    CONCLUSION . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 13

DECLARATION OF RAPHAEL METZGER . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 15

CERTIFICATE OF SERVICE . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 18

REPLY OF INTERVENOR-DEFENDANT, CERT, IN SUPPORT OF MOTION TO DISQUALIFY THE HON.
KIMBERLY J. MUELLER; MEMO OF POINTS & AUTHORITIES; DECLARATION OF RAPHAEL METZGER

F:\WP\Cases\1887\RESEARCH\Judicial Disqualification\Reply in Support of Motion for Disqualification, Final.wpd

TELEPHONE (562) 437-4499
TOLL-FREE (877) TOX-TORT
TELECOPIER (562) 436-1561
WWW.TOXICTORTS.COM

METZGER LAW GROUP
A PROFESSIONAL LAW CORPORATION
555 EAST OCEAN BOULEVARD, SUITE 800
LONG BEACH, CALIFORNIA 90802

PRACTICE CONCENTRATED IN TOXIC
TORT & ENVIRONMENTAL LITIGATION
OCCUPATIONAL & ENVIRONMENTAL LUNG
DISEASE, CANCER, AND TOXIC INJURIES

# TABLE OF AUTHORITIES

**PAGE**

## CASES

Bennett Regulator Guards, Inc. v. Atlanta Gas Light Co.
    825 Fed.Appx. 773 (Fed. Cir. 2020) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 8

*Fair Housing of Marin v. Combs*
    285 F.3d 899 (9th Cir. 2002) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 4

*Havens Realty Corp. v. Coleman*
    455 U.S. 363 (1982) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 4

*In re Cement Antitrust Litigation*
    688 F.2d 1297, 1308-1313 (9th Cir. 1982) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 8

*La Asociacion de Trabajadores de Lake Forest v. City of Lake Forest*
    624 F.3d 1083 (9th Cir. 2010) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 5

## STATUTES

28 U.S.C. § 455(b)(5)(iii) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 13

28 U.S.C. §455 . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 6, 12

28 U.S.C. §455(b) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 12

28 U.S.C. §455(b)(4) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 6, 13

REPLY OF INTERVENOR-DEFENDANT, CERT, IN SUPPORT OF MOTION TO DISQUALIFY THE HON.
KIMBERLY J. MUELLER; MEMO OF POINTS & AUTHORITIES; DECLARATION OF RAPHAEL METZGER

TELEPHONE (562) 437-4499
TOLL-FREE (877) TOX-TORT
TELECOPIER (562) 436-1561
WWW.TOXICTORTS.COM

METZGER LAW GROUP
A PROFESSIONAL LAW CORPORATION
555 EAST OCEAN BOULEVARD, SUITE 800
LONG BEACH, CALIFORNIA 90802

PRACTICE CONCENTRATED IN TOXIC
TORT & ENVIRONMENTAL LITIGATION
OCCUPATIONAL & ENVIRONMENTAL LUNG
DISEASE, CANCER, AND TOXIC INJURIES

**OBJECTION TO JUDGE MUELLER HEARING THIS MATTER**

Intervenor-Defendant Council for Education and Research on Toxics (CERT) hereby objects to Judge Mueller hearing CERT's motion to disqualify the Honorable Kimberly J. Mueller.

On August 16, 2021, CERT filed a motion to disqualify Judge Mueller and to stay the proceedings. [ECF no 152] CERT's motion contends that Judge Mueller is disqualified from serving as the judge and the trier of fact in this case and should recuse herself pursuant to 28 USC § 455(b)(1)(2)(4)(5)(i)(iii)(c)(e), or that the case be assigned to another judge for ruling on the disqualification motion pursuant to 28 USC § 144, and the proceedings be stayed until such ruling can be made.  28 U.S.C. § 144 states in relevant part as follows:

> Whenever a party to any proceeding in a district court makes and files a timely and sufficient affidavit that the judge before whom the matter is pending has a personal bias or prejudice either against him or in favor of any adverse party, **such judge shall proceed no further therein**, but another judge shall be assigned to hear such proceeding. [emphasis added]

Given CERT's recent discovery of the facts warranting disqualification set forth in support of the motion, CERT's motion is plainly timely. Based on the conflict of interest stated in CERT's motion and the facts set forth in the supporting affidavits of Raphael Metzger and Nancy Quam-Wickham, the Honorable Kimberly J. Mueller may not rule on CERT's motion to disqualify her as the trier of fact and the judge in this case, as such motion must be heard by a different judge of the court - a judge who is not alleged to be disqualified.

CERT trusts that Judge Mueller will abide by 28 U.S.C. § 144 and have CERT's motion randomly assigned to a different judge of the court for decision, rather than ruling on the motion herself as she stated she would do at the hearing that took place on August 27, 2021.

Should Judge Mueller nevertheless insist on hearing CERT's motion on September 17, 2021 and rule on her own disqualification, CERT's counsel will appear at the hearing solely to object to Judge Mueller doing so on the record, but CERT's counsel will not otherwise participate in the hearing, lest doing so be deemed a waiver of CERT's disqualification of Judge Mueller.

//

REPLY OF INTERVENOR-DEFENDANT, CERT, IN SUPPORT OF MOTION TO DISQUALIFY THE HON. KIMBERLY J. MUELLER; MEMO OF POINTS & AUTHORITIES; DECLARATION OF RAPHAEL METZGER

F:\WP\Cases\1887\RESEARCH\Judicial Disqualification\Reply in Support of Motion for Disqualification, Final.wpd

TELEPHONE (562) 437-4499
TOLL-FREE (877) TOX-TORT
TELECOPIER (562) 436-1561
WWW.TOXICTORTS.COM

METZGER LAW GROUP
A PROFESSIONAL LAW CORPORATION
555 EAST OCEAN BOULEVARD, SUITE 800
LONG BEACH, CALIFORNIA 90802

PRACTICE CONCENTRATED IN TOXIC
TORT & ENVIRONMENTAL LITIGATION
OCCUPATIONAL & ENVIRONMENTAL LUNG
DISEASE, CANCER, AND TOXIC INJURIES

## MEMORANDUM OF POINTS AND AUTHORITIES

## 1.   PRELIMINARY STATEMENT

On August 27, 2021, Judge Mueller mentioned the Vann Family as a potential conflict of interest of which CERT was unaware.  CERT has discovered (1) that the Vann Family operates the largest almond ranch in North Sacramento on land that it leases from Spring Valley Ranch Partnership (SVRP), pursuant to a lease signed by Judge Mueller's husband on behalf of North Sacramento Land Company (NSLC); (2) that pursuant to a Grant Deed signed by Judge Mueller's husband, NSLC transferred ownership of the land to SVRP in 2009; (3) that in the course of her Senate Confirmation hearing, Judge Mueller disclosed income of her husband from NSLC in the form of employee salary and a director's fee, as well as personal investments of Judge Mueller herself in stock of NSLC (whose net worth she valued at $719,950) and a partnership interest in SVRP (whose net worth she valued at $234,325); (4) that a UCC Financing Statement recorded on October 19, 2009 identifies Spring Valley Ranch Partnership and Vann-Peterson Farms Partnership as Grantors, Metropolitan Life Insurance Company as Grantee, and the collateral as the property described in Exhibits A and B thereto, Exhibit B of which describes the property as including  "All trees ... on the Real Property" and "All rents, issues, profits and royalties arising out of the Real Property").  Thus, as a partner of Spring Valley Ranch Partnership, Judge Mueller not only owns the land on which almonds are grown by the Vann Family, she owns the almond trees themselves!

On September 3, 2021, CalChamber filed the Declaration of Heather Wallace, its Associate General Counsel, in which she declared that "[t]he North Sacramento Chamber of Commerce was a member of CalChamber at the time this litigation began in October 2019" and that "the Sacramento Metro Chamber of Commerce" "has been a member of CalChamber throughout the pendency of this litigation."  This establishes that these two Chambers of Commerce (in which Judge Mueller's husband has been an officer and board member) have been members of CalChamber.  In this case CalChamber alleges injury to its members but not organizational injury to itself.  Hence, Judge Mueller's conflicts must be evaluated in regard to these entities that are real parties in interest, rather than CalChamber.  *In re Cement Antitrust Litigation,* 688 F.2d 1297, 1308-13 (9th Cir. 1982).

//

**1**

TELEPHONE (562) 437-4499
TOLL-FREE (877) TOX-TORT
TELECOPIER (562) 436-1561
WWW.TOXICTORTS.COM

METZGER LAW GROUP
A PROFESSIONAL LAW CORPORATION
555 EAST OCEAN BOULEVARD, SUITE 800
LONG BEACH, CALIFORNIA 90802

PRACTICE CONCENTRATED IN TOXIC
TORT & ENVIRONMENTAL LITIGATION
OCCUPATIONAL & ENVIRONMENTAL LUNG
DISEASE, CANCER, AND TOXIC INJURIES

**2. THE DECLARATION OF HEATHER WALLACE ESTABLISHES THAT THE NORTH SACRAMENTO CHAMBER OF COMMERCE (OF WHICH JUDGE MUELLER'S HUSBAND HAS BEEN PRESIDENT AND HIS BUSINESS HAS BEEN A "PLATINUM MEMBER") HAS INDEED BEEN A MEMBER OF CALCHAMBER**

On September 3, 2021 CalChamber filed a Declaration of Heather Wallace, Associate General Counsel for the California Chamber of Commerce. (ECF163)  In that declaration, she declares that "[t]he North Sacramento Chamber of Commerce was a member of CalChamber at the time this litigation began in October 2019" and that "the Sacramento Metro Chamber of Commerce" "has been a member of CalChamber throughout the pendency of this litigation."  (Exhibit "EE").

As noted in CERT's motion, prior to 2004, Robert Slobe was President of the North Sacramento Chamber of Commerce (Exhibits "B" through "E").  Also as noted in CERT's motion, at the present time and since at least April 2019, the North Sacramento Chamber of Commerce's principal office address has been 400 Slobe Avenue, Sacramento, CA 95815 - the business address of Robert Slobe and his business, North Sacramento Land Company.  (Exhibit "G," Exhibit "H")

As noted in CERT's motion, the North Sacramento Chamber of Commerce website bears NSLC's logo and identifies NSLC as one of its "Leadership Circle Sponsor Members,"  NSLC being one of the few "Platinum Members" of the NSLC - the highest level of corporate sponsorship. (Exhibit "O").

In addition to 400 Slobe Avenue being the address of the North Sacramento Chamber of Commerce (Exhibits "G" and "H"), the address of North Sacramento Land Company (Exhibit "L") and the address of Robert Slobe (Exhibit "M"), *this address also appears to be Judge Mueller's current address.*  (Exhibits "BB," "CC,"and "DD").

Finally, there is a symbiotic relationship between CalChamber and the North Sacramento and the Sacramento Metro Chambers of Commerce.  The North Sacramento Chamber of Commerce's website says that it "works with the Sacramento Metro Chamber, the Cal Chamber and US Chamber on policy and advocacy (Exhibit "I" - Advocacy webpage of the North Sacramento Chamber of Commerce), and CalChamber's website says: "Working together, the California Chamber of Commerce and local chambers of Commerce are a solid force as advocates supporting business-friendly policies and helping California businesses comply with complex laws and regulations" and

**2**

F:\WP\Cases\1887\RESEARCH\Judicial Disqualification\Reply in Support of Motion for Disqualification, Final.wpd

that "CalChamber and Local Chambers of Commerce [are] [a] win-win partnership for the local

chamber and its members."  (Exhibit "K").

Since Judge Mueller's husband has been President of the North Sacramento Chamber of

Commerce and his business has been a "Platinum Member" of the North Sacramento Chamber of

Commerce, Judge Mueller has a conflict of interest in this case, because the North Sacramento

Chamber of Commerce is a real party in interest and hence must be deemed a party to this case.

**3.     HAVING ALLEGED INJURY TO ITS MEMBERS BUT NOT TO ITSELF, CALCHAMBER LACKS ORGANIZATIONAL STANDING AND HAS ONLY REPRESENTATIONAL STANDING TO REDRESS HARM TO ITS MEMBERS – THE REAL PARTIES IN INTEREST**

CalChamber's original complaint in this case alleged that almonds are a food containing

acrylamide (ECF 1 at 2:26), and that numerous notices of violations of Proposition 65 regarding

almond products had been served by private enforcers, including more than 30 notices regarding

almonds and more than 40 notices regarding peanut and almond butter (ECF 1 at 15:20-22).  In its

First Amended Complaint CalChamber also alleged that almonds contain acrylamide and alleged

that more than 40 notices of violations had been served regarding almonds.  (ECF 57 at 16:8).

In its original complaint CalChamber alleged it "is a nonprofit business association with over

13,000 members, both individual and corporate, representing . . . among others food producers,

suppliers and retailers" (ECF 1 at 3:14-16) and that "many of its members are directly impacted by

Proposition 65." (*Id.* at line 21).  CalChamber further alleged:

> More than 250 companies, including many of Plaintiff's members that sell food products containing acrylamide, have been targeted with 60-day pre-litigation notices in connection with alleged exposures to acrylamide in their food products,.  Several of Plaintiff's members also have been sued in connection with these 60-day notices. Indeed, several of the companies represented on Plaintiff's Board of Directors have received 60-day notices on acrylamide in food products and been sued in connection with such notices." (Doc 1 at page 17 of 23, lines 10-15)

In its First Amended Complaint, CalChamber further alleged:

> At the same time, due to the widespread presence of acrylamide in thousands of food products, many of Plaintiff's members that sell or produce acrylamide-containing food products have not yet been sued under Proposition 65 in connection with some, or all, of their acrylamide-containing food products. Because of California's listing of acrylamide and the attendant Proposition 65 warning requirement, these members must either take action . . . or face a significant and imminent risk of an enforcement action seeking substantial civil penalties and attorneys' fees for failing to do so.  (ECF 57 at 18:9-18).

**3**

TELEPHONE (562) 437-4499
TOLL-FREE (877) TOX-TORT
TELECOPIER (562) 436-1561
WWW.TOXICTORTS.COM

METZGER LAW GROUP
A PROFESSIONAL LAW CORPORATION
555 EAST OCEAN BOULEVARD, SUITE 800
LONG BEACH, CALIFORNIA 90802

PRACTICE CONCENTRATED IN TOXIC
TORT & ENVIRONMENTAL LITIGATION
OCCUPATIONAL & ENVIRONMENTAL LUNG
DISEASE, CANCER, AND TOXIC INJURIES

F:\WP\Cases\1887\RESEARCH\Judicial Disqualification\Reply in Support of Motion for Disqualification, Final.wpd

TELEPHONE (562) 437-4499
TOLL-FREE (877) TOX-TORT
TELECOPIER (562) 436-1561
WWW.TOXICTORTS.COM

METZGER LAW GROUP
A PROFESSIONAL LAW CORPORATION
555 EAST OCEAN BOULEVARD, SUITE 800
LONG BEACH, CALIFORNIA 90802

PRACTICE CONCENTRATED IN TOXIC
TORT & ENVIRONMENTAL LITIGATION
OCCUPATIONAL & ENVIRONMENTAL LUNG
DISEASE, CANCER, AND TOXIC INJURIES

In its original and its amended complaints, CalChamber further alleged: "The requirement to place a . . . Proposition 65 cancer warning for acrylamide on food products has had, and will continue to have, a substantial adverse impact on Plaintiff's members."  (ECF 1 at 17:3-5; ECF 57 at 18:28 – 19:3).

In its original and amended complaints, CalChamber also alleged: "Plaintiff's members include entities that have already been harmed by California's requirement to provide a false, misleading, and/or highly controversial cancer warning for acrylamide in food products, and will be injured further if forced to either comply with Proposition 65's compelled false warning requirement, or incur costly other burdens and face the threat of private enforcement suits or other enforcement actions."  (ECF 1 at 21:14-18; ECF 57 at 23:14-18)

In CalChamber's opposition to the Attorney General's motion to dismiss its First Amended Complaint, CalChamber claimed representational standing on behalf of its members, writing:

> CalChamber alleges that: its members sell and produce food products that contain acrylamide (Am. Compl. ¶¶ 8, 63, 64); as a result of California's listing of acrylamide as a chemical "known to the State to cause cancer," Proposition 65 presumptively requires such businesses to provide a cancer warning on their acrylamide-containing products (*id.* ¶¶ 5, 33-36); businesses that have opted not to provide acrylamide warnings, including many CalChamber members, *already* have been threatened with litigation and sued for violating Proposition 65 by the AG and others (*id.* ¶¶ 56-59, 63); and, consequently, CalChamber's members that have not yet been sued must either provide a warning they believe to be false and misleading (thereby compelling their speech), or face the substantial risk of an enforcement action under Proposition 65 for failing to do so (*id.* ¶¶ 64-66, 87, 94).

(ECF 65 at 7:19-27).

CalChamber further wrote: "Likewise, a favorable decision enjoining the AG from enforcing the Proposition 65 warning requirement as applied to acrylamide in food would redress CalChamber's members' First Amendment injuries."  (ECF 65 at 12:4-6).

In *Fair Housing of Marin v. Combs,* 285 F.3d 899 (9th Cir. 2002), the Ninth Circuit interpreted *Havens Realty Corp. v. Coleman*, 455 U.S. 363 (1982), "to stand for the proposition that an organization may satisfy the Article III requirement of injury in fact if it can demonstrate: (1) frustration of its organizational mission; and (2) diversion of its resources to combat the particular housing discrimination in question." *Fair Housing of Marin, supra,* 285 F.3d at 905.

//

**4**

TELEPHONE (562) 437-4499
TOLL-FREE (877) TOX-TORT
TELECOPIER (562) 436-1561
WWW.TOXICTORTS.COM

METZGER LAW GROUP
A PROFESSIONAL LAW CORPORATION
555 EAST OCEAN BOULEVARD, SUITE 800
LONG BEACH, CALIFORNIA 90802

PRACTICE CONCENTRATED IN TOXIC
TORT & ENVIRONMENTAL LITIGATION
OCCUPATIONAL & ENVIRONMENTAL LUNG
DISEASE, CANCER, AND TOXIC INJURIES

CalChamber filed this case alleging representational standing on behalf of its members, rather than organizational standing in its own right. Indeed, nowhere in its original or its amended complaint has CalChamber alleged that CalChamber has itself been sued for violating Proposition 65, that Proposition 65 has frustrated its mission or purpose, or that CalChamber's resources have been diverted by acrylamide-in-food lawsuits so as to affect its corporate mission. Thus, CalChamber has not alleged standing to sue in this case for any organizational injury to itself.

*La Asociacion de Trabajadores de Lake Forest v. City of Lake Forest*, 624 F.3d 1083 (9th Cir. 2010), a First Amendment case, is on point. In that case the Ninth Circuit explained:

> An organization suing on its own behalf can establish an injury when it suffered "both a diversion of its resources and a frustration of its mission." *Combs*, 285 F.3d at 905. It cannot manufacture the injury by incurring litigation costs or simply choosing to spend money fixing a problem that otherwise would not affect the organization at all. See, e.g., *Fair Employment Council v. BMC Mktg. Corp.*, 28 F.3d 1268, 1276–77 (D.C.Cir.1994). It must instead show that it would have suffered some other injury if it had not diverted resources to counteracting the problem. In *Havens*, for example, housing discrimination threatened to make it more difficult for HOME to counsel people on where they might live if the organization didn't spend money fighting it. 455 U.S. at 379, 102 S.Ct. 1114. The organization could not avoid suffering one injury or the other, and therefore had standing to sue. Cf. *Smith v. Pacific Props. & Dev. Corp.*, 358 F.3d 1097, 1105 (9th Cir. 2004) (organization "had...to divert its scarce resources from other efforts"); *El Rescate Legal Servs., Inc. v. Exec. Office of Immigration Rev.*, 959 F.2d 742, 748 (9th Cir.1992) (challenged policy "require[d] the organizations to expend resources ... they otherwise would spend in other ways").

*La Asociacion de Trabajadores de Lake Forest v. City of Lake Forest*, *supra,* 624 F.3d at 1088.

The Ninth Circuit held that the plaintiff in that case lacked organizational standing:

> In this case, NDLON failed to assert any factual allegations in its complaint that it was forced to divert resources to help ATLF because of the defendants' actions, and never sought leave to add them. . . .
> It appears as though at the time NDLON filed its complaints (up to and including its Third Amended Complaint), the organization intended to assert standing on behalf of its members rather than on behalf of itself as an organization. Various paragraphs in the complaint refer to NDLON's members and the alleged violations of their First Amendment rights. Nowhere in the complaint, however, does NDLON assert a frustration of its purpose or diversion of its resources that would allow the Court to conclude that NDLON had pleaded organizational standing on its own behalf.

*La Asociacion de Trabajadores de Lake Forest v. City of Lake Forest*, 624 F.3d at 1088–1089.

CalChamber's many allegations of harm to its members and the absence of any allegation that it has itself sustained "a diversion of its resources and a frustration of its mission," establish that

REPLY OF INTERVENOR-DEFENDANT, CERT, IN SUPPORT OF MOTION TO DISQUALIFY THE HON.
KIMBERLY J. MUELLER; MEMO OF POINTS & AUTHORITIES; DECLARATION OF RAPHAEL METZGER

CalChamber filed this case in a representational capacity on behalf of its members to redress harm to them and not to redress harm to CalChamber itself. Therefore, it is CalChamber's members that are the real parties in interest in this case, rather than CalChamber itself.

In determining whether Judge Mueller has a financial or other disqualifying interest in this case, her financial and other conflicting interests must be evaluated in relation to CalChamber's members who are the real parties in interest in this case, rather than as to CalChamber itself, which has never been sued for violating Proposition 65 and has not alleged or sustained either a diversion of its resources or frustration of its mission. Indeed, as will be shown, this conclusion is not only logically sound but is supported by Ninth Circuit decisions that have addressed the issue.

## 4.   FOR PURPOSES OF RECUSAL, THE TERM "PARTY" IN 28 U.S.C. §455 INCLUDES THOSE WHO ARE REAL PARTIES IN INTEREST

In *In re Cement and Concrete Antitrust Litigation,* 515 F.Supp. 1076 (D. Ariz. 1981), Judge Carl A. Muecke was notified by the defendants that his wife owned stock in several of the plaintiff class members. The defendants contended that Mrs. Muecke's stock ownership constituted a financial interest in the subject matter in controversy or in a party to the proceeding and that the judge was under a *per se* duty to recuse himself. After extensive briefing, oral argument, and an opinion from the Advisory Committee on Codes of Conduct of the Judicial Conference of the United States, Judge Muecke recused himself on the ground that his wife's stock ownership constituted a financial interest in a party to the proceeding within the meaning of section 455(b)(4). In reviewing the judge's decision, the Ninth Circuit observed:

> In his opinion Judge Muecke correctly noted that in subsection (b)(4) of the statute, the phrase "financial interest in the subject matter in controversy or in a party to the proceeding," unlike the phrase "or any other interest," is not modified by the subsequent phrase "that could be substantially affected by the outcome of the proceeding." Thus, subsection (b)(4) establishes two classes of disqualifying interests: first, "financial interests in the subject matter in controversy or in a party to the proceeding;" these interests require recusal whether or not the outcome of the proceeding could have any effect on the interests; second, "other interests;" these interests require recusal only if they could be substantially affected by the outcome of the proceeding. See *In re New Mexico Natural Gas Anti-Trust Litigation*, 620 F.2d 794, 796 (10th Cir. 1980). An "interest" is disqualifying whether it is held by the judge or his spouse. The issue before Judge Muecke, then, was whether his wife's stock ownership in several of the class members constituted a financial interest in a party to the proceeding or the subject matter in controversy. If such ownership constituted a financial interest in either, it is irrelevant, for purposes of recusal, whether that interest would be substantially affected by the outcome of the

TELEPHONE (562) 437-4499
TOLL-FREE (877) TOX-TORT
TELECOPIER (562) 436-1561
WWW.TOXICTORTS.COM

METZGER LAW GROUP
A PROFESSIONAL LAW CORPORATION
555 EAST OCEAN BOULEVARD, SUITE 800
LONG BEACH, CALIFORNIA 90802

PRACTICE CONCENTRATED IN TOXIC
TORT & ENVIRONMENTAL LITIGATION
OCCUPATIONAL & ENVIRONMENTAL LUNG
DISEASE, CANCER, AND TOXIC INJURIES

**6**

TELEPHONE (562) 437-4499
TOLL-FREE (877) TOX-TORT
TELECOPIER (562) 436-1561
WWW.TOXICTORTS.COM

METZGER LAW GROUP
A PROFESSIONAL LAW CORPORATION
555 EAST OCEAN BOULEVARD, SUITE 800
LONG BEACH, CALIFORNIA 90802

PRACTICE CONCENTRATED IN TOXIC
TORT & ENVIRONMENTAL LITIGATION
OCCUPATIONAL & ENVIRONMENTAL LUNG
DISEASE, CANCER, AND TOXIC INJURIES

proceeding.

Judge Muecke held that ownership of stock in a class member constitutes a financial interest in a party to the proceeding. In so holding, Judge Muecke rejected the petitioner's arguments that, because the statute does not refer to class members and because general law does not treat class members and parties in an identical fashion, class members are not parties within the meaning of section 455. 515 F.Supp. at 1079.

. . . Judge Muecke found unpersuasive petitioners' argument that because general law does not treat class members and parties in an identical fashion for all purposes, class members are not parties for purposes of section 455. It is true that for certain procedural purposes, class members and parties are not treated identically. But, these differences in treatment are a concession to the nature of class action suits and the purposes of Rule 23: if every class member had to be treated as a party in all circumstances, the purposes of Rule 23 might in some instances be frustrated. Thus, for example, the presence of non-diverse class members will not defeat federal diversity jurisdiction so long as the class representatives and the opposing parties are diverse; e.g., *Friedman v. Meyers*, 482 F.2d 435 (2d Cir. 1973); see also *Snyder v. Harris*, 394 U.S. 332, 340, 89 S.Ct. 1053, 1058-1059, 22 L.Ed.2d 319 (1969); 13 C. Wright & A. Miller, Federal Practice and Procedure s 1755 at 550 n. 82; some courts have held that class members are not subject to discovery under Fed.R.Civ.P. 33; e.g., *Fischer v. Wolfinbarger*, 55 F.R.D. 129 (W.D.Ky.1971); *Wainwright v. Kraftco Corp.*, 54 F.R.D. 532 (N.D.Ga.1972);11 and other courts have held that class members should not be treated as parties for purposes of counterclaims under Rule 13; e.g., *Donson Stores v. American Bakeries Co.*, 58 F.R.D. 481 (S.D.N.Y.1973).

Whatever the rule may be with respect to treating class members as parties for certain procedural purposes, it is clear that class members and parties are treated in substantially the same manner in regard to the substantive benefits and burdens of judgment. Thus, Rule 23 provides that any class member who has not opted out shall be included in the judgment, whether favorable or not to the class member, Fed.R.Civ.P. 23(c)(2)-(3); a class member may appeal from an order approving a settlement to which the member objects, *Ace Heating & Plumbing Co. v. Crane Co.*, 453 F.2d 30 (3d Cir. 1971); a class member is bound as a party for res judicata purposes, see e.g., *Brown v. Vermillion*, 593 F.2d 321 (8th Cir. 1979); *Smith v. Alleghany Corp.*, 394 F.2d 381 (2d Cir.), cert. denied, 393 U.S. 939, 89 S.Ct. 300, 21 L.Ed.2d 276 (1968); 3B J. Moore, Moore's Federal Practice P 23.60 at 23-468; *1310 13 C. Wright & A. Miller, Federal Practice & Procedure s 1784 at 178 ("According to traditional res judicata notions, a member of a class in a Rule 23 suit is considered to be a party by representation, and will be bound to the same extent as an actual party").

On some occasions, courts have expressly described class members as parties. In *American Pipe & Construction Co. v. Utah*, 414 U.S. 538, 94 S.Ct. 756, 38 L.Ed.2d 713 (1974), the Supreme Court stated "(u)nder the circumstances of this case, ... the claimed members of the class stood as parties to the suit until and unless they received notice thereof and chose not to continue." *Id.* at 550-51, 94 S.Ct. at 764-765. The Court held that the statute of limitations was tolled for "all members of the class who would have been parties had the suit been permitted to continue as a class action." *Id.* at 554, 94 S.Ct. at 766. Similarly, in comparing the status of members of an organization that had filed suit to the status of class members in a class action, the Seventh Circuit stated that "the (Supreme) Court's remarks plainly imply that the organization's members are not parties to an organizational

REPLY OF INTERVENOR-DEFENDANT, CERT, IN SUPPORT OF MOTION TO DISQUALIFY THE HON. KIMBERLY J. MUELLER; MEMO OF POINTS & AUTHORITIES; DECLARATION OF RAPHAEL METZGER

F:\WP\Cases\1887\RESEARCH\Judicial Disqualification\Reply in Support of Motion for Disqualification, Final.wpd

representative suit. Yet class members are parties to class actions. See e.g., *Zahn v. International Paper Co.*, ...." *Local 194, Retail, Wholesale & Department Store Union v. Standard Brands,* 540 F.2d 864, 867 (7th Cir. 1976).

We need not decide the general question whether class members are in fact "parties" to a class action suit; for some purposes they are treated as such, and for other purposes they are not. Here, we need decide only if, for purposes of section 455, stock ownership in a class member constitutes an interest in "a party to the proceeding." We agree with Judge Muecke's analysis in rejecting petitioner's argument that class members are not parties within the meaning of section 455:

The problem with plaintiffs' argument is that, where it counts, class members and parties are identical. There is no question that class members are included in the benefits and burdens of a judgment on an equal basis with parties. For this reason, there appears to be no reason in logic why a financial interest "however small" in a named party to a litigation should be grounds for recusal, but that the same interest in a class member should not be. Neither the degree of conflict, nor the appearance of impropriety is altered by a litigant's classification as "party" or "class member." 515 F.Supp. at 1079.14

A review of the statute's legislative history adds considerable support to Judge Muecke's ruling that, because the appearance of impropriety is similar whether the interest is in a named party or a class member, class members should be viewed as parties for purposes of recusal under the statute.
. . .

We conclude that the term "party" as used in section 455 must be given its broad customary meaning rather than the narrow construction suggested by plaintiffs, and hold that for purposes of the recusal statute, the term "party" includes class members. Thus, after five years of litigation, a multi-million dollar lawsuit of major national importance, with over 200,000 class plaintiffs, grinds to a halt over Mrs. Muecke's $29.70. A new judge must now be assigned to conduct further proceedings.

*In re Cement Antitrust Litigation,* 688 F.2d 1297, 1308-1313 (9th Cir. 1982).

Recently, the court in *Bennett Regulator Guards, Inc. v. Atlanta Gas Light Co.*, 825 Fed.Appx. 773 (Fed. Cir. 2020), observed that one judge of a three-judge panel "was obliged to recuse himself after Atlanta Gas identified Southern Co. As a real party in interest." *Id.* at n. 5.

**5.   THE NORTH SACRAMENTO CHAMBER OF COMMERCE SHOULD BE DEEMED A PARTY TO THIS CASE, BECAUSE CALCHAMBER ALLEGED NO ORGANIZATIONAL INJURY TO ITSELF AND FILED THIS CASE ON BEHALF OF ITS MEMBERS**

Evaluating Judge Mueller's interests vis-a-vis CalChamber's members (as the real parties in interest in this case), rather than as to CalChamber itself (which merely sues in this case in a representational capacity to redress alleged harms of its members), the relationships between Judge Mueller and two organizations become paramount: the North Sacramento Chamber of Commerce

TELEPHONE (562) 437-4499
TOLL-FREE (877) TOX-TORT
TELECOPIER (562) 436-1561
WWW.TOXICTORTS.COM

METZGER LAW GROUP
A PROFESSIONAL LAW CORPORATION
555 EAST OCEAN BOULEVARD, SUITE 800
LONG BEACH, CALIFORNIA 90802

PRACTICE CONCENTRATED IN TOXIC
TORT & ENVIRONMENTAL LITIGATION
OCCUPATIONAL & ENVIRONMENTAL LUNG
DISEASE, CANCER, AND TOXIC INJURIES

**8**

TELEPHONE (562) 437-4499
TOLL-FREE (877) TOX-TORT
TELECOPIER (562) 436-1561
WWW.TOXICTORTS.COM

METZGER LAW GROUP
A PROFESSIONAL LAW CORPORATION
555 EAST OCEAN BOULEVARD, SUITE 800
LONG BEACH, CALIFORNIA 90802

PRACTICE CONCENTRATED IN TOXIC
TORT & ENVIRONMENTAL LITIGATION
OCCUPATIONAL & ENVIRONMENTAL LUNG
DISEASE, CANCER, AND TOXIC INJURIES

and the Sacramento Metro Chamber of Commerce, both of which were members of CalChamber at the time it filed this suit.  Considering Judge Mueller's interests with these organizations, it becomes readily apparent that Judge Mueller has numerous conflicts of interest which require her disqualification.

First, prior to 2004, Judge Mueller's husband was President of the North Sacramento Chamber of Commerce. (Exhibits "B" through "E").

Second, at the present and since at least April 2019, the North Sacramento Chamber of Commerce's principal office address has been 400 Slobe Avenue, Sacramento, CA 95815 - the address of Judge Mueller's husband and his business, NSLC. (Exhibits "G," "H").  Third, the North Sacramento Chamber of Commerce website bears NSLC's logo and identifies NSLC as one of its "Leadership Circle Sponsor Members,"  NSLC being one of the few "Platinum Members" of the NSLC - the highest level of corporate sponsorship.  (Exhibit "O").

Fourth, in addition to 400 Slobe Avenue being the address of the North Sacramento Chamber of Commerce (Exhibits "G," "H"), the address of North Sacramento Land Company (Exhibit "L") and the address of Robert Slobe (Exhibit "M"), *this address is also Judge Mueller's current address.*  (Exhibits "BB" through "DD").

Finally, as noted above, there is a symbiotic relationship between CalChamber and the North Sacramento and the Sacramento Metro Chambers of Commerce.  The North Sacramento Chamber of Commerce states that it "works with the Sacramento Metro Chamber, the Cal Chamber and US Chamber on policy and advocacy (Exhibit "I") and CalChamber's website says: "Working together, the California Chamber of Commerce and local chambers of Commerce are a solid force as advocates supporting business-friendly policies and helping California businesses comply with complex laws and regulations" and that "CalChamber and Local Chambers of Commerce [are] [a] win-win partnership for the local chamber and its members."  (Exhibit "K").

For all these reasons, Judge Mueller has substantial conflicts of interest with these two real parties in interest in this case, which requires her disqualification as trier of fact and judge.

//

//

**9**

TELEPHONE (562) 437-4499
TOLL-FREE (877) TOX-TORT
TELECOPIER (562) 436-1561
WWW.TOXICTORTS.COM

METZGER LAW GROUP
A PROFESSIONAL LAW CORPORATION
555 EAST OCEAN BOULEVARD, SUITE 800
LONG BEACH, CALIFORNIA 90802

PRACTICE CONCENTRATED IN TOXIC
TORT & ENVIRONMENTAL LITIGATION
OCCUPATIONAL & ENVIRONMENTAL LUNG
DISEASE, CANCER, AND TOXIC INJURIES

**6.    JUDGE MUELLER HAS A FINANCIAL INTEREST IN THE OUTCOME OF THIS CASE, BECAUSE THE PROFITABILITY OF HER HUSBAND'S BUSINESS DEPENDS ON ALMONDS, WHICH ARE THE SUBJECT OF 212 NOTICES OF VIOLATION IN THIS CASE**

At the August 27th hearing Judge Mueller mentioned the "Vann Brothers" and the "Vann Family," and directed Plaintiff's counsel to provide her information about this business about which CERT and its counsel were totally unaware.  Following the hearing, Petitioner's counsel searched the Internet to ascertain the relationship between Judge Mueller and the Vann entities.  Petitioner's counsel found a website for three related companies: Vann Family Orchards, Vann Brothers, and Yolo Hulling and Shelling. (Exhibit "FF").  Petitioner's counsel also found a webpage for Vann Brothers Farming (Exhibit "GG") that states: "Vann Brothers is a large farming operation located in Williams, California.  In 1973, Garnett and Bill started farming forty acres of wheat.  Since then, Vann Brothers has grown to farm more than 13,000 acres of almonds and walnuts.  In recent years, Garnett and Bill Vann have added an Almond Processing Facility and Huller Sheller to make Vann Brothers a true 'farm to table' organization.  The Vann Family takes pride in the fact that they, and their more than 200 employees, are known for growing and processing top quality commodities that are shipped globally."

An obituary for Bill Vann, who died in a helicopter crash on August 1, 2021, noted:  "Today, the company is one of the largest almond processors in northern California and farms more than 170,000 acres in the Sacramento Valley" and that "[t]he farm's almonds are sold across the nation and world."  (Exhibit "HH").

It appears that the Vann Family is the family that operates the almond ranch in Colusa County on land owned by the North Sacramento Land Company (NSLC), which is owned by Judge Mueller and her husband.  The NSLC, which was founded in 1910, "still exists today as an owner of warehouse and office lessor and owns a 7500 acre cattle and almond ranch in Colusa County.  It is currently run by Robert Johnston Slobe, great grandson of D.W. Johnston." (Exhibit "O").

Judge Mueller's financial conflict of interest with respect to the almond ranch is even greater than her ownership in Spring Valley Ranch Partnership which owns the land leased to the Vann Family; Spring Valley Ranch Partnership has financial interest in the crops growing on the land,

F:\WP\Cases\1887\RESEARCH\Judicial Disqualification\Reply in Support of Motion for Disqualification, Final.wpd

including the almond trees.  (Exhibit "II" (UCC Financing Statement identifying the Grantors as Spring Valley Ranch Partnership and Vann-Peterson Farms Partnership, and the Grantee as Metropolitan Life Insurance Company, and the collateral as the property described in Exhibits A and B thereto, Exhibit B of which includes "All trees and other permanent plantings . . . on the Real Property" and "All rents, issues, profits and royalties arising out of the Real Property")).

The cancer hazard of acrylamide exposure from consumption of roasted almonds has been recognized by the Almond Board of California, which sponsored a study that reported a mean value of 178 ppb acrylamide in roasted almonds. (Exhibit "JJ").  Furthermore, the Almond Board of California is listed on the Vann Family Orchards website as an "affiliate." (Exhibit "KK").

Investigation of publicly available records revealed several other documents evidencing a financial relationship between Judge Mueller's husband's business and the Vann Family, including:

(A) a "Memorandum of Agricultural Lease" dated May 20, 2009, between Spring Valley Ranch Partnership, a California general partnership and Vann-Peterson Farms Partnership, a California partnership, where Spring Valley Ranch Partnership leased to Vann-Peterson Farms Partnership certain agricultural land.  The Memorandum of Agricultural Lease was signed on behalf of Spring Valley Ranch Partnership by Robert J. Slobe, President of North Sacramento Land Co., a California corporation, its General Partner.  The Memorandum was signed on behalf of Vann-Peterson Farms Partnership by William B. Vann and Garnett A. Vann on behalf of Vann Family Two, LLC, a California limited liability company, its General Partner, and by two members of the Peterson family. The Memorandum of Agricultural Lease was filed with a UCC Financing Statement identifying the owner of the property as "Spring Valley Ranch Partnership, c/o North Sacramento Land Co., 400 Slobe Avenue, Sacramento, CA 95815."  (Exhibit "LL").

(B) a "Grant Deed" recorded by the Clerk-Recorder of the County of Colusa on June 4, 2009, whereby North Sacramento Land Company, Carolyn Dean Slobe, Steven D. James, Gary A. Slobe, Robert J. Slobe and Wendy D. Blakemore aka Wendy D. Slobe, granted to Spring Valley Ranch Partnership, a California general partnership, property in the County of Colusa.  (Exhibit "MM")

(C) a Senate report prepared for a hearing before the Committee on the Judiciary of the United States Senate on April 16, 2010 regarding Nominations of U.S. Circuit and U.S. District

TELEPHONE  (562) 437-4499
TOLL-FREE  (877) TOX-TORT
TELECOPIER (562) 436-1561
WWW.TOXICTORTS.COM

METZGER LAW GROUP
A PROFESSIONAL LAW CORPORATION
555 EAST OCEAN BOULEVARD, SUITE 800
LONG BEACH, CALIFORNIA 90802

PRACTICE CONCENTRATED IN TOXIC
TORT & ENVIRONMENTAL LITIGATION
OCCUPATIONAL & ENVIRONMENTAL LUNG
DISEASE, CANCER, AND TOXIC INJURIES

REPLY OF INTERVENOR-DEFENDANT, CERT, IN SUPPORT OF MOTION TO DISQUALIFY THE HON. KIMBERLY J. MUELLER; MEMO OF POINTS & AUTHORITIES; DECLARATION OF RAPHAEL METZGER

TELEPHONE (562) 437-4499
TOLL-FREE (877) TOX-TORT
TELECOPIER (562) 436-1561
WWW.TOXICTORTS.COM

METZGER LAW GROUP
A PROFESSIONAL LAW CORPORATION
555 EAST OCEAN BOULEVARD, SUITE 800
LONG BEACH, CALIFORNIA 90802

PRACTICE CONCENTRATED IN TOXIC
TORT & ENVIRONMENTAL LITIGATION
OCCUPATIONAL & ENVIRONMENTAL LUNG
DISEASE, CANCER, AND TOXIC INJURIES

Judges, that contains a Financial Disclosure Report of Kimberly J. Mueller in which Judge Mueller disclosed income of her husband from the North Sacramento Land Company in the form of employee salary and a director's fee; and investments of Judge Mueller in "Common Stock, North Sacramento Land Company," "Partner in Spring Valley Ranch," and "Real estate, North Sacramento, CA." (Exhibit "NN"). Included in the Financial Disclosure Report is a Financial Statement of Judge Mueller, stating the net worth of her investments in Common stock in the North Sacramento Land Company was $719,950, and the net worth of her Partnership interest in Spring Valley Ranch was $234,325; and that she owned three commercial properties whose net worth totaled $3,776,000.

(D) the UCC Financing Statement recorded September 25, 2009. (Exhibit "II").

(E) a webpage regarding Spring Valley Ranch in Williams, California, which describes the ranch as being "[s]ituated in Colusa County, California," and states that "[t]he land's inheritor, Robert Slobe, took over his great-grandfather's 7,500 acres in 1985." (Exhibit "OO").

(F) a Statement of Information filed with the California Secretary of State on March 22, 2004, of Vann Family, LLC, whose address is 365 Ruggieri Way, Williams, CA 95987. (Exhibit "PP").

Thus, it appears quite clear that Judge Mueller has a substantial financial interest in Spring Valley Ranch Partnership, which leases a large agricultural property to the Vann Family, which grows and harvests almonds on the ranch, and that Judge Mueller (as a partner Spring Valley Ranch Partnership) owns the almond trees themselves, which generates substantial rental income for Judge Mueller, which income is threatened by the more than 200 Proposition notices of violations regarding acrylamide in almonds which are the subject of CalChamber's complaint in this case.

**7.    APPLICATION OF 28 U.S.C. § 455 TO THE RECUSAL OF JUDGE  MUELLER DUE TO HER FINANCIAL INTEREST**

28 U.S.C. §455(b) states: "Any . . . judge . . . shall disqualify himself . . . where . . .

(4) He knows that he, individually or as a fiduciary, or his spouse . . . has a financial interest in the subject matter in controversy or in a party to the proceeding, or any other interest that could be substantially affected by the outcome of the proceeding;
(5) He or his spouse . . .  (iii) Is known by the judge to have an interest that could be substantially affected by the outcome of the proceeding.

Judge Mueller identified her assets as including "common stock in North Sacramento Land Company" and a "partnership interest in Spring Valley Ranch" in a Financial Statement that she

**12**

F:\WP\Cases\1887\RESEARCH\Judicial Disqualification\Reply in Support of Motion for Disqualification, Final.wpd

submitted to the U.S. Senate at the time of her nomination as a United States District Court judge. Her financial disclosure is supported by a duly notarized affidavit in which Judge Mueller swore "that the information provided in this statement is, to the best of my knowledge, true and accurate." (Exhibit "NN" p.151).   Thus, Judge Mueller is well aware of her stock ownership in North Sacramento Land Company and her partnership interest in Spring Valley Ranch.

Pursuant to 28 U.S.C. § 455(b)(5)(iii), Judge Mueller must recuse herself as the judge in this case if she or her husband "[i]s known by the judge to have an interest that could be substantially affected by the outcome of the proceeding."   The rental income that Judge Mueller and her husband receive from the Vann Family's operation of the large almond ranch on property owned by Judge Mueller and her husband, "could be substantially affected by the outcome of the proceeding," because more than 200 notices of violations of Proposition 65 regarding exposure to acrylamide from almonds have been served by private enforcers, which present a substantial financial threat to the almond industry.   Indeed, a study sponsored by California Almonds, the Almond Board of California, reported a mean value of 178 ppb acrylamide in roasted almonds.   (Exhibit "JJ"). Furthermore, the Almond Board of California is listed on the Vann Family Orchards website as an "affiliate" (Exhibit "KK"), and Bob Silveira of the Vann Family ran as a candidate for a position on its Board of Directors (Exhibit "QQ") and was recently elected. (Exhibit "RR").

Additionally, Judge Mueller's recusal is mandatory because her husband's business, the North Sacramento Land Company, owns the building at 400 Slobe Avenue, which is the business address of the North Sacramento Chamber of Commerce, a real party in interest in this case, which apparently leases space at this address from the North Sacramento Land Company, yielding rental income to the business of Judge Mueller's husband.  These financial interests require disqualification of Judge Mueller pursuant to 28 U.S.C. §§ 455(b)(4) and 455(b)(5)(iii).

## 8.   CONCLUSION

For all the foregoing reasons, Judge Mueller is disqualified from serving as the trier of fact and the judge in this case and the case must be reassigned to another judge of the court. Judge Mueller should recuse herself, just as her husband recently informed the office of CERT's counsel, as noted in Paragraph 23 of the accompanying Declaration of Raphael Metzger.

REPLY OF INTERVENOR-DEFENDANT, CERT, IN SUPPORT OF MOTION TO DISQUALIFY THE HON. KIMBERLY J. MUELLER; MEMO OF POINTS & AUTHORITIES; DECLARATION OF RAPHAEL METZGER

TELEPHONE (562) 437-4499
TOLL-FREE (877) TOX-TORT
TELECOPIER (562) 436-1561
WWW.TOXICTORTS.COM

METZGER LAW GROUP
A PROFESSIONAL LAW CORPORATION
555 EAST OCEAN BOULEVARD, SUITE 800
LONG BEACH, CALIFORNIA 90802

PRACTICE CONCENTRATED IN TOXIC
TORT & ENVIRONMENTAL LITIGATION
OCCUPATIONAL & ENVIRONMENTAL LUNG
DISEASE, CANCER, AND TOXIC INJURIES

F:\WP\Cases\1887\RESEARCH\Judicial Disqualification\Reply in Support of Motion for Disqualification, Final.wpd

TELEPHONE (562) 437-4499
TOLL-FREE (877) TOX-TORT
TELECOPIER (562) 436-1561
WWW.TOXICTORTS.COM

METZGER LAW GROUP
A PROFESSIONAL LAW CORPORATION
555 EAST OCEAN BOULEVARD, SUITE 800
LONG BEACH, CALIFORNIA 90802

Practice concentrated in toxic
tort & environmental litigation
occupational & environmental lung
disease, cancer, and toxic injuries

1    DATED:  September 10, 2021          METZGER LAW GROUP
                                        A Professional Law Corporation
2

3                                           /s/ Raphael Metzger

4                                       _____
                                        RAPHAEL METZGER, ESQ.
5                                       Attorneys for Intervenor-Defendant
                                        COUNCIL FOR EDUCATION AND
6                                       RESEARCH ON TOXICS ("CERT")

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

**14**

REPLY OF INTERVENOR-DEFENDANT, CERT, IN SUPPORT OF MOTION TO DISQUALIFY THE HON.
KIMBERLY J. MUELLER; MEMO OF POINTS & AUTHORITIES; DECLARATION OF RAPHAEL METZGER

F:\WP\Cases\1887\RESEARCH\Judicial Disqualification\Reply in Support of Motion for Disqualification, Final.wpd

### DECLARATION OF RAPHAEL METZGER

I, Raphael Metzger, declare as follows:

1.      I am an attorney at law, duly licensed and authorized to practice law in the State of California.

2.      I am a member of the bar of all federal district courts in the State of California, the United States Court of Appeals for the Ninth Circuit, and the United States Supreme Court.

3.      Unless the context indicates otherwise, I have personal knowledge of the matters set forth hereinafter and, if called as a witness, I would competently testify thereto.

4.      My firm represents the Intervenor-Defendant in this case, the Council for Education and Research on Toxics (CERT) .

5.      This declaration is submitted in support of CERT's motion to disqualify the Honorable Kimberly J. Mueller as the trier of fact and the judge in this case.

6.      Attached hereto as Exhibit "EE" is a true and correct copy of the Declaration of Heather Wallace, Associate General Counsel for the California Chamber of Commerce, which was filed by CalChamber on September 3, 2021 (ECF 163).

7.      Attached hereto as Exhibit "FF" is a true and correct copy of a webpage, https://www.vannfamilyorchards.com, identifying three companies: Vann Family Orchards, Vann Brothers, and Yolo Hulling and Shelling.

8.      Attached hereto as Exhibit "GG" is a true and correct copy of a webpage, https://www.vannfamilyorchards.com/vann-brothers-farming, discussing the Vann family business.

9.      Attached hereto as Exhibit "HH" is a true and correct copy of a webpage which is found at https://www.capitalpress.com/ag_sectors/orchards_nuts_vines/prominent-california-almond-grower-wife-and-friends-die-in-helicopter-crash/article_801d5ec2-f3ce-11eb-bf44-53dd478c1318.html, and is an obituary concerning the death of Bill Vann

10.     Attached hereto as Exhibit "II" is a true and correct copy of a September 25, 2009 UCC Financing Statement, which identifies the Grantors as Spring Valley Ranch Partnership and Vann-Peterson Farms Partnership and the Grantee as Metropolitan Life Insurance Company, and the

TELEPHONE (562) 437-4499
TOLL-FREE (877) TOX-TORT
TELECOPIER (562) 436-1561
WWW.TOXICTORTS.COM

METZGER LAW GROUP
A PROFESSIONAL LAW CORPORATION
555 EAST OCEAN BOULEVARD, SUITE 800
LONG BEACH, CALIFORNIA 90802

PRACTICE CONCENTRATED IN TOXIC
TORT & ENVIRONMENTAL LITIGATION
OCCUPATIONAL & ENVIRONMENTAL LUNG
DISEASE, CANCER, AND TOXIC INJURIES

REPLY OF INTERVENOR-DEFENDANT, CERT, IN SUPPORT OF MOTION TO DISQUALIFY THE HON. KIMBERLY J. MUELLER; MEMO OF POINTS & AUTHORITIES; DECLARATION OF RAPHAEL METZGER

F:\WP\Cases\1887\RESEARCH\Judicial Disqualification\Reply in Support of Motion for Disqualification, Final.wpd

collateral as the property described in Exhibits A and B thereto.

11.    Attached hereto as <u>Exhibit "JJ"</u> is a true and correct copy of a Technical Summary dated July, 2014, from the Almond Board of California, titled "Acrylamide in Roasted Almonds," at https://www.almonds.com/sites/default/files/content/attachments/aq0104_ acrylamide_in_roasted_almonds.pdf.

12.    Attached hereto as <u>Exhibit "KK"</u> is a true and correct copy of a webpage, https://www.vannfamilyorchards.com/affiliations, describing the affiliations of Vann Family Orchards.

13.    Attached hereto as <u>Exhibit "LL"</u> is a true and correct copy of a Memorandum of Agricultural Lease filed with a UCC Financing Statement identifying the owner of the property as "Spring Valley Ranch Partnership, c/o North Sacramento Land Co."

14.    Attached hereto as <u>Exhibit "MM"</u> is a true and correct copy of a Grant Deed recorded by the Clerk-Recorder of the County of Colusa on June 4, 2009, concerning property in Colusa County, California.

15.    Attached hereto as <u>Exhibit "NN"</u> is a true and correct copy of a Senate report prepared for a hearing before the Committee on the Judiciary of the United States Senate on April 16, 2010 regarding Nominations of U.S. Circuit and U.S. District Judges.  The Court's attention is directed to pages 145, 147, and 150.

16.    Attached hereto as <u>Exhibit "OO"</u> is a true and correct copy of an online report by the American Farmland Trust regarding Spring Valley Ranch in Williams, California.

17.    Attached hereto as <u>Exhibit "PP"</u> is a true and correct copy of a Statement of Information filed with the California Secretary of State on March 22, 2004, of Vann Family, LLC, which I obtained from the California Secretary of State's web site.

18.    Attached hereto as <u>Exhibit "QQ"</u> is a true and correct copy of a May 4, 2021 article published by the Almond Board of California, listing Bob Silveira as a candidate for a position on its Board of Directors.

19.    Attached hereto as <u>Exhibit "RR"</u> is a true and correct copy of a June 2, 2021 article published by the Almond Board of California, noting that Bob Silveira was elected to its Board of

TELEPHONE (562) 437-4499
TOLL-FREE (877) TOX-TORT
TELECOPIER (562) 436-1561
WWW.TOXICTORTS.COM

METZGER LAW GROUP
A PROFESSIONAL LAW CORPORATION
555 EAST OCEAN BOULEVARD, SUITE 800
LONG BEACH, CALIFORNIA 90802

PRACTICE CONCENTRATED IN TOXIC
TORT & ENVIRONMENTAL LITIGATION
OCCUPATIONAL & ENVIRONMENTAL LUNG
DISEASE, CANCER, AND TOXIC INJURIES

REPLY OF INTERVENOR-DEFENDANT, CERT, IN SUPPORT OF MOTION TO DISQUALIFY THE HON.
KIMBERLY J. MUELLER; MEMO OF POINTS & AUTHORITIES; DECLARATION OF RAPHAEL METZGER

F:\WP\Cases\1887\RESEARCH\Judicial Qualification\Reply in Support of Motion for Disqualification, Final.wpd

Directors.

20.      Attached hereto as <u>Exhibit</u> <u>"SS"</u> is a true and correct copy of a photo that appeared in the fall, 2016 newsletter "Horizons," published by the Sacramento Land Conservancy.   The caption identifies the man in the photo as Robert Slobe, who is holding a large pair of scissors with the name "Sacramento Chamber" emblazoned across it.

21.      Attached hereto as <u>Exhibit</u> <u>"TT"</u> is a true and correct copy of subpoena for deposition and production of business records served by my office upon the Custodian of Records for the North Sacramento Land Company on August 31, 2021.

22.      Attached hereto as <u>Exhibit</u> <u>"UU"</u> is a true and correct copy of subpoena for deposition and production of business records served by my office upon the Custodian of Records for Vann Family, LLC and Garnett A. Vann on August 31, 2021.

23.      On the morning of September 7, 2021, my secretary, Nina Vidal, received a telephone call from Robert Slobe asking to speak to me regarding the subpoena served upon him to testify and produce documents. He went on to tell Ms. Vidal that I should know that his wife is a judge, and this case is assigned to her, so she should probably recuse herself.

I declare under penalty of perjury under the laws of the United States that the foregoing is true and correct.   Executed September 10, 2021, at Long Beach, California.

/s/ Raphael Metzger
_____
Raphael Metzger

TELEPHONE (562) 437-4499
TOLL-FREE (877) TOX-TORT
TELECOPIER (562) 436-1561
WWW.TOXICTORTS.COM

METZGER LAW GROUP
A PROFESSIONAL LAW CORPORATION
555 EAST OCEAN BOULEVARD, SUITE 800
LONG BEACH, CALIFORNIA 90802

Practice concentrated in toxic
tort & environmental litigation
occupational & environmental lung
disease, cancer, and toxic injuries

REPLY OF INTERVENOR-DEFENDANT, CERT, IN SUPPORT OF MOTION TO DISQUALIFY THE HON.
KIMBERLY J. MUELLER; MEMO OF POINTS & AUTHORITIES; DECLARATION OF RAPHAEL METZGER

F:\WP\Cases\1887\RESEARCH\Judicial Disqualification\Reply in Support of Motion for Disqualification, Final.wpd

**CERTIFICATE OF SERVICE**

I hereby certify that on September 10, 2021, I caused the foregoing document, described as **REPLY OF INTERVENOR-DEFENDANT, COUNCIL FOR EDUCATION AND RESEARCH ON TOXICS, IN SUPPORT OF MOTION TO DISQUALIFY THE HON. KIMBERLY J. MUELLER; MEMORANDUM OF POINTS AND AUTHORITIES; DECLARATION OF RAPHAEL METZGER** to be electronically filed with the Court's CM/ECF filing system, which will send a *Notice of Electronic Filing* to all parties of record who are registered with CM/ECF:

Trenton H. Norris, Esq.
Sarah Esmaili, Esq.
S. Zachary Fayne, Esq.
David M. Barnes, Esq.
Arnold & Porter Kaye Scholer LLP
Three Embarcadero Center, 10th Flr.
San Francisco, CA 94111-4024
(Plaintiff)
Telephone: (415) 471-3100
email: trent.norris@arnolderporter.com

Harrison Pollak, Deputy Attorney General
Joshua Purtle, Deputy Attorney General
Laura J. Zuckerman, Deputy Attorney General
Office of the Attorney General
1515 Clay St., 20th Flr.
Oakland, CA 94612
(Defendant)
Telephone: (510) 879-0098
email: harrison.pollak@doj.ca.gov
joshua.purtle@doj.ca.gov
laura.zuckerman@doj.ca.gov

Aida Poulsen, Esq.
Poulsen Law P.C.
282 11th Ave., Suite 2612
New York, NY 10001
(Proposed Intervenors-Defendants)
email: ap@poulsenlaw.org

I declare that I am employed in the offices of a member of this court, at whose direction service was made.

Executed on September 10, 2021, at Long Beach, California.

/s/ Nina S. Vidal

_____
Nina S. Vidal, Declarant

TELEPHONE (562) 437-4499
TOLL-FREE (877) TOX-TORT
TELECOPIER (562) 436-1561
WWW.TOXICTORTS.COM

METZGER LAW GROUP
A PROFESSIONAL LAW CORPORATION
555 EAST OCEAN BOULEVARD, SUITE 800
LONG BEACH, CALIFORNIA 90802

PRACTICE CONCENTRATED IN TOXIC
TORT & ENVIRONMENTAL LITIGATION
OCCUPATIONAL & ENVIRONMENTAL LUNG
DISEASE, CANCER, AND TOXIC INJURIES

**18**

REPLY OF INTERVENOR-DEFENDANT, CERT, IN SUPPORT OF MOTION TO DISQUALIFY THE HON. KIMBERLY J. MUELLER; MEMO OF POINTS & AUTHORITIES; DECLARATION OF RAPHAEL METZGER