1

2

3

4

5

6                    UNITED STATES DISTRICT COURT

7              FOR THE EASTERN DISTRICT OF CALIFORNIA

8

9   California Chamber of Commerce,              No. 2:19-cv-02019-KJM-JDP

10                   Plaintiff,                  ORDER

11         v.

12   Xavier Becerra in his official capacity as
13   Attorney General of the State of California,

14                   Defendant.

15         and

16   Council for Education and Research on Toxics,

17                   Defendant-Intervenor

18

19

20         The Council for Education and Research on Toxics ("CERT," an intervening defendant)

21   and the Healthy Living Foundation ("HLF," a proposed intervenor), pursue my recusal in this

22   case based on claims that I have an interest in the outcome of this case and connections to the

23   parties based on my husband's business interests.  *See* Mot., ECF No. 152; Objs., ECF No. 154;

24   Objs., ECF No. 158; Reply, ECF No. 167; Suppl. Mem., ECF No. 171.  I am not persuaded that I

25   do have such an interest, and I am not persuaded that a "reasonable person" who objectively

26   understands all of the facts would perceive "a significant risk that [I] will resolve the case on a

27   basis other than [its] merits."  *United States v. Holland*, 519 F.3d 909, 913 (9th Cir. 2008)

28   (quoting *In re Mason*, 916 F.2d 384, 385 (7th Cir. 1990)).  But in pursuing my recusal, CERT,

                                          1

1    HLF, and their counsel appear to have embarked on an overzealous adventure, affirmatively

2    expanding the bounds of their motion in the direction of invading my personal life and that of my

3    husband.  This order is not the place to detail the facts behind my decision.  At this point, given

4    their recent actions and role in this case, I have concluded there is at least a question whether I

5    can uphold my obligations to act fairly and impartially.  *See* 28 U.S.C. § 455(a).

6         I have come to this conclusion after considerable deliberation and with great concern that

7    it will reward CERT and HLF with a reassignment they have sought for improper purposes.[1]  In

8    the interest of transparency and in fairness to the other parties to this action, I believe it is

9    necessary to explain.

10        Although CERT's counsel avers that he did not discover the facts behind his client's

11   motion until a few weeks before it was filed, *see* Metzger Decl. ¶¶ 5, 36–40, ECF No. 152, the

12   timing of that motion suggests CERT's and HLF's goals are strategic at least in part.  This case

13   had been pending for almost two years when CERT moved for recusal on the basis of information

14   it received from HLF and its counsel.  *See id.* ¶¶ 49–40.  CERT's motion followed uncannily on

15   the tail of several orders I issued against CERT's and HLF's interests, including orders

16   preliminarily enjoining new private enforcement actions under Proposition 65, denying a stay

17   pending appeal, and denying ex parte applications to intervene and participate as a nonparty.  *See*

18   *generally* Order (Mar. 30, 2021), ECF No. 114; Order (Apr. 15, 2021), ECF No. 118; Order (May

19   5, 2021), ECF No. 125; Order (May 25, 2021), ECF No. 133; Min. Order (June 2, 2021), ECF

20   No. 135.  My orders followed considerable judicial effort and neutral contemplation of the law

21   and the facts of this case as required, "without respect to persons."  *See* 28 U.S.C. § 453.

22   /////

---

[1] The court has not considered whether counsel's motion violates Federal Rule of Civil Procedure 11, but notes here that motions and other papers may not be presented to a federal court "for any improper purpose, such as to harass, cause unnecessary delay, or needlessly increase the costs of litigation."  Fed. R. Civ. P. 11(b)(1).  Following reassignment, it will be up to the newly assigned district judge to consider, at any juncture that judge deems appropriate, whether CERT, HLF, and their counsel have, in connection with the motion at ECF No. 152 and all documents filed in support of that motion, complied with Federal Rule of Civil Procedure 11; this District's Local Rules, including Local Rule 180(e); and the Rules of Professional Conduct of the State Bar of California.

When courts have considered the timeliness of recusal motions in the past, they have usually considered whether the moving party acted "at the earliest possible moment after obtaining facts demonstrating a basis for recusal." *United States v. Bell*, 79 F. Supp. 2d 1169, 1172 (E.D. Cal. 1999). "[A] prompt application affords the district judge an opportunity to assess the merits of the application before taking any further steps that may be inappropriate for the judge to take." *Id.* (quoting *In re Int'l Bus. Mach. Corp.*, 45 F.3d 641, 643 (2d Cir. 1995)). If litigants could obtain a judge's recusal whenever they liked, they could use a recusal motion as something of an insurance policy against future decisions they fear could be adverse. *See id.* Post-judgment recusal motions are presumptively untimely in light of this danger. *See E. & J. Gallo Winery v. Gallo Cattle Co.*, 967 F.2d 1280, 1295 (9th Cir. 1992).

Here, by contrast, CERT and HLF claim their efforts to obtain my recusal were spurred by recent discoveries, suggesting this is not a case in which a litigant has held a meritorious motion in reserve. A different danger lurks. Consider a litigant who is satisfied with the assignment of a particular judge or a court's decisions in the early stages of a case, but is later disappointed by a ruling on a crucial pretrial motion. The disappointed litigant could go hunting for bias or could even attempt to manufacture bias where none exists. Even without seeking reconsideration, it could then file a late-breaking recusal motion in an attempt to delay an adverse judgment or to obtain reassignment. Although the Ninth Circuit appears not to have considered the possibility of such abuses, its decisions suggest that unexplained delays of this type would suffice to demonstrate a recusal motion is untimely and should be denied. *Cf., e.g.*, *United States v. Mikhel*, 889 F.3d 1003, 1026 (9th Cir. 2018) (warning generally against untimely motions filed "for strategic purposes" (quoting *E. & J. Gallo*, 967 F.2d at 1296)); *Holland*, 519 F.3d at 915 (warning against attempts to "manipulate the system" by forcing the recusal of any undesired jurist, creating delays, or making a case more difficult).

CERT's disregard for this District's Local Rules, this court's standing orders, and binding authority raise further questions about its litigation practices and motivations. CERT's reply brief violates the page limits imposed by this court's standing orders, *see* Standing Order at 3, ECF No. 3-1, and while its motion has been pending it has docketed a supplemental brief without

1  seeking permission to do so, contrary to the Local Rules and this court's standing order, *see* E.D.

2  Cal. L.R. 230; Standing Order at 3.  Even though the Ninth Circuit has "held repeatedly that the

3  challenged jurist [herself] should rule on the legal sufficiency of a recusal motion in the first

4  instance," *United States v. Studley*, 783 F.2d 934, 940 (9th Cir. 1986), and even though "it is well

5  settled law that the mere filing of an affidavit under 28 U.S.C. § 144 does not automatically

6  disqualify a judge," *In re Shop Television Network, Inc.*, 170 B.R. 413, 416–17 (C.D. Cal. 1994),

7  *aff'd*, 79 F.3d 1154 (9th Cir. 1996) (unpublished), CERT and HLF have demanded that this court

8  immediately recuse or halt consideration of all other matters in this case and reassign the motion,

9  *see, e.g.*, Mot. at 17; Obj., ECF No. 154; Obj., ECF No. 158; Hr'g Tr. at 8–9 (Aug. 27, 2021),

10  ECF No. 166; Reply at iii; Suppl. Mem. at 2.  CERT even pursued relief on an emergency basis in

11  an unsuccessful petition for a writ of mandamus from the Ninth Circuit after this court had

12  directed CERT to published decisions in which the Circuit had rejected its position.  *See* Pet.,

13  *CERT v. U.S. Dist. Ct. E.D. Cal.*, No. 21-71256 (9th Cir. Sept. 3, 2021); Hr'g Tr. at 4–5 (Aug. 27,

14  2021) (citing *United States v. Scholl*, 166 F.3d 964, 977 (9th Cir. 1999) and *Toth v. Trans World*

15  *Airlines, Inc.*, 862 F.2d 1381, 1388 (9th Cir. 1988)).

16      CERT's and HLF's uncommonly aggressive, scorched earth efforts underscore these

17  concerns.  No party has registered any opposition to their request, but they have filed five memos

18  in support of CERT's motion, *see* ECF Nos. 152, 154, 158, 167, 171, and hundreds of pages of

19  supporting documents, *see* ECF Nos. 152-1, 152-2, 155, 158-1, 167-1, 167-2, 167-3, 171-1.  Both

20  CERT and HLF have also expended considerable time and money seeking evidence to support

21  their claims of bias after the fact.  After filing its motion, CERT served subpoenas on my

22  husband, his business, and others.  *See* Metzger Decl. ¶¶ 4–5 (Sept. 21, 2021), ECF No. 171.[2]

23  HLF's Chief Officer, who had previously claimed not to have time for litigation, *see* Steinman

24  Decl. ¶ 24 (July 9, 2021), ECF No. 143-1, personally drove to Colusa County to "conduct on-the-

25  ground research," Steinman Decl. ¶ 4 (Sept. 10, 2021), ECF No. 167-2.  He spoke to "local

---

[2] I have not discussed any of these subpoenas with my husband except to say I cannot discuss the matter with him given that I am obligated to decide this matter, as with all other matters, based on the record.

4

residents," *id.* ¶ 7, took photographs of an almond orchard that he, incorrectly, believes I own, *id.* ¶ 8, visited the Colusa County Courthouse and searched public records for information about the ranch, *id.* ¶ 9, and visited the County Clerk's Office to obtain copies of grant deeds, *id.* ¶ 10.  He personally conducted extensive online research to support CERT's motion, *see id.* ¶¶ 14, 16, 18, and visited the Sacramento County Assessor to obtain information about "all of the properties that belong to Judge Mueller, Robert J. Slobe, and the North Sacramento Land Company," *id.* ¶ 20.

CERT has also included extensive personal details about me and my husband in its public filings, even when the relevance of that information is questionable at best, and it seems not to have given careful attention to whether its claims are correct.[3]  For example, CERT makes incorrect claims about my interests in a family business and in real estate in Colusa County.  *See* Reply at 12; *see also* Steinman Decl. ¶ 5 (Sept. 10, 2021).  It emphasizes the alleged dollar value of "commercial properties" I allegedly own without explaining why those properties or their values are relevant.  *See* Reply at 12.  CERT and HLF have repeatedly disclosed an address that it describes as my "current address," *see, e.g.*, Mot. at 13; Objs. at 4, ECF No. 158, but I do not reside at that address.  I cannot exclude the possibility that these details were included in an attempt to engender public animus against me and to increase the personal costs of my continued assignment to this action, including the costs of safety and security to my husband and myself, which is no phantom worry.  After all, "the security of the nation's judiciary is a serious concern." *Holland*, 519 F.3d at 912.  "We are, unfortunately, reminded from time to time that threats against the judiciary have been carried out." *Id.*  At this moment, legislation is pending in Congress to provide greater protection to federal judges given the risks they and their families may face from dissatisfied litigants.  *See* Daniel Anderl Judicial Security and Privacy Act of 2020, S. 4711 (Sept. 24, 2020), H.R. 8591 (Oct. 13, 2020).  Because CERT's filings disclose information I understand is appropriately sealed in an effort to ensure no harm comes to any member of my family, I will direct the filings sealed and CERT to file redacted copies.[4]

---

[3] The court again cautions counsel of its obligations under Federal Rule of Civil Procedure 11(b)(1) and (3), without considering whether counsel has violated those obligations.

[4] For example, I have regularly sought permission for redaction from my annual Financial Disclosures of some of the identifying information contained in CERT's filings, based on security

1       I consider my obligation to "participate in cases assigned" to be a solemn and weighty

2   duty, one to be discharged neutrally. *Holland*, 519 F.3d at 912 (quoting *Maier v. Orr*, 758 F.2d

3   1578, 1583 (Fed. Cir. 1985)).  That duty has its roots in the Constitution. *See id.* (citing U.S.

4   Const. art. III, § 1).  It is reflected in the oath I took, referenced above, by which I obligated

5   myself to "'faithfully and impartially discharge and perform [my] duties' and to 'administer

6   justice without respect to persons, and do equal right to the poor and to the rich.'" *Id.* (quoting 28

7   U.S.C. § 453).  If judges "could recuse ourselves for any reason or no reason at all," then "we

8   could pick and choose our cases, abandoning those that we find difficult, distasteful, inconvenient

9   or just plain boring." *Id.* "[I]t would be too easy for those who seek judges favorable to their

10  case to disqualify those that they perceive to be unsympathetic merely by publicly questioning

11  their impartiality." *Perry v. Schwarzenegger*, 630 F.3d 909, 916 (9th Cir. 2011) (Reinhardt, J.).

12  We in fact have "as strong a duty to sit when there is no legitimate reason to recuse as [we do] to

13  recuse when the law and facts require." *Clemens v. U.S. Dist. Ct. for Cent. Dist. of Cal.*, 428 F.3d

14  1175, 1179 (9th Cir. 2005) (quoting *Nichols v. Alley*, 71 F.3d 347, 351 (10th Cir. 1995)).

15      In sum, I do not believe CERT's motion to recuse provides a legitimate reason for my

16  recusal.  I am very concerned that CERT and HLF are motivated not by a fear I might be swayed

17  by prejudice or bias, but rather by a hope they will have greater success before a different judge.

18  At this stage, however, I could not be faithful to the oath I took if I continued presiding over this

19  action.  For that reason:

20      (1)    On the court's own motion, **the undersigned recuses herself from this action**

21      **under 28 U.S.C. § 455(a)**;

22      (2)    The motion at ECF No. 152 is **denied as moot**.

23      (3)    The filings at ECF Nos. 152, 152-1, 152-2, 158, 155, 155-1, 155-2, 156, 157, 158,

24      167, 167-1, 167-2, 167-3, 171, 171-1 and 172 are **sealed**.  **Within thirty days**,

25      CERT shall review these documents and, for each, file either (a) a redacted copy

26      obscuring any addresses of real property at which the undersigned or Robert J.

concerns.  The federal judiciary's Committee on Financial Disclosure has always approved my
requests.

1           Slobe allegedly reside or which one or both of them allegedly own or (b) a copy of

2           the document without redactions accompanied by a certification from counsel that

3           no such address appears in the document.

4    (4)    The Clerk of the Court is directed to **randomly reassign** this case to another

5           district judge for any further proceedings that may be appropriate or required.  The

6           Clerk of the Court shall make appropriate adjustment in the assignment of civil

7           cases to compensate for this reassignment.

8    (5)    All dates and deadlines before the undersigned are **vacated**.

9    This order resolves ECF No. 152.

10    IT IS SO ORDERED.

11   DATED:  September 24, 2021.

12

                                    CHIEF UNITED STATES DISTRICT JUDGE