F:\WP\Cases\1887\PLEADMOT\DISMISS\Motion to Dismiss - Lack of Jurisdiction\Memorandum of Points and Authorities Final-Final-Final.wpd

TELEPHONE (562) 437-4499
TOLL-FREE (877) TOX-TORT
TELECOPIER (562) 436-1561
WWW.TOXICTORTS.COM

1  METZGER LAW GROUP
   A PROFESSIONAL LAW CORPORATION
2  RAPHAEL METZGER, ESQ., SBN 116020
   SCOTT P. BRUST, ESQ., SBN 215951
3  555 E. OCEAN BLVD., SUITE 800
   LONG BEACH, CA  90802
4  TELEPHONE:  (562) 437-4499
   TELECOPIER: (562) 436-1561
5  WEBSITE:  www.toxictorts.com

6  Attorneys for Intervenor-Defendant,
   COUNCIL FOR EDUCATION AND
7  RESEARCH ON TOXICS ("CERT")

8                  UNITED STATE DISTRICT COURT

9              EASTERN DISTRICT OF CALIFORNIA

10

METZGER LAW GROUP
A PROFESSIONAL LAW CORPORATION
555 EAST OCEAN BOULEVARD, SUITE 800
LONG BEACH, CALIFORNIA 90802

11  CALIFORNIA CHAMBER OF          | Civil No. 2:19-cv-02019-DAD-JDP
    COMMERCE,
12                                  | *Assigned to the Hon. Dale A. Drozd*
              Plaintiff,
13                                  | **INTERVENOR-DEFENDANT CERT'S**
       vs.                          | **MEMORANDUM OF POINTS AND**
14                                  | **AUTHORITIES IN SUPPORT OF ITS**
    XAVIER BECERRA, IN HIS OFFICIAL | **MOTION TO DISMISS FOR LACK OF A**
15  CAPACITY AS ATTORNEY GENERAL    | **CASE OR CONTROVERSY**
    OF THE STATE OF CALIFORNIA,
16                                  | **[NOTICE OF MOTION AND MOTION,**
              Defendant,            | **AND DECLARATIONS OF RAPHAEL**
17                                  | **METZGER AND SCOTT P. BRUST**
    COUNCIL FOR EDUCATION AND       | **CONCURRENTLY FILED HEREWITH]**
18  RESEARCH ON TOXICS,
                                    | DATE:          December 7, 2021
19            Intervenor-Defendant. | TIME:          9:30 a.m.
                                    | COURTROOM:  5

20

21

22

23

24

25

26

27

28

Practice concentrated in toxic
tort & environmental litigation
occupational & environmental lung
disease, cancer, and toxic injuries

---

**INTERVENOR-DEFENDANT CERT'S MEMORANDUM OF POINTS AND AUTHORITIES**
**IN SUPPORT OF ITS  MOTION TO DISMISS FOR LACK OF A CASE OR CONTROVERSY**

F:\WP\Cases\1887\PLEADMOT\DISMISS\Motion to Dismiss - Lack of Jurisdiction\Memorandum of Points and Authorities Final-Final-Final.wpd

# **TABLE OF CONTENTS**

TELEPHONE (562) 437-4499
TOLL-FREE (877) TOX-TORT
TELECOPIER (562) 436-1561
WWW.TOXICTORTS.COM

METZGER LAW GROUP
A PROFESSIONAL LAW CORPORATION
555 EAST OCEAN BOULEVARD, SUITE 800
LONG BEACH, CALIFORNIA 90802

PRACTICE CONCENTRATED IN TOXIC
TORT & ENVIRONMENTAL LITIGATION
OCCUPATIONAL & ENVIRONMENTAL LUNG
DISEASE, CANCER, AND TOXIC INJURIES

**PAGE**

1.   PRELIMINARY STATEMENT. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 1

2.   SUMMARY OF FACTS . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 2

    A.   Proposition 65. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 2
    B.   Intervenor-Defendant, Council for Education and Research on Toxics . . . . . . . . 2
    C.   The Coffee Litigation . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 3
    D.   This Litigation. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 4

3.   ABSENT A CASE OR CONTROVERSY WITHIN ARTICLE III OF THE U.S.
    CONSTITUTION, THIS COURT LACKS JURISDICTION TO  ADJUDICATE
    THIS CASE AND MUST DISMISS THIS CASE . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 6

4.   THERE MUST BE AN "HONEST AND ACTUAL ANTAGONISTIC ASSERTION
    OF RIGHTS" BY THE PLAINTIFF AND THE DEFENDANT FOR THERE TO BE
    AN ARTICLE III CASE AND CONTROVERSY . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 7

5.   THE INTERESTS OF CAL CHAMBER AND THE CALIFORNIA ATTORNEY
    GENERAL ARE ALIGNED, RATHER THAN ADVERSE. . . . . . . . . . . . . . . . . . . . . . . 8

    A.   For the Past 35 Years the Attorney General Has Represented OEHHA and Its
        Predecessor Agency in their Efforts to Nullify Proposition 65 Enforcement with
        Respect to Acrylamide in Food. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 8
    B.   The Governor of the State of California Has Long Been Hostile to the
        Application of Proposition 65 to Acrylamide in Food . . . . . . . . . . . . . . . . . . . 10
    C.   The Attorney General's Conduct of This Litigation Demonstrates That The
        Attorney General Is Serving The Desires of The Governor and OEHHA To
        Undermine Proposition 65 With Respect To Acrylamide In Food Rather Than
        Defending Proposition 65, As Is His Primary Duty . . . . . . . . . . . . . . . . . . . . 12
    D.   The Attorney General's Representation of the Interests of OEHHA and the
        Governor in Undermining Proposition 65 With Respect to Acrylamide in
        Food Conflicts With His Primary Duty to Defend This Duly Adopted
        Important Public Health Law . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 15

6.   THIS COURT DOES NOT HAVE BEFORE IT THE REAL PARTIES IN INTEREST
    OR AN ACTUAL CASE OR CONTROVERSY BETWEEN PERSONS WHO ARE
    REAL PARTIES IN INTEREST . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 16

    A.   CalChamber Is Not A Real Party In Interest in This Case; Moreover, It
        Has Refused to Identify Those of its Members Who May Be Real Parties in
        Interest in This Case, Let Alone Join Them as Parties Plaintiff in This Case . . . 17
    B.   The Attorney General Also Is Not a Real Party in Interest in This Case,
        Because He Has Not Filed Any Proposition 65 Case Regarding Acrylamide
        in Food, Nor Have Either of His Two Predecessor Attorneys General Filed
        Any Such Cases . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 19

7.   THE STATE HAS INITIATED A RULEMAKING PROCEEDING TO ADOPT 27
    CCR § 25607.2(b) WHICH WILL MOOT THIS CASE, THEREBY ELIMINATING
    ANY CASE OR CONTROVERSY IF ONE EVER EXISTED. . . . . . . . . . . . . . . . . . . . . 24

8.   CONCLUSION. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 25

i

**INTERVENOR-DEFENDANT CERT'S MEMORANDUM OF POINTS AND AUTHORITIES
IN SUPPORT OF ITS MOTION TO DISMISS FOR LACK OF A CASE OR CONTROVERSY**

F:\WP\Cases\1887\PLEADMOT\DISMISS\Motion to Dismiss - Lack of Jurisdiction\Memorandum of Points and Authorities Final-Final-Final.wpd

TELEPHONE (562) 437-4499
TOLL-FREE (877) TOX-TORT
TELECOPIER (562) 436-1561
WWW.TOXICTORTS.COM

METZGER LAW GROUP
A PROFESSIONAL LAW CORPORATION
555 EAST OCEAN BOULEVARD, SUITE 800
LONG BEACH, CALIFORNIA 90802

PRACTICE CONCENTRATED IN TOXIC
TORT & ENVIRONMENTAL LITIGATION
OCCUPATIONAL & ENVIRONMENTAL LUNG
DISEASE, CANCER, AND TOXIC INJURIES

# **TABLE OF AUTHORITIES**

**PAGE**

## **CASES**

*Atherton Mills v. Johnston*
259 U.S. 13, 15, 42 S.Ct. 422, 66 L.Ed. 814 (1922) . . . . . . . . . . . . . . . . . . . . . . . . . . . . 7

*Bartemeyer v. Iowa*
18 Wall. 129, 134, 135, 21 L.Ed. 929 (1873) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 7

*Center for Biological Diversity v. United States Forest Service*
925 F.3d 1041, 1047 (9th Cir. 2019) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 7, 12, 16

*CERT v. Starbucks, et al.*
Los Angeles Sup. Ct. Case No. BC 435759 . . . . . . . . . . . . . . . . . . . . . . . . . . 3, 9-11, 13

*Chicago & G.T. Ry. Co. v. Wellman*
143 U.S. 339, 345, 12 S.Ct. 400, 402, 36 L.Ed. 176 (1892) . . . . . . . . . . . . . . . . . . . . . 7

*Clark v. Coye*
60 F.3d 600, 603-04 (9th Cir. 1995) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 16

*Cleveland v. Chamberlain*
66 U.S. 419, 17 L.Ed. 93 (1861) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 7

*Colyer v. Smith*
50 F. Supp. 2d at 969, 971 (C.D. Cal. 1999) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 15

*Demos v. U.S. District Court*
925 F.2d 1160, 1161 (9th Cir. 1991) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 16

*Elk Grove Unified School Dist. v. Newdow*
542 U.S. 1, 11–12 (2004) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 1, 17, 23

*Ex parte McCardle*
7 Wall. 506, 514, 19 L.Ed. 264 (1868) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 6

*Flast v. Cohen*
392 U.S. 83, 95, 88 S.Ct. 1942, 1951, 20 L.Ed.2d 947 (1968) . . . . . . . . . . . . . . . . . . . 7

*In re Bernard*
31 F.3d 842, 847 (9th Cir. 1994) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 5

*In re Fry*
2015 WL 572315 at 12 (USBC E.D. Cal. 2015) . . . . . . . . . . . . . . . . . . . . . . . . . 1, 17, 23

*Kasza v. Browner*
133 F.3d 1159, 1171 (9th Cir. 1998) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 15

*Katie A. ex. rel. Ludin v. Los Angeles Cty.*
481 F.3d 1150, 1155 (9th Cir. 2007) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 16

ii

**INTERVENOR-DEFENDANT CERT'S MEMORANDUM OF POINTS AND AUTHORITIES
IN SUPPORT OF ITS MOTION TO DISMISS FOR LACK OF A CASE OR CONTROVERSY**

F:\WP\Cases\1887\PLEADMOT\DISMISS\Motion to Dismiss - Lack of Jurisdiction\Memorandum of Points and Authorities Final-Final-Final.wpd

TELEPHONE (562) 437-4499
TOLL-FREE (877) TOX-TORT
TELECOPIER (562) 436-1561
WWW.TOXICTORTS.COM

METZGER LAW GROUP
A PROFESSIONAL LAW CORPORATION
555 EAST OCEAN BOULEVARD, SUITE 800
LONG BEACH, CALIFORNIA 90802

PRACTICE CONCENTRATED IN TOXIC
TORT & ENVIRONMENTAL LITIGATION
OCCUPATIONAL & ENVIRONMENTAL LUNG
DISEASE, CANCER, AND TOXIC INJURIES

*Libertarian Party of Los Angeles County v. Bowen*
   709 F.3d 867, 872 (9th Cir. 2013) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . [22]

*Lopez v. Candaele*
   630 F.3d 775, 785 (9th Cir. 2010) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . [20]

*Lord v. Veazie*
   8 How. 251, 12 L.Ed. 1067 (1850) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . [7]

*Mansfield, Coldwater and Lake Michigan Railway Company v. Swan*
   111 U.S. 379, 382, 4 S.Ct. 510, 511, 28 L.Ed. 462 (1884). . . . . . . . . . . . . . . . . . . . . . . . [7]

*Muskrat v. United States*
   219 U.S. 346, 356-357, 31 S.Ct., 250, 253-254; 55 L.Ed. 246 (1911). . . . . . . . . . . . [6], [7]

*Native Village of Nuiqsut v. Bureau of Land Mgmt*
   9 F.4th 1201,1208  (9th Cir. 2021). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . [25]

*People v. Snyder's of Hanover, Inc., et al.*
   Alameda County Superior Court Case No. RG 09455286 . . . . . . . . . . . . . . . . . . . . . . . [19]

*Poe v. Ullman*
   367 U.S. 497, 507 (1961) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . [20], [22]

*Raines v. Byrd*
   521 U.S. 811, 818, 117 S.Ct. 2312, 138 L.Ed.2d 849 (1997). . . . . . . . . . . . . . . . . . . . . [6]

*San Diego County Gun Rights Committee v. Reno*
   98 F.3d 1121, 1128 (9th Cir. 1996) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . [21]

*San Francisco County Democratic Central Committee v. Eu*
   826 F.2d 814, 822 (9th Cir. 1987) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . [22]

*San Luis & Delta-Mendota Water Authority v. Salazar*
   638 F.3d 1163, 1173 (9th Cir. 2011) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . [22]

*Simonca v. Mukasey*
   No. CIV S-08-1453, 2008 WL 5113757, at *3 (E.D. Cal. Nov. 25, 2008). . . . . . . . . . [15]

*Spokeo, Inc. v. Robins*
   136 S. Ct. 1540, 1547, 194 L. Ed. 2d 635 (2016). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . [6]

*Steel Co. v. Citizens for a Better Environment*
   523 U.S. 83, 102, 118 S. Ct. 1003, 1016, 140 L. Ed. 2d 210 (1998) . . . . . . . . . . . . . [6], [7]

*Stoianoff v. State of Mont.*
   695 F.2d 1214, 1223 (9th Cir. 1983) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . [20]

*Thomas v. Anchorage Equal Rights Commission*
   220 F.3d 1134 (9th Cir. 2000) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . [20], [21]

*Todd v. McElhany*
   No. CIV S-11-2346, 2011 WL 5526464 at *2 (E.D. Cal. Nov. 14, 2011) . . . . . . . . . . . [16]

iii

**INTERVENOR-DEFENDANT CERT'S MEMORANDUM OF POINTS AND AUTHORITIES
IN SUPPORT OF ITS MOTION TO DISMISS FOR LACK OF A CASE OR CONTROVERSY**

Case 2:19-cv-02019-DAD-JDP   Document 192-1   Filed 11/01/21   Page 5 of 31

F:\WP\Cases\1887\PLEADMOT\DISMISS\Motion to Dismiss - Lack of Jurisdiction\Memorandum of Points and Authorities Final-Final-Final.wpd

*U.S. National Bank of Oregon v. Independent Insurance Agents of America, Inc.*
    508 U.S. 439, 446, 113 S.Ct. 2173, 124 L.Ed.2d 402 (1993) . . . . . . . . . . . . . . . . . . . . . . . 7

*United States v. Johnson*
    319 U.S. 302 (1943) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 1, 7, 8, 12, 16

## STATUTES

28 U.S.C. § 144. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 5

28 U.S.C. § 1983. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 5, 20

28 U.S.C. § 2201 . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 5

28 U.S.C. § 455. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 5

Health & Safety Code § 25249.6 . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 2

Health & Safety Code § 25249.7 . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 10

Health & Safety Code § 25249.7(e) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 3

Health and Safety Code § 25249.6 . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 2

## REGULATIONS

22 C.C.R. § 12501 . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 9

22 C.C.R. § 12601 . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 9

22 C.C.R. § 12705(e) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 9

22 C.C.R. § 12713 . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 8, 9, 11

27 C.C.R. § 25505 . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 10

27 C.C.R. § 25607.2(b) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 24

27 C.C.R. § 25704 . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 4, 9, 11

## OTHER AUTHORITIES

U.S. Constitution, Article III. . . . . . . . . . . . . . . . . . . . . . . . . . . . 1, 6, 7, 16, 18, 20, 25

TELEPHONE (562) 437-4499
TOLL-FREE (877) TOX-TORT
TELECOPIER (562) 436-1561
WWW.TOXICTORTS.COM

METZGER LAW GROUP
A PROFESSIONAL LAW CORPORATION
555 EAST OCEAN BOULEVARD, SUITE 800
LONG BEACH, CALIFORNIA 90802

Practice concentrated in toxic
tort & environmental litigation
occupational & environmental lung
disease, cancer, and toxic injuries

**INTERVENOR-DEFENDANT CERT'S MEMORANDUM OF POINTS AND AUTHORITIES
IN SUPPORT OF ITS MOTION TO DISMISS FOR LACK OF A CASE OR CONTROVERSY**

TELEPHONE (562) 437-4499
TOLL-FREE (877) TOX-TORT
TELECOPIER (562) 436-1561
WWW.TOXICTORTS.COM

METZGER LAW GROUP
A PROFESSIONAL LAW CORPORATION
555 EAST OCEAN BOULEVARD, SUITE 800
LONG BEACH, CALIFORNIA 90802

PRACTICE CONCENTRATED IN TOXIC
TORT & ENVIRONMENTAL LITIGATION
OCCUPATIONAL & ENVIRONMENTAL LUNG
DISEASE, CANCER, AND TOXIC INJURIES

## MEMORANDUM OF POINTS AND AUTHORITIES

### 1.    PRELIMINARY STATEMENT

The present case does not give rise to a case or controversy for two essential reasons.

First, in representing the Office of Environmental Health Hazard Assessment (OEHHA), in its ongoing efforts to nullify Proposition 65 with respect to acrylamide in food, the interest of Defendant, the California Attorney General, is aligned with the interest of Plaintiff, California Chamber of Commerce (CalChamber), which seeks to invalidate Proposition 65 with respect to acrylamide in food. The instant action therefore does not present an "honest and actual antagonistic assertion of rights," as is required to satisfy the case or controversy requirement of Article III, Section 2 of the U.S. Constitution. See *United States v. Johnson* 319 U.S. 302 (1943).

Second, neither the Plaintiff nor the Defendant in this case are the Real Parties in Interest. In this case CalChamber does not assert any organizational injury to itself, acknowledges that it has not suffered any harm, and merely sues in a representational capacity on behalf of some its members whom it claims have suffered harm. While CalChamber complains that hundreds of Proposition 65 cases regarding acrylamide in food have been filed against its members, it alleges that those cases have been filed by private enforcers whom CalChamber has not sued in this case. Notably, none of the many Proposition 65 cases that have been filed against CalChamber members during the past thirteen years have been filed by the Attorney General. Although CalChamber and its counsel know the identities of the small number of private enforcers that have sued CalChamber members, CalChamber intentionally did not sue them as defendants in this case, in order to gin up a friendly suit with the Attorney General who does not represent the interests of the private enforcers. Worse yet, both CalChamber and the Attorney General vigorously and successfully opposed intervention by those private enforcers who sought to intervene upon being preliminarily enjoined from filing Proposition 65 cases regarding acrylamide in food by Judge Mueller. Thus, neither CalChamber nor the Attorney General are real parties in interest, such that the purported dispute between them does not give rise to a case or controversy between real parties in interest. See *In re Fry*, 2015 WL 572315 at 12 (USBC E.D. Cal. 2015); *Elk Grove Unified School Dist. v. Newdow*, 542 U.S. 1, 11–12 (2004).

**INTERVENOR-DEFENDANT CERT'S MEMORANDUM OF POINTS AND AUTHORITIES
IN SUPPORT OF ITS MOTION TO DISMISS FOR LACK OF A CASE OR CONTROVERSY**

TELEPHONE (562) 437-4499
TOLL-FREE (877) TOX-TORT
TELECOPIER (562) 436-1561
WWW.TOXICTORTS.COM

METZGER LAW GROUP
A PROFESSIONAL LAW CORPORATION
555 EAST OCEAN BOULEVARD, SUITE 800
LONG BEACH, CALIFORNIA 90802

PRACTICE CONCENTRATED IN TOXIC
TORT & ENVIRONMENTAL LITIGATION
OCCUPATIONAL & ENVIRONMENTAL LUNG
DISEASE, CANCER, AND TOXIC INJURIES

## 2.   SUMMARY OF FACTS

Although this action was filed two years ago, this matter has recently been assigned to a new judge, so CERT provides the following background information regarding the case.

### A.   Proposition 65

The Safe Drinking Water and Toxic Enforcement Act of 1986 (now commonly known as "Proposition 65") was adopted by initiative, and requires that warnings be given before exposing individuals to chemicals known to cause cancer.  Health and Safety Code § 25249.6 provides:  "No person in the course of doing business shall knowingly and intentionally expose any individual to a chemical known to the state to cause cancer or reproductive toxicity without first giving clear and reasonable warning to such individual, except as provided in Section 25249.10." The State maintains a list of chemicals that are known to the State of California to cause cancer and/or reproductive harm, and over 900 chemicals appear on the list.  Acrylamide is a potent carcinogen and neurotoxin that has been on the list since 1990. Therefore, any business that exposes Californians to acrylamide in excess of the No Significant Risk Level for acrylamide is subject to liability for injunctive relief and civil penalties.  A Proposition 65 lawsuit may be filed by the Attorney General or private citizens. However, the Attorney General has not filed a Proposition 65 case since 2009, as discussed below. OEHHA is the state agency tasked with adopting regulations under Proposition 65, and adding new toxins to the list as scientific developments dictate.

### B.   Intervenor-Defendant, Council for Education and Research on Toxics

The Council for Education and Research on Toxics (CERT) is a public benefit organization whose primary charitable purposes are education and research regarding toxic substances.  Founded by two University of California professors in 2001, CERT is a unique non-governmental organization: its officers and directors serve without compensation and, maintaining a low overhead, virtually every dollar that CERT receives by way of contributions, successful Proposition 65 litigation, and *cy pres* awards, is disbursed in the form of research and education grants, mostly to research scientists and students within the University of California system.  In furtherance of its educational activities, CERT has filed amicus curiae briefs in California appellate courts, the California Supreme Court, federal appellate courts, and the United States Supreme Court.

**INTERVENOR-DEFENDANT CERT'S MEMORANDUM OF POINTS AND AUTHORITIES
IN SUPPORT OF ITS MOTION TO DISMISS FOR LACK OF A CASE OR CONTROVERSY**

F:\WP\Cases\1887\PLEADMOT\DISMISS\Motion to Dismiss - Lack of Jurisdiction\Memorandum of Points and Authorities Final-Final-Final.wpd

In 2002 Swedish researchers discovered that acrylamide is present at high levels in many cooked foods, prompting the European Food Safety Authority (EFSA) to declare acrylamide in food a "major public health concern." Since approximately 40% of Americans develop cancer and scientists attribute a like percentage of human cancers to carcinogens in the human diet, CERT decided to devote its efforts and resources to remedying the major public health problem of acrylamide in the human diet. Thus, in late 2002 CERT filed the first cases to enforce Proposition 65 regarding acrylamide in french fries and potato chips. Those cases were both successful and resulted in the entry of consent judgments in Los Angeles Superior Court, conferring substantial benefits to California consumers.

In March 2005, OEHHA published a report: "Characterization of Acrylamide Intake from Certain Foods," available at https://oehha.ca.gov/media/downloads/ crnr/acrylamideintakereport.pdf. This report determined that all coffee drinkers have a significantly increased risk of cancer from acrylamide in coffee, i.e., the No Significant Risk Level (NSRL) for exposure to acrylamide from consumption of coffee was exceeded not only for heavy coffee drinkers, but also for average and even light consumers. Nevertheless, the coffee industry failed to provide legally required cancer warnings. CERT determined it would be necessary to sue the coffee industry to force it to comply with Proposition 65 to protect the health of California coffee consumers (about 2/3 the population).

## C.   The Coffee Litigation

In 2010 CERT initiated litigation against the coffee industry regarding acrylamide in coffee (*CERT v. Starbucks, et al.,* Los Angeles Sup. Ct. Case No. BC 435759), with the goal of persuading coffee roasters to reduce acrylamide levels in coffee – the largest source of acrylamide in the adult diet. The litigation involves two consolidated cases against about 85 coffee roasters and retailers, most of which are members of the National Coffee Association, the California Grocers Association, and the California Chamber of Commerce. CERT gave notice of the litigation to the Attorney General as required by Health & Safety Code § 25249.7(e). However, the Attorney General declined to participate in the litigation, leaving CERT to prosecute the case on its own as a private enforcer.

The consolidated cases were assigned to the Honorable Elihu M. Berle in the Complex Litigation Department of the Los Angeles Superior Court. In the Fall of 2014, Judge Berle tried the

TELEPHONE (562) 437-4499
TOLL-FREE (877) TOX-TORT
TELECOPIER (562) 436-1561
WWW.TOXICTORTS.COM

METZGER LAW GROUP
A PROFESSIONAL LAW CORPORATION
555 EAST OCEAN BOULEVARD, SUITE 800
LONG BEACH, CALIFORNIA 90802

PRACTICE CONCENTRATED IN TOXIC
TORT & ENVIRONMENTAL LITIGATION
OCCUPATIONAL & ENVIRONMENTAL LUNG
DISEASE, CANCER, AND TOXIC INJURIES

**INTERVENOR-DEFENDANT CERT'S MEMORANDUM OF POINTS AND AUTHORITIES
IN SUPPORT OF ITS MOTION TO DISMISS FOR LACK OF A CASE OR CONTROVERSY**

TELEPHONE (562) 437-4499
TOLL-FREE (877) TOX-TORT
TELECOPIER (562) 436-1561
WWW.TOXICTORTS.COM

METZGER LAW GROUP
A PROFESSIONAL LAW CORPORATION
555 EAST OCEAN BOULEVARD, SUITE 800
LONG BEACH, CALIFORNIA 90802

PRACTICE CONCENTRATED IN TOXIC
TORT & ENVIRONMENTAL LITIGATION
OCCUPATIONAL & ENVIRONMENTAL LUNG
DISEASE, CANCER, AND TOXIC INJURIES

1  Defendants' No Significant Risk Level and constitutional defenses (Federal Preemption defense and

2  First Amendment defense) and, on September 9, 2015, issued his Phase 1 Statement of Decision,

3  adjudging these defenses, including Defendants' First Amendment Defense, in favor of CERT and

4  against all the Defendants. (Metzger Decl. Exhibit "A;" 15:18 – 16:28)

5  In the Spring of 2016 CERT filed motions for summary adjudication of its prima facie case,

6  based upon a set of facts to which all defendants had stipulated. Among other things, Defendants

7  stipulated that they had exposed Californians to acrylamide without providing any health warnings.

8  (Metzger Decl. Ex. "B") Judge Berle granted CERT's motions against all Defendants, thus

9  establishing CERT's prima facie case. (Metzger Decl. ¶¶ 12-13)

10  In the Fall of 2017 Judge Berle tried Defendants' last affirmative defense, their "Alternative

11  Risk Level" defense and, on May 9, 2018, issued a Phase 2 Statement of Decision, adjudging

12  Defendants' last affirmative defense in favor of CERT and against all Defendants.

13  In June 2018, OEHHA proposed a regulation that would nullify Judge Berle's decision. The

14  new regulation, 27 CCR § 25704, purports to declare that carcinogens in coffee do not present a

15  significant risk of cancer - disregarding the agency's own findings in its 2005 report. The regulation

16  was adopted in June, 2019, and in January, 2020, Defendants filed a motion for summary judgment

17  based on their new affirmative defense, which the court granted. That decision is now on appeal.

18  **D.    This Litigation**

19  CalChamber filed this case on October 7, 2019, seeking declaratory and injunctive relief that

20  would enjoin all enforcement regarding acrylamide in food. CalChamber asserted a single cause of

21  action for violation of the free speech rights of CalChamber and its members, alleging that

22  acrylamide is not carcinogenic, and that the Proposition 65 warning requirement thus constitutes

23  false compelled speech. CalChamber's complaint named the Attorney General as the only

24  defendant, but sought injunctive relief against "all those in privity with and/or acting in concert with

25  those entities or individuals (including private enforcers of Proposition 65 under Health & Safety

26  Code § 25249.7(d))." [ECF 1; Prayer ¶1].

27  As the primary private enforcer of Proposition 65 with respect to acrylamide in food, CERT

28  promptly sought to intervene, to protect its rights to free speech and to petition the government for

4

**INTERVENOR-DEFENDANT CERT'S MEMORANDUM OF POINTS AND AUTHORITIES
IN SUPPORT OF ITS MOTION TO DISMISS FOR LACK OF A CASE OR CONTROVERSY**

Case 2:19-cv-02019-DAD-JDP   Document 192-1   Filed 11/01/21   Page 10 of 31

F:\WP\Cases\1887\PLEAD\MOT DISMISS\Motion to Dismiss - Lack of Jurisdiction\Memorandum of Points and Authorities Final-Final-Final.wpd

TELEPHONE (562) 437-4499
TOLL-FREE (877) TOX-TORT
TELECOPIER (562) 436-1561
WWW.TOXICTORTS.COM

METZGER LAW GROUP
A PROFESSIONAL LAW CORPORATION
555 EAST OCEAN BOULEVARD, SUITE 800
LONG BEACH, CALIFORNIA 90802

PRACTICE CONCENTRATED IN TOXIC
TORT & ENVIRONMENTAL LITIGATION
OCCUPATIONAL & ENVIRONMENTAL LUNG
DISEASE, CANCER, AND TOXIC INJURIES

redress of grievances under the First Amendment.  Pursuant to stipulation, the district court granted CERT's motion to intervene on November 15, 2019.

On October 16, 2019 CERT filed a Motion to Dismiss asserting (1) the Anti-Injunction Act, (2) the *Rooker-Feldman* doctrine, (3) *Younger* abstention, (4) *Colorado River* abstention, *Pullman* abstention, *Burford* abstention, and the federal common law of comity. On March 3, 2020, the district court granted CERT's motion to dismiss based on the Anti-Injunction Act, without addressing the abstention grounds asserted by CERT.  [ECF 56].

On March 16, 2020, CalChamber filed a First Amended Complaint that asserted claims for violation of the First Amendment under 28 U.S.C. § 2201 and 28 U.S.C. § 1983.  [ECF 57]. Although CERT was then a party to the case, the amended complaint identified only Attorney General Becerra as a defendant and made no allegations regarding CERT.

On October 30, 2020, CalChamber filed a motion for a preliminary injunction [ECF 95], and the motion was heard on December 11, 2020.  On March 30, 2021, the court granted Cal Chamber's motion for a preliminary injunction. [ECF 114].  The injunction barred the Attorney General, as well as all private enforcers, from filing Proposition 65 cases regarding acrylamide.  CERT promptly appealed that ruling to the Ninth Circuit on April 21, 2021 [ECF 119]. However, the Attorney General elected not to appeal the order granting the preliminary injunction. (Metzger Dec. ¶19)

After the District Court denied CERT's ex parte application to stay the preliminary injunction pending appeal [ECF118], CERT filed an emergency motion to stay the preliminary injunction in the Ninth Circuit.  On May 27, 2021, the Ninth Circuit granted CERT's motion, finding that CERT had shown that it is likely to prevail on appeal. [9th Cir. No. 21-15745, ID: 12127496, DktEntry: 16, Metzger Decl. Ex. "C"].  The appeal has been fully briefed, and is awaiting assignment to the oral argument calendar for January, February or March of 2022.

On August 1, 2021, counsel for CERT first became aware of information giving rise to a motion to disqualify Judge Mueller from hearing this case, on the basis of unwaivable financial conflicts of interest.  Once aware of that information, CERT's counsel had an ethical duty to file a motion to disqualify Judge Mueller pursuant to  28 U.S.C. §§ 144 and 455.  See *In re Bernard*, 31 F.3d 842, 847 (9th Cir. 1994) ("Counsel for a party who believes a judge's impartiality is reasonably

**5**

**INTERVENOR-DEFENDANT CERT'S MEMORANDUM OF POINTS AND AUTHORITIES
IN SUPPORT OF ITS MOTION TO DISMISS FOR LACK OF A CASE OR CONTROVERSY**

TELEPHONE (562) 437-4499
TOLL-FREE (877) TOX-TORT
TELECOPIER (562) 436-1561
www.TOXICTORTS.COM

METZGER LAW GROUP
A PROFESSIONAL LAW CORPORATION
555 EAST OCEAN BOULEVARD, SUITE 800
LONG BEACH, CALIFORNIA 90802

PRACTICE CONCENTRATED IN TOXIC
TORT & ENVIRONMENTAL LITIGATION
OCCUPATIONAL & ENVIRONMENTAL LUNG
DISEASE, CANCER, AND TOXIC INJURIES

subject to question has not only a professional duty to his client to raise the matter, but an independent responsibility as an officer of the court.").  CERT filed its motion on August 16, 2021. [ECF No. 152]

On September 24, 2021, Judge Muller issued an Order recusing herself from this case. [ECF No. 174] The case was subsequently reassigned to Judge Mendez, who recused himself on September 28. [ECF No. 176] The case was next reassigned to Judge England, who recused himself and reassigned the case to Judge Shubb on September 29. [ECF No. 177]  On October 1, 2021, Judge Shubb recused himself [ECF No. 179], so this case is now before Judge Drozd.

**3.      ABSENT A CASE OR CONTROVERSY WITHIN ARTICLE III OF THE U.S. CONSTITUTION, THIS COURT LACKS JURISDICTION TO ADJUDICATE THIS CASE AND MUST DISMISS THIS CASE**

"Article III, § 2, of the Constitution extends the 'judicial Power' of the United States only to 'Cases' and 'Controversies.'"  *Steel Co. v. Citizens for a Better Environment,* 523 U.S. 83, 102, 118 S. Ct. 1003, 1016, 140 L. Ed. 2d 210 (1998), citing *Muskrat v. United States*, 219 U.S. 346, 356-357, 31 S.Ct., 250, 253-254; 55 L.Ed. 246 (1911).

"'No principle is more fundamental to the judiciary's proper role in our system of government than the constitutional limitation of federal-court jurisdiction to actual cases or controversies.'" *Spokeo, Inc. v. Robins*, 136 S. Ct. 1540, 1547, 194 L. Ed. 2d 635 (2016), quoting *Raines v. Byrd*, 521 U.S. 811, 818, 117 S.Ct. 2312, 138 L.Ed.2d 849 (1997).

"Without jurisdiction the court cannot proceed at all in any cause. Jurisdiction is power to declare the law, and when it ceases to exist, the only function remaining to the court is that of announcing the fact and dismissing the cause." *Steel Co. v. Citizens for a Better Environment*, 523 U.S. 83, 94, 118 S. Ct. 1003, 1012, 140 L. Ed. 2d 210 (1998), quoting *Ex parte McCardle*, 7 Wall. 506, 514, 19 L.Ed. 264 (1868).

"The requirement that jurisdiction be established as a threshold matter 'spring[s] from the nature and limits of the judicial power of the United States' and is 'inflexible and without exception.'" *Steel Co. v. Citizens for a Better Environment,* 523 U.S. 83, 94–95, 118 S. Ct. 1003,

**6**

F:\WP\Cases\1887\PLEADMOT\DISMISS\Motion to Dismiss - Lack of Jurisdiction\Memorandum of Points and Authorities Final-Final-Final.wpd

1012, 140 L. Ed. 2d 210 (1998), quoting *Mansfield, Coldwater and Lake Michigan Railway Company v. Swan*, 111 U.S. 379, 382, 4 S.Ct. 510, 511, 28 L.Ed. 462 (1884).

The threshold requirement of a case or controversy applies even in cases where a plaintiff asserts a claim that is clearly within the court's subject matter jurisdiction. "For a court to pronounce upon the meaning or the constitutionality of a state or federal law when it has no jurisdiction to do so is, by very definition, for a court to act ultra vires." *Steel Co. v. Citizens for a Better Environment*, 523 U.S. 83, 101–02, 118 S. Ct. 1003, 1016, 140 L. Ed. 2d 210 (1998).

Thus, absent a case and controversy, this Court must dismiss this case.

**4.    THERE MUST BE AN "HONEST AND ACTUAL ANTAGONISTIC ASSERTION OF RIGHTS" BY THE PLAINTIFF AND THE DEFENDANT FOR THERE TO BE AN ARTICLE III CASE AND CONTROVERSY**

In every case, especially a case that seeks to invalidate as unconstitutional a duly adopted state public health law, there must be an "honest and actual antagonistic assertion of rights" to be adjudicated. *U.S. v. Johnson,* 319 U.S. 302, 305, 63 S. Ct. 1075, 1076–77, 87 L. Ed. 1413 (1943); accord, *Center for Biological Diversity v. United States Forest Service,* 925 F.3d 1041, 1047 (9th Cir. 2019) ["First, the case must present "an honest and actual antagonistic assertion of rights by one [party] against another."], citing *U.S. National Bank of Oregon v. Independent Insurance Agents of America, Inc.*, 508 U.S. 439, 446, 113 S.Ct. 2173, 124 L.Ed.2d 402 (1993); quoting *Muskrat v. United States*, 219 U.S. 346, 359, 31 S.Ct. 250, 55 L.Ed. 246 (1911)); see also *Flast v. Cohen,* 392 U.S. 83, 95, 88 S.Ct. 1942, 1951, 20 L.Ed.2d 947 (1968).

An "honest and actual antagonistic assertion of rights" is "a safeguard essential to the integrity of the judicial process, and one which [the Supreme Court] ha[s] held to be indispensable to adjudication of constitutional questions." *U.S. v. Johnson*, 319 U.S. 302, 305, 63 S. Ct. 1075, 1076–77, 87 L. Ed. 1413 (1943), citing *Chicago & G.T. Ry. Co. v. Wellman,* 143 U.S. 339, 345, 12 S.Ct. 400, 402, 36 L.Ed. 176 (1892).  See also *Lord v. Veazie*, 8 How. 251, 12 L.Ed. 1067 (1850); *Cleveland v. Chamberlain*, 66 U.S. 419, 17 L.Ed. 93 (1861); *Bartemeyer v. Iowa*, 18 Wall. 129, 134, 135, 21 L.Ed. 929 (1873); *Atherton Mills v. Johnston*, 259 U.S. 13, 15, 42 S.Ct. 422, 66 L.Ed. 814

TELEPHONE (562) 437-4499
TOLL-FREE (877) TOX-TORT
TELECOPIER (562) 436-1561
WWW.TOXICTORTS.COM

METZGER LAW GROUP
A PROFESSIONAL LAW CORPORATION
555 EAST OCEAN BOULEVARD, SUITE 800
LONG BEACH, CALIFORNIA 90802

PRACTICE CONCENTRATED IN TOXIC
TORT & ENVIRONMENTAL LITIGATION
OCCUPATIONAL & ENVIRONMENTAL LUNG
DISEASE, CANCER, AND TOXIC INJURIES

**7**

F:\WP\Cases\1887\PLEADMOT\DISMISS\Motion to Dismiss - Lack of Jurisdiction\Memorandum of Points and Authorities Final-Final-Final.wpd

TELEPHONE (562) 437-4499
TOLL-FREE (877) TOX-TORT
TELECOPIER (562) 436-1561
WWW.TOXICTORTS.COM

METZGER LAW GROUP
A PROFESSIONAL LAW CORPORATION
555 EAST OCEAN BOULEVARD, SUITE 800
LONG BEACH, CALIFORNIA 90802

PRACTICE CONCENTRATED IN TOXIC
TORT & ENVIRONMENTAL LITIGATION
OCCUPATIONAL & ENVIRONMENTAL LUNG
DISEASE, CANCER, AND TOXIC INJURIES

(1922).

"Whenever in the course of litigation such a defect in the proceedings is brought to the court's attention, it may set aside any adjudication thus procured and dismiss the cause without entering judgment on the merits. *United States v. Johnson*, 319 U.S. 302, 305, 63 S. Ct. 1075, 1076–77, 87 L. Ed. 1413 (1943).

Indeed, "[it] is the court's duty to do so where, as here, the public interest has been placed at hazard by the amenities of parties to a suit conducted under the domination of only one of them." *United States v. Johnson*, 319 U.S. 302, 305, 63 S. Ct. 1075, 1076–77, 87 L. Ed. 1413 (1943).

**5.    THE INTERESTS OF CAL CHAMBER AND THE CALIFORNIA ATTORNEY GENERAL ARE ALIGNED, RATHER THAN ADVERSE**

While it would appear from the face of the pleadings that the interests of CalChamber and the Attorney General are antagonistic, the facts show that their interests are actually aligned, because both CalChamber and the Attorney General have long sought to undermine Proposition 65 with respect to acrylamide in food. Indeed, in its representation of the Office of Environmental Health Hazard Assessment and its predecessor, the Health and Welfare Agency, the California Attorney General has vigorously litigated *against* the enforcement of Proposition 65 with respect to acrylamide in food. Throughout the many years that the Attorney General has litigated against enforcement of Proposition 65 with respect to acrylamide in food, he has done so in derogation of his primary duty to enforce and defend California laws against all legal challenges. Indeed, many actions undertaken by the California Attorney General since the inception of this case support the conclusion that the Attorney General would be happy to rid itself of acrylamide in food, which presents political issues that the Attorney General and his boss, the Governor, would like to avoid.

**A.    For the Past 35 Years the Attorney General Has Represented OEHHA and Its Predecessor Agency in their Efforts to Nullify Proposition 65 Enforcement with Respect to Acrylamide in Food**

Upon the adoption of Proposition 65 in 1986, the California Health & Welfare Agency adopted 22 C.C.R. § 12713 purporting to exempt exposure to carcinogens in food from Proposition

**INTERVENOR-DEFENDANT CERT'S MEMORANDUM OF POINTS AND AUTHORITIES
IN SUPPORT OF ITS MOTION TO DISMISS FOR LACK OF A CASE OR CONTROVERSY**

F:\WP\Cases\1887\PLEADMOT\DISMISS\Motion to Dismiss - Lack of Jurisdiction\Memorandum of Points and Authorities Final-Final-Final.wpd

TELEPHONE (562) 437-4499
TOLL-FREE (877) TOX-TORT
TELECOPIER (562) 436-1561
WWW.TOXICTORTS.COM

METZGER LAW GROUP
A PROFESSIONAL LAW CORPORATION
555 EAST OCEAN BOULEVARD, SUITE 800
LONG BEACH, CALIFORNIA 90802

PRACTICE CONCENTRATED IN TOXIC
TORT & ENVIRONMENTAL LITIGATION
OCCUPATIONAL & ENVIRONMENTAL LUNG
DISEASE, CANCER, AND TOXIC INJURIES

65 where foods complied with federal or state standards. Public health and labor organizations filed suit to declare that regulation invalid as contrary to Proposition 65 and to enjoin its application. (Metzger Decl. ¶ 27) Rather than defending Proposition 65 from being undermined by the agency, the Attorney General defended the regulation although it was invalid as facially contrary to Proposition 65. (Brust Decl. Ex. "A") Judge Robie of the Sacramento Superior Court (now Justice Robie of the Third Appellate District) held Section 12713 invalid and unenforceable (Metzger Decl. Ex. "F") and the agency settled the case, agreeing to repeal Section 12713. (Metzger Decl. Ex. "G")

In 1989, the Health & Welfare Agency adopted 22 C.C.R. §12501 exempting carcinogens in food that are "naturally occurring." (Metzger Decl. ¶ 29) Although Proposition 65 did not distinguish between naturally occurring carcinogens and synthetic carcinogens, the Attorney General defended the regulation which undermined Proposition 65, rather than defending Proposition 65.

In 2005 - a few years after acrylamide was discovered in food, OEHHA proposed 3 regulations to exempt acrylamide in foods: (1) exempting exposures to chemicals that form in a food solely as a result of naturally occurring constituents in the food being cooked or heat processed [an unnumbered regulation]; (2) adopting an Alternative Significant Risk Level for acrylamide in breads and cereals, which would have allowed exposures to acrylamide at 10 times the level deemed to present a significant risk of cancer [proposed 22 C.C.R. § 12705(e)]; and (3) amending 22 C.C.R. § 12601 to increase the No Significant Risk Level for acrylamide by developing a "safe harbor" warning for acrylamide in foods greater than 0.2 ug/day and eliminate the requirement that a cancer warning be placed on package labels for each individual product. (Metzger Declaration Exhibit "H") The Attorney General provided service to OEHHA in support of these regulations that sought to undermine Proposition 65, which were not adopted at the time.

In 2019 OEHHA adopted 27 C.C.R. § 25704, exempting exposure to carcinogens (i.e. acrylamide) formed in coffee during the roasting and brewing process. The Attorney General defended OEHHA's regulation which was adopted pursuant to a directive of then-Governor Brown, thereby undermining Proposition 65 with respect to the greatest source of acrylamide in the adult diet and nullifying the result favorable to consumers that CERT had obtained after 8 years of litigating the *CERT v Starbucks* case. (Metzger Decl. ¶ 31)   In subsequent proceedings in the *CERT v.*

**INTERVENOR-DEFENDANT CERT'S MEMORANDUM OF POINTS AND AUTHORITIES
IN SUPPORT OF ITS MOTION TO DISMISS FOR LACK OF A CASE OR CONTROVERSY**

F:\WP\Cases\1887\PLEADMOT\DISMISS\Motion to Dismiss - Lack of Jurisdiction\Memorandum of Points and Authorities Final-Final-Final.wpd

*Starbucks* case, the Attorney General sided with the defendants in that case who sought to undermine Proposition 65 with respect to acrylamide in food, rather than defending Proposition 65 against the regulation which sought to nullify Proposition 65 with respect to acrylamide in coffee. (*Id.*)

In 2020 OEHHA proposed adopting 27 C.C.R. § 25505, exempting exposures to carcinogens created by cooking, declaring such are not exposures at all! (Metzger Declaration ¶ 32) Upon adoption, CERT will be suing OEHHA to invalidate this regulation that contravenes Proposition 65, and the Attorney General will defend the regulation rather than Proposition 65.

**B.      The Governor of the State of California Has Long Been Hostile to the Application of Proposition 65 to Acrylamide in Food**

In 2013, the Governor supported Assembly Bill 227 which weakened Proposition 65 by adding subdivision (k) to Health and Safety Code § 25249.7, which exempted exposures to heat-formed carcinogens in ready-to-drink coffee sold for immediate consumption. (Metzger Decl. ¶ 34)

In early 2018, even before Judge Berle issued his Phase 2 Statement of Decision in favor of CERT, Cabinet-level officials in the Governor's Office engaged in communications with Cabinet-level and other high-level officials in Cal-EPA, OEHHA, and the Attorney General's office about the case. (Metzger Declaration Exhibit "I").

In 2018, after CERT won the Phase 2 trial, Cabinet-level officials in the Governor's Office directed the Secretary of CalEPA and the Director of OEHHA to take action to nullify the result of the trial of the *CERT v. Starbucks* case.  CalEPA Secretary Matthew Rodriquez organized a meeting in the conference room of the Governor's office on June 5, 2018 for a "briefing on coffee." (Metzger Decl. Exhibit "J") The meeting was attended not only by Secretary Rodriquez, but also by but also by the Governor's Deputy Cabinet Secretary, Saul Gomez, along with OEHHA director Lauren Zeiss and other high-ranking officials.

A week later, on June 11, 2018, a "discussion regarding coffee" took place in the office of OEHHA Director Lauren Zeise with other officials from OEHHA and CalEPA. (Metzger Decl. Ex. "K") The same day, June 11, 2018, there was a second meeting regarding coffee, this time taking place in the office of CalEPA Secretary Matthew Rodriquez, and Secretary Rodriquez, Ms. Zeiss, OEHHA Chief Deputy Director Allan Hirsch, OEHHA Chief Counsel Carol Monahan-Cummings,

**INTERVENOR-DEFENDANT CERT'S MEMORANDUM OF POINTS AND AUTHORITIES
IN SUPPORT OF ITS MOTION TO DISMISS FOR LACK OF A CASE OR CONTROVERSY**

METZGER LAW GROUP
A PROFESSIONAL LAW CORPORATION
555 EAST OCEAN BOULEVARD, SUITE 800
LONG BEACH, CALIFORNIA 90802

TELEPHONE (562) 437-4499
TOLL-FREE (877) TOX-TORT
TELECOPIER (562) 436-1561
WWW.TOXICTORTS.COM

PRACTICE CONCENTRATED IN TOXIC
TORT & ENVIRONMENTAL LITIGATION
OCCUPATIONAL & ENVIRONMENTAL LUNG
DISEASE, CANCER, AND TOXIC INJURIES

F:\WP\Cases\1887\PLEADMOT\DISMISS\Motion to Dismiss - Lack of Jurisdiction\Memorandum of Points and Authorities Final-Final-Final.wpd

OEHHA Chief of Reproductive & Cancer Hazard Assessment Martha Sandy, and Julie Henderson, CalEPA's Deputy Secretary for Health & Public Policy. (Metzger Decl. Ex. "L") Four days later, on June 15, 2018, OEHHA proposed and later adopted 27 C.C.R. § 25704, which altogether exempted exposure to carcinogens formed in coffee during the roasting and brewing process.

The Governor is the head of the executive branch of the California government. The Attorney General is the highest ranking official of the Department of Justice, which is within the executive branch of the California government. The Attorney General is also one of the few executive officials in the executive branch of the California government. The Attorney General serves at the pleasure of the Governor, is subordinate to the Governor in the executive branch hierarchy, reports directly to the Governor, and executes the Governor's commands and directives.

The Attorney General was instrumental in executing the Governor's directive to undermine the result of the *CERT v. Starbucks* trial, drafting 27 C.C.R. § 25704, shepherding the regulation through the administrative process, and coordinating action of CalEPA and OEHHA to adopt that regulation, all under the guise of the attorney-client privilege. (Metzger Decl. ¶¶ 37, 43)  Since the Governor directed the Attorney General to undermine Proposition 65 with respect to acrylamide in food and the Attorney General did so, the Attorney General has an irreconcilable conflict of interest in defending Proposition 65 with respect to acrylamide in food.

Among the Attorney General's duties are his duty to defend regulatory actions of state agencies.  Ever since 22 C.C.R. § 12713 was adopted shortly after Proposition 65 went into effect, the Attorney General has defended OEHHA's attempts to undermine Proposition 65 with respect to food and most specifically with respect to acrylamide in food.  In recent years, the Attorney General has also done the Governor's bidding to undermine Proposition 65 regarding acrylamide in food.

The Attorney General has always defended OEHHA's regulatory actions that are contrary to Proposition 65 and has executed the Governor's directives to undermine Proposition 65 with respect to acrylamide in food, rather than fulfilling his primary duty to defend Proposition 65.

Accordingly, the interests of CalChamber and the Attorney General align: they have both sought to exempt acrylamide in food from Proposition 65 for many years and they both seek that result in this case.  CalChamber seeks that result overtly, while the Attorney General seeks that result

TELEPHONE (562) 437-4499
TOLL-FREE (877) TOX-TORT
TELECOPIER (562) 436-1561
WWW.TOXICTORTS.COM

METZGER LAW GROUP
A PROFESSIONAL LAW CORPORATION
555 EAST OCEAN BOULEVARD, SUITE 800
LONG BEACH, CALIFORNIA 90802

PRACTICE CONCENTRATED IN TOXIC
TORT & ENVIRONMENTAL LITIGATION
OCCUPATIONAL & ENVIRONMENTAL LUNG
DISEASE, CANCER, AND TOXIC INJURIES

**11**

F:\WP\Cases\1887\PLEADMOT\DISMISS\Motion to Dismiss - Lack of Jurisdiction\Memorandum of Points and Authorities Final-Final-Final.wpd

covertly while purporting to defend Proposition 65 against CalChamber's claim.

Since the interests and goals of the only named plaintiff and the only named defendant in this case align, the present case does not present "an honest and actual antagonistic assertion of rights by one [party] against another." *Center for Biological Diversity v. United States Forest Service,* 925 F.3d 1041, 1047 (9th Cir. 2019); *U.S. v. Johnson, supra,* 319 U.S. at 305.

**C.    The Attorney General's Conduct of This Litigation Demonstrates That The Attorney General Is Serving The Desires of The Governor and OEHHA To Undermine Proposition 65 With Respect To Acrylamide In Food Rather Than Defending Proposition 65, As Is His Primary Duty**

The complaint in his case was filed October 7, 2019. Although the complaint sought an injunction enjoining enforcement of all Proposition 65 litigation regarding acrylamide in all food and beverage products, the initial response of the Attorney General to the case was most disconcerting. A mere three days after the case was filed – before any responsive pleadings or motions to dismiss were filed – the Attorney General stipulated to a hearing of CalChamber's motion for preliminary injunction on December 20, 2019, with the opposition thereto being due on November 18, 2019 - less than five weeks after the case was filed. (Metzger Decl. ¶ 49)

CERT's counsel was able to conceive of only two reasons for such action by the Attorney General: (1) gross incompetence and dereliction of the Attorney General's duty to defend Proposition 65, or (2) collusion with CalChamber to avoid the politically unsavory issue of acrylamide in food.

The Attorney General staffed this case with low-level deputies attorney general in the Proposition 65 unit, Harrison Pollak, John Everett, and Joshua Purtle, none of whom has any federal litigation experience and none of whom has ever tried a case, let alone a case involving complex scientific issues, or any case in federal court under the *Daubert* standard. (Metzger Decl. ¶ 50).[1] Although this case involves complex issues regarding the First Amendment, the Anti-Injunction Act, the All Writs Act, federal abstention doctrines, and federal civil procedure, the Attorney General did not staff this case with any attorneys having either experience or expertise in these areas.

---

[1]    All three of these attorneys have recently departed from the Attorney General's office.

TELEPHONE (562) 437-4499
TOLL-FREE (877) TOX-TORT
TELECOPIER (562) 436-1561
WWW.TOXICTORTS.COM

METZGER LAW GROUP
A PROFESSIONAL LAW CORPORATION
555 EAST OCEAN BOULEVARD, SUITE 800
LONG BEACH, CALIFORNIA 90802

PRACTICE CONCENTRATED IN TOXIC
TORT & ENVIRONMENTAL LITIGATION
OCCUPATIONAL & ENVIRONMENTAL LUNG
DISEASE, CANCER, AND TOXIC INJURIES

**12**

F:\WP\Cases\1887\PLEAD\MOT DISMISS\Motion to Dismiss - Lack of Jurisdiction\Memorandum of Points and Authorities Final-Final-Final.wpd

CERT's counsel, who has been designated one of the "Top 100 Attorneys in California" by the Los Angeles Daily Journal primarily due to his successful litigation regarding acrylamide in food, recognized the inadequacy of the Attorney General's defense team and brought such to the attention of the Attorney General, requesting that he put together a team of attorneys experienced in the First Amendment, abstention doctrines, and federal civil procedure, with an experienced litigator who had actually tried cases in federal court. (Metzger Decl. Ex. "M")   Apparently due to lack of a genuine desire to vigorously defend this case, the Attorney General refused to do so. (Metzger Decl. ¶¶53-55)

CERT's counsel also recommended that a team of scientists with expertise in relevant disciplines be assembled, as CERT's counsel did for the Phase 1 trial in the *CERT v. Starbucks* case. Even though CERT's counsel prevailed on the false compelled speech issue at trial of the *CERT v. Starbucks* case, the Attorney General refused to assemble such a team of experts for this case. (*Id.*)

The Attorney General responded to CERT's recommendation, indicating that a team of experts was not necessary for pretrial proceedings, including opposing CalChamber's motion for preliminary injunction, and indicating that a team of experts could be assembled for the trial if the case were not won before trial on summary judgment – even though no basis for obtaining summary judgment in this case has ever been proffered by the Attorney General to CERT's counsel. (*Id.*)

The Attorney General opposed the preliminary injunction motion with a declaration of just one expert [ECF 47-1] who correctly opined that dietary epidemiology studies are unreliable to determine human carcinogenicity of acrylamide, but contradicted herself by saying the same studies were somehow reliable to conclude that acrylamide does not cause human cancer in coffee drinkers. Thus, the Attorney General sought to split the baby rather than defend Proposition 65. Judge Mueller court recognized that inconsistency and used it as a basis for issuing the preliminary injunction.

Although the Attorney General is the chief law enforcement officer of the State of California whose primary duty is to enforce and defend California laws against all legal challenges, the Attorney General refused to appeal the preliminary injunction even though the injunction prevented the Attorney General from discharging his primary duty to enforce California law.

When CERT determined that it would appeal the preliminary injunction and would seek a stay of the preliminary injunction pending appeal, the Attorney General took no position whether the

**INTERVENOR-DEFENDANT CERT'S MEMORANDUM OF POINTS AND AUTHORITIES
IN SUPPORT OF ITS MOTION TO DISMISS FOR LACK OF A CASE OR CONTROVERSY**

TELEPHONE (562) 437-4499
TOLL-FREE (877) TOX-TORT
TELECOPIER (562) 436-1561
WWW.TOXICTORTS.COM

METZGER LAW GROUP
A PROFESSIONAL LAW CORPORATION
555 EAST OCEAN BOULEVARD, SUITE 800
LONG BEACH, CALIFORNIA 90802

PRACTICE CONCENTRATED IN TOXIC
TORT & ENVIRONMENTAL LITIGATION
OCCUPATIONAL & ENVIRONMENTAL LUNG
DISEASE, CANCER, AND TOXIC INJURIES

TELEPHONE (562) 437-4499
TOLL-FREE (877) TOX-TORT
TELECOPIER (562) 436-1561
WWW.TOXICTORTS.COM

METZGER LAW GROUP
A PROFESSIONAL LAW CORPORATION
555 EAST OCEAN BOULEVARD, SUITE 800
LONG BEACH, CALIFORNIA 90802

PRACTICE CONCENTRATED IN TOXIC
TORT & ENVIRONMENTAL LITIGATION
OCCUPATIONAL & ENVIRONMENTAL LUNG
DISEASE, CANCER, AND TOXIC INJURIES

injunction should be stayed, even though the Court had enjoined the Attorney General from discharging his primary duty of enforcing Proposition 65 with respect to acrylamide in food. (Metzger Decl. ¶ 57) On multiple occasions the Attorney General has also opposed intervention by other private enforcers who, upon being enjoined by the court's order, sought to intervene to defend and enforce Proposition 65 with respect to acrylamide in food, even though the Attorney General does not represent their interests. [ECF Nos. 130, 140, 145]

Most recently, the Attorney General submitted position statements to the Court regarding management of this case which demonstrate an utter failure to properly defend this case. In the Joint Status report filed on July 14, 2021, [ECF 144] the Attorney General represented to the Court that "[t]he Attorney General believes that no further discovery will be necessary," even though no discovery had taken place in this case, and all parties had been foreclosed from initiating any discovery pursuant to the court's order at the outset of this case staying all discovery. In the same Joint Status report, the Attorney General also "propose[d] that the parties waive the exchange of initial disclosures," although no disclosures had been made by any party and no party had produced any documents or identified fact witnesses that support its claims or defenses in this case. CERT considers these positions of the Attorney General demonstrate either a lack of interest and motivation to seriously defend this case or collusion with CalChamber to have the Court invalidate Proposition 65 with respect to acrylamide in food, so the Attorney General need not have to deal with the difficult and politically sensitive issues which have so troubled his boss, the Governor of California.

Worse yet, in the same Joint Status Report the Attorney General informed the Court that he "has not yet decided whether he believes depositions of experts will be necessary, or whether he will be disclosing any additional expert witnesses beyond the expert whose declaration was attached to the opposition to CalChamber's motion for preliminary injunction." That the Attorney General even questions the need to depose experts in this case evinces at best a lackadaisical defense of this case and, at worst, collusion with CalChamber to rid himself of pesky litigation regarding acrylamide in food. That the Attorney General would even consider relying on the single expert witness who already contradicted herself regarding the reliability of acrylamide in food epidemiology studies and whose opinion Judge Mueller found inadequate to deter issuance a preliminary injunction enjoining

**INTERVENOR-DEFENDANT CERT'S MEMORANDUM OF POINTS AND AUTHORITIES
IN SUPPORT OF ITS MOTION TO DISMISS FOR LACK OF A CASE OR CONTROVERSY**

F:\WP\Cases\1887\PLEAD\MOT DISMISS\Motion to Dismiss - Lack of Jurisdiction\Memorandum of Points and Authorities Final-Final-Final.wpd

TELEPHONE (562) 437-4499
TOLL-FREE (877) TOX-TORT
TELECOPIER (562) 436-1561
WWW.TOXICTORTS.COM

METZGER LAW GROUP
A PROFESSIONAL LAW CORPORATION
555 EAST OCEAN BOULEVARD, SUITE 800
LONG BEACH, CALIFORNIA 90802

PRACTICE CONCENTRATED IN TOXIC
TORT & ENVIRONMENTAL LITIGATION
OCCUPATIONAL & ENVIRONMENTAL LUNG
DISEASE, CANCER, AND TOXIC INJURIES

enforcement of Proposition 65 with respect to acrylamide in food, also demonstrates a lack of will to designate expert witnesses necessary to defend this case, most likely because the Attorney General secretly hopes that Cal Chamber will win this case unopposed.

**D.**     **The Attorney General's Representation of the Interests of OEHHA and the Governor in Undermining Proposition 65 With Respect to Acrylamide in Food Conflicts With His Primary Duty to Defend This Duly Adopted Important Public Health Law**

The Attorney General has an irreconcilable conflict of interest that arises from his decades of work supporting the efforts of OEHHA and the Governor to undermine Proposition 65 with respect to acrylamide in food, while shirking his primary duty of defending  Proposition 65 with respect to acrylamide in food, notwithstanding the political distastefulness of doing so.  Indeed, the Attorney General has refused CERT's request that he recuse himself from defending Proposition 65 in this case and appoint independent counsel to defend Proposition 65 in this case, notwithstanding his irreconcilable conflict of interest in defending this case. (Metzger Decl. ¶¶ 59-64; Exhibit "N")

When CERT's counsel threatened to file a motion to disqualify the Attorney General in this case, the Attorney General claimed, perhaps correctly, that a motion by CERT to disqualify him in this case would be frivolous, because "[a]s a threshold matter, CERT lacks Article III standing," because "[t]o have standing to seek disqualification of counsel, a party normally must be a current or former client of the counsel whose disqualification is sought."  *Colyer v. Smith*, 50 F. Supp. 2d at 969, 971 (C.D. Cal. 1999); *Simonca v. Mukasey*, No. CIV S-08-1453, 2008 WL 5113757, at *3 (E.D. Cal. Nov. 25, 2008). *See Kasza v. Browner*, 133 F.3d 1159, 1171 (9th Cir. 1998). (Metzger Decl. Exhibit "N")

The Attorney General also claimed, perhaps correctly, that "in demanding the appointment of an independent counsel, CERT would effectively be seeking a writ or injunction directing the Attorney General in the execution of his duties under California law, which is . . . inappropriate."

The Attorney General also asserted, perhaps correctly, that "federal district courts are without power to issue mandamus to direct state courts, state judicial officers, or other state officials in the performance of their duties," because "[a] petition for a writ of mandamus to compel a state court

**15**

F:\WP\Cases\1887\PLEADMOT\DISMISS\Motion to Dismiss - Lack of Jurisdiction\Memorandum of Points and Authorities Final-Final-Final.wpd

TELEPHONE (562) 437-4499
TOLL-FREE (877) TOX-TORT
TELECOPIER (562) 436-1561
WWW.TOXICTORTS.COM

METZGER LAW GROUP
A PROFESSIONAL LAW CORPORATION
555 EAST OCEAN BOULEVARD, SUITE 800
LONG BEACH, CALIFORNIA 90802

PRACTICE CONCENTRATED IN TOXIC
TORT & ENVIRONMENTAL LITIGATION
OCCUPATIONAL & ENVIRONMENTAL LUNG
DISEASE, CANCER, AND TOXIC INJURIES

or official to take or refrain from some action is frivolous as a matter of law." *Todd v. McElhany*, No. CIV S-11-2346, 2011 WL 5526464 at *2 (E.D. Cal. Nov. 14, 2011) (citing, *inter alia*, *Demos v. U.S. District Court*, 925 F.2d 1160, 1161 (9th Cir. 1991)).

The Attorney General also asserted, perhaps correctly, that "a federal court abuses its discretion if it enters an injunction that "requires any more of state officers than demanded by federal constitutional or statutory law." *Katie A. ex. rel. Ludin v. Los Angeles Cty*., 481 F.3d 1150, 1155 (9th Cir. 2007); *Clark v. Coye*, 60 F.3d 600, 603-04 (9th Cir. 1995) (holding that an injunction against a state agency must not "require more of state officials than is necessary to ensure their compliance with *federal law*") (emphasis added).

Assuming that the Attorney General is correct in making these assertions, as appears may be the case, CERT would lack standing to seek to disqualify the Attorney General in this case and to request the Court to appoint independent counsel to represent the public interest in this case by defending Proposition 65 with respect to acrylamide in food, and the Court itself would lack the authority (1) to grant such a motion by CERT, (2) to order the Attorney General to appoint independent counsel to defend this case, and (3) to appoint independent counsel to defend this case.

It therefore appears that neither CERT nor the Court can undertake any action to remedy the absence of an "honest and actual antagonistic assertion of rights" between the only named plaintiff and the only named defendant in this case, so as to satisfy this essential jurisdictional requirement. Accordingly, the absence of an "honest and actual antagonistic assertion of rights" between the Plaintiff and the Defendant in this case is irremediable, so the Court should, indeed must, dismiss this case for lack of a justiciable case and controversy under Article III. *U.S. v. Johnson*, 319 U.S. 302, 305, 63 S. Ct. 1075, 1076–77, 87 L. Ed. 1413 (1943); *Center for Biological Diversity v. United States Forest Service*, 925 F.3d 1041, 1047 (9th Cir. 2019).

**6.   THIS COURT DOES NOT HAVE BEFORE IT THE REAL PARTIES IN INTEREST OR AN ACTUAL CASE OR CONTROVERSY BETWEEN PERSONS WHO ARE REAL PARTIES IN INTEREST**

"[T]he U.S. Constitution, Art. III, Sec. 2, requires that a federal court have before it the real

**INTERVENOR-DEFENDANT CERT'S MEMORANDUM OF POINTS AND AUTHORITIES
IN SUPPORT OF ITS MOTION TO DISMISS FOR LACK OF A CASE OR CONTROVERSY**

Case 2:19-cv-02019-DAD-JDP   Document 192-1   Filed 11/01/21   Page 22 of 31

F:\WP\Cases\1887\PLEADMOT\DISMISS\Motion to Dismiss - Lack of Jurisdiction\Memorandum of Points and Authorities Final-Final-Final.wpd

TELEPHONE (562) 437-4499
TOLL-FREE (877) TOX-TORT
TELECOPIER (562) 436-1561
WWW.TOXICTORTS.COM

METZGER LAW GROUP
A PROFESSIONAL LAW CORPORATION
555 EAST OCEAN BOULEVARD, SUITE 800
LONG BEACH, CALIFORNIA 90802

PRACTICE CONCENTRATED IN TOXIC
TORT & ENVIRONMENTAL LITIGATION
OCCUPATIONAL & ENVIRONMENTAL LUNG
DISEASE, CANCER, AND TOXIC INJURIES

parties in interest and an actual case or controversy between those parties." *In re Fry*, 2015 WL 572315 at 12 (Bankr. Ct. E.D. Cal. 2015), citing *Elk Grove Unified School Dist. v. Newdow,* 542 U.S. 1, 11–12 (2004).  In this case, neither the plaintiff nor the defendant is a real party in interest.

**A.   CalChamber Is Not A Real Party In Interest in This Case; Moreover, It Has Refused to Identify Those of its Members Who May Be Real Parties in Interest in This Case, Let Alone Join Them as Parties Plaintiff in This Case**

CalChamber filed this case alleging representational standing on behalf of its members, rather than organizational standing in its own right. Since CalChamber only asserts representational standing ***on behalf of its members*** who claim to be harmed by Proposition 65, it is the members of CalChamber that CalChamber claims to represent that would be the real parties in interest in this case.  However, CalChamber has repeatedly refused to identify even a single one of its members that has allegedly been harmed by the Proposition 65 warning requirement (Metzger Decl. Exhibit "E"), let alone join any of its members allegedly harmed by the warning requirement as parties Plaintiff.

In the Joint Status Report of the parties filed July 14, 2021 [ECF No. 144], CERT informed the Court that it needed to undertake discovery, *inter alia,* to ascertain "the identities of CalChamber members who claim to have been injured as a result of the requirement for health warnings concerning acrylamide in food products."  CalChamber objected to all of the discovery sought by CERT, stating that it "believes that this information is not relevant to the issues in this case and therefore is not discoverable at any stage," let alone in CalChamber's initial disclosures. [ECF No. 144 at 7:13-14]  CalChamber also objected that discovery of those members of CalChamber who might be Real Parties in Interest would violate "the First Amendment right to freedom of association (e.g., the identity of CalChamber members) and advised that "[s]hould such discovery be sought as to CalChamber, CalChamber will seek a protective order." [ECF No. 144 at 8:2-8]

On September 30, 2021, after three district court judges (Judges Mueller, Mendez and Morris) recused themselves from this case and the case was assigned to Judge Shubb, CERT's counsel wrote to counsel for CalChamber, expressing concern regarding potential judicial conflicts of interest with unidentified Real Parties in Interest:

**17**

**INTERVENOR-DEFENDANT CERT'S MEMORANDUM OF POINTS AND AUTHORITIES
IN SUPPORT OF ITS MOTION TO DISMISS FOR LACK OF A CASE OR CONTROVERSY**

F:\WP\Cases\1887\PLEADMOT\DISMISS\Motion to Dismiss - Lack of Jurisdiction\Memorandum of Points and Authorities Final-Final-Final.wpd

TELEPHONE (562) 437-4499
TOLL-FREE (877) TOX-TORT
TELECOPIER (562) 436-1561
WWW.TOXICTORTS.COM

METZGER LAW GROUP
A PROFESSIONAL LAW CORPORATION
555 EAST OCEAN BOULEVARD, SUITE 800
LONG BEACH, CALIFORNIA 90802

Practice concentrated in toxic
tort & environmental litigation
occupational & environmental lung
disease, cancer, and toxic injuries

We are concerned by the number of judges who have found it necessary to recuse themselves from this case and want to be sure that whatever judge actually presides over this case can properly do so. In its pleadings in this case CalChamber has acknowledged that CalChamber itself has sustained no organization injury and that it brings this case solely in a representative capacity on behalf of its members who claim to have been harmed by the cancer hazard warning requirement of Proposition 65 regarding acrylamide in food. Since it is those entities that are the real parties in interest in this case, we believe that you should identify them all so that Judge Shubb can determine whether he has conflicts of interest with respect to the real parties in interest in this case. While we can identify those companies who have been sued in Proposition 65 cases regarding acrylamide in food and may also be able to identify those companies who have received notices of violations of acrylamide in food, we do not know which of them are members of the California Chamber of Commerce and hence are the real parties in interest in this case. We believe that you, as CalChamber's counsel, are in the best position to do this, so we respectfully ask you to do so. . . .

(Metzger Decl. Exhibit "D")

Counsel for CalChamber responded to this request as follows:

We do not believe that the identity of CalChamber's members is relevant to any possible conflict of interest. If a judge owns a material interest in a company whose finances may be materially affected by the outcome of this case, it does not matter whether that company is a member of CalChamber or not. The subject matter of the case is thoroughly disclosed in the complaint such that the judge or his advisors can evaluate this issue.

. . . . The identity of CalChamber's members is protected from disclosure by the First Amendment right to freedom of association. *See, e.g., NAACP v. Alabama*, 357 U.S. 449, 460 (1958). CalChamber has made clear that if CERT seeks this information in discovery, CalChamber will seek a protective order. See Joint Status Report (July 14, 2021) (ECF No. 144).

(Metzger Decl. Exhibit "F")

Since CalChamber has refused to identify its members who are the Real Parties in Interest and since CalChamber asserts that such information is privileged, Real Parties in Interest cannot be joined as Plaintiffs in this case, so this case does not present a case or controversy within Article III.

//

//

//

**18**

**INTERVENOR-DEFENDANT CERT'S MEMORANDUM OF POINTS AND AUTHORITIES
IN SUPPORT OF ITS MOTION TO DISMISS FOR LACK OF A CASE OR CONTROVERSY**

F:\WP\Cases\1887\PLEADMOT\DISMISS\Motion to Dismiss - Lack of Jurisdiction\Memorandum of Points and Authorities Final-Final-Final.wpd

1    //

2

3        **B.    The Attorney General Also Is Not a Real Party in Interest in This Case,**

4              **Because He Has Not Filed Any Proposition 65 Case Regarding**

5              **Acrylamide in Food, Nor Have Either of His Two Predecessor Attorneys**

6              **General Filed Any Such Cases**

7              The only defendant whom CalChamber sued in this case was Xavier Becerra in his official

8    capacity as Attorney General of the State of California.  Mr. Becerra served as Attorney General

9    from January 2017 to March 2021. After Mr. Becerra's appointment as U.S. Secretary of Health and

10   Human Services, Governor Newsom appointed Rob Bonta to succeed Mr. Becerra as Attorney

11   General.  Mr. Bonta has held the position of Attorney General since April 2021.  Neither Mr. Becerra

12   nor Mr. Bonta has ever filed a Proposition 65 case on behalf of the People.  Kamala Harris preceded

13   Mr. Becerra as California Attorney General.  She served as Attorney General from January 2011 to

14   January 2017.  She too never filed a Proposition 65 case on behalf of the People, although she

15   "inherited" two Proposition 65 cases regarding acrylamide in food from her predecessor, Edmund

16   G. Brown, who served as Attorney General from January 2007 to January 2011.  See *People v.*

17   *Snyder's of Hanover, Inc., et al.,* Alameda County Superior Court Case No. RG 09455286, filed June

18   1, 2009.  Thus, it has been more than 10 years since the Attorney General filed a Proposition 65 case

19   regarding acrylamide in foods or beverages. (Metzger Declaration ¶ 68)

20             According to this Court's determination in its Preliminary Injunction Order, "since [the

21   Chamber] filed its complaint, private enforcers have served 391 pre-litigation notices and filed 43

22   new Proposition 65 lawsuits in state courts for alleged exposures to acrylamide in food." "In 2019

23   alone, there were 205 notices (up from 147 notices in 2018), and private enforcers show no signs of

24   slowing down, serving more than 400 notices to date in 2020."  (Order Granting Preliminary

25   Injunction [ECF 114 at p. 29, lines 10-15]).  Thus, every single one of the hundreds of Proposition

26   65 lawsuits regarding acrylamide in food that have been filed during the past 10 years were filed by

27   private enforcers, rather than by the Attorney General.

28             Although the hundreds of Proposition 65 lawsuits regarding acrylamide in food filed in the

TELEPHONE (562) 437-4499
TOLL-FREE (877) TOX-TORT
TELECOPIER (562) 436-1561
WWW.TOXICTORTS.COM

METZGER LAW GROUP
A PROFESSIONAL LAW CORPORATION
555 EAST OCEAN BOULEVARD, SUITE 800
LONG BEACH, CALIFORNIA 90802

PRACTICE CONCENTRATED IN TOXIC
TORT & ENVIRONMENTAL LITIGATION
OCCUPATIONAL & ENVIRONMENTAL LUNG
DISEASE, CANCER, AND TOXIC INJURIES

**19**

TELEPHONE (562) 437-4499
TOLL-FREE (877) TOX-TORT
TELECOPIER (562) 436-1561
WWW.TOXICTORTS.COM

METZGER LAW GROUP
A PROFESSIONAL LAW CORPORATION
555 EAST OCEAN BOULEVARD, SUITE 800
LONG BEACH, CALIFORNIA 90802

Practice concentrated in toxic
tort & environmental litigation
occupational & environmental lung
disease, cancer, and toxic injuries

past 10 years were all filed by private enforcers rather than the Attorney General, the only defendant whom CalChamber sued in this case is the Attorney General. Furthermore, while CalChamber's Amended Complaint has many allegations about private enforcement actions, it does not (and cannot) allege that the Attorney General is currently prosecuting any Proposition 65 cases against any of its members, nor that he intends to file any such actions in the future. The absence of any such allegation by CalChamber is fatal, because the Supreme Court has long held that in cases "brought against the State's prosecuting officials," "the mere existence of a state penal statute would constitute insufficient grounds to support a federal court's adjudication of its constitutionality . . . if real threat of enforcement is wanting." *Poe v. Ullman,* 367 U.S. 497, 507 (1961) (emphasis added). The same is true in this case, in which CalChamber has named the State, and only the state, in each of its two complaints. Furthermore, the requirements for justiciability are just as applicable to claims arising under section 1983 as they are for claims of constitutional violations more broadly. See, e.g., *Lopez v. Candaele*, 630 F.3d 775, 785 (9th Cir. 2010) (plaintiff seeking to bring a section 1983 claim must demonstrate a "credible threat of prosecution").

In *Thomas v. Anchorage Equal Rights Commission,* 220 F.3d 1134 (9th Cir. 2000), plaintiff landlords opposed an anti-discrimination law requiring landlords to rent to unmarried couples, and they sued the city for declaratory and injunctive relief, alleging that enforcement of the law violated their rights to free speech and free exercise of religion. The district court enjoined enforcement of the law, but the Ninth Circuit reversed, finding that the matter lacked a case or controversy within the meaning of Article III.

According to the Court, "[i]n evaluating the genuineness of a claimed threat of prosecution, we look to whether the plaintiffs have articulated a 'concrete plan' to violate the law in question, whether the prosecuting authorities have communicated a specific warning or threat to initiate proceedings, and the history of past prosecution or enforcement under the challenged statute." *Id.* at 1139 (citing *Stoianoff v. State of Mont.*, 695 F.2d 1214, 1223 (9th Cir. 1983)).

In the first step of its analysis, the Court found that the plaintiffs had not established a "concrete plan" to violate the law, because they had failed to allege when or where they had violated it in the past, and when or where they intended to in the future. See *id.* at 1139. This threshold factor

**INTERVENOR-DEFENDANT CERT'S MEMORANDUM OF POINTS AND AUTHORITIES
IN SUPPORT OF ITS MOTION TO DISMISS FOR LACK OF A CASE OR CONTROVERSY**

F:\WP\Cases\1887\PLEADMOT\DISMISS\Motion to Dismiss - Lack of Jurisdiction\Memorandum of Points and Authorities Final-Final-Final.wpd

TELEPHONE (562) 437-4499
TOLL-FREE (877) TOX-TORT
TELECOPIER (562) 436-1561
WWW.TOXICTORTS.COM

METZGER LAW GROUP
A PROFESSIONAL LAW CORPORATION
555 EAST OCEAN BOULEVARD, SUITE 800
LONG BEACH, CALIFORNIA 90802

PRACTICE CONCENTRATED IN TOXIC
TORT & ENVIRONMENTAL LITIGATION
OCCUPATIONAL & ENVIRONMENTAL LUNG
DISEASE, CANCER, AND TOXIC INJURIES

is not an issue in the present case, because CalChamber's First Amended Complaint [ECF 57] alleges that acrylamide occurs in many different kinds of food (¶18), and that it is so widespread that it is not feasible to completely eliminate acrylamide exposure (¶19).  CalChamber goes on to allege that "many" of its members "produce, distribute, or sell acrylamide-containing food products" (¶7; 64), and that many of CalChamber's members must either provide warnings to California consumers or face enforcement actions for failing to do so (¶8).

In the second step of its analysis, the *Thomas* court found that there had been no showing made of a specific threat of enforcement that would give rise to a case or controversy.  On the contrary, the Court found that "[t]here has been no specific threat or even hint of future enforcement or prosecution. Nor could there be, as neither [plaintiff] can identify any tenants turned away due to their marital status and no prospective tenant has ever complained to the state or municipal authorities, formally or informally." *Id.* at 1140.  This holding mirrored a long line of cases in which the mere possibility of prosecution has been held inadequate to establish a case or controversy.  See, e.g., *San Diego County Gun Rights Committee v. Reno,* 98 F.3d 1121, 1128 (9th Cir. 1996) ("Plaintiffs have established at most a possibility of their eventual prosecution under the [statute], which is clearly insufficient to establish a "case or controversy.").  It must also be noted that it is the Plaintiff who bears the burden of showing that the State will enforce Proposition 65 against its members.  See *San Diego County Gun Rights Committee v. Reno*, 98 F.3d 1121, 1127 (9th Cir. 1996) ("A further flaw in plaintiffs' threat-of-prosecution argument is the absence of any threat by the government to prosecute them. Plaintiffs bear the burden of showing that the [statute] is actually being enforced.").  In this case, CalChamber has not made such a showing, and cannot do so.

Lastly, the *Thomas* court looked to whether the plaintiffs had shown a past pattern or practice of enforcement by the state, and noted that "in the twenty-five years that these housing laws have been on the books, the record does not indicate even a single criminal prosecution, and of the two reported instances of civil enforcement, only one raised the freedom of religion issue presented here." *Thomas*, supra, 220 F.3d at 1140.  Similarly, in this case, the Attorney General has not undertaken any new cases involving acrylamide in over a decade.

There are sometimes grounds to find a case or controversy in cases where the subject statute

**INTERVENOR-DEFENDANT CERT'S MEMORANDUM OF POINTS AND AUTHORITIES
IN SUPPORT OF ITS MOTION TO DISMISS FOR LACK OF A CASE OR CONTROVERSY**

TELEPHONE (562) 437-4499
TOLL-FREE (877) TOX-TORT
TELECOPIER (562) 436-1561
WWW.TOXICTORTS.COM

METZGER LAW GROUP
A PROFESSIONAL LAW CORPORATION
555 EAST OCEAN BOULEVARD, SUITE 800
LONG BEACH, CALIFORNIA 90802

PRACTICE CONCENTRATED IN TOXIC
TORT & ENVIRONMENTAL LITIGATION
OCCUPATIONAL & ENVIRONMENTAL LUNG
DISEASE, CANCER, AND TOXIC INJURIES

has not been enforced, such as when the statute has been recently adopted, such that the state has not yet had an opportunity for enforcement. See, e.g., *San Luis & Delta-Mendota Water Authority v. Salazar,* 638 F.3d 1163, 1173 (9th Cir. 2011). However, in the case of a longstanding penal statute, courts have consistently held that a case or controversy is *not* present if the state's lack of enforcement of the statute is coupled with a showing that the statute has been "commonly and notoriously" violated by those against whom the statute would be enforced. See *Poe v. Ullman*, supra, 367 U.S. at 507. Ninth Circuit case law is in accord. See *San Francisco County Democratic Central Committee v. Eu*, 826 F.2d 814, 822 (9th Cir. 1987) ("This case, however, is distinguishable from *Poe* in that here we have no record that the relevant provisions have been 'commonly and notoriously' violated."). See also *Libertarian Party of Los Angeles County v. Bowen,* 709 F.3d 867, 872 (9th Cir. 2013) ("Because the challenged provisions have not been 'commonly and notoriously' violated, the 'record of nonenforcement' is not the end of the inquiry.").

In this case, the "common and notorious" test weighs in favor of dismissal for lack of a case or controversy, because there can be no doubt that CalChamber's members have commonly and notoriously sold a vast array of acrylamide-containing products in the State of California without Proposition 65 warnings. Cal Chamber itself concedes that fact, with a First Amended Complaint that describes 660 notices of violation pertaining to acrylamide in a myriad of food and beverage products. [ECF 57 at ¶¶56-57]. In addition, the defendants in the coffee case, including large retailers such as Starbucks, Costco, Keurig, Target and Walmart, ***stipulated*** that they had sold acrylamide-containing coffee products with Proposition 65 warnings. (Metzger Decl. Ex. "B")

In both the original and amended complaints, CalChamber did not sue any private enforcers, but instead sought to enjoin the private enforcers as persons "in privity with and/or acting in concert with [the Attorney General] or any of its officers, employees, or agents." Furthermore, the Plaintiff in this case (CalChamber) has never been sued for violating Proposition 65 with respect to acrylamide in food. The Defendant in this case (the current Attorney General) has never filed a Proposition 65 case regarding acrylamide in food, nor have his two immediate predecessors, and the last Attorney General to file such a suit did so more than 10 years ago.

Thus, neither of the parties to this case is a Real Party in Interest. CalChamber purports to

F:\WP\Cases\1887\PLEADMOT\DISMISS\Motion to Dismiss - Lack of Jurisdiction\Memorandum of Points and Authorities Final-Final-Final.wpd

TELEPHONE (562) 437-4499
TOLL-FREE (877) TOX-TORT
TELECOPIER (562) 436-1561
WWW.TOXICTORTS.COM

METZGER LAW GROUP
A PROFESSIONAL LAW CORPORATION
555 EAST OCEAN BOULEVARD, SUITE 800
LONG BEACH, CALIFORNIA 90802

PRACTICE CONCENTRATED IN TOXIC
TORT & ENVIRONMENTAL LITIGATION
OCCUPATIONAL & ENVIRONMENTAL LUNG
DISEASE, CANCER, AND TOXIC INJURIES

sue not in its organizational capacity, but instead in a representational capacity on behalf of some of its members (who might be Real Parties in Interest if they actually desired to file suit); the Attorney General is not sued for any actions he has undertaken, but rather because he is alleged to be "in privity with and/or acting in concert" with private enforcers who are not parties to this case.

Since neither CalChamber nor the Attorney General are the Real Parties in Interest, the requirement of Art. III, Sec. 2 that "a federal court have before it the real parties in interest and an actual case or controversy between those parties" is not satisfied.  *In re Fry*, 2015 WL 572315 at 12 (Bankr. E.D.Cal. 2015), citing *Elk Grove Unified School Dist. v. Newdow*, 542 U.S. 1, 11–12 (2004).

In its order staying this Court's preliminary injunction, the Ninth Circuit observed that "the preliminary injunction prohibits lawsuits brought under Proposition 65 with regard to acrylamide exposure by *any* private actor, including those who are not parties to the underlying action." (Emphasis by the Court).  The Ninth Circuit found this troublesome, writing: "The breadth of the injunction exacerbates the concerns underlying the prior restraint doctrine and so the likelihood of success on the merits."  (Metzger Decl. Exhibit "C" at pp. 2-3).

Thus, it matters that the private enforcers who have served so many notices of violations and filed so many Proposition 65 cases regarding acrylamide in food during the past few years are not before the Court.  While the Ninth Circuit was concerned that this court's order enjoined nonparties from exercising their First Amendment petition rights by filing Proposition 65 lawsuits regarding acrylamide in food, this Court should be (and must be) concerned that the absence of those private enforcers from this case deprives this Court of jurisdiction for lack of "an actual case or controversy between" real parties in interest.  *In re Fry*, 2015 WL 572315 at 12 (Bankr. Ct. E.D. Cal. 2015), citing *Elk Grove Unified School Dist. v. Newdow,* 542 U.S. 1, 11–12 (2004).

Finally, since both CalChamber and the Attorney General – the only named plaintiff and only named defendant – have actively opposed intervention in this case by private enforcers who sought to intervene upon learning that they were enjoined by this court from exercising their First Amendment right [ECF Nos. 130, 131, 140, 141, 145, 146], and since the Court has already accepted those arguments of CalChamber and the Attorney General, the absence of real parties in interest and "an actual case or controversy between those parties" cannot be remedied to cure the jurisdictional

**INTERVENOR-DEFENDANT CERT'S MEMORANDUM OF POINTS AND AUTHORITIES**
**IN SUPPORT OF ITS MOTION TO DISMISS FOR LACK OF A CASE OR CONTROVERSY**

TELEPHONE (562) 437-4499
TOLL-FREE (877) TOX-TORT
TELECOPIER (562) 436-1561
WWW.TOXICTORTS.COM

METZGER LAW GROUP
A PROFESSIONAL LAW CORPORATION
555 EAST OCEAN BOULEVARD, SUITE 800
LONG BEACH, CALIFORNIA 90802

PRACTICE CONCENTRATED IN TOXIC
TORT & ENVIRONMENTAL LITIGATION
OCCUPATIONAL & ENVIRONMENTAL LUNG
DISEASE, CANCER, AND TOXIC INJURIES

defect arising from their absence — lack of an actual case or controversy such real parties in interest.

**7.   THE STATE HAS INITIATED A RULEMAKING PROCEEDING TO ADOPT 27 CCR § 25607.2(b) WHICH WILL MOOT THIS CASE, THEREBY ELIMINATING ANY CASE OR CONTROVERSY IF ONE EVER EXISTED**

CalChamber filed this case seeking to enjoin the initiation of notices of violations and the filing and prosecution of Proposition 65 cases regarding acrylamide in food, claiming that the statutorily required warning that "this product contains acrylamide, a chemical known to the State to cause cancer" is false and misleading, because, according to CalChamber, acrylamide is not a known human carcinogen, but is merely a probable human carcinogen.  To address CalChamber's concern, on September 17, 2021, OEHHA proposed the adoption of a new regulation, 27 CCR § 25607.2(b), which would merely require a warning for food exposures to acrylamide that "[c]onsuming this product can expose you to acrylamide, a probable human carcinogen formed in some foods during cooking or processing at high temperatures."  (Metzger Decl. Exhibit "O")

Acrylamide is classified by the International Agency for Research on Cancer as a "probable human carcinogen."  Thus, the regulation will render the required warning indisputably true and not misleading, and will moot CalChamber's claim that the warning violates the First Amendment.

In issuing the preliminary injunction in this case, Judge Mueller found that "many public health authorities have concluded that exposure to acrylamide probably increases the risk of cancer in people," that "[t]he U.S. National Toxicology Program . . . has said that acrylamide is 'reasonably anticipated to be a human carcinogen,'" that "[t]he U.S. Environmental Protection Agency has found that acrylamide is 'likely to be carcinogenic in humans,'" and that "a World Health Organization (WHO) committee that includes representatives from the FDA has concluded that acrylamide is carcinogenic." [ECF 114, 4:4-12]

Judge Mueller issued a preliminary injunction enjoining the filing of new Proposition 65 cases regarding acrylamide in food upon concluding that the statutory warning that this product "contains a chemical known to the state to cause cancer" was likely false and misleading, because it implied that acrylamide was added to foods and because the scientific evidence did not establish

F:\WP\Cases\1887\PLEADMOT\DISMISS\Motion to Dismiss - Lack of Jurisdiction\Memorandum of Points and Authorities Final-Final-Final.wpd

TELEPHONE (562) 437-4499
TOLL-FREE (877) TOX-TORT
TELECOPIER (562) 436-1561
WWW.TOXICTORTS.COM

METZGER LAW GROUP
A PROFESSIONAL LAW CORPORATION
555 EAST OCEAN BOULEVARD, SUITE 800
LONG BEACH, CALIFORNIA 90802

PRACTICE CONCENTRATED IN TOXIC
TORT & ENVIRONMENTAL LITIGATION
OCCUPATIONAL & ENVIRONMENTAL LUNG
DISEASE, CANCER, AND TOXIC INJURIES

that acrylamide is known to cause human cancer – that acrylamide is merely a probable human carcinogen.  However, Judge Mueller also concluded that "[t]he problems posed by the safe harbor warning could have been avoided," that "[t]he State could allow business to explain that acrylamide forms naturally when some foods are prepared" and "[i]t could permit business to say that California has listed acrylamide as a chemical that 'probably' causes cancer or is a 'likely' carcinogen . . . ." [ECF 114, 24:3-6]  That is exactly what the State has now done.  "The case or controversy requirement of Article III . . . deprives federal courts of jurisdiction to hear moot cases." *Native Village of Nuiqsut v. Bureau of Land Mgmt*, 9 F.4th 1201,1208  (9th Cir. 2021).

Since the proposed regulation (which will be adopted upon compliance with the notice, hearing and other requirements of the California Administrative Procedure Act) will moot CalChamber's claim in this case (which is based entirely on the required warning constituting false compelled speech), the present case does not present a case or controversy under Article III, even if this case ever did present a case or controversy within this Court's Article III jurisdiction.

## 8.   CONCLUSION

For all the foregoing reasons, this action does not present a case or controversy within this court's Article III jurisdiction.  Accordingly, this court should, indeed must, grant the present motion and dismiss this case on this fundamental ground.


DATED:   November 1, 2021          METZGER LAW GROUP
                                   A Professional Law Corporation



                                   /s/ Raphael Metzger
                                   _____
                                   RAPHAEL METZGER, ESQ.
                                   Attorneys for Plaintiff
                                   COUNCIL FOR EDUCATION AND
                                   RESEARCH ON TOXICS ("CERT")

**25**

**INTERVENOR-DEFENDANT CERT'S MEMORANDUM OF POINTS AND AUTHORITIES
IN SUPPORT OF ITS MOTION TO DISMISS FOR LACK OF A CASE OR CONTROVERSY**

F:\WP\Cases\1887\PLEADMOT\DISMISS\Motion to Dismiss - Lack of Jurisdiction\Memorandum of Points and Authorities Final-Final-Final.wpd

TELEPHONE (562) 437-4499
TOLL-FREE (877) TOX-TORT
TELECOPIER (562) 436-1561
WWW.TOXICTORTS.COM

METZGER LAW GROUP
A PROFESSIONAL LAW CORPORATION
555 EAST OCEAN BOULEVARD, SUITE 800
LONG BEACH, CALIFORNIA 90802

PRACTICE CONCENTRATED IN TOXIC
TORT & ENVIRONMENTAL LITIGATION
OCCUPATIONAL & ENVIRONMENTAL LUNG
DISEASE, CANCER, AND TOXIC INJURIES

# CERTIFICATE OF SERVICE

I hereby certify that on November 1, 2021. I caused the foregoing document, described as **INTERVENOR-DEFENDANT CERT'S MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF ITS MOTION TO DISMISS FOR LACK OF A CASE OR CONTROVERSY** to be electronically filed with the Court's CM/ECF filing system, which will send a *Notice of Electronic Filing* to all parties of record who are registered with CM/ECF:

Trenton H. Norris, Esq.
Sarah Esmaili, Esq.
S. Zachary Fayne, Esq.
David M. Barnes, Esq.
Arnold & Porter Kaye Scholer LLP
Three Embarcadero Center, 10th Flr.
San Francisco, CA 94111-4024
(Plaintiff)
Telephone: (415) 471-3100
email: trent.norris@arnolderporter.com

Laura J. Zuckerman, Deputy Attorney General
Office of the Attorney General
1515 Clay St., 20th Flr.
Oakland, CA 94612
(Defendant)
Telephone: (510) 879-0098
email: laura.zuckerman@doj.ca.gov

Megan Hey, Deputy Attorney General
Office of the Attorney General
300 S. Spring St., Suit e1702
Los Angeles, CA 90013
Telephone: (213) 269-6344
email: megan.hey@doj.ca.gov

Rafael J. Hurtado, Deputy Attorney General
State of California Department of Justice
Office of the Attorney General
600 West Broadway, Suite 1800
San Diego, CA 92101
(Defendant)
Telephone (619) 321-5780
email: rafael.hurtado@joj.ca.gov

Aida Poulsen, Esq.
Poulsen Law P.C.
282 11th Ave., Suite 2612
New York, NY 10001
(Intervenors-Defendants)
email: ap@poulsenlaw.org

I declare that I am employed in the offices of a member of this court, at whose direction service was made.

Executed on November 1, 2021, at Long Beach, California.

/s/ Nina S. Vidal
_____
Nina S. Vidal, Declarant

**26**

**INTERVENOR-DEFENDANT CERT'S MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF ITS MOTION TO DISMISS FOR LACK OF A CASE OR CONTROVERSY**