Trenton H. Norris (CA Bar No. 164781)
S. Zachary Fayne (CA Bar No. 307288)
David Barnes (CA Bar No. 318547)
**ARNOLD & PORTER KAYE SCHOLER LLP**
Three Embarcadero Center, 10th Floor
San Francisco, CA 94111
Telephone:    415.471.3100
Facsimile:    415.471.3400
trent.norris@arnoldporter.com

*Attorneys for California Chamber of Commerce*

## UNITED STATES DISTRICT COURT

## EASTERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| CALIFORNIA CHAMBER OF COMMERCE, | Case No. 2:19-cv-02019-DAD-JDP |
| Plaintiff, | **PLAINTIFF CALIFORNIA CHAMBER OF COMMERCE'S OPPOSITION TO INTERVENOR-DEFENDANT COUNCIL FOR EDUCATION AND RESEARCH ON TOXICS' MOTION TO DISMISS** |
| v. | |
| XAVIER BECERRA, IN HIS OFFICIAL CAPACITY AS ATTORNEY GENERAL OF THE STATE OF CALIFORNIA, | Date:          December 7, 2021 |
| Defendant, | Time:          9:30 a.m. |
| COUNCIL FOR EDUCATION AND RESEARCH ON TOXICS, | Location:      Courtroom 5 |
| Intervenor-Defendant. | Judge:         Hon. Dale A. Drozd |
| | Action Filed:  October 7, 2019 |

# TABLE OF CONTENTS

**Page**

INTRODUCTION ................................................................ 1

BACKGROUND ................................................................ 2

    A.    Acrylamide in Food........................................................ 2

    B.    Proposition 65 Warning Requirement................................ 3

    C.    Proposition 65 Enforcement............................................ 4

    D.    CalChamber's Lawsuit and Procedural History.................... 5

ARGUMENT ................................................................ 7

I.    THERE IS A JUSTICIABLE CASE OR CONTROVERSY BETWEEN CALCHAMBER AND THE ATTORNEY GENERAL. .................................... 7

    A.    The Attorney General Is a Proper Defendant Under *Ex Parte Young*. ................ 8

    B.    CalChamber Has Alleged Facts Sufficient to Demonstrate a Credible Threat of Enforcement, Thereby Establishing an Article III Case or Controversy........................................................ 9

        1.    Legal Standard ........................................................ 11

        2.    Conduct Arguably Proscribed By Proposition 65.................... 12

        3.    A Credible Threat of Enforcement................................ 12

            a.    The Attorney General Has Enforced and Continues to Enforce Proposition 65 as Applied to Acrylamide in Food .................... 13

            b.    The Attorney General Has Not Disavowed Enforcement ................ 14

            c.    Substantial Threat of Enforcement By Bounty Hunters ................ 14

    C.    CERT's Assertion That There Is No Case or Controversy Because the Interests of CalChamber and the Attorney General Are Aligned Is Baseless........................................................ 16

II.    CALCHAMBER HAS ASSOCIATIONAL STANDING TO PURSUE FIRST AMENDMENT CLAIMS ON BEHALF OF ITS MEMBERS.................... 19

III.    OEHHA'S PROPOSED RULE WILL NOT MOOT THIS CASE, BUT A STAY WOULD BE APPROPRIATE WHILE IT IS UNDER REVIEW.................... 22

IV.    CERT'S MOTION AND CONDUCT IN THIS LITIGATION MERITS CONSIDERATION OF ITS INTERVENOR STATUS UNDER RULE 24. ................ 23

CONCLUSION ................................................................ 25

# <u>TABLE OF AUTHORITIES</u>

<u>Page(s)</u>

<u>Cases</u>

*A Woman's Friend Pregnancy Res. Clinic v. Harris*,
    153 F. Supp. 3d 1168 (E.D. Cal. 2015), *rev'd in part on other grounds*,
    901 F.3d 1166 (9th Cir. 2018)..................................................................................12

*AFL-CIO v. Deukmejian*,
    212 Cal. App. 3d 425 (1989)......................................................................................3

*Alaska Fish & Wildlife Fed'n & Outdoor Council, Inc. v. Dunkle*,
    829 F.2d 933 (9th Cir. 1987)....................................................................................21

*Ariz. Right to Life Political Action Comm. v. Bayless*,
    320 F.3d 1002 (9th Cir. 2003)..................................................................................11

*Ass'n des Eleveurs de Canards et d'Oies du Quebec v. Harris*,
    729 F.3d 937 (9th Cir. 2013)......................................................................................9

*Babbitt v. United Farm Workers Nat'l Union*,
    442 U.S. 289 (1979)...........................................................................................11, 13

*Bitterroot Ridge Runners Snowmobile Club v. U.S. Forest Serv.*,
    329 F. Supp. 3d 1191 (D. Montana 2018) ...............................................................17

*Bland v. Fessler*,
    88 F.3d 729 (9th Cir. 1996)................................................................................14, 15

*Cal. Chamber of Commerce v. Brown*,
    196 Cal. App. 4th 233 (2011)...................................................................................18

*Cal. Pro-Life Council, Inc. v. Getman*,
    328 F.3d 1088 (9th Cir. 2003)..................................................................................11

*Coal. to Defend Affirmative Action v. Brown*,
    674 F.3d 1128 (9th Cir. 2012)....................................................................................9

*Columbia Basin Apartment Ass'n v. City of Pasco*,
    268 F.3d 791 (9th Cir. 2001)....................................................................................21

*Consumer Cause, Inc. v. SmileCare*,
    91 Cal. App. 4th 454 (2001)......................................................................................9

*Cornwell v. Cal. Bd. of Barbering & Cosmetology*,
    962 F. Supp. 1260 (S.D. Cal. 1997)...........................................................................8

*CTIA-The Wireless Ass'n v. City of Berkeley*,
    928 F.3d 832 (9th Cir. 2019)..................................................................................22

*Disability Rights. Wis., Inc. v. Walworth Cty. Bd. of Supervisors*,
    522 F.3d 796 (7th Cir. 2008)..................................................................................20

*Doe v. Stincer*,
    175 F.3d 879 (11th Cir. 1999)................................................................................20

*DTSC v. Technichem, Inc.*,
    No. 12-cv-05845-VC, 2016 WL 1029463 (N.D. Cal. March 15, 2016)........................17

*Ex parte Young*,
    209 U.S. 123 (1908)...........................................................................................7, 8

*Fleck & Assoc., Inc. v. City of Phoenix*,
    471 F.3d 1100 (9th Cir. 2006)................................................................................19

*Frazier v. Redding Police Dep't*,
    No. 2:11-CV-1351 AC P, 2013 WL 506412 (E.D. Cal. Feb. 8, 2013).........................11

*Handi Inv. Co. v. Mobil Oil Corp.*,
    653 F.2d 391 (9th Cir. 1981)..................................................................................11

*Hunt v. Wash. State Apple Advert. Comm'n*,
    432 U.S. 333 (1977).........................................................................................19, 22

*Italian Colors Rest. v. Becerra*,
    878 F.3d 1165 (9th Cir. 2018)................................................................................15

*KVUE, Inc. v. Moore*,
    709 F.2d 922 (5th Cir. 1983), *aff'd*, 465 U.S. 1092 (1984) ...................................14

*Little v. City of Seattle*,
    863 F.2d 681 (9th Cir. 1988)..................................................................................25

*Lopez v. Candaele*,
    630 F.3d 775 (9th Cir. 2010).......................................................................10, 13, 14

*LSO, Ltd. v. Stroh*,
    205 F.3d 1146 (9th Cir. 2000).........................................................................12, 14

*Mishewal Wappo Tribe of Alexander Valley v. Salazar*,
    No. 5:09-CV-02502 EJD, 2012 WL 4717814 (N.D. Cal. Sept. 28, 2012) ...............23, 25

*Mobil Oil Corp. v. Attorney Gen. of Va.*,
    940 F.2d 73 (4th Cir. 1991)....................................................................................14

*Nat'll Ass'n of Wheat Growers v. Zeise*,
    309 F. Supp. 3d 842 (E.D. Cal. 2018)................................................................15, 16

*Nat'l Council of La Raza v. Cegavske*,
   800 F.3d 1032 (9th Cir. 2015)..................................................................................20

*Nat'l Inst. of Family & Life Advocates v. Becerra*,
   138 S. Ct. 2361 (2018) ...........................................................................................22

*People v. Frito-Lay, Inc., et al.*,
   L.A. Super. Ct., BC338896 (filed Aug. 26, 2005) ..................................................13

*People v. Snyders of Hanover, et al.*,
   Alameda Super. Ct., No. RG09455286 (filed June 1, 2009) ...................................13

*Perry v. Schwarzenegger*,
   704 F. Supp. 2d 921 (N.D. Cal. 2010) ...............................................................8, 18

*Susan B. Anthony List v. Driehaus*,
   573 U.S. 149 (2014) ...........................................................................................11, 15

*Thomas v. Anchorage Equal Rights Comm'n*,
   220 F.3d 1134 (9th Cir. 2000) (en banc)................................................................10

*Torres v. U.S. Dep't of Homeland Sec.*,
   411 F. Supp. 3d 1036 (C.D. Cal. 2019)..................................................................20

*United States v. Sterling Centrecorp Inc.*,
   208 F. Supp. 3d 1126 (E.D. Cal. 2016)..................................................................17

*Vasquez v. Cty. of Stanislaus*,
   No. 1:19-cv-01610, 2020 WL 6728933 (E.D. Cal. Nov. 16, 2020)........................25

*Virginia v. Am. Booksellers Ass'n*,
   484 U.S. 383 (1988) ...........................................................................................12, 14

*Warth v. Seldin*,
   422 U.S. 490 (1975) ................................................................................................21

*Wolfson v. Brammer*,
   616 F.3d 1045 (9th Cir. 2010)..................................................................................11

*Zauderer v. Office of Disciplinary Counsel*,
   471 U.S. 626 (1985) ................................................................................................22

**Statutes, Rules, and Regulations**

Cal. Code Civ. Proc. § 1021.5.............................................................................................4

Cal. Code Regs. tit. 11,
   § 3003(a) .................................................................................................................5
   § 3200.......................................................................................................................5

- iv -

Cal. Code Regs. tit. 27,
    § 25306(m) ................................................................................................................3
    § 25601 ......................................................................................................................4
    § 25607.2(a)(2) ..........................................................................................................4
    § 25704 (effective Oct. 1, 2019) ..............................................................................17

Cal. Health & Safety Code
    § 25249.6 ...................................................................................................................3
    § 25249.7(b) ..............................................................................................................4
    § 25249.7(c) ...............................................................................................................4
    § 25249.7(d) .......................................................................................................4, 5, 9
    § 25249.7(e)(1)(A) .........................................................................................5, 13, 14
    § 25249.7(e)(1)(B) ...................................................................................................14
    § 25249.7(f) ...............................................................................................................5
    § 25249.8(a) ...............................................................................................................3
    § 25249.8(b) ...............................................................................................................3
    § 25249.12(b) ............................................................................................................4
    § 25249.12(c) .............................................................................................................4
    § 25249.12(d) ............................................................................................................4

E.D. Cal. Local Rule 230(j) ................................................................................7, 10, 11

**Other Authorities**

Martin A. Schwartz, *Section 1983 Litigation* (3d ed. 2014) .........................................8

## INTRODUCTION

The California Chamber of Commerce ("CalChamber") brought this suit in October 2019 to vindicate the First Amendment rights of its many members that make and sell food in California that contains acrylamide. These businesses—from large companies to corner stores—must either warn consumers that they will be exposed to a chemical "known to the state to cause cancer" or else risk state court litigation in which they face penalties of $2,500 per unit sold if they are unable to bear the expensive burden of scientific proof. Hundreds of businesses have been sued to date by both the Attorney General and private enforcers. Am. Compl. (ECF No. 57) ¶¶ 54-59. But because acrylamide forms naturally during cooking and is found in thousands of food products, *id.* ¶ 2, many more businesses that make and sell acrylamide-containing food products—including many CalChamber members—remain to be sued. The costs of Proposition 65 litigation, the one-sided nature of its enforcement regime, and the incentives it provides for enforcement by bounty hunters make it uneconomical—deliberately so—for individual businesses to vindicate their First Amendment rights on a case-by-case basis. *Id.* ¶ 60. CalChamber therefore filed suit against the lead enforcer of Proposition 65, the California Attorney General ("AG"), to resolve this core legal issue.

Defendant-Intervenor Council for Education and Research on Toxics ("CERT") intervened shortly after CalChamber filed suit. Now, two years into the litigation, after filing (1) a motion to dismiss, (2) a motion for attorney's fees, (3) a request for entry of judgment, (4) a motion for summary judgment, and (5) the motion for disqualification that landed this case on the docket of the District's most overburdened judge, CERT now files (6) a second motion to dismiss, this time on the ground that there is no justiciable "case or controversy" between CalChamber and the AG. CERT's motion is both baseless and improper. This is only the most recent example of CERT unnecessarily multiplying these proceedings and burdening the Court and should prompt the Court to consider revoking or limiting CERT's status as an intervenor under Rule 24, Federal Rules of Civil Procedure.

Most significantly, CERT hides that the judge previously presiding over this case *already ruled* that CalChamber sufficiently alleged a "credible threat of enforcement" by the AG to support Article III standing. *See* Order, ECF No. 84, at 6 ("plaintiff has pleaded a specific credible threat of enforcement of the Proposition 65 acrylamide warning requirement by the Attorney General"). The

1   Court should reject CERT's covert and improper request for reconsideration under Local Rule 230(j)

2   and the "law of the case" doctrine from which the Local Rule was derived.  The Court's prior ruling

3   is sufficient basis, standing alone, to dispose of CERT's motion.

4   CERT's remaining arguments are equally meritless.  CERT contends, for example, that

5   CalChamber is not a "real party in interest" because it sues on behalf of its members and does not

6   assert any organizational injury to itself.  But CERT ignores longstanding Supreme Court precedent

7   that claims for prospective injunctive and declaratory relief are properly resolved in a group context

8   and that associations have Article III standing to sue without joining their individual members.

9   Similarly meritless is CERT's contention that there is no Article III case or controversy

10  because the AG's interests are aligned with CalChamber's.  CERT may disagree with the State's

11  policy in implementing Proposition 65 or the AG's litigation strategy in this case, but CERT has no

12  evidence for its conspiracy theory that the AG seeks to exempt acrylamide in food from the

13  Proposition 65 warning requirement.  Indeed, the AG has itself filed *two* motions to dismiss and

14  opposed CalChamber's motion for a preliminary injunction, vigorously arguing that Proposition 65

15  cancer warnings for acrylamide in food are constitutional and scientifically justified.

16  Accordingly, the Court should deny CERT's motion and consider revoking or limiting

17  CERT's status as an intervenor in order to address CERT's conduct in this litigation so that the Court

18  can efficiently resolve the legitimate dispute between CalChamber and the AG.

19  **BACKGROUND**

20  **A.    Acrylamide in Food**

21  Acrylamide forms naturally in many types of foods when cooked at high temperatures or

22  otherwise processed with heat.  Am. Compl. ¶ 2.  Acrylamide is found mainly in foods made from

23  plants, such as potato products (e.g., French fries, potato chips), grain products (e.g., cereals, cookies,

24  and toast), and coffee.  *Id.* ¶ 16.  Other common sources of acrylamide in the diet include roasted

25  nuts, roasted asparagus, canned sweet potatoes, and prune juice.  *Id.* ¶ 18.  Acrylamide was first

26  detected in certain foods in 2002, but has probably always been present in cooked foods.  *Id.* ¶ 16.

27  There is an extensive body of scientific research that shows that acrylamide that forms

28  naturally in foods does *not* pose a cancer risk to humans.  The National Cancer Institute has

explained, for example, that "a large number of epidemiologic studies . . . in humans have found no consistent evidence that dietary acrylamide exposure is associated with the risk of any type of cancer." *Id.* ¶ 23.  Likewise, the American Cancer Society stated in February 2019 that, "[s]o far, reviews of studies done in groups of people (epidemiologic studies) suggest that dietary acrylamide isn't likely to be related to risk for most common types of cancer." *Id.* ¶ 24.  In fact, as addressed in the declaration of Dr. Loren Lipworth accompanying CalChamber's Motion for a Preliminary Injunction (ECF No. 95-20), there have been more than 50 epidemiologic studies evaluating the association between dietary acrylamide and cancer, and those studies have consistently found that exposure to acrylamide in food does *not* increase cancer risk *in humans*.  Lipworth Decl. ¶ 144.

Certain governmental and scientific entities—including the U.S. Environmental Protection Agency ("EPA") and the International Agency for Research on Cancer ("IARC")—have identified acrylamide as a "likely" or "probable" human carcinogen based on studies in laboratory animals. Am. Compl. ¶¶ 28, 49, 51.  But no governmental or scientific organization has identified acrylamide as a *known* human carcinogen, and both EPA and IARC have concluded that epidemiological studies provide limited or no evidence of carcinogenicity *in humans*.  *Id.* ¶ 51.

### B.      Proposition 65 Warning Requirement

California's Safe Drinking Water and Toxic Enforcement Act ("Proposition 65") generally prohibits businesses from exposing Californians to chemicals "known to the state to cause cancer" without providing required warnings, unless an affirmative defense applies.  Health & Safety Code § 25249.6.  The state agency responsible for implementing Proposition 65—the California Office of Environmental Health Hazard Assessment ("OEHHA")—maintains "a list of those chemicals known to the state to cause cancer." *Id.* § 25249.8(a).  As relevant here, OEHHA is required to list a chemical as "known to the state to cause cancer" if it is so identified by an "authoritative body." *Id.* § 25249.8(b).  EPA and IARC have both been designated as "authoritative bodies" for identifying carcinogens.  Cal. Code Regs. tit. 27, § 25306(m).  Notably, OEHHA can list a chemical under this mechanism based on evidence that it causes cancer in laboratory animals alone.  *See, e.g.*, *AFL-CIO v. Deukmejian*, 212 Cal. App. 3d 425, 441 (1989).  In 1990, OEHHA added acrylamide to the Proposition 65 list based on EPA's and IARC's classifications of acrylamide as a "probable" or

1  "possible" carcinogen based on studies in laboratory animals (and not based on studies in humans).

2  A year after a chemical is added to the Proposition 65 list, Proposition 65 requires that any

3  "person in the course of doing business" provide a "clear and reasonable warning" before "expos[ing]

4  any individual to" the listed chemical.  Health & Safety Code § 25249.6.  For decades, OEHHA's

5  regulations provided that the warning "must clearly communicate that the chemical in question is

6  known to the state to cause cancer."  Cal. Code Regs. tit. 27, § 25601 (adopted as Cal. Code Regs. tit.

7  22, § 12601 (1988); abrogated Aug. 30, 2018).  In August 2016, OEHHA adopted new warning

8  regulations, pursuant to which cancer warnings for food products containing acrylamide are deemed

9  to be "clear and reasonable" if they state: "**WARNING:**  Consuming this product can expose you to

10  [acrylamide], which is known to the State of California to cause cancer.  For more information, go to

11  www.P65Warnings.ca.gov/food."  Cal. Code Regs. tit. 27, § 25607.2(a)(2).

12  On September 17, 2021, OEHHA proposed to add an alternative "safe harbor" warning for

13  acrylamide in food:  "**CALIFORNIA WARNING:**  Consuming this product can expose you to

14  acrylamide, a probable human carcinogen formed in some foods during cooking or processing at high

15  temperatures.  Many factors affect your cancer risk, including the frequency and amount of the

16  chemical consumed.  For more information including ways to reduce your exposure, see

17  www.P65warnings.ca.gov/acrylamide."  *See* Metzger Decl., Exhibit O (ECF No. 192-3 at 115).  That

18  proposed regulation has not yet been adopted.

19  **C.  Proposition 65 Enforcement**

20  Proposition 65 imposes penalties of up to $2,500 *per day* for *each* failure to provide an

21  adequate warning.  Health & Safety Code § 25249.7(b).  The statute authorizes the AG, a district

22  attorney, or certain city attorneys to bring enforcement actions.  *Id.* § 25249.7(c).  In addition, *any*

23  *person* (even a person or organization who has not been injured) may bring a private enforcement

24  action "in the public interest."  *Id.* § 25249.7(d).  These bounty hunters are eligible to recover 25

25  percent of the penalty (*id.* § 25249.12(d)), as well as their reasonable attorneys' fees and costs (Cal.

26  Code Civ. Proc. § 1021.5).  The remaining 75 percent of the penalty is deposited in the State

27  Treasury's Safe Drinking Water and Toxic Enforcement Fund, which is used by OEHHA to

28  implement Proposition 65.  Health & Safety Code §§ 25249.12(b), (c).

1    Private enforcers are required to provide 60 days' notice to the AG and alleged violator,

2    among others, before filing an enforcement action and can sue only if a public enforcer, such as the

3    AG, has not already sued.  *Id.* § 25249.7(d).  The pre-litigation notice must include supporting factual

4    information.  *Id.*  If, after reviewing the factual information and meeting and conferring with the

5    noticing party, "the Attorney General believes there is no merit to the action, the Attorney General

6    shall serve a letter to the noticing party and the alleged violator stating the Attorney General believes

7    there is no merit to the action."  *Id.* § 25249.7(e)(1)(A).  In addition, the AG is authorized to review

8    proposed settlements and may challenge a settlement that is not in the public interest.  *Id.*

9    § 25249.7(f); Cal. Code Regs. tit. 11, § 3003(a).  The AG has adopted detailed regulations setting

10   forth its "guidelines for review of settlements" by private enforcers proceeding "in the public

11   interest."  Cal. Code Regs. tit. 11, § 3200.

12       **D.      CalChamber's Lawsuit and Procedural History**

13       CalChamber filed this lawsuit in October 2019 seeking (1) a declaration that the Proposition

14   65 warning requirement for cancer as applied to acrylamide in foods violates the First Amendment;

15   and (2) an injunction prohibiting the AG and all those in privity with him from enforcing the

16   Proposition 65 warning requirement for cancer with respect to acrylamide in foods.  ECF No. 1.

17       Shortly after CalChamber filed its complaint, CERT moved to intervene to protect its

18   investment in its long-running lawsuit over acrylamide in coffee and prevent that lawsuit from being

19   enjoined.  ECF No. 10 at 11-12.  CERT argued that the AG could not represent its interests in this

20   case because the AG has defended the regulation that undermined CERT's coffee litigation.  *Id.* at 13.

21   Two days later, CalChamber—while disagreeing with CERT's characterization of its Complaint and

22   CERT's reasons for intervening—filed a statement of non-opposition to CERT's intervention "[i]n

23   the interest of expediting these proceedings and the Court's consideration of the merits of its claims."

24   ECF No. 13.  The AG filed a similar statement, ECF No. 25, and in order to avoid the need for a

25   hearing, both CalChamber and the AG stipulated to CERT's intervention.  ECF No. 28.

26       CERT and the AG both moved to dismiss CalChamber's Complaint on jurisdictional grounds.

27   *See* ECF Nos. 8, 20.  On March 3, 2020, the Court granted in part the AG's and CERT's motions to

28   dismiss and granted CalChamber leave to amend.  ECF No. 56.  CalChamber promptly filed an

- 5 -

1   Amended Complaint (ECF No. 57) to address the issues identified in the Court's Order.  In particular,

2   CalChamber (1) added a claim for relief under 42 U.S.C. § 1983 for violations of the First

3   Amendment (Am. Compl. ¶¶ 88-96), and (2) clarified that CalChamber seeks only prospective relief

4   and does not seek to enjoin pending litigation, such as CERT's coffee case (*id.*, Prayer for Relief).

5           Two weeks later, the AG filed a second motion to dismiss.  ECF No. 60.  CERT, for its part,

6   filed a motion for attorneys' fees—even though no judgment had been entered in its favor—arguing

7   that it was a prevailing party because CalChamber did not name CERT as a defendant when

8   CalChamber amended its complaint, thus—according to CERT—effecting CERT's dismissal.  ECF

9   No. 59.  Over a month later, on May 11, 2020, CERT filed a request for entry of judgment.  ECF No.

10  73.  The Court denied the AG's motion to dismiss and CERT's motion for attorneys' fees on August

11  27, 2020.  ECF No. 84.  The Court further ordered the parties to meet and confer as to whether

12  CERT's request for entry of judgment was still properly before the Court or whether it could be more

13  efficiently resolved by stipulation.  *Id.*  The parties were not able to reach agreement, and the Court

14  denied CERT's request for entry of judgment on August 30, 2021.  ECF No. 162.

15          On October 30, 2020, CERT then filed a motion for summary judgment on the basis that

16  CalChamber's lawsuit violates the *Noerr-Pennington* doctrine and infringes CERT's right to petition

17  by filing Proposition 65 enforcement actions.  ECF No. 93.

18          Also on October 30, 2020, CalChamber filed a motion for a preliminary injunction, asking the

19  Court to preliminarily enjoin the AG and all those in privity or acting in concert with him (including

20  private enforcers) from filing and/or prosecuting new lawsuits to enforce the Proposition 65 warning

21  requirement for cancer as applied to acrylamide in food and beverage products.  ECF No. 95.  The

22  AG opposed CalChamber's motion, arguing that CalChamber was "wrong on the science and wrong

23  on the law" and that "CalChamber cannot show that it is likely to prevail on the merits of its theory

24  that warnings for exposures to acrylamide in food products violate the First Amendment."  ECF No.

25  101.  The AG submitted an expert declaration from Dr. Gina Solomon opining that the scientific

26  evidence demonstrates that acrylamide is a human carcinogen.  *See* ECF No. 101-1.  CERT also

27  opposed CalChamber's motion, arguing primarily that the requested preliminary injunction would

28  impose an unconstitutional prior restraint on its First Amendment rights, consistent with its motion

1  for summary judgment.  ECF No. 100.

2       On March 30, 2021, the Court granted CalChamber's motion for a preliminary injunction.

3  ECF No. 114.  In so ruling, the Court found that CalChamber was likely to succeed on the merits of

4  its First Amendment claim because neither the State nor CERT had shown that a Proposition 65

5  cancer warning for acrylamide in food is "purely factual and uncontroversial."  *Id.* at 25.  The Court

6  also denied CERT's summary judgment motion, reasoning that:

7  
8  > CERT is not named in the Chamber's complaint and will not face any
> liability if the Chamber prevails.  The Chamber's goal in this case

9  > is not to punish CERT.  Nor is its purpose to obtain compensation for an
> injury CERT caused or to discourage CERT from petitioning for relief

10  > under Proposition 65.  It is instead to vindicate the constitutional rights
> of the Chamber's own members.

11  *Id.* at 15 (citations omitted).

12       CERT appealed the Court's preliminary injunction ruling to the Ninth Circuit, and that appeal

13  is pending.  On May 27, 2021, the Ninth Circuit granted in part CERT's motion for an emergency

14  stay of the preliminary injunction pending appeal to the extent it applied to private enforcers, but left

15  the preliminary injunction in place as to the AG.  Oral argument is set for January 12, 2022.

16  <u>**ARGUMENT**</u>

17
18  **I.**     **THERE IS A JUSTICIABLE CASE OR CONTROVERSY BETWEEN
CALCHAMBER AND THE ATTORNEY GENERAL.**

19       In moving to dismiss CalChamber's Amended Complaint, CERT contends that this case

20  between CalChamber and the AG does not present an Article III case or controversy.  This argument

21  is meritless.  CalChamber contends that a state statute (Proposition 65) violates the First Amendment

22  as applied to acrylamide in foods and beverages.  It has been well established for more than a century

23  that state officials authorized to enforce an allegedly unconstitutional statute are the proper

24  defendants in a suit for prospective injunctive relief against the statute's enforcement.  *See generally*

25  *Ex parte Young*, 209 U.S. 123 (1908).  The AG is the lead enforcer of Proposition 65, and therefore

26  CalChamber properly states claims for declaratory and prospective injunctive relief against him.

27       CERT nevertheless contends that there is no case or controversy because there is no credible

28  threat of enforcement by the AG.  But the Court *already* ruled that CalChamber sufficiently alleged a

- 7 -

1    "credible threat of enforcement" by the AG sufficient to demonstrate an Article III case or

2    controversy.  *See* Order, ECF No. 84 at 6.  Under Local Rule 230(j) (addressing motions for

3    reconsideration) and the "law of the case" doctrine from which that rule was derived, that prior ruling

4    is alone sufficient to dispose of CERT's motion.  In any event, CERT's motion fails on the merits

5    because CalChamber has alleged facts sufficient to demonstrate that its members face a "credible

6    threat of enforcement," such that this case is justiciable under Article III.

7         Finally, CERT's contention that there is no Article III case or controversy because the AG's

8    interests are aligned with CalChamber's is wrong as a matter of fact and law.  CERT may disagree

9    with the AG's litigation strategy or the State's policy decisions in implementing Proposition 65, but

10   CERT's assertion that the AG and other State officials are actively seeking to undermine Proposition

11   65 is a conspiracy theory of CERT's imagination.  Further, CERT cites no authority for the

12   proposition that this alleged alignment of interests eliminates an Article III case or controversy.  To

13   the contrary, federal courts have allowed challenges to state statutes to proceed even where the State

14   expressly declined to defend the constitutionality of the statute.  *See, e.g.*, *Perry v. Schwarzenegger*,

15   704 F. Supp. 2d 921 (N.D. Cal. 2010).  Thus, even if the AG's interests were aligned with

16   CalChamber's—which a brief glance at this case docket shows they are not—dismissal would not be

17   appropriate.  But the Court need not grapple with that issue here because the AG has aggressively

18   defended the constitutionality of the Proposition 65 warning requirement as applied to acrylamide in

19   food, and therefore CERT's arguments are entirely without merit.

20        **A.    The Attorney General Is a Proper Defendant Under *Ex Parte Young*.**

21        It is well-established that "state officials with the statutory duty to enforce and administer [an]

22   allegedly unconstitutional state statute are the proper defendants in a suit for prospective injunctive

23   relief."  *Cornwell v. Cal. Bd. of Barbering & Cosmetology*, 962 F. Supp. 1260, 1266 (S.D. Cal. 1997)

24   (citing *Ex parte Young*, 209 U.S. at 157-61); *see also* Martin A. Schwartz, *Section 1983 Litigation*, at

25   124 (3d ed. 2014) ("the plaintiff must name as defendant the state official responsible for enforcing

26   the contested statute in her official capacity . . . .") (citation omitted).

27        In *Ex parte Young*, the Supreme Court recognized an exception to Eleventh Amendment

28   immunity whereby citizens may "sue state officers in their official capacities 'for prospective

- 8 -

declaratory or injunctive relief . . . for their alleged violations of federal law.'" *Ass'n des Eleveurs de Canards et d'Oies du Quebec v. Harris*, 729 F.3d 937, 943 (9th Cir. 2013) (quoting *Coal. to Defend Affirmative Action v. Brown*, 674 F.3d 1128, 1133 (9th Cir. 2012)).  A state official is a proper defendant under *Ex parte Young* if he has "some connection with the enforcement of the act" that is "fairly direct," as distinct from a "generalized duty to enforce state law or general supervisory power over the persons responsible for enforcing the challenged provision." *Id.*

In *Harris*, for example, food companies filed a Section 1983 lawsuit against the Attorney General, seeking to enjoin enforcement of a California statute banning certain food products. *Id.* at 942-43.  The Ninth Circuit held that the Attorney General had a sufficiently direct connection to enforcement of the statute such that she was a proper defendant. *Id.* at 943-44.  The Court explained that the statute expressly authorized enforcement by district attorneys, and the Attorney General has the "'powers of a district attorney,' whenever she believes that the law is not being adequately enforced." *Id.* at 943 (quoting Cal. Const. art. V, § 13).  Thus, the Court reasoned, "[t]he combination of [the statute], which gives district attorneys the authority to prosecute violations of [the statute], and the Attorney General's duty to prosecute as a district attorney establishes sufficient enforcement power for *Ex Parte Young*." *Id.* at 943-44.

The AG's connection to enforcement of Proposition 65 is even more direct.  By statute, the AG is the "principal enforcer of Proposition 65." *Consumer Cause, Inc. v. SmileCare*, 91 Cal. App. 4th 454, 470 (2001) (quoting the Attorney General's amicus brief).  And unlike in *Harris*, the AG is authorized to *directly* enforce Proposition 65.  Health & Safety Code § 25249.7(c).  Indeed the AG has done so with respect to acrylamide in food.  Am. Compl. ¶ 54.  Thus, there can be no question that the AG is a proper defendant in this lawsuit seeking declaratory and prospective injunctive relief concerning the Proposition 65 warning requirement as applied to acrylamide in food.

**B.    CalChamber Has Alleged Facts Sufficient to Demonstrate a Credible Threat of Enforcement, Thereby Establishing an Article III Case or Controversy.**

CERT nevertheless contends (at 19-23) that the AG is not a "real party in interest" because he has not recently filed Proposition 65 cases concerning acrylamide in food and therefore there is no threat of enforcement by the AG.  In support of this argument, CERT cites case law holding that a

- 9 -

1  plaintiff must demonstrate a "credible threat of prosecution" in order to establish Article III standing

2  for pre-enforcement review of a statute.  *See id.* at 20 (citing *Lopez v. Candaele*, 630 F.3d 775, 786

3  (9th Cir. 2010); *Thomas v. Anchorage Equal Rights Comm'n*, 220 F.3d 1134, 1140 (9th Cir. 2000)

4  (en banc)).

5       CERT fails to mention, however, that this Court already ruled that CalChamber "has

6  presented sufficient evidence of a threat of enforcement by the Attorney General."  *See* ECF No. 84

7  at 4.  In so holding, the Court evaluated the *Lopez* factors and concluded that CalChamber's

8  Amended Complaint sufficiently alleged a credible threat of enforcement, reasoning:

> Here, as plaintiff argues, the complaint alleges the Attorney General
> has directly enforced Proposition 65 with respect to acrylamide in food.
> MTD Opp'n at 14 (citing FAC ¶¶ 13, 54).  The complaint alleges at
> least two instances in which the Attorney General joined private
> enforcers in pursuing claims against food manufacturers or restaurants
> for violations of Proposition 65 based on food containing acrylamide.
> *See* FAC ¶ 54 (describing enforcement actions, in which Attorney
> General joined, against food manufacturers and restaurants related to
> acrylamide warnings under Proposition 65) . . . .  These allegations
> 'cut[] in favor of a conclusion that [the threat of enforcement of
> Proposition 65] is specific and credible' such that, on the face of the
> complaint, plaintiff satisfies the first *Lopez* factor.

16  *Id.* at 5.  The Court further found that CalChamber's "allegations also satisfy the remaining *Lopez*

17  factors, supporting the conclusion plaintiff has pled a credible threat of enforcement."  *Id.*

18       CERT thus effectively—and improperly—asks the Court to reconsider Judge Mueller's

19  Order, which was entered more than a year ago.[1]  The Court should reject this invitation.  CERT's

20  motion plainly violates Local Rule 230(j), which requires that a party seeking reconsideration

21  identify the prior motion and decision—which CERT failed to do here—and articulate "new or

22  different facts or circumstances" that provide grounds for reconsideration.  CERT does not dispute

23  the allegations on which Judge Mueller based her decision—namely, that on at least two occasions,

24  the AG pursued enforcement for violations of Proposition 65 based on food containing acrylamide—

25  and therefore CERT presents no new information that would support a different ruling.  Accordingly,

---

[1] CERT's failure to even reference Judge Mueller's prior ruling is particularly egregious because
CalChamber's counsel raised this issue with CERT's counsel during the meet-and-confer process and
provided the relevant ruling.  *See* Norris Decl. ¶ 3 & Ex. A at 2.  CERT's omission was not a mere
oversight; rather, the facts suggest a deliberate motive, and precisely the type of danger that Judge
Mueller warned about in her recusal Order.  *See* ECF No. 174 at 3.

the Court should deny CERT's motion pursuant to Local Rule 230(j) and the "law of the case" doctrine from which that rule was derived, which provides that decisions made in a case "should be followed unless there is substantially different evidence . . . new controlling authority, or the prior decision was clearly erroneous and would result in injustice." *Handi Inv. Co. v. Mobil Oil Corp.,* 653 F.2d 391, 392 (9th Cir. 1981); *see also Frazier v. Redding Police Dep't*, No. 2:11-CV-1351 AC P, 2013 WL 506412, at *1 (E.D. Cal. Feb. 8, 2013) (same).

Although Rule 230(j) and the law of the case doctrine are sufficient to dispose of CERT's argument that there is no Article III case or controversy because, according to CERT, there is no threat of enforcement by the AG, CalChamber repeats its arguments below for the Court's benefit.

### 1.    Legal Standard

In pre-enforcement review cases, "a plaintiff satisfies the injury-in-fact requirement where he alleges 'an intention to engage in a course of conduct arguably affected with a constitutional interest, but proscribed by a statute, and there exists a credible threat of prosecution thereunder.'" *Susan B. Anthony List v. Driehaus*, 573 U.S. 149, 159 (2014) (quoting *Babbitt v. United Farm Workers Nat'l Union*, 442 U.S. 289, 298 (1979)).[2]  In *Babbitt*, for example, the law at issue proscribed "dishonest, untruthful, and deceptive publicity."  442 U.S. at 302.  The plaintiffs "actively engaged in consumer publicity campaigns in the past" and planned to continue them.  *Id.* at 301.  Although they did not "plan to propagate untruths," they argued that "erroneous statement is inevitable in free debate."  *Id.* The Supreme Court concluded that plaintiffs' fear of prosecution was not "imaginary or wholly speculative," and therefore their challenge presented a justiciable case or controversy.  *Id.* at 302.

Importantly, courts apply "the requirements of ripeness and standing less stringently in the context of First Amendment claims."  *Wolfson v. Brammer*, 616 F.3d 1045, 1058-59 (9th Cir. 2010); *see also Cal. Pro-Life Council, Inc. v. Getman*, 328 F.3d 1088, 1094 (9th Cir. 2003) ("[I]n the First Amendment-protected speech context, the Supreme Court has dispensed with rigid standing requirements.");  *Ariz. Right to Life Political Action Comm. v. Bayless*, 320 F.3d 1002, 1006 (9th Cir.

---

[2]  It is not clear whether CERT challenges CalChamber's standing, ripeness, or both (or neither), but the Supreme Court has observed that the "doctrines of standing and ripeness 'originate' from the same Article III limitation" and "'boil down to the same question'" of whether there is a "credible threat of prosecution."  *Susan B. Anthony List*, 573 U.S. at 158 n.5.

1    2003) (noting the Supreme Court does not "require[e] litigants to speak first and take their chances

2    with the consequences."). Thus, "when the threatened enforcement effort implicates First

3    Amendment rights, the inquiry tilts dramatically toward a finding of standing." *LSO, Ltd. v. Stroh*,

4    205 F.3d 1146, 1155 (9th Cir. 2000); *see also Virginia v. Am. Booksellers Ass'n*, 484 U.S. 383, 393

5    (1988) (permitting pre-enforcement review because "self-censorship" is "a harm that can be realized

6    even without an actual prosecution"). And as relevant here, this principle applies equally in cases

7    involving statutes that compel rather than restrict speech, because "just as a plaintiff may be

8    constitutionally injured by self-censorship, a plaintiff may be injured if compelled to speak." *A*

9    *Woman's Friend Pregnancy Res. Clinic v. Harris*, 153 F. Supp. 3d 1168, 1189–90 (E.D. Cal. 2015),

10   *rev'd in part on other grounds*, 901 F.3d 1166 (9th Cir. 2018).

11                    **2.    Conduct Arguably Proscribed By Proposition 65**

12           CERT concedes that CalChamber sufficiently alleged that its members intend to engage in

13   conduct that implicates First Amendment interests but is arguably proscribed by statute. *See* at 20-21

14   ("This threshold factor [a concrete plan to violate the law] is not an issue in the present case . . . .").

15   And rightly so. CalChamber alleges that: its members sell and produce food products that contain

16   acrylamide (Am. Compl. ¶¶ 8, 63, 64); as a result of California's listing of acrylamide as a chemical

17   "known to the State to cause cancer," Proposition 65 presumptively requires such businesses to

18   provide a cancer warning on their acrylamide-containing products (*id.* ¶¶ 5, 33-36); businesses that

19   have opted not to provide acrylamide warnings, including many CalChamber members, *already* have

20   been threatened with litigation and sued for violating Proposition 65 by the AG and others (*id.* ¶¶ 54,

21   56-59, 63); and, consequently, CalChamber's members that have not yet been sued must either

22   provide a warning they believe to be false and misleading (thereby compelling their speech), or face

23   the substantial risk of an enforcement action under Proposition 65 for failing to do so (*id.* ¶¶ 64-66,

24   87, 94). These allegations more than satisfy the first two prongs of the test articulated in *Susan B.*

25   *Anthony List* and *Babbitt*. *See also* Order, ECF No. 84 at 5-6.

26                    **3.    A Credible Threat of Enforcement**

27           CalChamber also has alleged facts sufficient to show that its members face a risk of

28   enforcement that is not only "credible," but highly likely.

1

a.  The Attorney General Has Enforced and Continues to Enforce
Proposition 65 as Applied to Acrylamide in Food.

2

3      One factor courts consider in evaluating the threat of enforcement is whether there is a

4  "history of past prosecution or enforcement under the challenged statute." *Thomas*, 220 F.3d at 1139.

5  "[T]he plaintiffs themselves need not be the direct target of government enforcement.  A history of

6  past enforcement against parties similarly situated to the plaintiffs cuts in favor of a conclusion that a

7  threat is specific and credible." *Lopez*, 630 F.3d at 786-87.

8      Here, the AG has directly enforced Proposition 65 with respect to acrylamide in food.  *See*

9  Am. Compl. ¶¶ 13, 54.  In 2005, the AG joined private enforcers "in pursuing claims that several

10  major restaurants and food manufacturers failed to provide Proposition 65 warnings for acrylamide in

11  French fries, potato chips, and other potato products."  *Id.* ¶ 54; *see also* Norris Decl. ¶ 5 & Ex. B

12  (*People v. Frito-Lay, Inc., et al.*, LA Sup. Ct., BC338896 (filed Aug. 26, 2005)).  Likewise, in 2009,

13  the AG filed and subsequently settled another Proposition 65 action against the makers of various

14  snack foods, again alleging violations for failure to provide Proposition 65 cancer warnings for

15  acrylamide in food products.  Am. Compl. ¶ 54; *see also* Norris Decl. ¶ 6 & Ex. C (*People v. Snyders*

16  *of Hanover, et al.*, Alameda Sup. Ct., No. RG09455286 (filed June 1, 2009)).

17      The AG also continues to engage in other enforcement-related activities.  For example, the

18  AG continues to perform acrylamide testing on food products to confirm compliance with past

19  consent judgments, and his office has sent letters to several signatories as recently as 2019.  *See*

20  Norris Decl. ¶ 7.  The AG also continues to play a supervisory role over private enforcement actions

21  concerning acrylamide in food.  The AG reviews pre-litigation notices filed by private enforcers and,

22  if he "believes there is no merit to the action," is required to "serve a letter to the noticing party and

23  the alleged violator stating that the Attorney General believes there is no merit to the action."  Health

24  & Safety Code § 25249.7(e)(1)(A).  The AG also reviews private settlements, and indeed has

25  objected to settlements that—in the AG's view—are insufficient to address acrylamide exposures

26  from food.  *See, e.g.*, Norris Decl. ¶¶ 8-10 & Ex. D.  The AG's longstanding enforcement of

27  Proposition 65 concerning acrylamide in food demonstrates that CalChamber's members face a

28  credible risk of enforcement that is not "imaginary or wholly speculative."  *Babbitt*, 442 U.S. at 302.

- 13 -

b.   The Attorney General Has Not Disavowed Enforcement.

Courts also have found a credible threat of enforcement where—as here—the government has failed to disavow enforcement of the statute against parties similarly situated to the plaintiff. *See, e.g.*, *LSO*, 205 F.3d at 1155 ("Courts have also considered the Government's failure to disavow application of the challenged provision as a factor in favor of a finding of standing."); *Mobil Oil Corp. v. Attorney Gen. of Va.*, 940 F.2d 73, 76 (4th Cir. 1991) (finding standing where no disavowal); *KVUE, Inc. v. Moore*, 709 F.2d 922, 930 (5th Cir. 1983) (same), *aff'd*, 465 U.S. 1092 (1984); *see also American Booksellers Ass'n*, 484 U.S. at 393 ("The State has not suggested that the newly enacted law will not be enforced, and we see no reason to assume otherwise.").

In *Bland v. Fessler*, 88 F.3d 729 (9th Cir. 1996), for example, the Ninth Circuit held that the plaintiff had standing to challenge the constitutionality of a state statute where the Attorney General had "not stated affirmatively that his office will not enforce the civil statute." *Id.* at 737.  Even though a senior official "declared that the Attorney General's office 'has not brought or indicated that it would bring any action' under the civil statute," *id.* at 737 n.12, the court found that this was "far short of a disavowal of enforcement" and provided "little comfort" to those like plaintiff. *Id.*

Here, the AG has not disavowed enforcement of Proposition 65 with respect to acrylamide in food.  Nor could he do so as "a mere litigation position." *Lopez*, 630 F.3d at 788.  Indeed, to this day, the AG's actions evidence at least tacit support for enforcement of the warning requirement as applied to acrylamide in food.  For example, the AG has never publicly asserted that the multitude of pre-litigation notices on acrylamide in food lack merit (Health & Safety Code § 25249.7(e)(1)(A)), much less stated that *no* private enforcement with respect to acrylamide in food can have merit.[3]

c.   Substantial Threat of Enforcement By Bounty Hunters.

Finally, there is no dispute that CalChamber's members face a real and credible threat of enforcement by private bounty hunters.  Since the discovery of acrylamide in foods in 2002, such bounty hunters—at times joined by the AG—have relentlessly pursued Proposition 65 enforcement

---

[3] To be sure, the AG's failure to serve a no-merit letter "shall not be construed as an endorsement by the Attorney General of the merit of the action."  Health & Safety Code § 25249.7(e)(1)(B).  But it certainly is not an express disavowal of enforcement of the statute either.

1   for alleged exposures to acrylamide in food.  Am. Compl. ¶¶ 56-59, 63.  CERT apparently contends

2   that such private enforcement actions cannot support CalChamber's standing to sue the AG because

3   they do not demonstrate a credible threat of enforcement *by the Attorney General*.  But this is not the

4   test:  the Supreme Court and Ninth Circuit have made clear that the threat of enforcement by *private*

5   *parties* is evidence of a "credible threat of enforcement" that supports a plaintiff's standing to sue

6   *state officials* to challenge the statute.

7         The Ninth Circuit's decision in *Bland* is illustrative.  There, the plaintiff sued the California

8   Attorney General challenging under the First Amendment a civil statute that regulated telephone

9   auto-dialing devices.  88 F.3d at 731-32.  The statute authorized enforcement by the Attorney General

10  and also authorized private citizens to sue for damages.  *Id.* at 731.  The Ninth Circuit, applying

11  *Babbitt*, held that the plaintiff had standing to sue the Attorney General to challenge the statute,

12  reasoning that the statute "places [plaintiff] between the rock of forgoing the use of his [auto-dialing

13  devices] and the hard place of violating the law. . . .  Had he chosen to violate the civil statute, he

14  would have run a substantial risk of civil fines and *private enforcement actions*."  *Id.* at 737

15  (emphasis added).  The Ninth Circuit was "not troubled" that the Attorney General had "never

16  enforced the civil statute against anyone," reasoning that the Attorney General "has not stated

17  affirmatively that his office will not enforce the civil statute."  *Id.*

18        *Bland* is no outlier.  In *Susan B. Anthony List*, the Supreme Court held that the plaintiff faced

19  a credible threat of future enforcement that was "bolstered" by the fact that the statute "allow[ed]

20  'any person' with knowledge of the purported violation to file a complaint."  573 U.S. at 164 (citation

21  omitted).  The Court reasoned that the threat of enforcement was heightened because, as with

22  Proposition 65, "the universe of potential complainants is not restricted to state officials who are

23  constrained by explicit guidelines or ethical obligations."  *Id.*  Likewise, in *Italian Colors Restaurant*

24  *v. Becerra*, 878 F.3d 1165 (9th Cir. 2018), the Ninth Circuit found that plaintiffs had standing to sue

25  the Attorney General even though they "concede[d] that California has not communicated any threat

26  or warning of impending proceedings against them."  *Id.* at 1173.  The court reasoned that "even if

27  the Attorney General would not enforce the law, [the statute] gives private citizens a right of action to

28  sue for damages."  *Id.*  And in *National Ass'n of Wheat Growers v. Zeise*, 309 F. Supp. 3d 842 (E.D.

- 15 -

Cal. 2018), Judge Shubb concluded that plaintiffs' First Amendment suit against the Attorney General challenging the Proposition 65 warning requirement for glyphosate was ripe because the plaintiffs faced a "credible threat of enforcement" by private bounty hunters.  *Id.* at 848.

As such, CERT's apparent contention that the threat of private enforcement does not support CalChamber's standing to sue the AG is plainly incorrect.  Moreover, here the AG plays an active and supervisory role over private enforcement that goes far beyond what other courts have found sufficient.

C.     **CERT's Assertion That There Is No Case or Controversy Because the Interests of CalChamber and the Attorney General Are Aligned Is Baseless.**

CERT's contention (at 8-16) that there is no Article III case or controversy because the AG's and CalChamber's interests are aligned is meritless.  Notably, CERT does not contend that the AG agrees with CalChamber that mandating Proposition 65 cancer warnings for acrylamide in food violates the First Amendment.  Nor could it.  In fact, the AG has *twice* moved to dismiss CalChamber's complaint (ECF Nos. 20 and 60), and aggressively opposed CalChamber's motion for a preliminary injunction, arguing that Proposition 65 cancer warnings for acrylamide in food do *not* violate the First Amendment (ECF No. 101).  Indeed, the AG argued that CalChamber's First Amendment claim is "based on a misleading and incomplete presentation of the scientific record that contravenes fundamental scientific principles and the consistent judgment of expert scientific agencies" (*id.* at 1); that "CalChamber is wrong on the science and wrong on the law" (*id.*); that there is "strong evidence supporting the conclusion that acrylamide causes cancer in humans" (*id.* at 4); that "CalChamber's scientific arguments are flatly wrong and reveal a deep misunderstanding of the scientific record" (*id.* at 11); and that "CalChamber has provided no persuasive reason for the Court to second-guess the judgment of expert scientific agencies and hold that cancer warnings for food products containing acrylamide violate the limited First Amendment protections afforded to commercial speech" (*id.* at 20).  Those are hardly the words of a party whose interests are aligned with CalChamber's with regard to the core issue in this case:  whether Proposition 65 cancer warnings for acrylamide in food violate the First Amendment.

CERT nevertheless contends (at 12-14) that the AG's actions in this litigation demonstrate

that the AG lacks a "genuine desire to vigorously defend this case."  The AG is best positioned to

respond to these attacks if he wishes to do so.[4]  As relevant here, however, CERT cites no authority

for the proposition that a court may dismiss a case for lack of an Article III case or controversy

merely because of the defendant's tactics in litigation.  This, of course, is not the law.  Put simply,

CERT's disagreement with the AG's litigation strategy and staffing decisions is not a basis on which

to find an absence of an Article III case or controversy.

CERT further contends (at 8-9) that the AG represented OEHHA in its purported efforts to

nullify Proposition 65 enforcement with respect to acrylamide in food.  Putting aside that several of

the regulatory actions that CERT references occurred before acrylamide was listed or discovered in

food (in 1990 and 2002, respectively), and that other actions were merely proposed by OEHHA but

not adopted, CERT does not explain how these regulatory actions eliminate any dispute between

CalChamber and the AG.  To the contrary, CalChamber claims that the State cannot mandate

Proposition 65 cancer warnings for acrylamide in food under the First Amendment; the AG contends

that the First Amendment does not prohibit the State from mandating such warnings, and indeed has

enforced the Proposition 65 warning requirement as to acrylamide in food in the past.  Am. Compl.

¶ 54.  This is an "honest and actual" dispute sufficient to create an Article III case or controversy.

OEHHA's recent regulation concerning coffee is illustrative of the flaw in CERT's argument.

In June 2019, OEHHA adopted a regulation establishing that "[e]xposues to chemicals in coffee . . .

that are created by and inherent in the process of roasting coffee beans or brewing coffee do not pose

a significant risk of cancer."  Cal. Code Regs. tit. 27, § 25704.  CERT suggests that this regulation

was adopted as part of a concerted scheme by the AG and other State officials to undermine

Proposition 65.  But CERT ignores that, in fact, the regulation was prompted by IARC's

determination in June 2018 that "there was inadequate evidence for the carcinogenicity of drinking

---

[4] Although CalChamber has not endeavored to investigate each of CERT's assertions regarding the AG's conduct in this litigation, CalChamber notes that at least one of those claims is demonstrably false.  CERT states (at 12) that none of the AG attorneys staffed on this case had "any federal litigation experience."  A simple Westlaw search reveals that each of these attorneys has litigated cases in federal court.  *See, e.g.*, *DTSC v. Technichem, Inc.*, No. 12-cv-05845-VC, 2016 WL 1029463 (N.D. Cal. March 15, 2016) (Harrison Pollak); *Bitterroot Ridge Runners Snowmobile Club v. U.S. Forest Serv.*, 329 F. Supp. 3d 1191 (D. Montana 2018) (Joshua Purtle); *United States v. Sterling Centrecorp Inc.*, 208 F. Supp. 3d 1126 (E.D. Cal. 2016) (John Everett).

- 17 -

1  coffee" and that "drinking coffee is inversely associated with cancers of the liver and uterine

2  endometrium (i.e., risk is reduced)."  Norris Decl. ¶ 12 & Ex. E at 5 (OEHHA Initial Statement of

3  Reasons).  Based on this scientific determination by IARC, OEHHA concluded that Proposition 65

4  warnings should not be required for coffee because the scientific evidence showed that drinking

5  coffee does not pose a significant risk of cancer.  OEHHA's regulatory action is thus entirely

6  consistent with the purpose of Proposition 65 to "inform[ ] [California residents] about exposures to

7  chemicals that cause cancer."  *Cal. Chamber of Commerce v. Brown*, 196 Cal. App. 4th 233, 258

8  (2011) (quoting preamble to Proposition 65 ballot initiative).  CERT may disagree with OEHHA's

9  policy decision—and indeed CERT has challenged the validity of the regulation—but CERT's

10  contention that the regulation is intended to undermine Proposition 65 is misplaced.

11        Finally, even if the AG's and CalChamber's interests truly were aligned—which they are

12  not—CERT cites no authority for the proposition that mere alignment of interests is sufficient basis

13  to find a lack of an Article III case or controversy.  In fact, federal courts have allowed challenges to

14  state statutes to proceed even where the State declined *entirely* to defend the constitutionality of the

15  statute.  In *Perry v. Schwarzenegger*, for example, plaintiffs challenged the constitutionality of a

16  voter-enacted amendment to the California Constitution that provided that only marriage between a

17  man and a woman is valid or recognized in California ("Proposition 8").  704 F. Supp. 2d at 927.

18  The plaintiffs named as defendants California's Governor, Attorney General, and other government

19  officials.  *Id.* at 928.  These government officials declined to defend Proposition 8, and the Attorney

20  General *conceded* that Proposition 8 was unconstitutional.  *Id.*  If CERT's position were correct, the

21  district court should have dismissed the case for lack of an Article III case or controversy, leaving the

22  plaintiffs with no avenue to challenge the constitutionality of the Proposition in federal court.  But

23  that would lead to an absurd result, as it would allow states to insulate their statutes from

24  constitutional challenge merely by declining to defend them.  Not surprisingly, then, the district court

25  allowed the challenge to proceed as a justiciable "case or controversy," invalidated the law as

26  unconstitutional, and enjoined its enforcement.  *Id.* at 1003-04.

27        In any event, the AG's and CalChamber's interests are not aligned in this case, as

28  demonstrated by the AG's past enforcement of Proposition 65 with respect to acrylamide in food and

1    the positions he has expressed in this litigation on CalChamber's First Amendment claim, among

2    other reasons.  Accordingly, CERT's argument that there is not an "honest and actual antagonistic

3    assertion of rights" between the parties is unfounded.

## II.    CALCHAMBER HAS ASSOCIATIONAL STANDING TO PURSUE FIRST AMENDMENT CLAIMS ON BEHALF OF ITS MEMBERS.

6             CERT further contends (at 17-18) that this case does not present an Article III case or

7    controversy because CalChamber is not a "real party in interest."  According to CERT,

8    CalChamber's members are the "real parties in interest," and because CalChamber has not identified

9    them, they cannot be joined as plaintiffs so as to create an Article III case or controversy.  CERT cites

10   no authority for this proposition, which is not the law.  To the contrary, it is well established that an

11   organization has Article III standing to bring suit on behalf of its members if:  "(1) at least one of its

12   members would have standing to sue in his own right, (2) the interests the suit seeks to vindicate are

13   germane to the organization's purpose, and (3) neither the claim asserted nor the relief requested

14   requires the participation of individual members in the lawsuit."  *Fleck & Assocs., Inc. v. City of*

15   *Phoenix*, 471 F.3d 1100, 1105-06 (9th Cir. 2006) (citations omitted); *see also Hunt v. Wash. State*

16   *Apple Advert. Comm'n*, 432 U.S. 333, 343 (1977) (same).

17            Here, there is no genuine dispute that at least one of CalChamber's members would have

18   standing to sue.  CERT acknowledges, for example, that CalChamber's Amended Complaint alleges

19   that many of CalChamber's members produce, distribute, or sell acrylamide-containing food products

20   and that these members must either provide warnings to California consumers or face enforcement

21   actions for failing to do so.  CERT Mot. at 21.  Indeed, CERT even admits that "there can be *no*

22   *doubt* that CalChamber's members have commonly and notoriously sold a vast array of acrylamide-

23   containing products in the State of California without Proposition 65 warnings."  *Id.* at 22 (emphasis

24   added).  In fact, in this very litigation, CERT *itself* has identified from publicly-available materials

25   numerous companies that sell acrylamide-containing food and beverage products that are identified

26   as members of CalChamber.  *See* ECF No. 8 at 12 (citing ECF Nos. 8-25, 8-26, and 8-27).  As such,

27   CERT's contention that CalChamber does not have standing to sue because CalChamber has not

28   identified specific members that have been harmed is disingenuous if not deliberately misleading.

- 19 -

1    Put simply, CERT cannot seriously contend that CalChamber—which has over 13,000 members and

2    represents virtually every economic interest in the State of California (Am. Compl. ¶ 12)—does not

3    have a single member that produces, distributes, or sells acrylamide-containing food products and has

4    thus been injured by the Proposition 65 cancer warning requirement as applied to acrylamide in food.

5          Moreover, CERT points to no authority to support its argument that CalChamber is required

6    to identify a specific member by name.  To the contrary, the Ninth Circuit has held that it is not

7    necessary to name individual members "[w]here it is relatively clear, rather than merely speculative,

8    that one or more members have been or will be adversely affected by a defendant's action, and where

9    the defendant need not know the identity of a particular member to understand and respond to an

10   organization's claim of injury."  *Nat'l Council of La Raza v. Cegavske*, 800 F.3d 1032, 1041 (9th Cir.

11   2015).  As the Ninth Circuit explained, in this scenario, there is "no purpose to be served by requiring

12   an organization to identify by name the member or members injured."  *Id.*; *see also Disability Rights*

13   *Wis., Inc. v. Walworth Cty. Bd. of Supervisors*, 522 F.3d 796, 802 (7th Cir. 2008) ("This requirement

14   [that the organization have at least one member with standing to sue] still allows for the member on

15   whose behalf the suit is filed to remain unnamed by the organization.") (citing *Doe v. Stincer*, 175

16   F.3d 879, 882 (11th Cir. 1999)); *Torres v. U.S. Dep't of Homeland Sec.*, 411 F. Supp. 3d 1036, 1054

17   (C.D. Cal. 2019) ("[I]t is not necessary at this early stage to name specific members impacted by the

18   alleged violations" (citation omitted); the court can "reasonably infer[] that at least one . . . member . .

19   . has standing to sue in her own right.").  Thus, CalChamber has sufficiently alleged that at least one

20   of its members has standing to sue in its own right.

21         CalChamber also satisfies the remaining requirements for associational standing.  With

22   respect to the second *Hunt* factor, the interests this lawsuit seeks to vindicate are manifestly germane

23   to CalChamber's organizational purpose.  CalChamber is a nonprofit business association that

24   represents virtually every economic interest in the State of California.  Am. Compl. ¶ 12.

25   CalChamber regularly acts on behalf of the business community and represents business interests on

26   a broad range of legislative, regulatory, and legal issues in California, including those related to

27   Proposition 65.  *Id.*  Indeed, because so many of its members are directly impacted by Proposition

28   65—including the Proposition 65 warning requirement for acrylamide in foods and beverages—

1   CalChamber has historically been and continues to be deeply involved in a variety of Proposition 65-

2   related regulatory and litigation matters.  *Id.*  As such, this lawsuit seeking to vindicate the First

3   Amendment rights of a wide range of companies that produce, distribute, and sell acrylamide-

4   containing food and beverage products fits squarely within CalChamber's organizational purpose.

5         Finally, with respect to the third *Hunt* factor, neither the claims asserted by CalChamber nor

6   the relief requested requires the participation of individual members in this lawsuit.  CalChamber

7   seeks a declaration that the Proposition 65 cancer warning requirement for acrylamide in food and

8   beverage products violates the First Amendment and a prospective injunction enjoining the AG and

9   those in privity with him from enforcing the warning requirement with respect to acrylamide in foods

10  and beverages.  Am. Compl., Prayer for Relief, ¶¶ 1-3.  These remedies, if granted, "will inure to the

11  benefit of those members of [CalChamber] actually injured" and are precisely the sort for which the

12  Supreme Court has held that associational standing is appropriate.  *Warth v. Seldin*, 422 U.S. 490,

13  515 (1975); *see also Columbia Basin Apartment Ass'n v. City of Pasco*, 268 F.3d 791, 799 (9th Cir.

14  2001) ("Appellants request only injunctive and declaratory relief.  Because these forms of relief do

15  not require individualized proof, the third prong of the *Hunt* test is satisfied.") (citation omitted);

16  *Alaska Fish & Wildlife Fed'n & Outdoor Council, Inc. v. Dunkle*, 829 F.2d 933, 938 (9th Cir. 1987)

17  (finding standing "because the [organization] seeks declaratory and prospective relief rather than

18  money damages [and thus] its members need not participate directly in the litigation").

19        CERT might contend that CalChamber's First Amendment claim requires individualized

20  proof regarding the levels of acrylamide in specific food products.  This is incorrect and reflects a

21  misunderstanding of the nature of CalChamber's claim.  CalChamber contends that a compelled

22  cancer warning for acrylamide that forms naturally in *any* food or beverage product—irrespective of

23  the specific product or levels of acrylamide therein—violates the First Amendment because the

24  scientific evidence does not establish that dietary acrylamide causes cancer in humans and thus such

25  cancer warnings are false or, at a minimum, misleading.  *See, e.g.*, Am. Compl. ¶¶ 22-29; *see also*

26  Order, ECF No. 114 (granting preliminary injunction of Proposition 65 warning requirement for

27  cancer as applied to acrylamide in all foods and beverages).  Indeed, CalChamber filed this lawsuit

28  precisely because the broad relief CalChamber seeks cannot be obtained in state court lawsuits that

focus on a single product, which otherwise would require extensive litigation in multiple lawsuits in multiple fora. Thus, because CalChamber's claims do not "require[] individualized proof," they are "properly resolved in a group context" and CalChamber has associational standing under Article III to bring this lawsuit on behalf of its members. *Hunt*, 432 U.S. at 344.

### III. OEHHA'S PROPOSED RULE WILL NOT MOOT THIS CASE, BUT A STAY WOULD BE APPROPRIATE WHILE IT IS UNDER REVIEW.

Finally, CERT contends (at 24-25) that OEHHA's proposed rule establishing alternative warning language for acrylamide in foods will eliminate any case or controversy and moot this case. This is incorrect. As a threshold matter, OEHHA has not adopted the proposed regulation and therefore CERT's contention that the regulation, if adopted, will moot this case is premature.

In any event, CalChamber disagrees with CERT's assertion that the proposed regulation could moot this case. Although the proposed alternative "safe harbor" warning language (*see* p. 4, *supra*) attempts to address concerns expressed in the Court's preliminary injunction Order, CalChamber does not agree that it would eliminate the constitutional defect. Rather, CalChamber contends that the proposed warning language is at a minimum misleading because, among other reasons, it conveys to consumers that acrylamide-containing food products increase their risk of cancer, when in fact a large body of scientific evidence has found *no association* between exposure to acrylamide from food and cancer in humans. *See generally* Pl.'s Mem. in Supp. of Mot. for Prelim. Inj., ECF No. 95-1, at 9-15. Thus, the proposed warning language is not "purely factual and uncontroversial" as required to survive First Amendment scrutiny under *Zauderer v. Office of Disciplinary Counsel*, 471 U.S. 626, 651 (1985). *See also CTIA-The Wireless Ass'n v. City of Berkeley*, 928 F.3d 832, 847 (9th Cir. 2019) ("[A] statement may be literally true but nonetheless misleading and, in that sense, untrue."). For the same reason, a compelled cancer warning for acrylamide in food—irrespective of the specific warning language used—is neither justified nor reasonably related to the government's interest in protecting public health. *See Zauderer*, 471 U.S. at 650-51 (disclosure must be "reasonably related" to a "substantial" government interest); *Nat'l Inst. of Family & Life Advocates v. Becerra*, 138 S. Ct. 2361, 2377 (2018) (disclosure must be "neither unjustified nor unduly burdensome") (citation omitted). Put simply, OEHHA's proposed regulation cannot moot this case because Proposition 65

1   cancer warnings for acrylamide in food still will be required and still will be at least misleading to

2   consumers, if not outright false.  Therefore, CERT's mootness argument is misplaced.

3          CalChamber acknowledges, however, that the regulation may affect the precise contours of

4   the First Amendment dispute between CalChamber and the AG.  Indeed, because of this,

5   CalChamber has not moved forward with the motion for summary judgment contemplated by the

6   parties and the Court's prior scheduling order and instead intends to await OEHHA's anticipated

7   finalization of its regulation in April 2022 before doing so.  CalChamber sees no point in litigating

8   the validity of the current safe harbor only to have it changed by OEHHA in a few months, and there

9   is no point to litigating other issues, particularly those manufactured by CERT, in the meantime.

10  Therefore, in the interest of judicial efficiency and to avoid the unnecessary expenditure of time and

11  resources, CalChamber believes that it would be appropriate to stay further district court proceedings

12  in this case pending OEHHA's completion of its regulatory process to adopt the proposed regulation.

13  **IV.   CERT'S MOTION AND CONDUCT IN THIS LITIGATION MERITS**
        **CONSIDERATION OF ITS INTERVENOR STATUS UNDER RULE 24.**
14

15         CERT is a party to this case by leave of court under Rule 24.  ECF No. 29 (granting motion to

16  intervene by stipulation of the parties).  That status can be revoked by the Court in appropriate

17  circumstances, such as when the intervenor causes undue delay and prejudice to the original parties in

18  the case.  *See, e.g.*, *Mishewal Wappo Tribe of Alexander Valley v. Salazar,* No. 5:09-CV-02502 EJD,

19  2012 WL 4717814 (N.D. Cal. Sept. 28, 2012), *aff'd*, 534 F. App'x 665 (9th Cir. 2013).  In *Mishewal*,

20  for example, the district court revoked two Counties' intervenor status where the Counties' actions

21  had "significantly impacted the proceedings," such that the "Counties—as peripheral players to [the]

22  lawsuit—[had] become its driving force" and caused undue delay.  *Id.* at *6.  CERT's persistent

23  conduct in this case, as demonstrated most recently by this motion, has taken it from a "peripheral

24  player" to a "driving force," such that the Court should consider CERT's status under Rule 24.

25         CERT has filed numerous baseless motions in this litigation that have unnecessarily

26  consumed judicial resources.  Among others, CERT filed a motion for attorneys' fees in the middle

27  of the litigation, without even citing the applicable standard for fees under 42 U.S.C. § 1988 (ECF

28  No. 59); CERT filed a request for entry of judgment on the basis that CalChamber did not name

- 23 -

1   CERT as a defendant in its Amended Complaint, without identifying any authority for the proposition

2   that a plaintiff is required to name a defendant-intervenor in an amended complaint (ECF No. 73);

3   and CERT filed an untimely *ex parte* application to file an oversized reply brief because CERT was

4   "unaware of this Department's standing order limiting the length of reply briefs" (ECF No. 41).  And

5   now CERT files the present motion to dismiss—more than 18 months after CalChamber filed its

6   Amended Complaint—without even informing the Court that the judge previously presiding over this

7   case already ruled on the core issue that CERT raises in its motion.

8          Perhaps most notable, however, is CERT's overzealous efforts to disqualify Judge Mueller.

9   *See* ECF Nos. 152, 182.  CERT waited almost two years into the litigation to file its motion, and then

10  proceeded to file a supplemental brief and declaration without seeking leave of court to do so (ECF

11  Nos. 171-172, 186-187), as well as an unsuccessful petition for mandamus to the Ninth Circuit before

12  Judge Mueller had even ruled on the disqualification motion (and after Judge Mueller had directed

13  CERT to published decisions rejecting CERT's position) (ECF No. 165; *see also* ECF No. 174 at 4).

14  Judge Mueller ultimately concluded that CERT's disqualification motion had no merit, but

15  nevertheless found that there was at least a question as to whether she could continue to act fairly and

16  impartially given CERT's "uncommonly aggressive, scorched earth efforts" to pursue her

17  disqualification.  ECF No. 174 at 4.  As Judge Mueller explained:

18          [I]n pursuing my recusal, CERT, HLF, and their counsel appear to have
            embarked on an overzealous adventure, affirmatively expanding the
19          bounds of their motion in the direction of invading my personal life and
            that of my husband. . . .  At this point, given their recent actions and
20          role in this case, I have concluded there is at least a question whether I
            can uphold my obligations to act fairly and impartially.
21

22  *Id.* at 1-2.  CERT's baseless disqualification motion has caused significant disruption in the case.

23  Indeed, every other district court judge located in Sacramento subsequently recused himself (ECF

24  No. 179), causing this case to be reassigned to Judge Dale A. Drozd in Fresno, whose docket may be

25  the most overburdened in the federal system.  *See* Amended Standing Order in Light of Ongoing

26  Judicial Emergency in the Eastern District of California (Dec. 2, 2020).[5]

27  ───────────────

28  [5] *Available at* https://www.caed.uscourts.gov/caednew/assets/File/DAD_Amended_Standing_
    Order_Judicial_Emergency_12_2_2020.pdf.

1    While CalChamber does not disagree with Judge Mueller's suggestion that it would be

2  appropriate for the Court to consider whether Rule 11 sanctions against CERT are warranted (ECF

3  No. 174 at 2 n.1 & 5 n.3), CalChamber notes that CERT is not a party to this case as of right but

4  instead was permitted to intervene only by stipulation of the original parties and subsequent court

5  order.  *See* ECF Nos. 28, 29.  Accordingly, the Court has discretion to revoke CERT's intervenor

6  status under Rule 24.  *See Mishewal*, 2012 WL 4717814 at *6.

7    Further, the Court has other authority at its disposal to ensure that the focus of this litigation

8  remains where it belongs: on CalChamber's claims and the AG's defenses.  For example, courts have

9  required pre-filing letters or informal conferences before motions may be filed, in order to reduce the

10  burden on the parties and the Court.  *See, e.g.*, Civil Pretrial & Trial Procedures of Judge Dana M.

11  Sabraw, U.S. District Court for the Southern District of California, at 3-4 (May 3, 2013).[6]  Courts

12  also maintain significant discretion to limit discovery.  *See, e.g.*, *Vasquez v. Cty. of Stanislaus*, No.

13  1:19-cv-01610-AWI-SAB, 2020 WL 6728933, at *2 (E.D. Cal. Nov. 16, 2020) ("District courts

14  generally have significant discretion and authority to control the conduct of discovery.") (citing *Little*

15  *v. City of Seattle*, 863 F.2d 681, 685 (9th Cir. 1988)).  CalChamber believes that such measures may

16  not be adequate to constrain CERT's litigiousness, but notes they are also available to the Court as

17  measures to enhance the efficiency of these proceedings and conserve the Court's resources.

18                                    **<u>CONCLUSION</u>**

19    For the foregoing reasons, the Court should deny CERT's motion to dismiss and consider

20  revoking or limiting CERT's intervenor status under Rule 24.

21  Dated: November 23, 2021                    Respectfully submitted,

22
23                                             **ARNOLD & PORTER KAYE SCHOLER LLP**

24                                             By: _____
                                                   Trenton H. Norris
25                                                 S. Zachary Fayne
                                                   David M. Barnes
26
                                               *Attorneys for California Chamber of Commerce*
27

28  _____
    [6] *Available at* www.casd.uscourts.gov/Judges/sabraw/docs/Sabraw Civil Procedures.pdf.