ROB BONTA, SBN 202668
Attorney General of California
LAURA J. ZUCKERMAN, State Bar No. 161896
Supervising Deputy Attorney General
MEGAN K. HEY, State Bar No. 232345
RAFAEL J. HURTADO, State Bar No. 292694
Deputy Attorneys General
  300 S Spring Street
  Los Angeles, CA 90013
  Telephone: (213) 269-6344
  Fax: (213) 897-2802
  E-mail: Megan.Hey@doj.ca.gov
*Attorneys for Rob Bonta, in his Official Capacity as Attorney General of the State of California*

IN THE UNITED STATES DISTRICT COURT

FOR THE EASTERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| **CALIFORNIA CHAMBER OF COMMERCE,**<br><br>Plaintiff,<br><br>v.<br><br>**ROB BONTA, IN HIS OFFICIAL CAPACITY AS ATTORNEY GENERAL OF THE STATE OF CALIFORNIA,**<br><br>Defendant;<br>and<br><br>**COUNCIL FOR EDUCATION AND RESEARCH ON TOXICS,**<br><br>Defendant-Intervenor. | Case No. 2:19-cv-02019-DAD-JDP<br><br>**RESPONSE BY ATTORNEY GENERAL ROB BONTA TO COUNCIL FOR EDUCATION AND RESEARCH ON TOXICS' MOTION TO DISMISS**<br><br>Date: December 7, 2021<br>Time: 9:30 a.m.<br>Courtroom: 5<br><br>Judge: Hon. Dale A. Drozd<br>Trial Date: None<br>Action Filed: October 7, 2019 |

Consistent with Local Rule 230(c), Defendant Rob Bonta, the Attorney General of California, respectfully submits this short response to inform the Court that, while he takes no position as to the motion to dismiss filed by Defendant-Intervenor Council for Education and Research on Toxics (CERT), ECF No. 192, he is compelled to correct the record regarding CERT's allegations that the present case presents no "honest and actual antagonistic assertion of rights" by Plaintiff California Chamber of Commerce (Cal Chamber) against the Attorney General, and falsely suggesting they share an interest in litigating *against* enforcement of Proposition 65 acrylamide in food cases, and that there is "collusion" between them. ECF No. 192-1 at 8-16. These scurrilous allegations have no basis in fact. No such shared interest or collusion exists.

CERT's brief begins by suggesting that the Attorney General, the Governor of California, and the Office of Environmental Health Hazard Assessment (OEHHA) have conspired to undermine Proposition 65, in particular with respect to acrylamide in food. ECF No. 192-1 at 8. This absurd accusation is false,[1] and is based on nothing more than old grievances largely stemming from the long and ultimately unsuccessful lawsuit CERT filed against numerous coffee manufacturers in 2010 and 2011, *CERT v. Starbucks, et al.* Los Angeles Superior Court Case Nos. BC435759 (filed April 13, 2010) and BC461182 (filed May 9, 2011) (*Starbucks*). See ECF No. 192-1 at 8-11.

In *Starbucks,* CERT sued to require Proposition 65 cancer warnings because drinking coffee exposes consumers to acrylamide resulting from the roasting and brewing process. *See* ECF No. 192-1 at 3. In 2018, based on more than 1,000 scientific studies, including a monograph by the International Agency for Research on Cancer, which supported OEHHA's determination that exposure to listed carcinogens formed in the coffee mixture during roasting or brewing does not pose a significant risk of cancer, OEHHA proposed a regulation that became effective in 2019 and exempted coffee from the Proposition 65 cancer warning requirement for listed chemicals

---

[1] In quoting a May 28, 2021, response from the Attorney General to a letter from CERT threatening to disqualify him on the ground of an alleged conflict of interest, ECF No. 192-1 at 15-16, CERT's counsel failed to include the letter's principal contention: *that no such conflict exists*. ECF No. 192-2, ¶ 60, Exh. N.

created by and inherent in the process of roasting or brewing coffee. Office of Environmental Health Hazard Assessment Final Statement of Reasons, Adoption of New Section 25704: Exposures to Listed Chemicals in Coffee Posing No Significant Risk (OEHHA FSOR), available at https://oehha.ca.gov/media/downloads/crnr/fsorcoffee060719.pdf (last accessed November 23, 2021); Cal. Code Regs. tit. 27, § 25704; *see also* International Agency for Research on Cancer on the Evaluation of Carcinogenic Risks to Humans Volume 116: Drinking Coffee, Mate, and Very Hot Beverages, World Health Organization, Lyon, France, 2018 (IARC Monograph), available at https://publications.iarc.fr/566 (last accessed November 23, 2021), at 33-34.[2] The coffee manufacturer defendants prevailed in *Starbucks* because of this regulation. ECF No. 192-1 at 4. Rather than reflecting a conspiracy between California agencies and officers (as CERT alleged in a contemporaneous lawsuit, *CERT v. OEHHA et al.*, Los Angeles Superior Court Case No. BC721153 (filed September 7, 2018)), adoption of the regulation reflected OEHHA's recognition of the scientific conclusion that coffee does not pose a cancer risk, even though acrylamide is present in that mixture.

CERT also disparages the Attorney General's strategic litigation decisions, the competence of its personnel, and its approach to defending this action, suggesting that the Attorney General is pursuing the Governor's supposed political agenda in this regard. ECF No. 192-1 at 12-14. Its allegations lack any factual basis (among other misstatements, the Attorney General is an independent constitutional officer: he does not "serve[] at the pleasure of the Governor," and does not report to the Governor, *see* ECF No. 192-1 at 11; Cal. Gov. Code §§12500, *et seq.*), and reflect nothing more than the personal opinions of CERT's counsel. These include, among other things, his view that the Attorney General's statement in a status report about pending discovery decisions "demonstrates a lack of will [ . . . ] most likely because the Attorney General secretly

---

[2] The Attorney General requests that the Court take judicial notice of the OEHHA FSOR and the IARC Monograph, as they are official records of their respective agencies, and are available to the public online. *See* Fed. R. Evid. 201; *Safer Chemicals, Healthy Families v. EPA,* 943 F.3d 397, 420 n.13 (9th Cir. 2019) (judicial notice taken of an EPA scope document for 1,4 dioxane, publicly available online); *United States v. 14.02 Acres of Land More or Less in Fresno Cty.,* 547 F.3d 943, 955 (9th Cir. 2008) ("Judicial notice is appropriate for records and reports of administrative bodies") (internal quotation marks omitted) (holding district court properly took notice of a Department of Energy study).

hopes that Cal Chamber will win this case unopposed." *Id.* at 14-15. The facts, however, belie such a ridiculous claim: the Attorney General has filed two motions to dismiss this action, opposed plaintiff's motion for preliminary injunction, ECF Nos. 8, 61, and 101, and intends to vigorously defend this case on the merits. Of course, as an intervenor, CERT is itself opposing Cal Chamber in this case, and is free to advance whatever defenses it deems appropriate.

CERT's motion includes other demonstrably false statements. For example, it alleges that neither then-Attorneys General Harris nor Becerra filed Proposition 65 lawsuits during their tenures. ECF No. 192-1 at 19. In fact, both filed several important, health-protective Proposition 65 lawsuits during their respective tenures. These included actions to enforce Proposition 65's warning requirement for exposures to carcinogens or reproductive toxicants in food, including acrylamide in Popchips, a snack food (*People v. Popchips, Inc.*, San Francisco Sup. Ct. Case No CGC-11-516122 (filed December 20, 2011)); lead in supplements (*People v. Zeo Health, Ltd., et al.,* Alameda Sup. Ct. Case No. RG15791941 (filed November 3, 2015) and *People v. Healthforce, Inc. et al*, Alameda Sup. Ct. Case No. RG15764860 (filed April 2, 2015)); lead in toddler and infant formula (*People v. Nutraceutical Corp., et al.*, Alameda Sup. Ct. Case No. RG18907841 (filed June 7, 2018) and *People v. Mead Johnson Nutrition Co., et al.,* Alameda Sup. Ct. Case No. RG18912553 (filed July 12, 2018)); lead in protein drinks (*People v. Nutraceutical Corp.*, Alameda Sup. Ct. Case No. RG19012430 (filed March 26, 2019); and lead and cadmium in seafood and shellfish (*People v. Pacific American Fish Company, Inc., et al.*, Alameda Sup. Ct. Case No. RG20085046 (filed December 29, 2020)).

With respect to CERT's complaints about the number of Proposition 65 cases the Attorney General has filed in recent years, ECF No. 192-1 at 15, the Attorney General possesses prosecutorial discretion in deciding whether and when to file or join litigation enforcing Proposition 65, and how to balance such filings with his other responsibilities with respect to statutory enforcement of Proposition 65, including the review of Proposition 65 notices and settlements between parties, and his obligation to defend OEHHA in litigation related to Proposition 65. *See Consumer Advocacy Grp., Inc. v. Kintetsu Enterprises of Am.,* 150 Cal. App.4th 953, 963–64, (2007) ("[Notice] provides the public prosecutor the means to assess

whether to intervene on behalf of the public"); *see also Consumer Def. Grp. v. Rental Hous. Indus. Members,* 137 Cal. App. 4th 1185, 1212 (2006) (commenting on the Deputies in the "Attorney General's office who are charged with reviewing whether the office should exercise its statutory authority to commence litigation when a Proposition 65 notice is received"). Consistent with this, and as the Court noted in finding that Cal Chamber's First Amended Complaint alleged a history of past enforcement, "the Attorney General [twice] joined private enforcers in pursuing claims against food manufacturers or restaurants for violations of Proposition 65 based on food containing acrylamide." ECF No. 84 at 5.

In fact, the 2009 and 2011 lawsuits the Attorney General filed over acrylamide in snack foods, *People v. Snyders of Hanover, et al.,* Alameda Sup. Ct. Case No. RG09455286 (filed June 1, 2009), and *People v. Popchips, Inc.*, Alameda Superior Court Case No. CGC-11-51622 (filed December 20, 2011), were filed without any private enforcer participation, and the Attorney General's consent judgments in groundbreaking lawsuits over acrylamide in potato chips, French fries, frozen potato products, and snack foods have served as a model for many private enforcers who have filed subsequent lawsuits over similar products. The Attorney General's decisions in pursuing Proposition 65 actions himself, or allowing private enforcers to do so when, in his opinion, it will serve interests of public health and safety, in no way represent abdication of duty. To the contrary, such decisions reflect and are consistent with the voters' intent and statutory language of Proposition 65. *See* Cal. Health & Safety Code § 25249.7(c) and (d)(2) (providing that the Attorney General and other public prosecutors have the statutory right to file suit over Proposition 65 violations, and also prevent private enforcers from doing so).

In sum, CERT's allegations of derogation of duty and collusion are false; indeed, they are grossly intemperate and irresponsible, and should be rejected out of hand. The Attorney General takes no position on CERT's claim that Cal Chamber is not a real party in interest in this litigation, but vigorously disputes any claim that, as the lead public enforcer of Proposition 65, he is not a real party in interest in this case.

The Attorney General does agree with CERT's assertion, ECF No. 192-1 at 24-25, that the safe harbor regulation OEHHA proposed on September 17, 2021 is an important development,

Attorney General Bonta's Response to CERT's Motion to Dismiss (2:19-cv-02019-DAD-JDP)

and that if and when it is finalized, it could affect the outcome of the case, as the Attorney General informed the Court in October. ECF No. 188.

Dated: November 23, 2021

Respectfully submitted,
ROB BONTA
Attorney General of California
LAURA J. ZUCKERMAN
Supervising Deputy Attorney General

/s/ Megan K. Hey
MEGAN K. HEY
RAFAEL J. HURTADO
Deputy Attorneys General

*Attorneys for Rob Bonta, in his Official Capacity as Attorney General of the State of California*