**FILED**

**Mar 17, 2022**

CLERK, U.S. DISTRICT COURT
EASTERN DISTRICT OF CALIFORNIA

FOR PUBLICATION

# UNITED STATES COURT OF APPEALS
# FOR THE NINTH CIRCUIT

| | |
|---|---|
| CALIFORNIA CHAMBER OF COMMERCE, | No. 21-15745 |
| *Plaintiff-Appellee*, | |
| | D.C. No. 2:19-cv-02019-KJM-JDP |
| v. | |
| COUNCIL FOR EDUCATION AND RESEARCH ON TOXICS, a California public benefit corporation, | OPINION |
| *Intervenor-Defendant-Appellant*. | |

Appeal from the United States District Court
for the Eastern District of California
Kimberly J. Mueller, Chief District Judge, Presiding

Argued and Submitted January 12, 2022
San Francisco, California

Filed March 17, 2022

Before: Ronald M. Gould, Mark J. Bennett, and
Ryan D. Nelson, Circuit Judges.

Opinion by Judge Bennett

# SUMMARY[*]

## Civil Rights

In an action brought pursuant to 42 U.S.C. § 1983, the panel affirmed the district court's order granting California Chamber of Commerce's motion for a preliminary injunction that prohibited the Attorney General and his officers, employees, or agents, and all those in privity or acting in concert with those entities or individuals, including private enforcers from filing or prosecuting new lawsuits to enforce the Proposition 65 warning requirement for cancer as applied to acrylamide in food and beverage products.

Proposition 65 or, Prop. 65, provides that "[n]o person in the course of doing business shall knowingly and intentionally expose any individual to a chemical known to the state to cause cancer . . . without first giving clear and reasonable warning to such individual, except as provided in Section 25249.10." Cal. Health & Safety Code § 25249.6.

California Chamber of Commerce ("CalChamber") filed suit for declaratory and injunctive relief against the Attorney General of California, seeking to halt acrylamide litigation brought under Prop. 65. It sought to vindicate its members' First Amendment rights to not be compelled to place false and misleading acrylamide warnings on their food products. The Council for Education and Research on Toxics ("CERT") intervened as a defendant and argued that, as a private enforcer of Prop. 65, an injunction would impose an

---

[*] This summary constitutes no part of the opinion of the court. It has been prepared by court staff for the convenience of the reader.

unconstitutional prior restraint on its First Amendment rights. CERT is the sole appellant challenging the preliminary injunction on appeal.

The panel held that intervenor CERT had standing because it suffered an invasion of a legally protected interest when the district court enjoined it from filing Prop. 65 lawsuits as to acrylamide in food and beverage products.

Applying *Zauderer v. Office of Disciplinary Counsel*, 471 U.S. 626 (1985), the panel addressed whether CalChamber was likely to succeed on the merits of its compelled speech First Amendment claim. The panel held that given the robust disagreement by reputable scientific sources over whether acrylamide in food causes cancer in humans, the district court did not abuse its discretion in concluding that the warning was controversial. The district court similarly did not abuse its discretion in finding the warning was misleading. Finally, the record supported the district court's finding that Prop. 65's enforcement regime created a heavy litigation burden on manufacturers who use alternative warnings rather than the approved safe harbor warning set forth in California's Health and Safety Regulations. Because California and CERT did not meet their burden to show the warning requirement was lawful under *Zauderer*, the district court did not abuse its discretion when it concluded that CalChamber was likely to succeed on the merits of its First Amendment claim.

The panel rejected CERT's argument that the district court's injunction was a prior restraint that violated its First Amendment right to petition. The serious constitutional issue raised by CalChamber gave the district court sufficient reason to enjoin Prop. 65 acrylamide litigation until the case was finally decided on the merits. The panel held that a

preliminary injunction against likely unconstitutional litigation is not an unconstitutional or otherwise impermissible prior restraint.

The panel concluded that there was no abuse of discretion in the district court's analysis of the remaining preliminary injunction factors. The district court correctly found that CalChambers had established irreparable harm, which is relatively easy to establish in a First Amendment case. The panel further found that the scope of the injunction was not impermissible; that the balance of hardships weighed in CalChamber's favor; and that the injunction would be in the public interest.

## COUNSEL

Raphael Metzger (argued) and Scott Brust, Metzger Law Group, A Professional Law Corporation, Long Beach, California, for Intervenor-Defendant-Appellant.

Trenton H. Norris (argued), S. Zachary Fayne, and David M. Barnes, Arnold & Porter Kaye Scholer LLP, San Francisco, California, for Plaintiff-Appellee.

Jeffrey B. Margulies and Andy Guo, Norton Rose Fulbright US LLP, Los Angeles, California, for Amici Curiae of Consumer Brands Association, American Bakers Association, American Beverage Association, California Grain and Feed Association, California League of Food Producers, California Grocers Association, California Retailers Association, California Seed Association, National Confectioners Association, Plant California Alliance, and SNAC International.

Rob Bonta, Attorney General of California; Edward H. Ochoa, Senior Assistant Attorney General; Laura J. Zuckerman, Supervising Deputy Attorney General; Megan K. Hey and Rafael J. Hurtado, Deputy Attorneys General; Office of the California Attorney General, Los Angeles, California; for Amicus Curiae Rob Bonta.

## OPINION

BENNETT, Circuit Judge:

California Chamber of Commerce ("CalChamber") filed suit for declaratory and injunctive relief against the Attorney General of California, seeking to halt acrylamide litigation brought under California's Safe Drinking Water and Toxic Enforcement Act of 1986, better known as Proposition 65 or Prop. 65.[1]  CalChamber argued that Prop. 65's warning requirement violates the First Amendment of the U.S. Constitution on its face and as applied to acrylamide in food products.  The district court granted CalChamber's motion for a preliminary injunction, prohibiting "the Attorney General and his officers, employees, or agents, and all those in privity or acting in concert with those entities or individuals, including private enforcers" from filing or prosecuting "new lawsuit[s] to enforce the Proposition 65

---

[1] In its First Amended complaint, CalChamber named only the Attorney General as a defendant and sought to "enjoin [the Attorney General] and those in privity with and acting in concert with [him] from enforcing in the future a requirement to provide a false, misleading, and highly controversial cancer warning for food and beverage products . . . that contain the chemical acrylamide."  CalChamber claimed that those in privity and acting in concert with the Attorney General included "private enforcers of Proposition 65 under Cal. Health & Safety Code § 25249.7(d)."

warning requirement for cancer as applied to acrylamide in food and beverage products." Council for Education and Research on Toxics ("CERT") intervened as a defendant[2] and is the sole appellant challenging the preliminary injunction. We have jurisdiction under 28 U.S.C. § 1292(a)(1), and we affirm.[3]

## I. FACTS AND PROCEDURAL BACKGROUND

Prop. 65 provides that "[n]o person in the course of doing business shall knowingly and intentionally expose any individual to a chemical known to the state to cause cancer . . . without first giving clear and reasonable warning to such individual, except as provided in Section 25249.10." Cal. Health & Safety Code § 25249.6. One exception under Section 25249.10 applies to those who "can show that the exposure poses no significant risk assuming lifetime exposure at the level in question for substances known to the state to cause cancer." *Id.* § 25249.10(c). This is known as the "No Significant Risk Level." *See Nat'l Ass'n of Wheat Growers v. Becerra*, 468 F. Supp. 3d 1247, 1254 (E.D. Cal. 2020).

A chemical is "known to the state to cause cancer" if it meets one of three statutory criteria: (1) the state's qualified experts believe "it has been clearly shown through scientifically valid testing according to generally accepted

---

[2] CERT moved to intervene nine days after the lawsuit was filed. Both CalChamber and the Attorney General filed statements of non-opposition.

[3] *Noerr-Pennington* immunity is at issue in our concurrently filed opinion in *B&G Foods North America, Inc. v. Kim Embry*, No. 20-16971. Though CERT raised *Noerr-Pennington* immunity below, it abandoned that argument on appeal.

principles to cause cancer"; (2) "a body considered to be authoritative by such experts has formally identified it as causing cancer"; or (3) "an agency of the state or federal government has formally required it to be labeled or identified as causing cancer." Cal. Health & Safety Code § 25249.8(b). The California Office of Environmental Health Hazard Assessment ("OEHHA") "is the lead agency designated by the Governor to implement and enforce Proposition 65." *Cal. Chamber of Com. v. Brown*, 126 Cal. Rptr. 3d 214, 219 n.5 (Ct. App. 2011). In its initially published list of chemicals known to cause cancer, OEHHA "listed only chemicals that had been identified as carcinogens . . . based on human epidemiological studies. It did not include chemicals identified as carcinogens . . . based on animal studies." *Id.* at 219 (citation omitted). Today, a "chemical agent must be listed even if it is known to be carcinogenic . . . only in animals." *Am. Chemistry Council v. Off. of Envt'l Health Hazard Assessment*, 270 Cal. Rptr. 3d 379, 402 (Ct. App. 2020).

OEHHA's regulations provide that a cancer warning for foods is "clear and reasonable" if it states: "**WARNING**: Consuming this product can expose you to [name of chemical], which is known to the State of California to cause cancer. For more information go to www.P65Warnings.ca.gov/food." *See* Cal. Code Regs. tit. 27, § 25607.2(a)(1), (2). This is known as the "safe harbor" warning. A party that fails to provide such a warning or otherwise establish an exception may be enjoined, Cal. Health & Safety Code § 25249.7(a), and "is liable for a civil penalty not to exceed two thousand five hundred dollars ($2,500) per day for each violation," *id.* § 25249.7(b)(1).

Prop. 65 enforcement actions "may be brought by the Attorney General in the name of the people of the State of

California, by a district attorney," by a city attorney or city prosecutor, or "by a person in the public interest." *Id.* § 25249.7(c), (d). Before suing, the person acting in the public interest must provide a sixty-day notice of the alleged violation to the Attorney General, other local prosecutors with jurisdiction, and the alleged violator. *Id.* § 25249.7(d)(1). The private enforcer can only bring suit if "[n]either the Attorney General, a district attorney, a city attorney, nor a prosecutor has commenced and is diligently prosecuting an action against the violation." *Id.* § 25249.7(d)(2).

OEHHA added acrylamide to the Prop. 65 list in 1990 "because studies showed it produced cancer in laboratory rats and mice."[4] OEHHA, *Acrylamide*, https://oehha.ca.gov/proposition-65/general-info/acrylamide (last visited Mar. 3, 2022). The EPA found that acrylamide was a "likely" human carcinogen, and the International Agency for Research on Cancer classified it as "probably carcinogenic to humans." According to the FDA, acrylamide "is a chemical that can form in some foods during high-temperature cooking processes, such as frying, roasting, and baking" and was first detected in foods in 2002. But the National Cancer Institute stated that "a large number of epidemiologic studies . . . have found no consistent evidence that dietary acrylamide exposure is associated with the risk of any type of cancer." The American Cancer Society stated that studies "suggest that dietary acrylamide isn't likely to be related to risk for most common types of cancer." And the FDA has stated that "warning labels based on the presence of acrylamide in food might be misleading."

---

[4] Toxicological studies have shown that tumors are observed in rodents only when they are exposed to acrylamide at approximately 500 times the average daily amount consumed by Americans.

Between 2015 and October 2020, private enforcers have sent almost 1,000 notices of alleged acrylamide violations to the Attorney General.

CalChamber is a nonprofit business association with over 13,000 members, many of whom sell or produce food products that contain acrylamide.  It filed its complaint to vindicate its members' First Amendment right to not be compelled to place false and misleading acrylamide warnings on their food products.  CalChamber's preliminary injunction motion sought to prohibit parties from "filing and/or prosecuting *new* lawsuits to enforce the Proposition 65 warning requirement for cancer as applied to acrylamide in food and beverage products."  CalChamber submitted expert declarations stating that there is no consistent or reliable evidence that acrylamide increases the risk of any type of cancer in humans, that the toxicological studies related to experimental animals are not relevant to humans at real-world levels of exposure, and that California consumers understood Prop. 65's safe harbor warning "to convey the message that eating [food with acrylamide] increases their risk of getting cancer."

In opposition, the Attorney General submitted a declaration from an expert who stated that evidence shows that acrylamide is a human carcinogen.  Intervenor CERT also opposed the motion, arguing an injunction would impose an unconstitutional prior restraint on its First Amendment rights.[5]

---

[5] Nothing in any of CERT's district court filings asserted or suggested that CERT was asserting the rights of any other private enforcers.

The district court granted the preliminary injunction. Under the injunction:

> While this action is pending and until a further order of this court, no person may file or prosecute a new lawsuit to enforce the Proposition 65 warning requirement for cancer as applied to acrylamide in food and beverage products. This injunction applies to the requirement that any "person in the course of doing business" provide a "clear and reasonable warning" for cancer before "expos[ing] any individual to" acrylamide in food and beverage products under California Health & Safety Code § 25249.6. It applies to the Attorney General and his officers, employees, or agents, and all those in privity or acting in concert with those entities or individuals, including private enforcers under section 25249.7(d) of the California Health and Safety Code.

> This order does not alter any existing consent decrees, settlements, or other agreements related to Proposition 65 warning requirements.

*Cal. Chamber of Com. v. Becerra*, 529 F. Supp. 3d 1099, 1123 (E.D. Cal. 2021) (alteration in original). The district court found that CalChamber was likely to succeed on the merits because neither the State nor CERT had shown that the Prop. 65 cancer warning for acrylamide in food is "purely factual and uncontroversial." The district court also rejected CERT's prior restraint argument.

CERT appealed the preliminary injunction order, but the Attorney General did not.  A divided motions panel of this court[6] granted in part CERT's motion for an emergency stay of the preliminary injunction pending appeal.  The majority found that "[e]ven if a court could enjoin lawsuits that infringe on a defendant's established First Amendment right against compelled speech, no court has made a final determination that a Proposition 65 warning is, in fact, unconstitutional with respect to acrylamide exposure."  The motions panel also stated that the "breadth of the injunction"—prohibiting Prop. 65 lawsuits "with regard to acrylamide exposure by *any* private actor, including those who are not parties to the underlying action"—"exacerbates the concerns underlying the prior restraint doctrine."  The motions panel stayed the preliminary injunction only to the extent it barred private enforcers, including CERT, from filing or prosecuting Prop. 65 lawsuits.  Another motions panel later denied CalChamber's motion to dismiss CERT's appeal for lack of standing.

## II. STANDARD OF REVIEW

This court reviews "the district court's decision to grant or deny a preliminary injunction for abuse of discretion. . . . The district court's interpretation of the underlying legal principles, however, is subject to de novo review and a district court abuses its discretion when it makes an error of law."  *Sw. Voter Registration Educ. Project v. Shelley*, 344

---

[6] Dissenting, Judge Forrest stated that CERT did not contend that it intended to file any enforcement lawsuits, that CERT had filed no enforcement suits since CalChamber filed the litigation, and that CERT could still send demand letters.  Judge Forrest believed CalChamber "raised serious questions regarding whether the warning required by Proposition 65 as [it] relates to acrylamide is permissible compelled commercial speech."

F.3d 914, 918 (9th Cir. 2003) (en banc) (per curiam) (citation omitted).

"A district court abuses its discretion if it rests its decision 'on an erroneous legal standard or on clearly erroneous factual findings.'" *Am. Beverage Ass'n v. City & County of San Francisco*, 916 F.3d 749, 754 (9th Cir. 2019) (en banc) (quoting *United States v. Schiff*, 379 F.3d 621, 625 (9th Cir. 2004)). "A district court's decision is based on an erroneous legal standard if: '(1) the court did not employ the appropriate legal standards that govern the issuance of a preliminary injunction; or (2) in applying the appropriate standards, the court misapprehended the law with respect to the underlying issues in the litigation.'" *Negrete v. Allianz Life Ins. Co. of N. Am.*, 523 F.3d 1091, 1096 (9th Cir. 2008) (quoting *Clear Channel Outdoor Inc. v. City of Los Angeles*, 340 F.3d 810, 813 (9th Cir. 2003), *abrogated on other grounds by Winter v. Nat. Res. Def. Council, Inc.*, 555 U.S. 7 (2008)).

"In the context of a trial court's factual findings, as applied to legal rules, to determine whether a district court has abused its discretion, the first step . . . is to determine de novo whether the trial court identified the correct legal rule to apply to the relief requested." *Enyart v. Nat'l Conf. of Bar Exam'rs, Inc.*, 630 F.3d 1153, 1159 (9th Cir. 2011) (cleaned up). "If the trial court identified the correct legal rule, the second step is to determine whether the trial court's application of the correct legal standard was (1) illogical, (2) implausible, or (3) without support in inferences that may be drawn from the facts in the record." *Id.* (cleaned up).

"We review the scope of an injunction for abuse of discretion." *Nat'l Wildlife Fed'n v. Nat'l Marine Fisheries Serv.*, 886 F.3d 803, 823 (9th Cir. 2018).

## III. DISCUSSION

### A.  Standing

We first address the jurisdictional challenge raised by CalChamber.  Notwithstanding that CERT intervened, that CalChamber sought to enjoin CERT, and that the preliminary injunction obtained by CalChamber does enjoin CERT, CalChamber argues that CERT lacks standing to appeal.  CalChamber claims that the injunction might not affect CERT because CERT "does not have any pending 60-day notices concerning acrylamide in food on which it could file suit."[7]  CalChamber therefore contends that CERT "does not have Article III standing and its appeal cannot proceed."  CERT argues that because the district court enjoined "CERT and all other private enforcers from filing Proposition 65 cases regarding acrylamide in food, CERT ha[s] standing to appeal."  We agree with CERT.

"[T]o appeal a decision that the primary party does not challenge, an intervenor must independently demonstrate standing."  *Va. House of Delegates v. Bethune-Hill*, 139 S. Ct. 1945, 1951 (2019).  "Standing under Article III of the Constitution requires that an injury be concrete, particularized, and actual or imminent; fairly traceable to the challenged action; and redressable by a favorable ruling."  *Monsanto Co. v. Geertson Seed Farms*, 561 U.S. 139, 149 (2010).  The Supreme Court has "repeatedly reiterated that threatened injury must be certainly impending to constitute

---

[7] CalChamber also argues that it would be absurd for the Attorney General and other elected officials to not be able to enforce Prop. 65 while private enforcers could.  But this result would flow from the Attorney General's decision not to appeal, not from any lack of injury to CERT.  Moreover, it was CalChamber that sought to enjoin both the Attorney General *and* private enforcers like CERT.

injury in fact, and that allegations of possible future injury are not sufficient." *Clapper v. Amnesty Int'l USA*, 568 U.S. 398, 409 (2013) (cleaned up). As the Court held in *TransUnion LLC v. Ramirez*, 141 S. Ct. 2190 (2021), "Congress may not authorize plaintiffs who have not suffered concrete harms to sue in federal court simply to enforce general compliance with regulatory law." *Id.* at 2207 n.3. The same principle applies to an intervenor seeking to appeal. *Va. House of Delegates*, 139 S. Ct. at 1950–51.

We first note that CERT recently filed a Prop. 65 enforcement action against manufacturers and retailers of air fryers, alleging air fryers "generate extremely high levels of acrylamide to which Californians are exposed." CERT does not contend that air fryers are "food and beverage products," and stated at oral argument that its litigation against air fryer manufacturers would not have been barred by the injunction. CERT acknowledged that the defendants in that litigation, however, might contend that because air fryers *create* acrylamide in foods, the litigation would have been barred by the preliminary injunction, absent the stay. CalChamber stated at oral argument that the pending case faces the question whether air fryers are food and beverage products, and that the defendants in that case might argue that they are.

CERT did not contend below that it specifically intended to file any Prop. 65 lawsuits or pre-litigation notices about acrylamide in food or beverage products. Nor did it make such a claim in opposition to the motion to dismiss the appeal for lack of standing. Nonetheless, we look to CERT's long history of bringing suits against manufacturers of food and beverage products, CERT's statement that it has "devote[d] [its] efforts to initiating new Proposition 65 matters regarding acrylamide," and CERT's very recent

litigation against air fryers, as significant evidence of CERT's concrete interest in bringing Prop. 65 litigation related to acrylamide in food and beverage products. We also note that CalChamber has not cited, nor have we found, any case in which an enjoined party was denied, on standing grounds, the right to appeal the injunction.

We hold that CERT suffered "an invasion of a legally protected interest," *Lujan v. Defs. of Wildlife*, 504 U.S. 555, 560 (1992), when the district court enjoined it from filing Prop. 65 lawsuits as to acrylamide in food and beverage products. We find that CERT has suffered a concrete, particularized, and actual injury. *Cf. Elrod v. Burns*, 427 U.S. 347, 373 (1976) ("The loss of First Amendment freedoms, for even minimal periods of time, unquestionably constitutes irreparable injury."). The injury is directly traceable to the preliminary injunction and redressable by a reversal of that injunction. We thus conclude that CERT has standing, and we proceed to the merits of CalChamber's and CERT's arguments on appeal.

## B. Preliminary Injunction

For a court to grant a preliminary injunction, a plaintiff "must establish [1] that he is likely to succeed on the merits, [2] that he is likely to suffer irreparable harm in the absence of preliminary relief, [3] that the balance of equities tips in his favor, and [4] that an injunction is in the public interest." *Winter*, 555 U.S. at 20.

### 1. Likelihood of Success on the Merits

#### a. Compelled Speech

The district court applied the three-factor test from *Zauderer v. Office of Disciplinary Counsel*, 471 U.S. 626

(1985), to decide whether "the compelled warning (1) requires the disclosure of purely factual and uncontroversial information only, (2) is justified and not unduly burdensome, and (3) is reasonably related to a substantial government interest."  The district court's first two factors combine the "three inquiries" that comprise "[t]he *Zauderer* test, as applied in [*National Institute of Family & Life Advocates v. Becerra* ("*NIFLA*"), 138 S. Ct. 2361 (2018)]": "whether the notice is (1) purely factual, (2) noncontroversial, and (3) not unjustified or unduly burdensome."  *Am. Beverage*, 916 F.3d at 756.[8]  In *CTIA-The Wireless Ass'n v. City of Berkeley* ("*CTIA-II*"), 928 F.3d 832 (9th Cir. 2019), we joined our sister circuits in holding that "the *Zauderer* exception for compelled speech applies even in circumstances where the disclosure does not protect against deceptive speech."  *Id.* at 843.  We held that "the governmental interest in furthering public health and safety is sufficient under *Zauderer* so long as it is substantial."  *Id.* at 844.  The third factor considered by the district court here aligns with our holding in *CTIA-II*.  The district court thus initially used the correct framework for determining whether Prop. 65's warning requirement was a constitutionally permissible compelled disclosure.

The district court then found that the Prop. 65 acrylamide warning did not pass constitutional muster.  "Courts asked to issue preliminary injunctions based on First Amendment grounds face an inherent tension: the moving party bears the burden of showing likely success on the merits . . . and yet within that merits determination the government bears the burden of justifying its speech-restrictive law."  *Thalheimer v. City of San Diego*, 645 F.3d 1109, 1115 (9th Cir. 2011),

---

[8] The inquiries or criteria need not be addressed in any particular order.  *Am. Beverage*, 916 F.3d at 756.

*overruled on other grounds by Bd. of Trs. of Glazing Health & Welfare Tr. v. Chambers*, 941 F.3d 1195, 1199 (9th Cir. 2019) (en banc).   "Therefore, in the First Amendment context, the moving party bears the initial burden of making a colorable claim that its First Amendment rights have been infringed, or are threatened with infringement, at which point the burden shifts to the government to justify the restriction" on speech.  *Id.* at 1116.

CalChamber bore the initial burden to show a colorable claim.  As the district court found, "[t]he parties agree[d] Proposition 65 compels commercial speech."   Thus, the court shifted its inquiry to assessing whether California could justify the compelled disclosure under *Zauderer*.  The district court found that "[1] the State has not shown that the safe-harbor acrylamide warning is purely factual and uncontroversial, and [2] Proposition 65's enforcement system can impose a heavy litigation burden on those who use alternative warnings."[9]   The court found that "the warning implies incorrectly that acrylamide is an additive or ingredient," and "is likely misleading."   The court also referenced the consumer survey submitted by CalChamber that shows how those "who read the safe harbor warning will probably believe that eating the food increases their personal risk of cancer."   The court acknowledged that some studies would "support such an inference," but also noted "dozens of epidemiological studies have failed to tie human cancer to a diet of food containing acrylamide."   Thus, it found "the safe harbor warning is controversial because it elevates one

---

[9] As noted, the safe-harbor warning reads: "Consuming this product can expose you to [acrylamide], which is . . . known to the State of California to cause cancer.   For more information go to www.P65Warnings.ca.gov/food."   Cal. Code Regs. tit. 27, § 25607.2(a)(2).

side of a legitimately unresolved scientific debate about whether eating foods and drinks containing acrylamide increases the risk of cancer."

The record supports the district court's findings. First, the district court found that the safe harbor warning is controversial because of the scientific debate over whether acrylamide in food causes cancer in humans. In 2019, the American Cancer Society stated that "dietary acrylamide isn't likely to be related to risk for most common types of cancer." According to the National Cancer Institute, while "[s]tudies in rodent models have found that acrylamide exposure increases the risk for several types of cancer[,] . . . a large number of epidemiologic studies . . . in humans have found no consistent evidence that dietary acrylamide exposure is associated with the risk of any type of cancer." One epidemiologist who reviewed 56 studies concluded that "there is no consistent or reliable evidence to support a finding that dietary exposure to acrylamide increases the risk of any type of cancer in humans." In her publication, the researcher noted that the "epidemiologic studies . . . have failed to detect an increased risk of cancer, and they raise serious doubt regarding the validity of extrapolating from rodent studies suggestive of multiorgan effects to humans." These opinions weigh against the conclusions of three organizations: the International Agency for Research on Cancer classifies acrylamide as "probably carcinogenic to humans," the U.S. National Toxicology Program classifies acrylamide as "reasonably anticipated to be a human carcinogen," and the EPA classifies acrylamide as "likely to be carcinogenic to humans." Given this robust disagreement

by reputable scientific sources, the court did not abuse its discretion in concluding that the warning is controversial.[10]

The court similarly did not abuse its discretion in finding the warning is misleading.  Scientific debate aside, Prop. 65's meaning of the word "known" is not conveyed in the warning.[11]  The district court stated: "Statements are not necessarily factual and uncontroversial just because they are technically true."  *See CTIA-II*, 928 F.3d at 847 ("[A] statement may be literally true but nonetheless misleading and, in that sense, untrue.").  Under Prop. 65, a "known" carcinogen carries a complex legal meaning that consumers would not glean from the warning without context.[12]  Thus, use of the word "known" is misleading—as the FDA acknowledged the warning might be.  Even the State of California has stipulated that it "does not know that acrylamide causes cancer in humans, and is not required to make any finding to that effect in order to list the chemical under Proposition 65."  As the consumer survey showed,

---

[10] We do not try to offer a general definition for "controversial" in the *Zauderer* context.  However controversial is defined, the acrylamide Prop. 65 warning easily meets the definition because of the scientific debate.

[11] As noted above, the word "known" has a specialized meaning under Prop. 65, *see* Cal. Health & Safety Code § 25249.8(b), and OEHHA added acrylamide to the Prop. 65 list in 1990 "because studies showed it produced cancer in laboratory rats and mice."

[12] This interpretation of the "factual" requirement can also be understood as a corollary of the threshold requirement stated in *Zauderer*.  While the First Amendment allows states and the federal government to bar others from disseminating false, deceptive, or misleading commercial speech, 471 U.S. at 638, the First Amendment also bars the government from compelling others to disseminate false, deceptive, or misleading commercial disclosures.

when consumers read "known to the State of California to cause cancer" on the packaging of a food or beverage product, they would believe "that such products pose a risk of cancer *in humans*." But acrylamide "must be listed [as known to the state to cause cancer] even [though] it is known to be carcinogenic . . . only in animals." *Am. Chemistry Council*, 270 Cal. Rptr. 3d at 402. A reasonable person might think that they would consume a product that California *knows* will increase their risk for cancer. Such a consumer would be misled by the warning because the State of California *does not* know if acrylamide causes cancer in humans. The district court did not abuse its discretion when it concluded the warning is misleading.

Finally, the record supports the district court's finding that Prop. 65's enforcement regime creates a heavy litigation burden on manufacturers who use alternative warnings. The district court agreed with CalChamber that "only the safe harbor warning is actually useable in practice." The court found that Prop. 65 "does not permit businesses to add information to the required warning at their discretion, and thus prevents them from explaining their views on the true dangers of acrylamide in food." Upon receipt of a notice of violation, CalChamber argues, a business must "communicate to consumers a disparaging health warning about food containing acrylamide that is unsupported by science, or face the significant risk of an enforcement action under Proposition 65." The former damages their "reputation and goodwill" with misleading information, and the latter bears a risk of "civil penalties of up to $2,500 per violation per day." If the business chooses to defend itself in the action, it bears the burden of proof to show the acrylamide levels in their products have a low enough risk of causing cancer that they do not need a warning. *See* Cal. Health & Safety Code § 25249.10(c) (requiring defendants

to prove that the exposure to acrylamide "poses no significant risk assuming lifetime exposure at the level in question"). Proving the acrylamide level is lower than the No Significant Risk Level requires expensive testing and costly expert testimony if the case proceeds to trial. "[S]maller businesses . . . often cannot afford" these costs and "have decided to provide a Proposition 65 cancer warning for their acrylamide-containing food products, even though they believe that such a warning is unfounded, to avoid the risk of Proposition 65 litigation." Thus, in context, the compelled disclosure appears unduly burdensome, and the district court did not abuse its discretion in so finding.

Our circuit has established a clear legal framework for analyzing the constitutionality of a compelled commercial disclosure requirement, which the district court dutifully followed. Because California and CERT did not meet their burden to show the warning requirement was lawful under *Zauderer*, the district court did not abuse its discretion when it concluded that CalChamber was likely to succeed on the merits of its First Amendment claim.

The district court assumed without deciding that it was also necessary to apply the heightened standard of review under *Central Hudson Gas & Electric Corp. v. Public Service Commission*, 447 U.S. 557 (1980).[13] Theoretically, even if a compelled disclosure failed the *Zauderer* test because, for example, it was controversial, the government could get a "second bite at the apple" by showing that even if controversial, the compelled speech passed *Central Hudson*'s intermediate scrutiny hurdle. The State made this

---

[13] At least one other district court has done the same, finding our precedent unclear on whether applying the heightened analysis was necessary. *See Wheat Growers*, 468 F. Supp. 3d at 1257, 1264.

argument below.  But CERT has not made this argument on appeal, nor has CERT even cited *Zauderer* or *Central Hudson* in its briefs.  Thus, we need not reach this argument. *Indep. Towers of Wash. v. Washington*, 350 F.3d 925, 929–30 (9th Cir. 2003).[14]

### b. Prior Restraint

CERT (which, as noted, does not even discuss *Zauderer*) argues the injunction is a prior restraint that violates its First Amendment right to petition.  The district court found the "illegal objective" of any Prop. 65 lawsuit prevented CERT from making a successful prior restraint claim.[15]  Though the prior restraint doctrine does apply to enjoined lawsuits, we conclude that the district court's finding at the preliminary injunction stage that Prop. 65 acrylamide in food lawsuits are likely unconstitutional prevents CERT from claiming the doctrine's protection.

The Supreme Court has held that "enjoining a lawsuit could be characterized as a prior restraint." *BE & K Constr. Co. v. NLRB*, 536 U.S. 516, 530 (2002).  But courts may enjoin a lawsuit with "an objective that is illegal" without

---

[14] We note, though, that in *CTIA-II* we stated: "Five years after *Central Hudson*, the Court held that *Central Hudson*'s intermediate scrutiny test does not apply to compelled, as distinct from restricted or prohibited, commercial speech."  928 F.3d at 842.  We also note, however, that no court appears to have ever directly held that the government can never compel factually accurate but "controversial" speech, no matter the government interest, and no matter how compelling its reasons.  We leave that question for another day.

[15] In discussing "illegal objective," the court referenced the *potential* that CalChamber would succeed on the merits as problematic for the petition clause claim because "private enforcement actions targeting acrylamide would run head-on into a constitutional prohibition."

violating the Petition Clause. *Bill Johnson's Rests., Inc. v. NLRB*, 461 U.S. 731, 737 n.5 (1983); *see also Small v. Operative Plasterers' and Cement Masons' Int'l Ass'n Loc. 200*, 611 F.3d 483, 492 (9th Cir. 2010).[16]

CERT argues that the district court could not enjoin Prop. 65 litigation on the basis that it had an illegal objective until after the court made a final determination on the merits of CalChamber's claim.   But CERT cited no binding precedent supporting its claim that the "falsity" of the compelled speech must be proven at trial, and thus by definition before a preliminary injunction can issue.  And the cases cited by CERT are distinguishable.

CERT cited a district court case that stated: "A preliminary injunction is not ideal for resolving the actual truth or falsity of Defendants' speech, particularly where the merits of the matter is already pending in another court." *Gold Coast Search Partners LLC v. Career Partners, Inc.*, No. 19-cv-03059-EMC, 2019 WL 4305540, at *5 (N.D. Cal. Sept. 11, 2019).  But that court found only that enjoining the defendants from "stating or claiming that Plaintiffs are prohibited from conducting their business or that they are violating any agreement with Defendants" or "stating or implying that Plaintiffs are bound by the Employment

---

[16] CERT argues that its Prop. 65 lawsuits may not be enjoined because CERT is not "'subjectively motivated by an unlawful purpose,' [*BE & K Constr. Co.*, 536 U.S. at 531], so as to have an 'illegal objective' undeserving of First Amendment protection."  But CalChamber need not allege or prove the subjective motive of Prop. 65 private enforcers.  Suits that have "an objective that is illegal under federal law" may be enjoined without proving subjective intent.  *Bill Johnson's*, 461 U.S. at 737 n.5; *Small*, 611 F.3d at 492.

Agreement" would be an improper prior restraint on speech. *Id.* at *4–5. No similar speech is barred here—only lawsuits.

CERT also cites *Balboa Island Village Inn, Inc. v. Lemen*, 156 P.3d 339 (Cal. 2007), claiming the California Supreme Court "held that an injunction that enjoins speech prior to a determination on the merits is impermissible." But the case had nothing to do with enjoining prospective lawsuits "prior to a determination" on the First Amendment merits; it involved a bar and restaurant owner seeking to enjoin a neighbor from interfering with its business by *repeating* statements that a court had *already* found defamatory. *Id.* at 341. The California Supreme Court ultimately determined that the trial court's permanent injunction was "overly broad, but that defendant's right to free speech would not be infringed by a properly limited injunction prohibiting defendant from repeating statements about plaintiff that were determined at trial to be defamatory." *Id.*

CalChamber, on the other hand, offers examples of preliminary injunctions against litigation to support its position that enjoining future lawsuits does not constitute an unlawful prior restraint on CERT's right to petition. *See County of Orange v. Air Cal.*, 799 F.2d 535, 537 (9th Cir. 1986); *Wood v. Santa Barbara Chamber of Com., Inc.*, 705 F.2d 1515, 1523 (9th Cir. 1983). The district court also pointed to other contexts in which federal courts enjoin prospective state court litigation.[17]

---

[17] The district court cited cases as well as federal statutes, such as the All Writs Act and the Anti-Injunction Act, which show that enjoining prospective lawsuits does not per se violate the First Amendment.

We agree with CalChamber and the district court.  The serious constitutional issue raised by CalChamber gave the district court sufficient reason to enjoin Prop. 65 acrylamide litigation until the case was finally decided on the merits.  The court's analysis of CalChamber's First Amendment claim was an "adequate determination that [such Prop. 65 acrylamide litigation] is unprotected by the First Amendment." *Pittsburgh Press Co. v. Pittsburgh Comm'n on Human Rels.*, 413 U.S. 376, 390 (1973).[18]  Thus, we hold that the preliminary injunction against *likely unconstitutional* litigation is not an unconstitutional or otherwise impermissible prior restraint.

## 2.  Remaining Preliminary Injunction Factors

We conclude there was no abuse of discretion in the court's analysis of the remaining preliminary injunction factors.  "Irreparable harm is relatively easy to establish in a First Amendment case." *CTIA-II*, 928 F.3d at 851.  The plaintiff "need only demonstrate the existence of a colorable First Amendment claim." *Brown v. Cal. Dep't of Transp.*, 321 F.3d 1217, 1225 (9th Cir. 2003) (cleaned up).  As we held above, the district court correctly found that CalChamber did so.

The district court reviewed the final two factors of the preliminary injunction test together, weighing the State's and private enforcers' interest in enforcing Prop. 65 against CalChamber's members' First Amendment rights.  "[I]t is always in the public interest to prevent the violation of a party's constitutional rights." *Am. Beverage*, 916 F.3d at

---

[18] The Court in *Pittsburgh Press* did not define the parameters of an "adequate determination."  413 U.S. at 390.  Such adequacy would, of course, turn on the law and facts in individual cases.

758 (quoting *Melendres v. Arpaio*, 695 F.3d 990, 1002 (9th Cir. 2012)).   The district court noted that the "injunction requested here is also quite narrow," allowing "CERT and other private enforcers [to] send demand letters and notices of violations," "litigate existing claims and pursue appeals," "pursue public relations campaigns," "fund research," and "buy advertisements."[19]   Though we do not agree with the "quite narrow" description, the scope of the injunction speaks for itself, and is not impermissible.

For these reasons, the court found that the balance of equities tipped in CalChamber's favor, and that the injunction would be in the public interest.   These findings were not an abuse of discretion, especially as this court has "consistently recognized the significant public interest in upholding First Amendment principles." *Doe v. Harris*, 772 F.3d 563, 583 (9th Cir. 2014) (quoting *Sammartano v. First Jud. Dist. Ct.*, 303 F.3d 959, 974 (9th Cir. 2002), *abrogated on other grounds by Winter*, 555 U.S. 7).

## C.  Scope of the Injunction

CERT argues for the first time in its reply brief that the injunction was overly broad because CERT and the Attorney General are not in privity with one another.   While we are unsure if we understand CERT's argument, which is forfeited because it is raised for the first time in the reply brief, we have "discretion to review an issue not raised by appellant . . . when it is raised in the appellee's brief." *In re Riverside-Linden Inv. Co.*, 945 F.2d 320, 324 (9th Cir. 1991).   Given that CalChamber argues that because the

---

[19] CERT argued for the first time on appeal that the notices of violations are effectively enjoined. This argument is waived. *See In re Mercury Interactive Corp. Sec. Litig.*, 618 F.3d 988, 992 (9th Cir. 2010).

Attorney General and private enforcers bring Prop. 65 claims in the public interest, private enforcers are "in privity" with one another and with the Attorney General, we exercise our discretion to reach only whether the injunction is overly broad *as to CERT*.[20]

Federal Rule of Civil Procedure 65(d)(2) allows district courts to enjoin not just the parties and their affiliates, but also others who are "in active concert or participation" with them. The Supreme Court has interpreted this language to allow injunctions to bind not only defendants but also people "identified with them in interest, in 'privity' with them, represented by them or subject to their control." *Golden State Bottling Co. v. NLRB*, 414 U.S. 168, 179 (1973) (quoting *Regal Knitwear Co. v. NLRB*, 324 U.S. 9, 14 (1945)). CalChamber argues that this group includes "private enforcers who are not parties to this action."[21]

---

[20] We do not reach whether the injunction here is overly broad against other possible private enforcers. CERT intervened to protect its own interests and did not purport to speak for other private enforcers. Because CERT has not asserted the rights or interests of anyone but itself, its standing is limited to its own interests. We therefore discuss only whether the injunction was overly broad as to CERT. We express no view on the merits of whether the injunction was overbroad as it applies or purports to apply to other private enforcers who were not named as defendants and who did not intervene.

[21] "In general, . . . privity involves a person so identified in interest with another that he represents the same legal right." *Zaragosa v. Craven*, 202 P.2d 73, 75 (Cal. 1949) (en banc) (quotation marks omitted). "Generally, to be held liable in contempt, it is necessary that a non-party respondent must either abet the defendant or must be legally identified with him. Those not identified with a party, but in active concert or participation with him, are bound only with actual notice." *NLRB v. Sequoia Dist. Council of Carpenters, AFL-CIO*, 568 F.2d 628, 633 (9th Cir. 1977) (cleaned up).

Whether or not this is so, as an intervenor-defendant, CERT is in a different position from other private enforcers who are not parties to the case. CERT stated in its motion to intervene that its interests cannot be adequately represented by the Attorney General because their interests are adverse. CERT acknowledged that "as an intervenor, CERT has all of the same rights and obligations as [those] of a named defendant." This includes the duty to be bound by the district court's injunction order. *See United States v. Oregon*, 657 F.2d 1009, 1014 (9th Cir. 1981) ("Intervenors under Fed. R. Civ. P. 24(a)(2) . . . enter the suit with the status of original parties and are fully bound by all future court orders."). We concluded at the outset that CERT has standing to appeal the injunction as a private enforcer, including because CERT has filed acrylamide lawsuits in the past and has discussed wanting to file them in the future. As an intervenor under Fed. R. Civ. P. 24(a), CERT brought itself into "active concert" and "participation" with the Attorney General in the context of this litigation. It would defy logic to now hold that the injunction as applied to CERT as a private enforcer is overly broad.

## IV. CONCLUSION

For all these reasons, the district court did not abuse its discretion in granting the preliminary injunction.[22]

**AFFIRMED.**

---

[22] We also find no abuse of discretion in the court's evidentiary hearing proceedings or its consideration of expert testimony.