1  Trenton H. Norris (CA Bar No. 164781)
2  S. Zachary Fayne (CA Bar No. 307288)
   David Barnes (CA Bar No. 318547)
3  **ARNOLD & PORTER KAYE SCHOLER LLP**
   Three Embarcadero Center, 10th Floor
4  San Francisco, CA 94111
   Telephone:    415.471.3100
5  Facsimile:    415.471.3400
   trent.norris@arnoldporter.com
6
7  *Attorneys for California Chamber of Commerce*

8                   **UNITED STATES DISTRICT COURT**

9                   **EASTERN DISTRICT OF CALIFORNIA**

10

11 | CALIFORNIA CHAMBER OF          | Case No. 2:19-cv-02019-DAD-JDP
   | COMMERCE,                      |
12 |                                | **PLAINTIFF CALIFORNIA CHAMBER OF
   |          Plaintiff,            | COMMERCE'S OPPOSITION TO
13 |                                | INTERVENOR-DEFENDANT COUNCIL
   |     v.                         | FOR EDUCATION AND RESEARCH ON
14 |                                | TOXICS' MOTION FOR VACATUR OF
   | XAVIER BECERRA, IN HIS OFFICIAL| ORDERS**
15 | CAPACITY AS ATTORNEY GENERAL   |
   | OF THE STATE OF CALIFORNIA,    | Date:         May 17, 2022
16 |                                | Time:         9:30 a.m.
   |          Defendant,            | Location:     Courtroom 5
17 |                                | Judge:        Hon. Dale A. Drozd
   | COUNCIL FOR EDUCATION AND      | Action Filed: October 7, 2019
18 | RESEARCH ON TOXICS,            |
19 |          Intervenor-Defendant. |

20

21

22

23

24

25

26

27

28

## TABLE OF CONTENTS

Page

INTRODUCTION ...........................................................................................................................1

BACKGROUND .............................................................................................................................2

    A.    First Round of Motions to Dismiss ........................................................................2

    B.    Second Round of Rulings on the Pleadings ..........................................................3

    C.    Motions for Preliminary Injunction and Summary Judgment...............................3

    D.    Judge Mueller's Recusal .......................................................................................4

    E.    CERT's Motion to Vacate .....................................................................................7

ARGUMENT ...................................................................................................................................7

I.    CERT'S UNTIMELY MOTION FOR VACATUR SHOULD BE DENIED............................7

    A.    Vacating Prior Orders Would Result in Injustice. ................................................9

    B.    CERT'S Motion Is Untimely. ..............................................................................11

II.    CERT'S MOTION AND CONDUCT MERIT RECONSIDERATION OF ITS INTERVENOR STATUS UNDER RULE 24. ........................................................................11

CONCLUSION ..............................................................................................................................13

# TABLE OF AUTHORITIES

Page(s)

**Cases**

*AT&T Mobility LLC v. Yeager*,
  No. 2:13-cv0007-KJM-DAD, 2015 WL 4460715 (E.D. Cal. July 21, 2015) ................................... 5

*B&G Foods North America, Inc. v. Embry*,
  No. 2:20-cv-00526-KJM-DB ................................................................................................... 2

*CERT v. U.S. Dist. Ct. E.D. Cal.*,
  No. 21-71256 (9th Cir. Sept. 3, 2021) ..................................................................................... 12

*Degarmo v. State*,
  922 S.W.2d 256 (Tex. Ct. App. 1996) ....................................................................................... 9

*Liljeberg v. Health Services Acquisition Corp.*,
  486 U.S. 847 (1988) .................................................................................................. 8, 9, 10, 11

*Mishewal Wappo Tribe of Alexander Valley v. Salazar*,
  No. 5:09-CV-02502 EJD, 2012 WL 4717814 (N.D. Cal. Sept. 28, 2012),
  *aff'd*, 534 F. App'x 665 (9th Cir. 2013) .................................................................................. 12

*In re Murchison*,
  349 U.S. 133 (1955) ................................................................................................................ 12

*In re Shop Television Network, Inc.*,
  170 B.R. 413 (C.D. Cal. 1994) ................................................................................................ 12

*State v. Nossaman*,
  63 Or. App. 789 (1983), *abrogated by Matter of Marriage of Benson*,
  141 Or. App. 458 (1996) ........................................................................................................... 9

*U.S. v. All Assets Held at Bank Julius Baer & Co., Ltd.*,
  202 F. Supp. 3d 1 (D.C. Cir. 2016) ......................................................................................... 13

*U.S. v. Sci. Applications Int'l Corp.*,
  555 F. Supp. 2d 40 (D.C. Cir. 2008) .................................................................................. 12, 13

**Statutes and Rules**

28 U.S.C.
  § 144 ........................................................................................................................................ 12
  § 455 ............................................................................................................................ 6, 7, 9, 10
  § 455(a) ............................................................................................................................ 6, 8, 9
  § 2283 ........................................................................................................................................ 2

42 U.S.C.
    § 1983 ...........................................................................................................................3
    § 1988 .........................................................................................................................12

Fed. R. Civ. Proc.
    11 ..................................................................................................................................7
    11(b)(1) and (3) ............................................................................................................7
    24 ..................................................................................................................11, 12, 13
    60(b)(6) .........................................................................................................................8

# INTRODUCTION

Defendant-Intervenor Council for Education and Research on Toxics ("CERT") asks the Court to vacate two adverse decisions that were issued by Chief Judge Kimberly Mueller a year ago. CERT's purported basis for this request is that Judge Mueller had "unwaivable conflicts of interest" at the time she issued the rulings, but CERT's motion comes more than five months after Judge Mueller recused herself and on the heels of an adverse decision by the Ninth Circuit unanimously affirming one of the very orders that CERT now seeks to vacate, suggesting a less pure motive. Indeed, Judge Mueller observed that the timing of CERT's original recusal motion suggested that CERT's "goals are strategic at least in part," as it "followed uncannily on the tail of several orders [Judge Mueller] issued against CERT's and [another proposed intervenor's] interests . . . ." ECF No. 174 at 2. Yet again, CERT seeks to use the recusal process strategically to overturn decisions with which it disagrees. The Court should reject this effort, which would create a dangerous precedent and a strong incentive for dissatisfied litigants to use the recusal procedure to obtain rehearing.

CERT's contention that Judge Mueller recused herself due to "unwaivable conflicts of interest" and that "all rulings that she made were either void or voidable" (Mot. at 5) is wrong as a matter of fact and law. On the facts, Judge Mueller did not find that she had a conflict of interest and explained that she was not persuaded that a "reasonable person" would perceive a significant risk of bias. ECF No. 174 at 1. She nevertheless recused herself because the "uncommonly aggressive, scorched earth efforts" to pursue her recusal—including listing her home address in public filings, subpoenaing her husband, and photographing her purported real estate—led her to conclude that there was at least a question as to whether she could continue to act fairly and impartially. *Id.* at 1-2. Notably, CERT's overzealous activities that formed the basis for Judge Mueller's recusal occurred well *after* the orders that CERT now seeks to vacate and thus could not have biased her decisions.

CERT's motion also fails as a matter of law. CERT does not cite, and Plaintiff California Chamber of Commerce ("CalChamber") has not identified, any case that stands for the proposition asserted by CERT that "any rulings made when a judge is disqualified are void and must be vacated, without regard to the merits of the decision" (Mot. at 11). To the contrary, courts have significant discretion in determining whether to vacate prior rulings of a disqualified judge based on the

timeliness of the vacatur request and the interests of justice. Here, CERT waited to submit its motion to vacate until after the Ninth Circuit had upheld one of the two orders at issue and more than five months after Judge Mueller recused herself. CERT also has not demonstrated that Judge Mueller had an interest in the outcome of this case that would lead a "reasonable person" to perceive a significant risk that she would resolve the rulings in question on a basis other than their merits. Indeed, CERT neglects to mention that Judge Mueller ruled *against* CalChamber on motions to dismiss filed by CERT and the Attorney General early in the case, ultimately requiring CalChamber to amend its Complaint.[1]

The Court should therefore deny CERT's motion to vacate. Further, as addressed in CalChamber's Opposition to CERT's Motion to Dismiss (ECF No.194 at 23-25), the Court should also consider revoking or limiting CERT's status as an intervenor in order to address CERT's conduct in filing this motion, as well as many others, so that the Court can efficiently resolve the legitimate dispute between CalChamber and the Attorney General.

## BACKGROUND

### A. First Round of Motions to Dismiss

CalChamber filed this lawsuit in October 2019. ECF No. 1. Shortly after CalChamber filed its complaint, CERT moved to intervene to protect its investment in its long-running lawsuit over acrylamide in coffee and prevent that lawsuit from being enjoined. ECF No. 10 at 11-12. CERT and the Attorney General both moved to dismiss CalChamber's Complaint on jurisdictional grounds. *See* ECF Nos. 8, 20. On March 3, 2020, the Court granted in part the Attorney General's and CERT's motions to dismiss. ECF No. 56. In so ruling, the Court accepted multiple arguments raised by CERT. *Id.* at 6 ("[A]s CERT argues, the Anti-Injunction Act, 28 U.S.C. § 2283, prevents the court from granting plaintiff's requested declaratory relief . . . ."); *id.* at 8 ("As CERT suggests in its reply, plaintiff's requested declaratory relief, if granted, would effectively enjoin the *CERT v. Starbucks* case . . . ."). CERT alleged no bias on Judge Mueller's part in issuing this ruling.

---

[1] Likewise, CERT does not mention that Judge Mueller dismissed, on procedural grounds, the complaint of another business-oriented plaintiff presenting a similar First Amendment challenge to Proposition 65's application to acrylamide in food, a decision that is also at odds with CERT's allegations of bias. See Order (Oct. 7, 2020) in *B&G Foods North America, Inc. v. Embry*, No. 2:20-cv-00526-KJM-DB (ECF No. 33).

**B. Second Round of Rulings on the Pleadings**

CalChamber promptly filed an Amended Complaint (ECF No. 57) to address the issues identified in the Court's Order. In particular, CalChamber (1) added a claim for relief under 42 U.S.C. § 1983 for violations of its members' First Amendment rights (Am. Compl. ¶¶ 88-96), and (2) clarified that CalChamber seeks only prospective relief and does not seek to enjoin pending litigation, such as CERT's coffee case (*id.*, Prayer for Relief).

The Attorney General filed a second motion to dismiss. ECF No. 60. CERT, for its part, filed a motion for attorneys' fees—even though no judgment had been entered in its favor—arguing that it was a prevailing party because CalChamber did not name CERT as a defendant when CalChamber amended its complaint, thus—according to CERT—effecting CERT's dismissal. ECF No. 59. Over a month later, on May 11, 2020, CERT filed a request for entry of judgment. ECF No. 73. The Court denied the Attorney General's motion to dismiss and CERT's motion for attorneys' fees on August 27, 2020. ECF No. 84. The Court further ordered the parties to meet and confer as to whether CERT's request for entry of judgment was still properly before the Court or whether it could be more efficiently resolved by stipulation. *Id.* The parties were not able to reach agreement, and the Court denied CERT's request for entry of judgment on August 30, 2021. ECF No. 162. CERT alleged no bias on Judge Mueller's part in issuing these rulings.

**C. Motions for Preliminary Injunction and Summary Judgment**

Two months later, on October 30, 2020, CERT filed a motion for summary judgment on the basis that CalChamber's lawsuit violates the *Noerr-Pennington* doctrine and infringes CERT's right to petition by filing Proposition 65 enforcement actions. ECF No. 93. Also on October 30, 2020, CalChamber filed a motion for a preliminary injunction, asking the Court to preliminarily enjoin the Attorney General and all those in privity or acting in concert with him (including private enforcers) from filing and/or prosecuting new lawsuits to enforce the Proposition 65 warning requirement for cancer as applied to acrylamide in food and beverage products, and supporting expert materials. ECF No. 95.

On March 30, 2021, the Court granted CalChamber's motion for preliminary injunction and denied CERT's motion for summary judgment. ECF No. 114. It is that Order that CERT seeks to

| | |
|---|---|
| 1 | vacate in the Motion before the Court. In granting CalChamber's motion for preliminary injunction, |
| 2 | the Court found based on its review of the competing evidence that Proposition 65's safe harbor |
| 3 | cancer warning for dietary acrylamide "is controversial because it elevates one side of a legitimately |
| 4 | unresolved scientific debate about whether eating foods and drinks containing acrylamide increases |
| 5 | the risk of cancer." *Id.* at 23 (citing *CTIA—The Wireless 20 Ass'n v. City of Berkeley*, Cal., 928 F.3d |
| 6 | 832, 845 (9th Cir.), *cert denied*, 140 S. Ct. 658 (2019)). In issuing the preliminary injunction, the |
| 7 | Court rejected CERT's novel argument that the preliminary injunction constitutes an unconstitutional |
| 8 | prior restraint. *Id.* at 20. The Court also denied CERT's motion for summary judgment, finding that |
| 9 | CERT would not face liability if CalChamber prevails in this action seeking prospective injunctive |
| 10 | relief and observing that there was "no authority interpreting the First Amendment as preserving a |
| 11 | person's right to enforce a state law that contradicts the Constitution." *Id.* at 15. |
| 12 | CERT appealed the Court' preliminary injunction ruling to the Ninth Circuit. On May 27, |
| 13 | 2021, a divided motions panel of the Ninth Circuit granted in part CERT's motion for an emergency |
| 14 | stay of the preliminary injunction pending appeal to the extent it applied to private enforcers, but left |
| 15 | the preliminary injunction in place as to the Attorney General. Dkt. No. 16. On March 17, 2022, the |
| 16 | Ninth Circuit merits panel unanimously affirmed the Court's preliminary injunction order, finding |
| 17 | that the Court "used the correct framework for determining whether Prop. 65's warning requirement |
| 18 | was a constitutionally compelled disclosure" (Dkt. No. 85-1 at 16) and "dutifully followed" this legal |
| 19 | framework (*id.* at 21). The Ninth Circuit further found that this was not a close case, reasoning that it |
| 20 | was not necessary to define the word "controversial" for purposes of the compelled speech analysis |
| 21 | here because "[h]owever controversial is defined, the acrylamide Prop. 65 warning easily meets the |
| 22 | definition because of the scientific debate." *Id.* at 18-19 n. 10. CERT filed a petition for rehearing en |
| 23 | banc (Dkt. Nos. 87-89), which is pending before the Ninth Circuit. |
| 24 | **D.     Judge Mueller's Recusal** |
| 25 | On August 16, 2021—without meeting and conferring or providing any notice to |
| 26 | CalChamber—CERT filed a motion to disqualify Judge Mueller, who had presided over this case for |
| 27 | the 22 months since its inception. *See* ECF No. 152. Although CERT had participated in this case |
| 28 | for approximately two years when it filed this motion, CERT's counsel claimed that he did not |

discover the facts behind his client's motion until counsel for Healthy Living Foundation ("HLF"), a prospective intervener, contacted him on August 1, 2021. ECF No. 152, Metzger Decl. ¶¶ 38-39. At that time, HLF had been attempting to intervene in this action for more than four months, but the Court had rejected these efforts on procedural grounds. *See* ECF No. 125 (observing that HLF's "notice of appeal" (ECF No. 122) was a motion and striking the filing for failure to comply with the District's Local Rules); ECF No. 133 (denying HLF's ex parte application (ECF No. 128) for leave to intervene and finding that HLF's use of expedited relief mechanism was improper).[2]

CERT's motion claimed that "there are many connections between Judge Mueller and Plaintiff Cal Chamber, and financial interests of Judge Mueller's husband which create conflicts of interest," (ECF No. 152 at 2), an allegation CERT continues to press in its present motion for vacatur. *See, e.g.*, ECF No. 205 at 5 (claiming that Judge Mueller had "an unwaivable financial conflict of interest" in this case). In an attempt to support these claims, CERT submitted a plethora of information it and HLF had obtained about Judge Mueller—including her purported (but incorrect) home address (ECF No. 152 at 13)—and about her husband, the president of a business whose diverse assets include a ranch where almonds are grown. *Id.* at 5. Although the premise of CERT's motion was that the business interests of Judge Mueller's husband made her unfit to preside over this case, CERT cited elsewhere in its motion (for a different proposition) a 2015 decision in which Judge Mueller stated plainly that she has no financial interests in her husband's business. *AT&T Mobility LLC v. Yeager*, No. 2:13-cv0007-KJM-DAD, 2015 WL 4460715, at *2 (E.D. Cal. July 21, 2015).

Neither CalChamber nor the Attorney General filed oppositions to CERT's motion to disqualify. In the five weeks that followed, however, CERT and HLF submitted a total of four additional memoranda in support of the disqualification effort, *see* ECF Nos. 154, 158, 167, 171, as well as "hundreds of pages of supporting documents," *see* ECF Nos. 152-1, 152-2, 155, 158-1, 167-1,

---

[2] HLF presently has a pending motion to intervene (ECF No. 136), which both CalChamber (ECF No. 141) and the Attorney General (ECF No. 140) have opposed. In addition, HLF's counsel filed a motion to intervene on behalf of Ms. Penny Newman (ECF No. 137), a ballot proponent of Proposition 65 whom HLF's chief officer contacted and made aware of this case shortly after HLF's ex parte application was denied. *See* ECF No. 146 at 4. That motion also remains pending and was likewise opposed by both CalChamber (ECF No. 146) and the Attorney General (ECF No. 145).

167-2, 167-3, 171-1. ECF No. 174 (recusal order).³ CERT also issued subpoenas to Judge Mueller's husband, his business, and others, while HLF's Chief Officer personally drove to Colusa County to conduct "on-the-ground research" about Judge Mueller and her husband and to take photographs of an almond ranch he incorrectly believed was owned by Judge Mueller. *Id.* at 4-5.

On September 24, 2021, Judge Mueller issued an order recusing herself under 28 U.S.C. § 455(a) on the Court's own motion. ECF No. 174 at 6. In so doing, Judge Mueller explained that she did not believe that she had an interest in the outcome of this case, and that CERT and HLF had failed to persuade her that a "reasonable person" would believe that the case would be decided on any basis other than the merits. *Id.* at 1 (citing *U.S. v. Holland*, 519 F.3d 909, 913 (9th Cir. 2008)). While CERT and HLF did not obtain recusal on the merits, Judge Mueller concluded that their "uncommonly aggressive, scorched earth efforts" and invasions of her family's privacy caused her to at least question whether she could continue to act fairly and impartially towards CERT and HLF. *Id.* at 2, 4. Accordingly, despite her observance that filing of the motion appeared to be "strategic at least in part" and the "great concern" she expressed about "reward[ing] CERT and HLF with a reassignment they have sought for improper purposes," Judge Mueller found she was required to recuse herself under 28 U.S.C. § 455. *Id.* at 2, 6.

Judge Mueller expressed serious concern that CERT may have included personal details about her husband and her in its public filings "in an attempt to engender public animus against [her] and to increase the personal costs of [her] continued assignment to this action, including the costs and safety and security to [her] husband and [herself], which is no phantom worry." *Id.* at 5. "[T]o ensure no harm comes to any member of [her] family," Judge Mueller ordered the sealing of these filings and directed CERT to file redacted copies.⁴ *Id.* Finally, Judge Mueller advised that some of CERT's claims regarding her personal life were false and expressed further concern that CERT "seems not to have given careful attention to whether its claims are correct." *Id.* Judge Mueller reminded counsel

---

³ One of these filings, CERT's supplemental brief (ECF No. 171), was submitted without leave of court and in violation of this District's Local Rules and Judge Mueller's standing order. ECF No. 174 at 3-4.

⁴ On October 21, 2021, CERT filed a motion seeking to unseal these documents and to "restore" unredacted versions of them to the docket. ECF No. 189. CalChamber responded to this motion. ECF No. 198.

of the obligations created by Federal Rules of Civil Procedure 11(b)(1) and (3), *id.* n.3, and advised that, following reassignment, it would be up to the newly assigned district judge to consider whether CERT, HLF, and their counsel violated Rule 11, the District's Local Rules, and the Rules of Professional Conduct of the State of California. *Id.* n.2. The case was eventually reassigned, in succession, to each judge in the Eastern District's Sacramento Division, each of whom recused himself, until it was reassigned to this Court.

### E. CERT's Motion to Vacate

More than five months after Judge Mueller's recusal order on September 24, 2021, CERT filed the motion to vacate presently before the Court. In that span, CERT moved the Court to "restore" the documents Judge Mueller ordered redacted (ECF No. 189), filed a motion to dismiss on jurisdictional grounds (ECF No. 192), and moved the Court to allow CERT to submit a supplemental brief in support of its motion to dismiss (ECF No. 197). Notably, CERT filed its motion to vacate less than two weeks after the Ninth Circuit issued its opinion denying CERT's appeal of the preliminary injunction entered in March 2021.

In filing its motion to vacate, CERT again neglected to meet and confer with CalChamber before moving the Court for relief. *See* Standing Order of Hon. Dale Drozd, ¶1.C. On March 31, 2022, CERT's counsel contacted undersigned counsel in an attempt to retroactively meet and confer. ECF No. 207-1. On April 4, 2022, counsel for CERT and undersigned counsel discussed CERT's motion by telephone.[5] On April 5, 2022, CERT's counsel submitted a declaration to the Court explaining that he had inadvertently neglected to meet and confer before filing this motion. ECF No. 207.

## ARGUMENT

### I. CERT'S UNTIMELY MOTION FOR VACATUR SHOULD BE DENIED.

Judge Mueller recused herself under 28 U.S.C. § 455. ECF No. 174 at 6. The Supreme Court has held that § 455 "neither prescribes nor prohibits any particular remedy" and that the statute "does

---

[5] Undersigned counsel advised CERT's counsel that, in light of the local rules and the purpose of the meet-and-confer requirement, CERT should withdraw the pending motion and resubmit it after the meet and confer session was completed. CERT's counsel refused.

not, on its own, authorize the reopening of closed litigation." *Liljeberg v. Health Services Acquisition Corp.*, 486 U.S. 847, 862-63 (1988). In so holding, the Supreme Court observed that Congress "wisely delegated" the task of fashioning remedies to the judiciary. *Id.* at 862.

In determining the appropriate standard to apply, the Supreme Court in *Liljeberg* looked to its jurisprudence under Rule 60(b)(6), Federal Rules of Civil Procedure, which at the time provided that federal courts could relieve a party from a final judgment "upon such terms as are just."[6] *Id.* at 863. The Supreme Court considered prior precedent providing that federal courts have authority to vacate final judgments in response to motions "made within a reasonable time" "whenever such action is appropriate to accomplish justice." *Id.* (citations omitted). But the Court cautioned that this authority was to be exercised only in "extraordinary circumstances." *Id.* (citing *Ackermann v. U.S.*, 340 U.S. 193, 199 (1950)). The Court then created the following standard:

> We conclude that in determining whether a judgment should be vacated for a violation of § 455(a), it is appropriate to consider the risk of injustice to the parties in the particular case, the risk that the denial of relief will produce injustice in other cases, and the risk of undermining the public's confidence in the judicial process. We must continuously bear in mind that "to perform its high function in the best way 'justice must satisfy the appearance of justice.'"

*Id.* at 864 (citing *In re Murchison*, 349 U.S. 133, 136 (1955)).

Applying this standard, the Supreme Court considered whether a district court judge erred in refusing to disqualify himself, and if so, whether the judge's failure to disqualify himself required vacatur. There, defendant developer formed a corporation to apply for the state-required "certificate of need" to operate a new hospital. *Id.* at 847. For more than two years, defendant negotiated with Loyola University to purchase land where it would place the hospital. *Id.* At the same time, plaintiff acquisition corporation acquired a nearby site not owned by Loyola and filed its own application for a certificate of need. *Id.* When plaintiff sued defendant and sought a declaration as to which entity would own the new hospital, the case was assigned to a district court judge who not only was a member of Loyola's Board of Trustees but who also attended meetings where Loyola's negotiations

---

[6] This rule has since been amended to provide that a federal court may relieve a party from a final judgment for "any other reason that justifies relief." Fed. R. Civ. P. 60(b)(6).

with defendant were discussed. *Id.* In a bench trial, the judge promptly ruled for defendant. *Id.*

The district court judge claimed that he had no actual knowledge of Loyola's interest in the land, a finding both the Fifth Circuit and the Supreme Court accepted. *Id.* at 864-65. The Supreme Court found, however, that an objective observer might reasonably question the judge's impartiality and therefore the judge should have recused himself under § 455. *Id.* at 865-867. The Supreme Court then considered whether "providing relief in cases such as this" would "produce injustice in other cases." *Id.* at 868. After finding that it would not, the Court assessed whether the request for vacatur of the judgment was timely. The Court observed that a delay of ten months would "normally foreclose relief based on a violation of § 455(a)" but did not withhold relief because the delay was caused by the district court judge. *Id.* at 868-69.

### A. Vacating Prior Orders Would Result in Injustice.

*Liljeberg* is the only case cited by CERT that may shed light on the issues presented in CERT's motion.[7] But the facts and circumstances of Judge Mueller's recusal stand in sharp contrast to *Liljeberg*.

CERT implies repeatedly that the recusal was based on the merits of its motion to disqualify. *See* Mot. at 10 ("After CERT's motion to disqualify was fully briefed, Judge Mueeler [sic] recognized that she was disqualified from presiding over this case, and recused herself from all proceedings."). This is false. In her recusal order, Judge Mueller stated that she did not have an interest in the outcome of the case and was not persuaded that a "reasonable person" who objectively understood the facts would perceive a significant risk that she would resolve the case for reasons unrelated to the merits. ECF No. 174 at 1. Judge Mueller nevertheless recused herself under § 455 on her own motion because CERT's and HLF's "uncommonly aggressive, scorched earth efforts"—including publishing Judge Mueller's purported home address in public filings, subpoenaing her

---

[7] The other cases cited by CERT relate to overturning criminal convictions and are inapposite. *See State v. Nossaman*, 63 Or. App. 789 (1983), *abrogated by Matter of Marriage of Benson*, 141 Or. App. 458 (1996) (vacating conviction issued by judge who erroneously did not recuse himself under state statute requiring recusal where defendant alleges prejudice); *Degarmo v. State*, 922 S.W.2d 256, 267 (Tex. Ct. App. 1996) (denying defendant's claim that judge should have recused himself but stating conditions under which "[d]isqualification of a judge in a criminal case" occur under the Texas Constitution).

husband, and conducting "on-the-ground research" by traveling to and photographing private property believed to belong to Judge Mueller—led her to conclude that there was at least a question whether she could continue to uphold her obligations to act fairly and impartially.

Accordingly, here, unlike in *Liljeberg*, there was no "violation" of § 455. To the contrary, Judge Mueller recused herself as soon as it became apparent that her impartiality might reasonably be questioned due to CERT's and HLF's actions in pursuing her recusal. Likewise, at the time Judge Mueller granted CalChamber's motion for preliminary injunction and denied CERT's motion for summary judgment, she was not "disqualified" because there was no reason at that time why an objective observer might reasonably question her impartiality.

Granting CERT's motion to vacate these rulings would cause injustice in this case and create a significant risk of injustice in other cases. In particular, dissatisfied litigants would be incentivized to search for or even manufacture bias where none exists in order to pursue the judge's recusal for the purpose of voiding adverse rulings and obtaining rehearing. This is precisely the risk that Judge Mueller warned of in her recusal order:

> Here, by contrast, CERT and HLF claim their efforts to obtain my recusal were spurred by recent discoveries, suggesting this is not a case in which a litigant has held a meritorious motion in reserve. A different danger lurks. Consider a litigant who is satisfied with the assignment of a particular judge or a court's decisions in the early stages of a case, but is later disappointed by a ruling on a crucial pretrial motion. The disappointed litigant could go hunting for bias or could even attempt to manufacture bias where none exists. Even without seeking reconsideration, it could then file a late-breaking recusal motion in an attempt to delay an adverse judgment or to obtain reassignment.

ECF No. 174 at 3. Granting CERT's request to invalidate prior rulings would set a dangerous precedent and conflict with fundamental principles of judicial economy.

Moreover, Judge Mueller's finding that she did not have a disqualifying interest in the outcome of this case at the time of the subject rulings is supported by the record. Even assuming *arguendo* that Judge Mueller has a financial interest in land used for almond farming or in the sale of almonds, CERT has never shown any logical connection—much less a substantial one—between rulings one way or the other in this lawsuit and any such financial interest. First, almonds produced in California are sold worldwide and incorporated into food products sold worldwide, whereas

Proposition 65 only applies to exposures that occur in California. Second, almonds are used in many different ways. Roasted almonds, which contain acrylamide, are found in almond butter and some food products. Raw almonds, which do not contain acrylamide, are used to make almond milk, almond flour, and other food products. The companies targeted by Proposition 65 enforcement actions involving roasted almonds are food manufacturers and retailers, not almond farmers, much less owners of almond orchards. The relationship between lawsuits against such food manufacturers and retailers, which CalChamber seeks to bar, and the price of raw almonds in the commodity market, much less the value of land used for almond farming, is tenuous at best. Accordingly, the Court should reject CERT's invitation to relitigate its baseless motion for disqualification.

### B. CERT'S Motion Is Untimely.

CERT's motion for vacatur also should be denied because it is untimely. In *Liljeberg*, the Supreme Court observed that the plaintiff's ten-month delay in seeking vacatur would have been reason to deny the motion but for the fact that the delay was caused by the district court judge. 486 F.3d at 868-69. Here, in contrast, no third party is responsible for CERT's delay in bringing this motion, a motion it could have filed more than five months ago after Judge Mueller recused herself in September 2021. In fact, CERT filed a variety of other motions during this period, including its motion to "restore" documents (ECF No. 189) and a motion to dismiss seeking to relitigate an issue the Court already had decided (ECF No. 192). Yet CERT waited to file this motion for five months and then proceeded to file it almost immediately after the Ninth Circuit's opinion affirming the very order that CERT now seeks to vacate. Such strategic use of the recusal process should not be rewarded, for the reasons addressed above.

## II. CERT'S MOTION AND CONDUCT MERIT RECONSIDERATION OF ITS INTERVENOR STATUS UNDER RULE 24.

This frivolous and untimely motion provides CalChamber with yet another opportunity to reiterate its suggestion that the Court examine CERT's conduct throughout this litigation and consider revoking or limiting CERT's intervenor status under Rule 24 of the Federal Rules of Civil Procedure. See ECF Nos. 194 at 23-25; ECF No. 198 at 2-3; ECF No. 201 at 1. The Court has the

authority to revoke intervenor status in appropriate circumstances, such as when the intervenor causes undue delay and prejudice to the original parties in the case. *See, e.g.*, *Mishewal Wappo Tribe of Alexander Valley v. Salazar*, No. 5:09-CV-02502 EJD, 2012 WL 4717814 (N.D. Cal. Sept. 28, 2012), *aff'd*, 534 F. App'x 665 (9th Cir. 2013).

The present motion is the latest in a series of baseless motions CERT has filed that have unnecessarily consumed judicial resources. *See e.g.*, ECF No. 59 (unsuccessful attorney fee motion that did not even cite the standard for fees under 42 U.S.C. § 1988); ECF No. 73 (unsuccessful request for entry of judgement where CERT claimed without authority it was entitled to judgment because CalChamber did not name it as a defendant in amended complaint); ECF No. 41 (untimely *ex parte* application to file an oversized reply brief because CERT was "unaware of this Department's standing order limiting the length of reply briefs"); ECF No. 192-1 (motion for summary judgment in which CERT raised arguments on which the Court already had ruled, without even referencing the Court's prior decision); ECF No. 154 (objection to scheduling conference even though "it is well settled law that the mere filing of an affidavit under 28 U.S.C. § 144 does not automatically disqualify a judge," *In re Shop Television Network, Inc.*, 170 B.R. 413, 416-17 (C.D. Cal. 1994)); Pet., *CERT v. U.S. Dist. Ct. E.D. Cal.*, No. 21-71256 (9th Cir. Sept. 3, 2021) (unsuccessful mandamus petition after Judge Mueller had directed CERT to published decisions rejecting CERT's position).

Likewise, CERT's repeated refusal to abide by the Court's rules, standing orders, and the applicable standards of professional conduct also warrant reconsideration of its intervenor status. Indeed, with respect to the motion presently before the Court, CERT *again* failed to meet and confer before filing its motion, as required by the Court's local rules. *See* p.7, *supra*. This is not an isolated incident; rather, it is part of a consistent pattern of CERT's disregard for the meet-and-confer requirement. *See, e.g.*, ECF No. 152 (motion to disqualify); ECF No. 189 (motion to restore documents to the docket); ECF No. 197 (motion to submit supplemental brief).[8] It is not surprising,

---

[8] The purpose of a meet-and-confer requirement is not simply to see if the non-moving party will accede to the requested relief, but also to assess whether the parties may narrow the issues or perhaps reach a compromise short of litigation. *See, e.g.*, *U.S. v. Sci. Applications Int'l Corp.*, 555 F. Supp.
*Footnote continued on next page.*

PLT'S. OPPOSITION TO CERT'S MOT. FOR VACATUR     No. 2:19-cv-02019-DAD-JDP

then, that Judge Mueller in her recusal order observed that "CERT's disregard for this District's Local Rules, this court's standing orders, and binding authority raise [] questions about its litigation and motivations." ECF No. 174 at 3. Put simply, CERT's litigation tactics have caused and continue to cause undue delay to the original parties in this case and to the Court, and the present motion is just the latest example of such questionable conduct.

## CONCLUSION

For the foregoing reasons, the Court should deny CERT's motion for vacatur, revoke or limit CERT's intervenor status under Rule 24, and consider other appropriate relief.

Dated: April 13, 2022                    Respectfully submitted,

**ARNOLD & PORTER KAYE SCHOLER LLP**

By: */s/ Trenton H. Norris*
Trenton H. Norris
S. Zachary Fayne
David M. Barnes

*Attorneys for California Chamber of Commerce*

---

2d 40, 47 (D.C. Cir. 2008) (moving party's belief that non-moving party would not be willing to resolve the problem short of Court intervention "does not change the fact that it was under an obligation to make a 'good faith effort . . . to narrow the areas of disagreement'"); *U.S. v. All Assets Held at Bank Julius Baer & Co., Ltd.*, 202 F. Supp. 3d 1 (D.C. Cir. 2016) (the meet and confer requirement "serves the crucial function of preventing the unnecessary expenditure of the Court's time and resources on adjudicating a dispute the parties could have resolved themselves"). CERT's repeated failure to meet and confer has impeded the parties' ability to narrow the issues and wasted judicial resources.