Trenton H. Norris (CA Bar No. 164781)
trent.norris@hoganlovells.com
David M. Barnes (CA Bar No. 318547)
**HOGAN LOVELLS US LLP**
4 Embarcadero Center, Suite 3500
San Francisco, California 94111
Telephone: (415) 374-2300
Facsimile:  (415) 374-2499

*Attorneys for Plaintiff
California Chamber of Commerce*

# UNITED STATES DISTRICT COURT

# EASTERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| CALIFORNIA CHAMBER OF COMMERCE,<br><br>  Plaintiff,<br><br>  v.<br><br>ROB BONTA, IN HIS OFFICIAL CAPACITY AS ATTORNEY GENERAL OF THE STATE OF CALIFORNIA,<br><br>  Defendant. | Case No. 2:19-cv-02019-DJC-JDP<br><br>**PLAINTIFF CALIFORNIA CHAMBER OF COMMERCE'S OPPOSITION TO DEFENDANT'S EX PARTE APPLICATION**<br><br>**Judge:**  Hon. Daniel J. Calabretta<br>**Trial Date:**  None<br>**Action Filed:**  October 7, 2019 |

# INTRODUCTION

By *ex parte* application, Defendant Rob Bonta ("AG") seeks a two-month extension of all case deadlines in order to seek a stay or a ten-month extension on noticed motion because his client, the agency that implements Proposition 65, has just announced—four and a half months after the second Ninth Circuit ruling endorsing Plaintiff's theory in this case[1]—that it has yet another idea for how it might formulate a warning for acrylamide in food that might pass Constitutional muster.  Much as it opposes further delay in this long-delayed litigation and has tired of the State's ever-changing warnings, Plaintiff California Chamber of Commerce ("CalChamber") agrees that the AG's motion for a lengthy delay would best be heard on a regular briefing schedule and that the uncertainty presented by that motion should be resolved before CalChamber files its summary judgment motion (currently set for May 10).

To that end, CalChamber proposed a <u>one</u>-month extension that will allow just that while minimizing prejudice to CalChamber, only to have the AG insist on two months due to unspecified conflicts with his "team's vacation schedules."  While CalChamber has no desire to disrupt opposing counsel's vacations, and indeed has twice stipulated to extend the case schedule at the AG's request, the Constitutional claims of CalChamber's members—which this Court and the Ninth Circuit have found are likely to succeed on the merits—will remain in limbo until this Court can reach the merits on summary judgment.  CalChamber therefore requests that the Court delay the schedule for only the time needed to accommodate the AG's motion on regular notice—one month.

# PROCEDURAL HISTORY

This lawsuit was filed four and a half years ago on October 7, 2019.  ECF No. 1. CalChamber filed its motion for a preliminary injunction on October 30, 2020, ECF No. 95, which Judge Mueller granted on March 30, 2021.  ECF No. 114; *Cal. Chamber of Com. v. Becerra*, 529 F. Supp. 3d 1099, 1121 (E.D. Cal. 2021) (holding that CalChamber "is likely to succeed on the merits of its First Amendment claims").  On March 17, 2022,

---

[1] *Nat'l Ass'n of Wheat Growers v. Bonta*, 85 F.4th 1263 (9th Cir. 2023) ("*Wheat Growers*").

1

the Ninth Circuit upheld Judge Mueller's order preliminarily enjoining the warning requirement for acrylamide, holding that such requirement was "likely unconstitutional." *Cal. Chamber of Com. v. Council for Educ. & Rsch. on Toxics*, 29 F.4th 468, 482 (9th Cir. 2022) ("*CERT*").

On September 24, 2021, Judge Mueller reluctantly recused herself because of the "uncommonly aggressive, scorched earth efforts" of Intervenor CERT, including serving subpoenas on her husband. ECF No. 174. This case was then assigned to Judges Mendez, England, and Shubb, each of whom recused himself in quick succession, and then to Judge Drozd, whose docket did not permit him to even hold a status conference. The case was reassigned to Judge de Alba on August 24, 2022, but that was reversed on January 31, 2023. A status conference was finally scheduled before Judge Drozd for April 4, 2023, then moved to April 18, 2023, but then vacated when the case was reassigned to this Court (its seventh assignment) on April 6, 2023.

Following a status conference, and resolving competing schedules proposed by the parties, this Court issued a scheduling order on August 21, 2023, setting the deadline for summary judgment motions as March 22, 2024, with a hearing date of May 9, 2024. ECF No. 246. To accommodate the trial schedule of Defendant's counsel, CalChamber stipulated to move those dates to May 10, 2024 (filing) and September 19, 2024 (hearing), dates which the Court entered along with a detailed briefing schedule. ECF No. 250. Most recently, the parties stipulated to extend the expert discovery cutoff to April 24, 2024. Expert depositions began on April 15, 2024, and are scheduled through April 24, 2024.

## ALTERNATIVE WARNINGS

The proposal that is the basis of the AG's most recent request for delay is the agency's second attempt at a revised safe harbor warning. The first revised warning was noticed for comment on September 17, 2021, and involved a longer warning than the standard safe harbor warnings for food, which this Court found to be misleading and not factual. ECF No. 188. The parties agreed that, once the first proposed regulation

was approved or rejected by the Office of Administrative Law, they would "negotiate a schedule for expert discovery and a briefing schedule for cross-motions for summary judgment." ECF No. 212.  That regulation was approved and took effect on January 1, 2023.  *See* ECF No. 215; Cal. Code Regs. § 25607.2(b).  The current schedule is the result of that negotiation and the Court's scheduling order.

CalChamber has been preparing to move for summary judgment based on the original safe harbor warnings and this alternative warning.  Specifically, CalChamber undertook the expense of commissioning an expert to conduct a second consumer survey to evaluate consumer understanding of the message conveyed by this alternative warning, and the AG's expert has critiqued this study (and was deposed just yesterday).  The agency does not propose to eliminate the alternative warning, but instead to supplement it with "an additional safe harbor warning option . . . ." ECF No. 264, at 4.

That second alternative warning was noticed for comment on April 5, 2024.  ECF No. 264.  According to the AG, the new proposal is intended "[t]o address the First Amendment issues articulated by the Ninth Circuit in *Wheat Growers*, as well as offer businesses additional flexibility by providing an additional safe harbor option . . . ."  The *Wheat Growers* decision was issued on November 7, 2023, *five months* prior to the agency's notice.  There the Ninth Circuit affirmed the judgment and permanent injunction issued by Judge Shubb, who held that the State's Proposition 65 warning requirement for glyphosate, which took several forms thanks to the AG "repeatedly propos[ing] iterations of alternative warnings," violated the First Amendment.  *Nat'l Ass'n of Wheat Growers v. Becerra*, 468 F. Supp. 3d 1247, 1262-65 (E.D. Cal. 2020).  Acknowledging the string of alternative warnings presented to the Court, and refusing the AG's request to remand the case so that Judge Shubb could consider a late-promulgated alternative warning for glyphosate, the Ninth Circuit concluded that "the issues plaguing the OEHHA Warning could not be cured by any sort of factual development," and that "changes [to] the wording" of the safe harbor "do[] not change the fact that a deep scientific debate still exists." *Wheat Growers*, 85 F.4th at 1282.

# MEET AND CONFER EFFORTS

*The AG Alerts CalChamber to Plans for a New Safe Harbor.*

On February 23, 2024, the AG informed CalChamber that OEHHA would be proposing a new alternative safe harbor warning for acrylamide. Declaration of Trenton H. Norris, ¶ 2, Ex. A. The AG asked whether CalChamber would "stipulate to a stay of the litigation pending adoption of the regulation," or, in the alternative, "to extend the expert discovery cut-off until April 24." *Id.*[2] Counsel met and conferred about the new safe harbor regulation on March 1, 2024. Norris Decl. ¶ 4. CalChamber requested the language of the proposed warning so that it could assess the new warning's impacts on the litigation. *Id.* The AG was unable to provide any details about the new proposal, even whether it would replace the current alternative warning or add to it. *Id.* (Ultimately it will not replace the current warnings.)

On March 7, 2024, the AG asked whether CalChamber would stipulate to a stay or a further extension of the schedule. Norris Decl. ¶ 5, Ex. B at 3. Following additional consideration and internal discussion, CalChamber replied on March 15 that it would not stipulate "[w]ithout seeing the new wording that OEHHA is planning to propose . . . ." Norris Decl. ¶ 6, Ex. B at 1.

*The AG Shares a Draft Warning and Both Parties Discuss a Modified Schedule.*

Two weeks later, March 29, the AG disclosed the proposed regulatory language with the Initial Statement of Reasons that OEHHA would be issuing the next week. Norris Decl. ¶ 7, Ex. C at 6-7. As an alternative to staying the litigation, the AG proposed a modified schedule that would have pushed the expert discovery cutoff and summary judgment deadlines well into 2025. *Id*. The AG requested CalChamber's decision within three business days, on April 3. *Id.* On that date, CalChamber told the AG that it would not agree to a stay or further delay of the litigation. Norris Decl. ¶ 8, Ex. C at 5.

---

[2] The only extension the AG sought at the time was of the expert discovery cutoff. To accommodate the AG's schedule, CalChamber agreed to extend the deadline to complete expert depositions from March 15, 2024 to April 24, 2024. The parties filed a joint stipulation to extend the cutoff date for expert discovery, while preserving "[a]ll other dates in the Scheduling Order." ECF No. 262. The Court entered an order granting this extension on March 4. ECF No. 263.

A week later, on the afternoon of April 10, the AG proposed to extend all remaining calendared dates by two months to allow the AG to file a motion to stay or modify the existing scheduling order. Norris Decl. ¶ 9, Ex. C at 4-5. Counsel indicated the AG would seek *ex parte* relief if CalChamber did not agree to this two-month extension, and gave CalChamber until the close of business the next day to respond. *Id.* CalChamber promptly asked the AG to clarify one point and to confirm that the expert depositions were moving forward as scheduled (on April 15, 16, 19, 22, 23, and 24). Norris Decl. ¶ 10, Ex. C at 4. Later that same day (April 10), CalChamber countered with a proposal that would extend most dates by approximately one month instead of two months, but which kept the summary judgment hearing date. *Id.*, Ex. C at 2-3. CalChamber shared the following table summarizing the current schedule, the AG's proposed schedule, and CalChamber's counterproposal:

| Item | Current Date | AG Proposal | Chamber Counter |
|---|---|---|---|
| Expert discovery cutoff | 4/24 | 6/24 | 5/24 |
| AGO to tell Chamber if it will file x-MSJ or not | 4/26 | 6/27 | 5/31 – This adds a week to the AG's time and lets us all have a few days after the court's ruling if it comes down shortly after the May 23 hearing |
| Chamber will file MSJ/AGO will file x-MSJ | 5/10 | 7/10 | 6/7 – Note that the calendar does not call for the AGO to file its MSJ the same day as CalChamber's MSJ is filed; instead, it is to be filed with the AGO's oppo to CalChamber's MSJ |
| AGO opposition to Chamber MSJ due/AGO will file x-MSJ | 6/21 | 8/22 | 7/12 (one week shorter [than one month]) |
| Chamber reply iso MSJ & opposition to any x-MSJ due | 7/26 | 9/26 | 8/16 |
| AGO reply iso to any x-MSJ due | 8/16 | 10/16 | 8/30 (one week shorter [than one month]) |
| Hearing on MSJ/x-MSJ | 9/19 | 11/21 | 9/19 (stays the same) |

*See* Norris Decl. ¶ 10, Ex. C at 3.[3]

---

[3] If the AG files its motion to stay on April 18, as the AG proposed and its ex parte motion indicates it will, the hearing would be held on May 23 under ordinary notice. If the Court rules in its usual timely manner and denies the AG's requested stay or ten-month delay, CalChamber can file its summary judgment motion on June 7 and the case can move forward. (The AG should have decided long before then whether it will file a cross-motion for summary judgment, which does not turn on the schedule.)

The next day (April 11), the AG refused CalChamber's compromise of a one-month extension. Norris Decl. ¶ 11, Ex. C at 2. The AG stated that "it does not afford adequate time to accommodate our team's vacation schedules, which we took into account when making our two-month extension request." *Id.* Prior to that time, vacation schedules had not been mentioned. Norris Decl. ¶ 12. The AG's *ex parte* motion ensued.

## LEGAL STANDARD

Rule 16(b) provides that "[a] schedule may be modified only for good cause and with the judge's consent." Fed. R. Civ. P. 16(b)(4). The "good cause" requirement of Rule 16 primarily considers "the diligence of the party seeking the amendment." *Johnson v. Mammoth Recreations, Inc.*, 975 F.2d 604, 609 (9th Cir. 1992). Accordingly, a district court may modify the pretrial schedule "if it cannot reasonably be met despite the diligence of the party seeking the extension." *Id.* And under this Court's local rules, "[c]ounsel shall seek to obtain a necessary extension from the Court . . . as soon as the need for an extension becomes apparent." L.R. 144(d).

## ARGUMENT

### I. The AG's Delay Should Not Be Rewarded With Further Delay.

The *Wheat Growers* decision came down on November 7, and immediately cast doubt on the viability of OEHHA' alternative acrylamide warning. Sometime in the more than three months before February 23, when the AG broke the news to CalChamber, the decision was made to propose a new alternative warning. On February 23, the AG asked CalChamber to "stipulate to a stay of the litigation pending adoption of the regulation" without even describing the proposed new warning. Norris Decl. ¶ 2, Ex. A. CalChamber, skeptical that <u>any</u> warning language can be crafted to comply with both Proposition 65 and the First Amendment, and eager to move forward after *years* of delays, asked to see the proposal before deciding whether to stipulate to the lengthy delay sought. Five weeks went by before the AG shared the language of the warning on March 29. CalChamber reviewed it, promptly determined that it is vulnerable to the same objections as the existing safe harbor warnings, and—not surprisingly—refused to

stipulate to an extension of the schedule.  Norris Decl. ¶ 7-8.

Even assuming that, before February 23, the AG was unaware of the new warning proposal (which is unlikely), or not permitted to disclose its existence (which is possible), the AG had plenty of time to make a noticed motion for extension of the schedule.  The AG could have done so without disclosing the wording of the proposed warning; after all, the AG twice asked CalChamber to extend the schedule without it.  But the AG chose to wait five weeks until the proposed warning was in print and under review by the Office of Administrative Law to share it with CalChamber.  And although CalChamber responded only three business days later, it took another week for the AG to declare its intent to file a motion, and indeed two motions—this *ex parte* motion for a two-month extension to allow it time to have a noticed motion heard.

The AG should have known that a stipulation was not possible if it was going to withhold the proposed regulation until the end of March.  Today, the parties are one week from the close of expert discovery and 23 days from CalChamber filing its long-awaited summary judgment motion.  Two expert depositions have been taken and four are scheduled in the next five business days.  There is no way to know whether the timing of this motion is strategic or neglectful, but it is clear that it could have been avoided.  In short, while the AG insists that the situation calls for emergency relief, the emergency is entirely of the AG's own making.  *See* L.R. 144(d) ("Counsel shall seek to obtain a necessary extension from the Court . . . *as soon as the need for an extension becomes apparent*.") (emphasis added).

## II.     A Two-Month Delay is Unnecessary.

One week after CalChamber restated that it would not agree to another delay to allow the State yet another chance to comply with the First Amendment, the AG proposed to extend all remaining calendared dates by two months, including the expert discovery cutoff and the hearing on summary judgment, to allow for a noticed motion on a ten-month delay.  That same day (April 10), while acknowledging the prejudice that comes from prolonging this case's resolution, CalChamber offered a one-month

extension instead of two.  Norris Decl. ¶ 9, Ex. C at 2-3.  CalChamber's counterproposal would keep the current hearing date on the summary judgment motions, but move most other dates by about a month in order to allow time for the AG to file his motion for a 10-month stay on April 18 and have it heard on May 23.  *Id.*  As review of the table of dates above shows, a one-month extension is all that is required to meet the AG's stated objective of having its motion for a long delay heard on regular notice.

But the next day, the AG refused CalChamber's proposal.  As a reason for rejecting a one-month extension, counsel stated that "it does not afford adequate time to accommodate our team's vacation schedules."  Norris Decl. ¶ 11, Ex. C at 2.  There was no disclosure of what those dates are, or how the proposal would affect them, or how it might be adjusted.  And despite *four* lawyers on the email (and on the caption of the *ex parte* motion), there was no explanation as to how their personal schedules might be coordinated so as not to conflict with the needs of this case.

### III. The Proposed Warning Does Not Justify a Long Delay.

Contrary to the AG's briefing (at 7), the proposed safe harbor amendment would not materially alter the defensibility of the challenged warning requirement.  Since this litigation began in 2019, CalChamber has sought to show that *any* Proposition 65 warning applied to acrylamide is misleading and controversial.  Thus far, CalChamber has twice succeeded in persuading courts that enforcement of the State's warning requirement for acrylamide likely violates the First Amendment.  Neither outcome hinged on the specific wording of the safe harbor warning.  Holdings from this Court and the Ninth Circuit in the related glyphosate litigation illustrate this point.

In *Wheat Growers*, Judge Shubb held that Proposition 65's compelled warning as applied to glyphosate was unconstitutional—regardless of the form it took.  *See* 468 F. Supp. 3d at 1266.[4]  In so holding, this Court admonished the State for "repeatedly

---

[4] *Cf. Nat'l Ass'n of Wheat Growers v. Zeise*, 309 F. Supp. 3d 842, 852 n.12 (E.D. Cal. 2018) (stating that "it is not clear that there is *any warning*" that would comply with both the Constitution and California's regulations, which "make it impossible for plaintiffs to explain in the warning [the scientific debate], or that the IARC did not find that glyphosate causes cancer in humans, but that it found that glyphosate was

propos[ing] iterations of alternative warnings."[5]  The Ninth Circuit agreed, affirming the permanent injunction and reasoning that the State's wordsmithing of the safe harbor warning did "not alter the overall message."  *See Wheat Growers*, 85 F.4th at 1281 (concluding that OEHHA's new warning "still conveys the overall message that glyphosate is unsafe which is, at best, disputed").  The Ninth Circuit thus refused to remand because "the issues plaguing the [new] OEHHA Warning could *not be cured by any sort of factual development*."  *Id.* at 1282 (emphasis added).

Likewise here, the potential "regulatory developments" that the AG cites (at 3) cannot cure the constitutional infirmities found by this Court and the Ninth Circuit.  "While [the proposed regulation] changes the wording" of the safe harbor warnings, "it does not change the fact that a deep scientific debate *still exists*" as to the carcinogenic risks from dietary acrylamide exposure in humans.  *See id*.  "Nor does it change the fundamental analysis of the applicability of *Zauderer*'s exception as a matter of law."  *Id.*  As the Ninth Circuit has made clear on two occasions now, "the presence of a genuine, scientific controversy is sufficient to place a Prop 65 warning outside the realm of the lower level of review under *Zauderer*."  *See id.*; *CERT*, 29 F.4th at 478 n.10 ("[T]he acrylamide Prop. 65 warning *easily meets* the definition [of 'controversial'] because of the scientific debate.") (emphasis added).

Therefore, even if the recent safe harbor warning amendment is approved after expert discovery closes and summary judgment motions have been heard, the Court and the parties would not have to re-open expert discovery or go through another round of briefing to consider the new warning.  Indeed, in *Wheat Growers*, the State's new warning became effective after *judgment*.  The AG inflates these concerns while ignoring the effects a further delay would have on this Court's and CalChamber's resources.

---

probably carcinogenic based on sufficient evidence in experimental animals and limited evidence in humans").

[5] "The court cannot condone the state's approach here, where it continues to argue that the warning requirement poses no First Amendment concerns and then repeatedly proposes iterations of alternative warnings that the state would never allow under normal circumstances, absent this lawsuit."  *See Wheat Growers*, 468 F. Supp. 3d at 1262.

### IV. A Two-Month Extension Will Prejudice CalChamber.

Finally, despite the AG framing his application as a harmless extension, allowing the AG to unilaterally delay this litigation even further has material consequences. *See* Norris Decl. ¶ 13-15. The preliminary injunction in place only prevents the filing of *new* lawsuits based on alleged exposures to acrylamide. It does not remove the risk of new notices of violation being issued and the attendant costs that businesses incur. Nor does it offer relief to the dozens of companies that are presently bound by consent judgments that require them either to disparage their products with misleading and controversial cancer warnings for acrylamide or to expend resources to control the level of acrylamide that would otherwise naturally occur in common foods (and that has occurred in centuries of baking, frying, and cooking food).

Indeed, the ongoing costs of complying with existing consent judgments are heavy. Norris Decl. ¶ 13. For example, many companies bound by such judgments must continually test their products to measure the acrylamide concentration to assess whether a Proposition 65 warning is required. They must pay for periodic laboratory testing for each product that might contain acrylamide, and those costs are multiplied across many products given acrylamide's ubiquity. A cancer warning on food will inevitably deter some potential purchasers, both cutting into sales and stigmatizing brands. Most significant, if less measurable in dollars, is the ongoing First Amendment harm that companies suffer when forced to parrot the government's misleading and controversial statements. *Cf. Elrod v. Burns*, 427 U.S. 347, 373 (1976) ("The loss of First Amendment freedoms, for even minimal periods of time, unquestionably constitutes irreparable injury.").

Meanwhile, despite the passage of time, some acrylamide lawsuits that were filed when this Court's preliminary injunction was not in effect continue in state court, with parties incurring attorney fees and costs and facing uncertainty. One hard-fought case is in the process of settling, the defendants having tired of waiting for progress in this case. Another, which was filed in August 2018 and has been stayed since May 2021, with the

purpose of "allow[ing] pending federal litigation to conclude," faces a lifting of the stay in the next month.  *See* Norris Decl. ¶ 15, Ex. D at 1.

## CONCLUSION

CalChamber does not seek to deny the AG the ability to have this Court rule on whether its most recent, if delayed, attempt to craft a Constitutional warning should derail this litigation.  Instead, CalChamber seeks to have that motion heard expeditiously.  Because a one-month extension will accommodate the legitimate interests of both parties, CalChamber urges the Court to adopt its proposal as detailed in the table above.

Dated:  April 17, 2024                             Respectfully submitted,

By: ____/s/ Trenton H. Norris_____
Trenton H. Norris
HOGAN LOVELLS US LLP
*Attorneys for Plaintiff California Chamber of Commerce*